FILED

2016 Aug-12  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **DRUMMOND COMPANY, INC. et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:15-cv-506-RDP** |
| | } | |
| **TERRENCE P. COLLINGSWORTH,** | } | |
| **et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

The court has before it Defendant Ivan Otero Mendoza's Motion to Dismiss Complaint (Doc.

#46) filed on December 30, 2015.  The Motion (Doc. #46) has been fully briefed (Docs. #46, 50, 52)

and is now ripe for review.

## I.    Introduction

On March 27, 2015, Plaintiffs Drummond Company, Inc. and Drummond Ltd. (hereinafter

collectively referred to as "Drummond") filed its complaint in this action.  One of the Defendants

it sued is Ivan Otero Mendoza (hereinafter "Otero").  The Complaint alleges violations of RICO, 18

U.S.C. § 1962(c) (Count I), conspiracy to violate RICO, 18 U.S.C. § 1962(d) (Count II), willful

and/or reckless misrepresentation in violation of Alabama Code § 6-5-101 (1975) (Count III),

fraudulent concealment/suppression of material facts in violation of Alabama Code § 6-5-102 (1975)

(Count IV), and civil conspiracy (Count V).  Otero seeks to have the complaint filed against him

dismissed for lack of personal jurisdiction, improper venue, and failure to state a claim.[1]  (*See*

---

[1] Otero joined in all arguments made in the motions to dismiss filed by William R. Scherer, Conrad & Scherer, LLP, Terrence P. Collingsworth, and International Rights Advocates.  (*See* Doc. #46 at 3, n. 1).  Those motions to dismiss (Docs. #14, 15) were denied in their entirety by Memorandum Opinion and Order (Doc. #58) entered March 8, 2016.  The court also denied a motion to reconsider those motions. (Doc. #89).

*generally* Doc. #46).

## II.   <u>Standard of Review</u>

A Rule 12(b)(2) motion tests the court's exercise of personal jurisdiction over a defendant. *See* FED. R. CIV. P. 12(b)(2).  "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir.2009); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir.1999) ("A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction.").  If the plaintiff satisfies his initial burden and the defendant then challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.  *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir.2002); *see also Posner*, 178 F.3d at 1214 ("The plaintiff bears the burden of proving 'by affidavit the basis upon which jurisdiction may be obtained' only if the defendant challenging jurisdiction files 'affidavits in support of his position.'" (citation omitted)). When the issue of personal jurisdiction is decided on the evidence, but without a discretionary hearing, a plaintiff demonstrates a "prima facie case of personal jurisdiction" by submitting evidence sufficient to defeat a motion made pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.  *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir.2006). At this evidentiary juncture, the court construes the complaint's allegations as true if they are uncontroverted by affidavits or deposition testimony, *id.* at 1317, and where there are conflicts, the court "construe[s] all reasonable inferences in favor of the plaintiff." *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 199 Fed. Appx. 738, 741 (11th Cir.2006)

2

(quoting *Meier*, 288 F.3d at 1269).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A court may dismiss a complaint under Rule 12(b)(6) if a plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). That is, if a plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Id.*; *see Ashcroft v. Iqbal*, 139 S.Ct. 1937, 1953 (2009) (holding that *Twombly* was not limited to antitrust cases but rather was based on an interpretation and application of Federal Rule of Civil Procedure 8).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* [plausible] theory."[2] *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)). Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal. *Oxford*

---

[2] *Twombly* teaches that the correct standard is whether a plaintiff's claims are "plausible." 550 U.S. at 547.

*Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim. We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Commc'ns. Corp.*, 274 F. Supp. 2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

## III.   Analysis of Ivan Otero Mendoza's Motion

### A.   Personal Jurisdiction[3]

The court applies a two-part analysis in determining whether there is personal jurisdiction over a nonresident defendant. *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990); *see also Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 919 (11th Cir. 1989). First, the court considers the jurisdictional question under the state long-arm statute.[4] *See Cable/Home Communication Corp.*, 902 F.2d at 855; *see also*

---

[3] This court is bound to address the issue of personal jurisdiction first. "A defendant may join objections to jurisdiction under Rule 12(b)(2) with a motion to dismiss for failure to state a claim or any other defenses that are assertable by motion without waiving the jurisdictional defense . . . As a general rule, when the court is confronted by a motion raising a combination of 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint." C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d*, § 1351 at 243-44; *see also Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 221 (2d. Cir. 1963) (holding that it was error for district court to dismiss action for failure to state a claim prior to addressing challenges to personal jurisdiction and venue, because dismissal on the former ground would be with prejudice, while dismissal for either of the two latter grounds would be without prejudice).

[4] When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, the Federal Rules of Civil Procedure direct this court to look to the state long-arm statute in order to determine the existence of personal jurisdiction. *Cable/Home Communication Corp.*, 902 F.2d at 855. Drummond does not contend that RICO's nationwide service of process provision should apply here for purposes of personal jurisdiction over Otero. (Doc. #50 at 3, n. 2). Therefore, Otero's argument on the RICO statute not supplying a basis for jurisdiction is moot. (Doc. #46 at 4-5).

*Alexander Proudfoot Co.*, 877 F.2d at 919.  If there is a basis for asserting personal jurisdiction under the state statute, the next determination to be made is whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919.  The nature and quality of the contacts may vary depending on the type of jurisdiction being asserted (specific or general).  *See Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).  Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.

The reach of the Alabama long-arm statute is interpreted according to Alabama law.  Federal courts are required to construe the statute as would the Alabama Supreme Court.  *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890-891 (11th Cir. 1983).  Alabama's long-arm statute permits personal jurisdiction to the extent it "is not inconsistent with the constitution of this state or the Constitution of the United States." ALA. R. CIV. P. 4.2(b).  Thus, the question here is whether assertion of personal jurisdiction over the individual defendant comports with the Fourteenth Amendment's Due Process Clause.  *See Olivier v. Merritt Dredging Co., Inc.*, 979 F.2d 827 (11th Cir. 1992) (citing *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So.2d 141, 145 (Ala. 1983)).  Compliance with the Fourteenth Amendment's Due Process Clause exists where the defendant has minimum contacts with the forum state, and where the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Olivier*, 979

5

F.2d at 830-831; *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (quoting *International Shoe*, 326 U.S. at 316).

There are two types of personal jurisdiction: specific and general. Specific jurisdiction is based on a party's contacts with the forum state that arise out of or are related to the cause of action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *see also Consolidated Dev.*, 216 F.3d at 1291. Plaintiffs contend that this court has personal jurisdiction over Ivan Otero Mendoza based upon specific jurisdiction. (*See* Doc. #50 at 2-3) ("Drummond does not rely on a theory of general jurisdiction with respect to Otero.").

The exercise of specific jurisdiction is proper over a nonresident defendant when he has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 473, 475 (1985) (internal citations omitted); *Consolidated Dev.*, 216 F.3d at 1291 ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action in the complaint. It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'") (internal citations omitted). Requiring there to be minimum contacts before a court exercises personal jurisdiction is grounded in fairness. That requirement assures that "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In cases of international defendants, the court should also consider "[t]he unique burdens placed upon one who

must defend oneself in a foreign legal system." *Asahi Metal Indust. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987).

In assessing whether litigation "arises out of" the activities in the forum state, the Eleventh Circuit does not use "mechanical or quantitative" tests, *see Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009); however, it is "not enough that there be some similarity between the activities that connect the defendant to the forum and the plaintiff's claim." *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 n. 3 (11th Cir. 2008). The defendant's contacts with the forum must be related to the "operative facts of the controversy." *Id.* Questions of specific jurisdiction are examined in the context of the particular claims asserted – here, those claims are grounded in intentional tort. To properly determine jurisdiction, "a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783 (1984) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

It is under this rubric that the court considers whether it has personal jurisdiction over Ivan Otero Mendoza.

## B.    Specific Personal Jurisdiction

The Drummond Plaintiffs focus on the *Calder* effects test in arguing that this court has personal jurisdiction over Otero. (Doc. #50 at 3-14). Under *Calder*, a nonresident defendant is subject to a court's jurisdiction so long as his alleged conduct was "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008). The test is used regularly in Alabama when determining whether a court has personal jurisdiction over a nonresident. *See, e.g., Duke v. Young*, 496 So.2d 37 (Ala. 1986) (holding that defendants' intentional and

allegedly tortious actions were expressly aimed at Alabama); *Shrout v. Thoren*, 470 So.2d 1222 (Ala. 1985) (holding that defendant had acted aggressively to further a plan which specifically contemplated the injury of an Alabama resident); *Alfa Corp. v. Alfagres, S.A.*, 385 F.Supp.2d 1230 (M.D. Ala. 2005) (holding that defendant knew it was committing a tort against an Alabama entity and continued to do so anyway).

In the case of Defendant Otero, Drummond has alleged that he perpetrated intentional, criminal acts that were intended to, and allegedly did, cause injury in Alabama. In particular, Drummond makes the following allegations in its complaint:

- Otero assisted co-defendants by funneling money to witnesses in Colombia which was sent by the co-defendants from the United States to Otero; that Otero assisted the co-defendants by obtaining false testimony against Drummond, and did so with full knowledge that the testimony would be submitted in court proceedings in Alabama; that Otero received thousands of dollars in payments from his co-defendants in the United States which he used to further their campaign against Drummond; that Otero caused fraudulent actions to be filed in Alabama; that Otero entered into contingency agreements for proceeds from Alabama cases; that Otero participated or directed numerous communications with defendants in the United States for the purpose of carrying out the scheme; that Otero appeared as counsel for witnesses in trial testimony taken for the fraudulent Alabama cases; and that Otero submitted false declarations in judicial proceedings in Alabama. (Compl., ¶ 36). All of these actions were allegedly done with the purposeful intent that the effects of his acts be felt in the United States, and Alabama in particular. (Compl., ¶ 36).

- Otero has been responsible for facilitating many of the payments to, and procuring the false testimony of, Colombian criminals who testified against Drummond, many of whom were his clients; that Otero has been involved in fabricating the substance of the false testimony; that Otero has submitted false declarations and has been involved with concealing the falsities. (Compl., ¶ 174(c)).

- Otero was added as a member of the alleged RICO Enterprise in late 2008 to secure the false testimony of his paramilitary clients, including El Tigre and Samario. (Compl., ¶¶ 78-82).

- contractual agreements entered into between Otero and Collingsworth and Conrad & Scherer were for the purpose of securing false testimony to use in specifically referenced cases pending in Alabama (Compl., ¶¶ 78-82; Doc. #50, Exh. 2).

- Otero served as the conduit for $120,000 in bribes to Jaime Blanco, "the Enterprise's most important witness against Drummond." (Compl., ¶¶ 93-106).

Otero has not convincingly explained why the *Calder* effects test does not apply to him, perhaps with good reason – it applies here. (*See* Doc. #52 at 3-7). Although courts have struggled when applying *Calder*'s test, what is clear is that courts generally decline to exercise specific jurisdiction in a forum that does not hold the "focal point" of the injury. This is why in the earlier cases involving ATS and TVPA, which were filed before this court, Colombian plaintiffs struggled in their attempts to assert jurisdiction over certain Drummond executives who conducted their business solely in Colombia with the alleged purpose of committing harms in Colombia. (*See* Doc. #141 at 16, 23 in 2:09cv1041-RDP) ("There is nothing in the Second Amended Complaint alleging that Adkins purposefully directed any of his tortious conduct toward Alabama or that he purposefully availed himself of the protection of the forum, and thus this case stands in stark contrast to the contract decisions cited ... on purposeful availment. ..." ... "But it has never been alleged that Araujo personally conducted himself in (or even toward) Alabama in a way related to this case (*e.g.,* finance the AVC's presence in the areas along the Drummond rail line). Not only do the allegations of the complaint focus on actions Araujo took in Colombia in a purported attempt to have Alabama executives act in a certain way, but on an even more fundamental level, [Colombian] plaintiffs do not allege that Araujo ever contacted anyone in Alabama with regard to the killings alleged in the complaint." (internal citations omitted)).

9

In stark contrast here, Otero's physical location in Colombia is trumped by the allegations (set out above) that Otero intentionally paid witnesses for their testimony in a case that was being litigated in Alabama and would cause harm to an Alabama business and this court (located in Alabama). *Licciardello*, 544 F.3d at 1286; *see also Calder*, 465 U.S. at 791 ("jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California"). Moreover, Otero admits that he submitted two declarations in the Northern District of Alabama. (Doc. #46 at 8). Those declarations, as the complaint alleges, "were fraudulently intended to conceal the scope, nature and extent of Defendants' witness payments from Drummond, this court, and the general public (including Drummond's customers) thereby furthering the [criminal] Enterprise's multifaceted, extortionate scheme." (Doc. #50 at 10-11; Compl., ¶¶ 36, 174(c) (alleging that Otero submitted these false declarations "in an effort to fraudulently conceal the scope and nature of the RICO Defendants' payments to witnesses")). That Otero alleges that the payments were for a purpose other than extortion is inconsequential. *See Garrett v. Stanton*, 2008 WL 4853388 at *2 (S.D. Ala. Nov. 7, 2008) ("Defendants' reasoning disregards the Rule 12(b) standard and would instead have the court conjure facts from thin air to favor defendants' position, thereby bending over backwards to grant their motion to dismiss.").

Finally, the Complaint sufficiently alleges that Otero purposefully availed himself of the benefits of the forum state such that he should reasonably expect to be hailed into court here in Alabama. *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010). *See Calder*, 465 U.S. at 789 (holding that because California was "the focal point both of the story and the harm suffered," the non-resident defendant had purposefully availed himself of the jurisdiction and was subject to personal jurisdiction in California); *Licciardello*, 544 F.3d at 1285-88 (summarizing cases employing

*Calder* test and concluding that non-resident was subject to jurisdiction in Florida because his out-of-state conduct was calculated to cause injury to a person in Florida).

Based on the foregoing, the allegations of the Complaint are sufficient to meet Plaintiff's prima facie burden of presenting evidence of personal jurisdiction. *See Madara*, 916 F.2d at 1514 (the prima facie burden is satisfied when a plaintiff presents "enough evidence to withstand a motion for directed verdict"); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) ("Plaintiffs' burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction."). Plaintiff has sufficiently alleged that Otero's contacts with Alabama are related to Plaintiff's cause of action or give rise to it. *See GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009) (under "operative facts" test, the "action must *directly arise* out of the specific contacts between the defendant and the forum state") (internal citation and quotation omitted) (emphasis in original).

## C.    Traditional Notions of Fair Play and Substantial Justice

Because Drummond has established the relatedness and purposeful availment prongs of the specific jurisdiction inquiry, the burden shifts to Otero to present a "compelling case" that the exercise of personal jurisdiction over him in Alabama would be unreasonable. *See Burger King Corp.*, 471 U.S. at 476-78. In deciding whether the assertion of jurisdiction over a defendant comports with traditional notions of fair play and substantial justice, courts consider multiple factors such as the burden on the defendant, the forum state's interest in adjudicating the dispute, the Plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of several states in furthering fundamental substantive social policies. *See id.* at 477. When litigation involves international defendants, courts are to consider "[t]he unique burdens placed upon

one who must defend oneself in a foreign legal system." *Asahi Metal Indust. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987).  That is, "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposely engaged in forum activities." *Asahi*, 471 U.S. at 477-78.  But this is the case only "if a defendant has established that his liberty interests have actually be infringed." *Republic of Panama*, 119 F.3d at 946.  "[I]t is only in highly unusual cases [where] that inconvenience will rise to a level of a constitutional concern." *Id.* at 947 (citing *Asahi metal Indust. Co. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 116 (1987) (Brennan, J., concurring in part and concurring in the judgment)).

Otero argues that he cannot be haled into court in Alabama because (1) as it relates to this case, all of his conduct occurred in Colombia; (2) the inconvenience of litigating this case in Alabama would not afford Otero due process; and (3) any federal interests at stake in litigating the case against Otero do not outweigh the burden imposed upon him if he is forced to litigate in Alabama.  (Doc. #46 at 13-15).  The court disagrees.

As explained below, Otero's activities were "purposefully directed" at residents of Alabama and allegedly caused injuries to residents in this forum.  *See Licciardello*, 544 F.3d at 1284.  Otero had "fair warning" that his activities could subject him to jurisdiction in Alabama; without question, he knew that witness declarations and testimony that he provided would be used in then-pending cases in Alabama.  In addition, his due process concerns cannot be squared with the fact that he held a contingency fee interest in both the *Baloco* and the *Balcero* cases, both of which were litigated in Alabama.  (Compl., ¶ 36 (alleging that Otero caused three fraudulent actions to be filed against Drummond)).  Nor can those due process concerns be squared with the fact that Otero appeared as

counsel for the paramilitary witnesses who allegedly gave false letters of rogatory testimony against Drummond in *Balcero*.  (Compl., ¶ 36).

Finally, Otero's assertions of burden are quickly ameliorated because of modern technology, with which Otero has demonstrated he has both access and familiarity.  (*See* Doc. #50 at 20, n.12).  *Chevron Corp. v. Donziger*, 974 F. Supp.2d 362, 628 (S.D. N.Y. 2014) ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.").  But even if that were not the case, Drummond's interest in litigating here would nevertheless outweigh any purported prejudice to Otero.  Drummond "is not required to travel to a nonresident's state of residence to obtain a remedy" because it was injured by the alleged intentional misconduct of Otero expressly aimed at Drummond in Alabama.  *Licciardello*, 544 F.3d at 1288 (citing *Calder*, 465 U.S. at 1487).

For these reasons, the exercise of personal jurisdiction over Otero in Alabama is reasonable and the motion to dismiss (Doc. #46) on this ground is due to be denied.[5]

_____

[5] Because specific personal jurisdiction over Otero is proper under the *Calder* test, the court need not engage in a protracted inquiry into whether personal jurisdiction might be proper under the alternate theories of conspiracy jurisdiction and Rule 4(k)(2) jurisdiction.  (*See* Doc. #12-18).  Under the conspiracy theory of jurisdiction, "personal jurisdiction can be exercised over a defendant who lacks minimum contacts to the forum state in the traditional sense if a substantial connection exists between that forum and a conspiracy entered into by that defendant ... Alabama courts have recognized and adopted the conspiracy theory of personal jurisdiction." *Matthews v. Brookstone Stores, Inc.*, 469 F.Supp.2d 1056, 1066 (S.D. Ala. 2007).  Under the Rule 4(k)(2) jurisdictional inquiry, the federal long arm statute "authorizes the exercise of territorial jurisdiction over the person of any defendant against whom is made a claim arising under federal law if that person is subject to personal jurisdiction in no state."  Advisory Committee Notes to 1993 Amendments to Federal Rule of Civil Procedure 4(k)(2).  In such cases, the rule "authorizes a district court to 'aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claim must 'arise under federal law,' and (2) the exercise of jurisdiction must 'be consistent with the Constitution and laws of the United States.'" *Oldfield*, 558 F.3d at 1216.

Here, Drummond has alleged conspiracy and overt acts with particularity.  *Prof'l Locate v. Prime, Inc.*, 2007

### D.      Claim of Improper Venue

Otero's final argument for dismissal is based on his assertion of improper venue.  Venue is proper in "a judicial district in which a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  Courts generally apply a "weight of the contacts" test to determine whether a claim arose in a given venue.  *Clement v. Pehar*, 575 F. Supp. 436, 443 (N.D. Ga. 1983) (citation omitted).  In addition, RICO has its own venue provision.  "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."  18 U.S.C. § 1965(a).  In the context of a multi-defendant RICO action, Section 1965(b) applies.  That statute requires a plaintiff to establish that the ends of justice require the district court to exercise its discretion and bring the parties before the court that would not otherwise be subject to venue in the district.  *Id.*  Otero argues that he does not reside, have agents, or transact affairs in Alabama.  (Doc. #46 at 16; Otero Decl., ¶ 12).  Based on that assertion, he contends that the "ends of justice" do not require that he be tried in the Northern District of Alabama under Section 1965(b) and that he is amenable to suit in Colombia.  (Doc. #46 at 16).  "On a motion to dismiss based on improper venue, the plaintiff has the burden of showing that venue in the forum is proper."  *Wai v. Rainbow Holdings*, 315 F. Supp.2d 1261, 1268 (S.D. Fla. 2004).  Drummond has met its burden by (1) establishing that Otero is a nonresident who can be sued in any judicial district and (2)

---

WL 1624792 at *3 (S.D. Ala. June 4, 2007).  (*See* Compl., ¶¶ 36, 59, 82, 200-05, 220-25).  Drummond has also set forth well-pleaded allegations as to Otero's contacts with the United States as a whole.  (*See* Compl., ¶¶ 16, 36, 51, 56, 82, 93-106, 153-70).  As such, Drummond likely establishes jurisdiction over Otero under the theories of conspiracy and 4(k)(2) as well.

demonstrating that the ends of justice require that the case against multiple defendants be tried in a single place.  (Doc. #50 at 23).

Section 1391(c)(3) states that "a defendant not resident in the United States may be sued in any judicial district."  Because Otero admits that he is a resident of Colombia, he may be sued in any judicial district in the United States (including the Northern District of Alabama) without regard to traditional federal venue laws.  *Brunette Mach. Works, Limited v. Kockum Indust., Inc.*, 406 U.S. 706, 714 (1972) (holding that non-resident venue provision in § 1391 "is properly regarded, not as a venue restriction at all, but rather as a declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special.").  Further, Drummond has established that the ends of justice allow Otero to be sued in Alabama such that venue would nonetheless be proper under RICO's own venue provision.  *See e.g. Crenshaw v. Atokol*, 287 F. Supp.2d 37, 42 (D.D.C. 2003) (considering factors related to the "ends of justice," including "the location of the parties, witnesses, records, and acts or omissions giving rise to the claims ... whether judicial economy favors trying the action in one court ... [and] whether section 1965(b) venue would promote the orderly and expeditious disposition of the case.").  Although the Eleventh Circuit has not directly addressed these factors, the court concludes that they are properly considered and all weigh in favor of finding venue proper in the Northern District of Alabama. Two plaintiffs are located in the district, along with witnesses and documents. Trying a case against Otero in Colombia, while all other Defendants are tried in Alabama, would certainly not promote judicial economy.  (*See* Doc. #46 at 16; Doc. #52 at 14-15).

For all of the foregoing reasons, the court finds venue is proper in the Northern District of Alabama and the motion to dismiss, as it relates to improper venue, is due to be denied.

15

E.       **The RICO Claim Stated Against Ivan Otero**

Otero's final argument for dismissal is based on Federal Rule of Civil Procedure 12(b)(6) which provides for dismissal of a complaint for failure to state a claim upon which relief may be granted.  In particular, Otero relies upon *Miccosukee Tribe of Indians of Florida v. Cypress*, 2015 WL 9310571 at *7 (11th Cir. Dec. 23, 2015) for the contention that RICO claims must be pled with particularity under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  (*See* Doc. #46 at 17).  That heightened pleading standard applies regardless of "shock and awe" tactics and for each individual RICO plaintiff.  *Miccosukee Tribe*, 2015 WL 9310571 at *7.

The court agrees with Otero that certain RICO claims must be pled with particularity.  But that is precisely what Drummond has been done here.  As explained at length in the court's previous Memorandum Opinion and Order (Doc. #58) dated March 8, 2016, predicate acts of mail and wire fraud are prohibited acts under RICO which must be pled with particularity.  (Doc. #58 at 8-9).  Other predicate acts, such as bribery, obstruction of justice, witness tampering, and money laundering need only meet the *Iqbal*/*Twombly* standard of pleading.  (Doc. #58 at 6).  Drummond has successfully (and with particularity) stated a claim against Otero.  (*See, e.g.* Compl., ¶¶ 57-60, 75, 77, 78-89).

For these reasons, as well as those stated in the Memorandum Opinion and Order (Doc. #58) of March 8, 2016, Otero's Rule 12(b)(6) motion to dismiss is due to be denied.

IV.    **Conclusion**

For the foregoing reasons, Defendant Ivan Otero Mendoza's Motion to Dismiss Complaint (Doc. #46) is **DENIED**.  The parties are **DIRECTED** to file an updated Report of the Parties'

Planning Meeting **on or before November 23, 2016**.  The case will then be set for a scheduling

conference.

      **DONE** and **ORDERED** this _____12th_____ day of August, 2016.

                                     **R. DAVID PROCTOR**
                                     UNITED STATES DISTRICT JUDGE

17