
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC.<br><br>vs.<br><br>TERRENCE P. COLLINGSWORTH, et al.<br>_____ | Case No. 2:11-cv-3596-RDP<br>(*Defamation*) |
| DRUMMOND COMPANY, INC., et al.<br><br>v.<br><br>TERRENCE P. COLLINGSWORTH, et al. | Case No. 2:15-cv-0506-RDP<br>(*RICO*) |

**DRUMMOND'S RESPONSE TO CONRAD & SCHERER, LLP AND WILLIAM R. SCHERER, JR.'S RENEWED MOTION TO DEPOSE SALVATORE MANCUSO**

{B4694457}

## TABLE OF CONTENTS

I. DEFENDANTS HAVE NOT COMPLIED WITH THIS COURT'S ORDERS.................. 1

II. RECENT EVENTS VALIDATE DRUMMOND'S POSITION. ....................................... 3

III. DEFENDANTS MUST SEARCH FOR OR PRODUCE DOCUMENTS RELATING TO MANCUSO. ............................................................................................................... 12

CONCLUSION................................................................................................................ 14

CERTIFICATE OF SERVICE......................................................................................... 14

COME NOW the Plaintiffs, Drummond Company, Inc. and Drummond Ltd. ("Drummond") and pursuant to this Court's October 10, 2023 Order (Doc. 255) file this response to Conrad & Scherer, LLP's ("C&S") Renewed Motion to Depose Salvatore Mancuso (Doc. 254).

I.     **DEFENDANTS HAVE NOT COMPLIED WITH THIS COURT'S ORDERS.**

The purpose of Defendants' declarations is to "permit the parties and the court to know whether Mancuso or his family had received 'any payments or other financial assistance' from any of the Defendants ***or to their knowledge***." Doc. 227 (June 26, 2023 Order) at 3 (emphasis added); Doc. 205 (June 2, 2023 Order) at 3 (ordering Defendants to disclose payments or other financial assistance given to Mancuso by any Defendant or "anyone else"). In response to the Court's June 26 Order, Defendants C&S, Bill Scherer, Collingsworth, IRAdvocates, Van Bilderbeek, Ramirez, and Otero submitted revised declarations stating as follows:

> I am not aware of any defendant in this case, or anyone associated or affiliated with any defendant in this case, making any payment or providing any other financial assistance in any form to Mancuso or his family for any purpose, regardless of how the payment or assistance may be characterized.

Doc. 230-6 (Scherer Decl.) ¶ 5; Doc. 230-7 (Hager Decl.) ¶ 6; Doc. 230-8 (Collingsworth Decl.) ¶ 5; Doc. 230-9 (Otero Decl.) ¶ 5; Doc. 230-10 (Van Bilderbeek Decl.) ¶ 5; Doc. 238-1 (Ramirez Decl.) ¶ 5.[1]

---

[1] The declarations submitted by Van Bilderbeek and Collingsworth differ slightly from the other declarations. Specifically, Van Bilderbeek and Collingsworth's declarations state that they are purportedly "not aware of any defendant in this case, or anyone associated or affiliated with any defendant in this case, making any payment or providing any other financial assistance in any form to Mancuso or his family ***or anyone else*** for any purpose, regardless of how the payment or assistance may be characterized." Doc. 230-8 (Collingsworth Decl.) ¶ 5; Doc. 230-10 (Van Bilderbeek Decl.) ¶ 5 (emphasis added). It is unclear what Collingsworth and Van Bilderbeek mean by the

As explained in Drummond's prior response, Doc. 233, § I-B, Defendants' revised declarations qualify their disclosure of payments to those made by "any defendant in this case, or anyone associated or affiliated with any defendant in this case." This qualification begs the question of whether Defendants are aware of payments to Mancuso (or his family) from persons or entities the Defendants claim not to be "associated" with. More importantly, this qualification is inconsistent with this Court's prior orders. Doc. 227 (June 26, 2023 Order) at 3; Doc. 205 (June 2, 2023 Order) at 3.

C&S has repeatedly scorned Drummond's position on this issue. Doc. 254 at 1; Doc. 234 at 1. C&S, however, is yet to substantively refute Drummond's arguments. For example, C&S does not dispute that the Defendants' declarations *are* indeed qualified. Doc. 245 (C&S Renewed Motion) ¶ 6. Nor does C&S dispute Defendants' documented history of recharacterizing the roles of critical people when it suited their purpose, like Mr. Collingsworth falsely representing to this Court that Llanos Oil had "no relationship" to the *Balcero* case, Doc. 417 (Crime-Fraud Op.) at 9, and the Defendants' numerous conflicting positions regarding Ivan Otero. *Id.* at 29. In light of the history of this case, including the absurd positions taken by C&S and Collingsworth with respect to the lack of disclosure of witness payments and their false discovery responses, *id.* at 40-42, Drummond cannot help but view Defendants' qualified declarations with skepticism.

---

phrase "or anyone else," but it is clear (and undisputed) that Collingsworth and Van Bilderbeek are aware of and made payments made to other witnesses, including Jaime Blanco and Rafael Garcia.

{B4694457}                                2

Simply put, if Defendants are aware of payments being made to Mancuso, then those payments should be disclosed, regardless of the source and regardless of how Defendants characterize the purpose of the payments. This includes payments from people or entities with whom Defendants claim not to be "associated or affiliated." Requiring Defendants to disclose this information—without qualification and without wordsmithing—imposes no material burden on Defendants.

## II. RECENT EVENTS VALIDATE DRUMMOND'S POSITION.

C&S's Renewed Motion repeats its refrain that "Drummond already has enough information to meaningfully depose Mancuso." Doc. 254 (C&S Renewed Motion) ¶ 8. *See also* Doc. 234 (C&S Motion) at 3 ("Drummond can fully cross-examine [Mancuso] about whether he received any payments or anything else from Defendants or anyone associated with them."). As recent developments confirm, Drummond cannot "meaningfully depose" any of the Defendants' witnesses absent a plenary production of documents. This is because Defendants cannot be trusted to actually tell the truth about their witness payments.

As this Court will recall, Defendants' story at the crime-fraud hearing regarding the $120,000 in payments to Jaime Blanco wasn't that they "forgot" (like the El Tigre and Samario payments). Rather, Collingsworth testified that he did not disclose these payments to Drummond or the Court because they were made by "someone else." According to Defendants, that "someone else" was Albert Van Bilderbeek. Documents produced within the last few weeks revealed that this was

a complete fabrication and that Collingsworth—not Albert Van Bilderbeek—paid Jaime Blanco. In other words, after being caught lying about the payments to Blanco, Defendants lied again to the Court.

As explained more fully below, Collingsworth paid Blanco using a $1,500,000 loan secured by his contingency fee interests in Defendants' cases against Drummond and Chiquita. On the same day he received his loan proceeds, Collingsworth immediately turned around and transferred half this money ($750,000) to Albert Van Bilderbeek with the express, written understanding that Van Bilderbeek would "immediately" send money "on behalf of TC" to Ivan Otero. Otero then gave that money to Blanco in exchange for his declaration. One month later, Blanco signed his declaration in *Balcero*. The context of these newly discovered documents is as follows.

In early 2011, Collingsworth unsuccessfully lobbied his former co-counsel at Parker Waichman, LLP to pay Blanco. *Defamation* Doc. 417 (Crime-Fraud Op.) at 23. Parker Waichman, LLP ultimately refused, telling Collingsworth paying Blanco would "likely be viewed as a form of bribery." *Defamation* Doc. 101-15. Collingsworth responded, "As opposed to him saying Drummond had nothing at all to do with it?" *Id.*

Undeterred by his co-counsel's concern, Collingsworth kept working on a way to pay Blanco. In late August 2011, Lorraine Leete told Collingsworth that Blanco was "not working on his declaration until he gets this funding." Ex. 1 (Aug. 25, 2011 Collingsworth email – CS_TC037828). Collingsworth responded that he was

"on the phone to Albert every day hearing new intricacies [sic] of his finance situation, including today." *Id.* On September 6, 2011, Collingsworth sent a letter to a man named Herman de Leeuw "c/o Albert Van Bilderbeek" stating as follows:

> I want to personally assure you that, after several tough years of litigation, the Drummond case is now in great condition for our victory either in court or through a settlement. In my opinion, we are well over 90% probability of winning. **With the funds we are seeking, we will be able to seal the deal with the new evidence we are in the process of developing**.

Ex. 2 (Sept. 6, 2011 Collingsworth Ltr. – CS_TC180932) (emphasis added).

Three days later, on September 9, 2011, Collingsworth emailed his team telling them that he "just signed all kinds of bizarre documents with Albert to confirm a finance plan." Ex. 3 (Sept. 9, 2011 Collingsworth email – CS_TC201621). The same day, Collingsworth executed a promissory note and obtained a $1,500,000 loan from an entity called Nicox BV. Ex. 4 (Collingsworth-Nicox BV Loan Agreement – IRA-33403); Ex. 5 (Collingsworth Promissory Note – IRA-033413). Herman de Leeuw represented Nicox BV in that loan agreement, and the loan was secured by Collingsworth's contingency fee interests in Defendants' cases against Drummond and Chiquita. *Id.*[2]

Also on September 9, 2011, Collingsworth executed a separate loan agreement with Albert Van Bilderbeek in which Collingsworth transferred Van

---

[2] Collingsworth also executed a separate agreement assigning a percentage of his contingency fee interests in cases against Chiquita and Drummond to a man named James Ellwood who purportedly provided "logistical support, suitable contacts and information so as to assist TC." Ex. 6 (Collingsworth-Ellwood Cooperation Agreement - IRA-033414). Ellwood then apparently entered into other agreements with Nicox BV (Ex. 7 (Ellwood-Nicox BV Agreement – IRA-033420)) and a man named Paul Akkermans (Ex. 8 (Ellwood-Akkermans Agreement – IRA-033417)) giving them each 1/3 of the fees Ellwood received from Collingsworth.

Bilderbeek $750,000—half the proceeds from Collingsworth's loan from Nicox BV. Ex. 9 (Collingsworth-Van Bilderbeek Loan Agreement - IRA-033426). Collingsworth and Van Bilderbeek then executed a "Co-Operation Agreement" in which they agreed that Van Bilderbeek would "immediately" pay Ivan Otero $60,000. Ex. 10 (Collingsworth-Van Bilderbeek Cooperation Agreement - CS_TC166643-0001).[3] Notably, **this payment was expressly "on behalf of" and "funded by TC."** *Id.*[4] A few days later, Blanco received the $60,000 payment that was sent to Ivan Otero's bank account specified in Collingsworth and Van Bilderbeek's "Co-operation Agreement." *Defamation* Doc. 342-20. That "Co-operation Agreement" also provided that Van Bilderbeek would send Otero another $50,000 "when the work contemplated for Ivan Otero is completed." Ex. 10 (Collingsworth-Van Bilderbeek Cooperation Agreement - CS_TC166643-0001). Blanco signed his declaration one month later, in October 2011, and he was subsequently paid $25,000 in December 2011 and $35,000 in July 2012. *Defamation* Doc. 417 (Crime-Fraud Op.) at 23-24.

---

[3] The agreements signed by Collingsworth were witnessed by Christian Levesque. Ms. Levesque was C&S lawyer who, in addition to receiving the "deps in the can" email showing payments to El Tigre and Samario and numerous emails relating to Blanco payments, was counsel of record in *Balcero* and *Melo*. When she was asked about these agreements, she testified that she was "busy doing worker bee work for litigation. So I – I just don't recall being involved in that way. I just don't." Ex. 11 (Levesque Dep.) 131:19-21.

[4] Drummond served discovery requests in the *RICO* case specifically seeking communications with Herman De Leeuw, Frank van Lint, and Paul Akkermans, all of whom were involved in this financing arrangement. Van Bilderbeek objected to all those requests, stating that they sought "information which is not relevant nor reasonably calculated to lead to the discovery of admissible evidence." *RICO* Doc. 195-3 (RFP Nos. 37-39). Drummond also served an interrogatory asking Defendants to identify every person holding any type of financial interests in any cases against Drummond. Collingsworth, IRA, C&S, and Bill Scherer purported to provide such information as it relates "to cases against Drummond." Ex. 12 (Collingsworth/IRA/C&S/Bill Scherer Irog Response No. 2). None of these agreements were disclosed. *Id.* Drummond also served RFPs calling for these documents. *Id.* at RFP Nos. 8 and 35. Again, none were produced.

Below is a chart summarizing these newly discovered documents and flow of funds:



A few months after he signed these agreements, received $1.5 million, and paid Jaime Blanco, Collingsworth falsely represented to this Court that Llanos Oil and the Van Bilderbeek brothers had "no relationship" to the *Balcero* case. *Defamation* Doc. 417 (Crime-Fraud Op.) at 9; *Balcero* Doc. 339 (March 8, 2012 Hrg. Tr.) at 8:8-10:23.  This Court made clear its concern about Collingsworth's relationship with Van Bilderbeek, stating "Mr. Collingsworth, I'm going to say one more thing.  I am concerned about this whole business with Llanos.  Can't put my finger on it, but at a minimum I could say this to you:  I don't know that your clients' best interests includes that type of an association with a competitor of Drummond because you're going to open yourself up at a minimum to questions

about your approach to this case and what your interests are." *Id.* at 68:1-9.[5] Needless to say, this Court's concern was prescient.

Collingsworth and C&S continued to lie about these payments up to and during the crime-fraud hearing, when they falsely represented that they failed to disclose the Blanco payments because those were "payments other people made." *Defamation* Doc. 417 (Crime-Fraud Hrg. Tr.) at 109:5-12. In his deposition prior to the crime-fraud hearing, Collingsworth falsely testified as follows:

> Q You do not disclose to the Court or anyone else that payments to Blanco were, in fact, made with your knowledge for his attorneys' fees, do you?
>
> MS. ECCLES: Object to the form.
>
> A As I previously testified, at this time, **I was maintaining a distinction between a payment made by me and a payment made by someone else. I've since reconsidered that distinction and disclosed the Jaime Blanco payment from Albert Van Bilderbeek**.
>
> [ … ]
>
> Q And with respect to Jaime Blanco, those documents were not produced because why?
>
> A As I've previously testified, I -- I had made a distinction in the responsiveness of those because **they were not from me.**
>
> [ … ]
>
> But **I was aware of the Jaime Blanco arrangement with Mr. Van Bilderbeek, but did not disclose that until I decided to disclose them despite the distinction I had been making that those payments did not come from me**.

---

[5] Christian Levesque, who witnessed the agreements executed by Collingsworth just a few months earlier, was also present at the March 8, 2012 hearing as counsel of record as a C&S lawyer. *Balcero* Doc. 339 (March 8, 2012 Hrg. Tr.). Ms. Levesque did not correct Collingsworth's misrepresentation.

*Defamation* Doc. 329-1 (Collingsworth Dep.) at 167:9-19; 258:2-22; 259:11-15 (emphasis added).

Those lies continued at the crime-fraud hearing when Collingsworth lied in response to questions from his own counsel, questions on cross-examination from Drummond's counsel, and in response to direct questions by this Court:

> **Q [Mr. Niewoehner]:** Did you or Conrad & Scherer provide attorney's fees to Mr. Blanco?
>
> **A** No, we did not.
>
> **Q** But somebody else provided what you understood to be legal assistance fees; is that correct?
>
> **A** Yes.
>
> **Q** Who was that person?
>
> **A** Albert van Bilderbeek.

*Defamation* Doc. 389 (Crime-Fraud Hrg. Tr.) at 91:9-16.

> **Q [Mr. Wells]:** How is that not something of value offered to a witness? Do you recall the interrogatories that we discussed earlier in this hearing back in *Balcero*?
>
> **A** Yes.
>
> **Q** How is that not disclosed?
>
> **A** Well, as I said, **I made what ultimately I determined to be an incorrect judgment about the distinction I was making about something coming from me versus something coming from Mr. van Bilderbeek**.
>
> [ … ]
>
> [Mr. Collingsworth]: As I previously testified, we were making a distinction at that time and **the statement that defendants or Parker Waichman had not paid the fees is true**. Ultimately, we

{B4694457}   9

> decided that it was cutting it too close to not disclose that **the van Bilderbeeks instead for their own reasons paid**, and we did disclose that.
>
> **Q** Are you telling this Court this representation here is not trying to persuade the Court that Jaime Blanco was never paid by anyone for his legal fees?
>
> **A** I think this is carefully worded and technically, as I admitted and apologized for, it cuts it a little close, but **it is not untrue that we did not pay**.

*Id.* at 215:8-16; 217:3-8; 260:19-261:5 (emphasis added).

> THE COURT: Wait a minute. Explain that one to me, how a $150,000 payment requested would have no value.
>
> THE WITNESS: No, I'm sorry. **I was talking about the van Bilderbeek situation, that merely offering to introduce him to someone was not something that I considered to be of value. I later, obviously, revised that distinction that I was making and made the disclosure, but I initially made that distinction in my mind**.

*Id.* at 216:2-15 (emphasis added).  Both Defendants continued to make the same false representations in their post-hearing briefs.  *Defamation* Doc. 392 (Collingsworth Post-Hrg. Br.) at 2 n.1; *Defamation* Doc. 395 (C&S Post-Hrg. Br.) at 6 ("Albert van Bilderbeek was paying Blanco's attorney's fees through Otero").

Incredibly, these documents have been on IRAdvocates' privilege log since April 8, 2016.  Yet, Defendants have never corrected the record to disclose that Collingsworth actually paid Blanco.  Worse still, the only reason these documents were produced is because Drummond identified them as part of a recertification

process for the documents logged by IRAdvocates.[6] But for the fortuitous fact that Drummond selected these documents from IRAdvocates' log as part of its sampling, they would never have been produced.

These newly discovered documents show that Collingsworth, not Van Bilderbeek, paid Jaime Blanco, and they show that Defendants' proffered reason for failing to disclose the Blanco payments was itself a lie. They also raise obvious questions about how Collingsworth and Van Bilderbeek spent the other $1.39 million, especially when juxtaposed with the few documents Drummond does have relating to Mancuso in which the Defendants are discussing "the brothers" and using veiled (and familiar) language in conjunction with Mancuso's testimony. Doc. 198 (Drummond's Motion for Reconsideration) at 11-13 (comparing the timeline of events between Blanco and Mancuso and the similarity in the Defendants' communications regarding these individuals).[7] As the chronology in Drummond's prior filing reflects, *see id.*, Collingsworth has been trying to obtain Mancuso's testimony for more than a decade, even to the point of preparing a draft declaration for Mancuso in 2015. Ex. 13 (Oct. 17, 2015 Mancuso Draft Declaration). The fact

---

[6] With the assistance of the Special Master, Drummond and C&S negotiated an agreement whereby Drummond identified documents on IRAdvocates' log which C&S then reviewed and recertified its privilege claims under the law of this case.

[7] Collingsworth has not produced the bank records which reflect his receipt and use of this $1,500,000 loan. As explained *infra* in Section III, Drummond requests that he be ordered to do so. Van Bilderbeek also has not produced his bank records reflecting his receipt and use the money he received from Collingsworth. Notably, the few pages of bank records that Van Bilderbeek produced were heavily redacted using the *exact same* method that C&S and Collingsworth used to redact bank records to hide the El Tigre and Samario payments. *Compare RICO* Doc. 195-1 (Van Bilderbeek bank records) at pp. 13-22 of 51 *with Defamation* Doc. 417 (Crime-Fraud Op.) at 31-32.

that Mancuso is now apparently willing to testify for the Defendants raises serious questions about why that is.

### III. DEFENDANTS MUST SEARCH FOR OR PRODUCE DOCUMENTS RELATING TO MANCUSO.

Drummond cannot "fully cross examine" Mancuso, *cf.* Doc. 234 (C&S Reply) at 3, without a plenary production of documents because the Defendants have a documented history of lying until documents give them no other choice but to disclose critical facts.[8] C&S raised the issue of Mancuso's deposition more than five months ago, asking this Court to rule on its motion "with haste." Doc. 191 (C&S Motion) ¶ 12. To date, C&S has not specifically searched for and produced documents relating to Mancuso, which is contrary to this Court's directive that the parties "**SHALL** work together in good faith to expedite review and production of documents relevant to the particular witnesses that are to be deposed." Doc. 218 (June 26, 2023 Order) at 3.[9]

This Court instructed Drummond to "specify in detail what would satisfy it to agree to going forward with Mancuso's deposition." Doc. 255. Consistent with this Court's directive, Drummond requests that *all* Defendants be ordered to do the following before Mancuso is deposed:

1. Specifically search for and produce all documents and communications relating to Salvatore Mancuso, including communications with any

---

[8] Indeed, Defendants have had to amend their response to Drummond's interrogatory seeking witness payment information *twelve* times in the *Defamation* case as documents came to light giving them no other choice.

[9] Although this order applied to the Defendants' letters rogatory to imprisoned Colombian witnesses, the only distinction between those witnesses and Mancuso is that Mancuso is imprisoned in the U.S. rather than Colombia.

intermediaries for Mancuso, as well as communications discussing Mancuso's testimony, using agreed upon search criteria.[10]

2. Specifically search for and produce all communications with Joaquin Perez, who is/was one of Mancuso's lawyers, using agreed upon search criteria.[11] *See* Docs. 198-14 and 198-16.

3. Fully and truthfully answer interrogatories and produce documents relating to financial interests held by any individual or entity in any of Defendants' cases against Drummond.[12]

4. Produce all Defendant Collingsworth's and Defendant IRAdvocates' financial records from 2001 to the present.[13]

---

[10] *See* Ramirez, Otero, and Van Bilderbeek *RICO* RFP 13(u) ("All communications with … Salvatore Mancuso."); Ex. 12 (Collingsworth/IRA/C&S/Bill Scherer *RICO* RFP No. 1) ("All communications between Defendants and any third party relating to Drummond."); Collingsworth/C&S *Defamation* 4th RFP No. 3 ("All communications between any member of Defendants' litigation team and any witness identified or incorporated by reference into Defendants' Rule 26 Initial Disclosures or Defendants' response to Interrogatory No. 2 in Drummond's First Set of Interrogatories, or any Colombian paramilitary, including without limitation … Salvatore Mancuso[.] This request includes communications with any relative, representative, or agent of any witness or Colombian paramilitary."); Collingsworth/C&S *Defamation* 4th RFP No. 4 ("All documents, including e-mail communications, **which reference, reflect or relate to the Defendants' discussions regarding the testimony or allegations of any Colombian Witness or payments to witnesses in Colombia or Panama, or threats to or intimidation of any Colombian Witness**. For purposes of this request 'Colombian Witness' means any person claiming to have knowledge of Drummond's alleged collaboration with paramilitaries and includes people of any nationality.") (emphasis added).

[11] Ramirez, Otero, and Van Bilderbeek *RICO* RFP 26 ("All communications with Joaquin Perez"); Collingsworth/IRA/C&S/Bill Scherer *RICO* RFP No. 1.

[12] Ex. 12 (Collingsworth/IRA/C&S/Bill Scherer *RICO* RFP No. 8) ("All documents relating to any financial interest currently or previously held by any person or entity in any litigation filed by Conrad & Scherer, LLP, including any current or former officer, partner, employee or agent thereof, against Drummond or any other multinational corporation alleging human rights abuses.") and Interrogatory No. 2 ("Identify every person or entity that currently holds, or has ever held, any type of financial interest including, but not limited to, any contingency fee interest, in any case filed by Conrad & Scherer, LLP, or any current or former employee, partner, officer, or agent thereof, against Drummond or any other multinational corporation alleging human rights abuses. For each such person or entity, provide his/her/its name, contact information (including address), a detailed description of the nature and extent of his/her/its financial interest(s), and the case(s) in which he/she/it holds/held such interest(s).").

[13] Ex. 12 (Collingsworth/IRA *RICO* RFPs 16 and 17). This Court has already ordered Otero, Ramirez, and Van Bilderbeek to fully respond to Drummond's discovery requests by October 31. Doc. 252. Those requests call for Otero, Ramirez, and Van Bilderbeek's financial and banking records.

## CONCLUSION

Drummond respectfully requests that Mancuso's deposition not go forward unless and until *all* Defendants (1) submit unqualified declarations that comply with this Court's prior orders and (2) answer the interrogatories and search for and produce the documents listed in Section III *supra*.

DATE: October 12, 2023

        Respectfully submitted,

        *s/ Benjamin T. Presley*
        William Anthony Davis, III
        H. Thomas Wells, III
        Benjamin T. Presley
        STARNES DAVIS FLORIE LLP
        100 Brookwood Place, 7th Floor
        Birmingham, AL 35209
        (205) 868-6000
        fax: (205) 868-6099
        wad@starneslaw.com
        htw@starneslaw.com
        btp@starneslaw.com

        *Attorneys for Drummond Company, Inc. and Drummond Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I filed the foregoing electronically with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record. In addition, a copy of this motion was sent, via electronic mail, to the following:

   Albert Van Bilderbeek
   albert@vanbilderbeek.com

        *s/ Benjamin T. Presley*
        Benjamin T. Presley