# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC., and DRUMMOND, LTD., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| TERRENCE P. COLLINGSWORTH, individually and as agent of Conrad & Scherer, LLP, International Rights Advocates, Inc., and Albert Van Bilderbeek; CONRAD & SCHERER, LLP; William R. Scherer, Jr., individually and as agent of Conrad & Scherer, LLP; INTERNATIONAL RIGHTS ADVOCATES, INC.; IVAN ALFREDO OTERO MENDOZA; FRANCISCO RAMIREZ CUELLAR; and ALBERT Van BILDERBEEK. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 2:15-cv-00506-RDP

**CONRAD & SCHERER'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR PERMISSION TO DEPOSE SALVATORE MANCUSO**

## TABLE OF CONTENTS

I.    Mancuso possess highly relevant information, which C&S has been trying to obtain in accordance with the Court's orders for months. ................................................................ 2

II.   The September 2011 agreements do not warrant further discovery as to Mancuso. ............. 5

III.  C&S has fulfilled its discovery obligations as to the additional information Drummond seeks from it. ...................................................................................................................... 8

IV.   Any additional production obligation should extend to Drummond as well. ...................... 10

CONCLUSION ................................................................................................................................ 10

CERTIFICATE OF SERVICE ........................................................................................................ 12

Since March of this year, Conrad & Scherer ("C&S") has been seeking Drummond's consent, or the Court's permission, to depose Salvatore Mancuso, the former head of the AUC who named Drummond as one of its supporters. Drummond has opposed C&S's efforts at every turn, even though C&S has already produced more than 2,600 documents relating to Mancuso. In its most recent opposition, Drummond does not offer any new arguments or identify any new facts related to Mancuso. Instead, Drummond uses its response to discuss a series of agreements (many unsigned) not involving C&S and wholly unrelated to Mancuso. Those agreements are irrelevant to the questions of whether C&S has complied with the Court's orders regarding Mancuso's deposition and whether C&S has already produced information sufficient to allow the deposition to move forward. It has done both.

The Federal Rules demand reasonableness in discovery, not perfection. *Cutlass Collieries, LLC v. Garrett Myron Jones*, No. 20-CV-80001-RLR, 2021 WL 6135152, at *3 (S.D. Fla. Dec. 7, 2021) ("A discovery respondent need not conduct a perfect search, nor a comprehensive one. The search must be reasonable under the circumstances of the case."); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) ("However, while parties must impose a reasonable construction on discovery requests and conduct a reasonable search when responding to the requests, the Federal Rules do not demand perfection."); *NXP B.V. v. Blackberry, Ltd.*, No. 6:12-CV-498-ORL-22, 2013 WL 6768350, at *5 (M.D. Fla. Dec. 20, 2013) ("[T]he Federal Rules of Civil Procedure do not require perfection or a guarantee that every possible responsive document has been found or produced."). And, as the Court recently observed, Drummond likely already has enough information "to go prove [its] claims," Doc. 241 (Aug. 16, 2023 Hr'g Tr.) 20:17-21,[1] and it certainly has enough information to depose Mancuso.

---

[1] Unless otherwise noted, all "Doc." citations refer to the *RICO* docket (2:15-cv-506).

I.  **Mancuso possess highly relevant information, which C&S has been trying to obtain in accordance with the Court's orders for months.**

Drummond does not dispute that Mancuso has relevant information. Thus, C&S won't belabor this point. But it's worth emphasizing just *how* relevant that information is. Mancuso has testified to having discussions with senior AUC paramilitary leaders after they met with Drummond, which would directly contradict prior sworn testimony from Drummond. *See* Ex. 1 (Mancuso Day 2 testimony before the Justice and Peace Commission (May 11, 2023)) at 27; Ex. 2 (Mancuso Day 3 testimony before the Justice and Peace Commission (May 15, 2023)) at 21-22.

In addition, Mancuso has information about the growing, and indisputable, body of evidence regarding the Colombian military's collaboration and relationship with the AUC. Just a few years ago, the Southern District of Florida summarized the relationship between the Colombian military and the AUC as follows:

> The Colombian government introduced and used paramilitary members to fight guerilla groups causing civil unrest in areas including the Middle Magdalena River region. These groups were consolidated into the AUC in 1997 and given the support of the Colombian army and local government officials. The AUC infiltrated areas in the country where the Colombian government had limited or no state presence. The AUC received tangible benefits from the Colombian government, such as transportation and communications, and it funded itself through the production, sale, and trafficking of narcotics. From 1997 to 2007, the AUC attacked civilian populations throughout Colombia.

*Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *1 (S.D. Fla. Sept. 27, 2021).

Mancuso recently provided some information about this collaboration in his Justice and Peace testimony. Ex. 1 at 31; Ex. 2 at 29, 44. This information is highly relevant as Drummond has admitted to paying millions of dollars to the Colombian military to protect its business interests. *Balcero* Doc. 407 at 6, ¶ 7; *Balcero* Doc. 411 at 9, ¶ 18-19.

In March 2023, published news reports began suggesting that Mancuso may be deported soon. In light of these reports, C&S sought Drummond's consent to take Mancuso's deposition, explaining that it believed there was urgency in getting Mancuso deposed and noting it had already produced, or would soon be producing, more than 2,600 documents relating to him. Doc. 198-4 (March meet and confer correspondence). Drummond did not consent. On May 2, C&S filed its first motion for permission to depose Mancuso, which the Court granted the same day. *See* Docs. 191 (Motion) & 192 (Order). C&S spent the next several weeks trying (unsuccessfully) to obtain information from Immigration and Customs Enforcement regarding the scheduling of Mancuso's deposition.

More than two weeks after the Court granted C&S's motion, Drummond filed a motion for reconsideration arguing that all Defendants should have to follow the same document production process with respect to Mancuso that the Court had imposed for letters rogatory witnesses in Colombia. Doc. 198 at 4-5, 14. The Court granted Drummond's motion in part. Doc. 205 ("Reconsideration Order"). It acknowledged Drummond's concern about document production, *id.* at 2, but rejected Drummond's request that all Defendants follow the letters rogatory procedure for documents related to Mancuso.[2] Instead, the Court ordered that Mancuso's deposition could not go forward, absent further order, until all Defendants submitted declarations or affidavits regarding their knowledge of payments or benefits to Mancuso or his family. *Id.* ¶ 1. The order also provided that, in the alternative to all Defendants submitting such declarations or affidavits, the deposition could go forward if Drummond notified the Court that it was satisfied with all Defendants' document production. *Id.* ¶ 3.

---

[2] Indeed, the Reconsideration Order did not contain a provision requiring the parties to work together "to expedite review and production of documents relevant to the particular witnesses that are to be deposed," as did the order granting C&S's motion for issuance of letters rogatory requests. *Compare* Doc. 218 ¶ 1, *with* Doc. 205.

3

Pursuant to the Reconsideration Order, C&S collected and filed declarations from all Defendants (except Defendant Ramirez), and it again sought the Court's permission to depose Mancuso. Doc. 215. After the Court denied C&S's renewed request as premature and (C&S contends) clarified portions of its Reconsideration Order, *see* Doc. 227, C&S filed revised declarations from all Defendants (except Defendant Ramirez) and for a third time sought the Court's permission to depose Mancuso, Doc. 230. Although Drummond opposed C&S's renewed response to the Reconsideration Order, it did not oppose it on the basis that the Court should have required the Defendants to follow the same document production procedure established for letters rogatory witnesses. *See* Doc. 233 (Drummond's opposition arguing only that the absence of Ramirez's declaration and qualifying language in the declarations that were submitted precluded the deposition from going forward).

Finally, during the August 16 hearing, the Court inquired of Drummond's counsel whether Defendant Ramirez's declaration was the "last item that we would need to accomplish to take Mancuso's deposition," to which Drummond's counsel responded with an unqualified, "Yes, sir." Doc. 241 (Aug. 16, 2023 Hr'g Tr.) 11:5-7. After further discussion, the Court then stated, "So we're going to look to take him [Mancuso] by mid-September, then. All right." *Id.* 11:17-18. Within hours after the conclusion of the hearing, C&S obtained and filed Ramirez's declaration. Doc. 238 & Doc. 238-1.

In light of this exchange with the Court, C&S asked Drummond several weeks after the hearing whether it now agreed Mancuso's deposition could go forward. Doc. 254-2 (C&S meet and confer correspondence). Drummond again refused to agree that it could. Doc. 254-3 (Drummond response letter). It first reiterated its arguments made *before* the August 16 hearing that Defendants' declarations were improperly qualified. It also objected on the basis that

4

Defendants' document production was still insufficient. Believing that the August 16 exchange mooted the qualification argument, and that the Reconsideration Order, which Drummond never sought to amend, had overruled Drummond's objection based on the status of Defendants' document production, C&S filed a renewed motion to depose Mancuso on October 5. Doc. 254.

Put simply, at every juncture since filing its original motion in May, C&S has attempted to comply with the Court's Orders to facilitate the taking of this important witness testimony.

## II. The September 2011 agreements do not warrant further discovery as to Mancuso.

Drummond devotes the majority of its response to a series of (mostly unsigned) agreements between Collingsworth, Albert van Bilderbeek, and various non-parties dated September 2011. Even though C&S was not a party to these agreements and, on their face, they have nothing to do with Mancuso, C&S provides the Court with important background information about their logging and production since Drummond argues their recent production "validate[s]" its objection to Mancuso's deposition.

As Drummond acknowledges, these agreements were logged on IRAdvocates' privilege log in April 2016, more than two years before the Eleventh Circuit resolved C&S's interlocutory appeal in March 2018. *See Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324 (11th Cir. 2018). The documents were logged in response to Drummond's subpoena to IRAdvocates. As C&S explained to Drummond at the time, even though the subpoena was directed to IRAdvocates (and not C&S), C&S agreed to oversee the document review, production, and logging of documents responsive to the subpoena because it had preserved copies of IRAdvocates' email system and hard drives, and it had more resources than IRAdvocates to devote to the project. Ex. 3 (W. Paulk Ltr. to T. Wells (Apr. 8, 2016)). Thus, utilizing in-house personnel and outside counsel, C&S prepared the IRAdvocates' log and produced hundreds of responsive documents in March and April 2016. *Id.*

5

Several months later, the Court stayed the *Defamation* case in light C&S's interlocutory appeal. *Defamation* Doc. 500. (Discovery was also stayed in the *RICO* case. *See* Doc. 127.) After the Eleventh Circuit resolved C&S's appeal in March 2018, the Court lifted the existing stay of these cases and the parties began implementing the crime-fraud order. As part of that process, Drummond proposed more than 300 individual search terms, which, following multiple rounds of refinement, C&S eventually applied to a massive 3.4 Terabyte database comprised of more than 3,700,000 items that it created specifically for the crime-fraud review. Doc. 183 ¶ 6(h). Applying the search terms to this database netted close to 170,000 email and document families. *Id.* Utilizing a combination of manual reviewers and technology assisted review, C&S completed its portion of the review and logging process in March 2023. Ex. 4 (W. Paulk Mar. 24, 2023 email). As part of the crime-fraud review, C&S also reviewed thousands of Collingsworth's text messages, and it produced responsive, non-privileged text messages to Drummond in July 2023. Ex. 5 (W. Paulk July 24, 2023 email).

In March 2020, while the crime-fraud review was ongoing, the Court entered an order directing Defendants to review the documents on their existing privilege log, of which there were more than 17,000 entries, and to recertify whether all of them should remain privileged in light of the crime-fraud order. Doc. 183 ¶¶ 4-6; *Defamation* Doc. 620. Again, relying on in-house personnel and outside counsel, C&S oversaw this project, and briefing on it (before the Court and Special Master) continued through 2021 and 2022.

It was not until March 2022 that Drummond first suggested that the IRAdvocates' privilege log should undergo a recertification review similar to the review the Court had ordered as to C&S's privilege log. Ex. 6 (B. Presley Mar. 18, 2022 email). C&S and Drummond worked with the Special Master to develop a sampling protocol for the recertification review, which the

Special Master memorialized in May 2023 and to which both parties agreed. Ex. 7 (Special Master May 23, 2023 email). C&S then began the recertification review, and it produced the September 2011 agreements as part of this review on September 8, 2023—more than four months before the fact discovery cutoff, before Ms. Levesque's deposition,[3] and months before Collingsworth's upcoming deposition.

Drummond's suggestion that it is a "fortuitous fact" these documents were ever produced ignores this background and the information Drummond has had (since 2016) about these documents. As part of the recertification process, Drummond was allowed to hand-pick the documents it wanted C&S to review for recertification. Ex. 7 ("As a part of that recertification process, Drummond shall identify the 50% set of documents to be reviewed."). And, the privilege descriptions of these documents that C&S included on the 2016 log, which are copied below, were sufficiently detailed to allow Drummond to hone in on them:

- Docs. 256-4 to 256-8: "Agreement related to Albert van Bilderbeek reflecting attorney analysis in anticipation of litigation in the underlying case against Drummond."[4]

- Doc. 256-9: "Loan agreement related to financing litigation against Drummond reflecting case strategy in anticipation of litigation in the underlying case against Drummond."[5]

In summary, these agreements have nothing to do with Mancuso, do not involve C&S (which was not a party to them), and hardly "validate" Drummond's objection to Mancuso's deposition going forward.

---

[3] Drummond quotes only a small portion of Ms. Levesque's testimony after being asked about these agreements in her deposition. She also explained that she did not recall the agreements or recall witnessing them, did not know what they were for, did not know most of the individuals or entities involved, and did not know what the money exchanging hands under them was to be used for. *See generally* Doc. 256-11 (Levesque Dep. Tr.) 116:10-132:14.

[4] Although Drummond filed these agreements as separate documents, there were originally maintained as a single PDF. Thus, they were logged as one entry (Entry 3376) and produced as one document.

[5] This document was logged as Entry 3383 on the 2016 privilege log.

7

### III. C&S has fulfilled its discovery obligations as to the additional information Drummond seeks from it.

In its response, Drummond does not acknowledge the 2,600 documents relating to Mancuso that C&S has produced, much less explain why those documents are not sufficient for Mancuso's deposition to go forward. As explained below, C&S has complied with its discovery obligations, and Drummond cites no authority for the proposition that C&S should be prohibited from pursuing discovery <u>it</u> seeks until other Defendants, over whom it has no authority or control, respond to discovery requests directed to them.

First, C&S searched for documents relating to Mancuso in late 2014 and early 2015. The July 2015 declaration of C&S's former outside counsel, Christopher Niewoehner (*Defamation* Doc. 280-19), describes the massive document search and review project C&S and its outside counsel undertook in the 2014-2015 time period to comply with the Court's October 15, 2014 order in the *Defamation* case. *See Defamation* Doc. 151. That order applied, for the first time, a broader definition of "Colombian witness" and "witness payments" than had previously been applied to discovery requests. As part of that search effort, C&S and its outside counsel compiled the names of individuals to be included in searches and, as indicated in yellow highlighting in Exhibit 8, Mancuso was included in those searches.[6]

Second, as Drummond's own response reflects, it never served a request for production on C&S expressly seeking communications with Joaquin Perez, one of Mancuso's attorneys. The only request for production served on C&S that Drummond contends seeks communications with Perez is Request Number 1, which sought "All communications between Defendants and any third party related to Drummond." C&S timely objected to this request, as well as the phrase

---

[6] C&S has redacted Exhibit 8 so as to not risk waiver of any attorney-client privilege or attorney work-product protection surrounding other witness names that it compiled with the assistance of outside counsel. Should the Court so desire, C&S will submit an unredacted copy of Exhibit 8 for *in camera* review.

8

"third party," as overly broad, unduly burdensome, and not proportional to the needs of the case given the impossible task of creating a search that would capture every "third party" with whom C&S ever communicated regarding Drummond. *See* Ex. 9 (C&S and Bill Scherer's Resp. to Drummond's 1st Reqs. for Prod. (May 19, 2016)) at 3-4. Until this dispute over Mancuso's deposition arose, Drummond never identified Perez as a "third party" it wanted C&S to search for in response to this request. Notwithstanding its objection to Request Number 1, C&S has confirmed that it produced more than 130 documents relating to Perez over the course of the *Defamation* and *RICO* cases.

Third, Drummond does not explain why discovery requests regarding financial interests in C&S's cases is necessary for Mancuso's deposition to go forward. No one, including Drummond, has suggested that Mancuso or his lawyers held any financial or other interest in C&S's cases. In any event, C&S timely responded to interrogatories about financial interests in its cases truthfully and to the best of its knowledge as of time of the responses. *See* Ex. 10 (C&S and Bill Scherer's Resp. to Drummond's 1st Interrogs. (May 19, 2016)) at 6-7 (identifying individuals or entities holding financial interests in C&S's cases).

The September 2011 agreements do not call into question the accuracy of C&S's interrogatory responses regarding financial interests. The agreements convey interests only in any recoveries Collingsworth personally receives. *See* Doc. 256-4 ¶ 5 ("The Borrower [Collingsworth] hereby agrees with the Lender to offer and effect as security for the Loan the ***Borrower's*** entitlement in respect of legal fees (contingency fees or otherwise) ***arising to the Borrower*** in respect of [the *Baloco* and *Chiquita* cases]" (emphasis added)); Doc. 256-6 ¶ B(a) ("AS consideration for the services provided by JE as set out above TC will pay TEN PERCENT (10%) of all gross fees or consideration otherwise ***received by TC*** in respect of the Drummond

9

cases . . . ." (emphasis added)). The agreements do not grant an interest in any recoveries belonging to C&S, which was not a party to them. Moreover, C&S had no knowledge of the agreements in 2011, most of the agreements are unsigned, and C&S does not know whether they were ever fully signed or were ever modified, topics Drummond is sure to cover in Collingsworth's deposition.

Drummond's fourth request is not directed to C&S.

## IV.  Any additional production obligation should extend to Drummond as well.

A long time ago, the Court observed, "What's good for the goose is good for the gander." *Defamation* Doc. 63 (Oct. 10, 2013 Hr'g Tr.) 65:4. C&S has served requests for production on Drummond that would call for information relating to Mancuso. *See* Ex. 11 (C&S and Bill Scherer's 1st Req. for Prod. to Drummond Company Inc. and Drummond Ltd. (June 20, 2016)), Nos. 15, 19, 22, and 26. Although Drummond has served written responses to these requests, including cross-referencing its prior production in *Balcero*, it is unclear to C&S whether Drummond has produced all non-privileged documents responsive to these requests. If the Court is inclined to order further review and production (or logging) of documents relating to Mancuso as a condition of his deposition going forward, that obligation should extend to Drummond as well.

## CONCLUSION

Fortunately, Mancuso has not been deported, but that is going to change at some point. The Court should finally permit C&S to take the deposition of this important witness before it does.

DATE: October 16, 2023                    Respectfully submitted,

*s/ William T. Paulk*
Robert K. Spotswood
Michael T. Sansbury
William T. Paulk
SPOTSWOOD SANSOM & SANSBURY LLC
505 20th Street North, Suite 700
Birmingham, AL 35203
Phone (205) 986-3620
Fax (205) 986-3639
rks@spotswood.com
msansbury@spotswood.com
wpaulk@spotswood.com

*Attorneys for Conrad & Scherer, LLP and William R. Scherer, Jr.*

**CERTIFICATE OF SERVICE**

      I certify that on October 16, 2023, I filed the foregoing electronically with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record and *pro se* parties.

                                        *s/ William T. Paulk*
                                        William T. Paulk