
FILED
2024 Feb-15  PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| DRUMMOND COMPANY, INC. | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cv-3596-RDP |
| | ) | (*Defamation*) |
| TERRENCE P. COLLINGSWORTH, et al. | ) | |
| | ) | |
| DRUMMOND COMPANY, INC., et al. | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-0506-RDP |
| | ) | (*RICO*) |
| TERRENCE P. COLLINGSWORTH, et al. | ) | |
| | ) | |

## PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS[1]

William Anthony Davis, III
H. Thomas Wells, III
Benjamin T. Presley
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
(205) 868-6000
fax: (205) 868-6099

Sara E. Kropf
Kropf Moseley PLLC
1001 H Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900

*Attorneys for Drummond Company, Inc. and Drummond Ltd*

---

[1] As explained in Drummond's Renewed Motion for Sanctions, spoliation is also an aggravating factor which supports entry of default judgment against C&S and Collingsworth in the *Defamation* case. This motion separately seeks spoliation sanctions in the *RICO* case and, to the extent there are any questions left for the jury other than damages, in the *Defamation* case.

## TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF THE FACTS............................................................1

I.      DEFENDANTS WERE FULLY AWARE THAT COLLINGSWORTH'S EMAILS WERE GONE LONG BEFORE THEY DISCLOSED IT TO DRUMMOND AND THIS COURT. ........................2

II.     COLLINGSWORTH'S MISSING EXTERNAL HARD DRIVE CONTAINED CRITICAL EVIDENCE. ....................................................................................................................3

III.    THE CRIME-FRAUD DISCOVERY CONFIRMS THAT COLLINGSWORTH IS INCAPABLE OF TELLING THE TRUTH, AND YET DEFENDANTS RELY ON HIS TESTIMONY AT KEY POINTS IN THEIR SPOLIATION ARGUMENT. ...............................................................................4

IV.    THE MISSING EMAILS ARE CRITICAL AND IRREPLICABLE SOURCES OF EVIDENCE, PARTICULARLY UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE. ....................7

LEGAL STANDARD.....................................................................................................................8

CONCLUSION.............................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Ashton v. Knight Transp., Inc.*,
    772 F. Supp. 2d 772 (N.D. Tex. 2011) ...............................................................5, 6

*Estate of Hill by and through Grube v. NaphCare, Inc.*,
    2022 WL 1464830 (E.D. Wash. May 9, 2022)......................................................... 8

*Alabama Aircraft Indus., Inc. v. Boeing Co.*,
    319 F.R.D. 730 (N.D. Ala. 2017) (citations omitted), *aff'd,* No. 20-11141, 2022 WL 433457
    (11th Cir. Feb. 14, 2022)...........................................................................9, 10, 11

*Fed. Trade Comm'n v. F&G Int'l Grp. Holdings, LLC*,
    339 F.R.D. 325 (S.D. Ga. 2021) .....................................................................10, 11

*Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*,
    736 F. Supp. 2d 1317 (S.D. Fla. 2010) ................................................................11

**Statutes and Rules**                                                                                      **Page(s)**

Fed R. Civ. P. 37(e) ...............................................................................................8, 9, 11

COME NOW the Plaintiffs, Drummond Company, Inc. and Drummond Ltd. ("Drummond" or "Plaintiffs"), and pursuant to this Court's Order, *Defamation* Doc. 383, files this motion for spoliation sanctions against Defendants Terrence P. Collingsworth ("Collingsworth") and Conrad & Scherer, LLP ("C&S").

## INTRODUCTION AND STATEMENT OF THE FACTS

Spoliation sanctions are warranted for the reasons Drummond already explained, and Drummond adopts and incorporates the Statement of Facts, argument, and legal authority in its original Motion for Spoliation Sanctions, *Defamation* Doc. 287 at 2-8, and its Reply in Support of its Motion for Spoliation Sanctions. *Defamation* Doc. 352 at 1-12. Copies of those filings, as well as the exhibits, are attached hereto for the Court's convenience as Exhibits 1 and 2.

Large amounts of Collingsworth's emails are gone. While Defendants have characterized the number as "small and random," "very limited," and "*de minimis*," *Defamation* Doc. 293 at 3-5, the evidence is to the contrary. Based on the report of Drummond's expert, the gaps in Mr. Collingsworth's email accounts include the following:

| Account | Type of email | Time Frame | Length of period |
|---|---|---|---|
| Conrad & Scherer tc@conradscherer.com | Incoming | March 17, 2011 to March 22, 2013 | 24 months |
| IRAdvocates tc@iradvocates.org | Incoming | June 21, 2007 to May 19, 2008; June 3, 2008 to February 25, 2010; October 27, 2011 to March 23, 2013; | 23 months 21 months 17 months Total: 61 months |
| IRAdvocates tc@iradvocates.org | Outgoing | June 21, 2007 to January 6, 2008 May 17, 2011 to February 3, 2012 February 22, 2012 to March 22, 2013 | 5 months 8 months 12 months Total: 25 months |

Doc. 352-6 (Lynch Report) at Ex. 2. *See also* Doc. 352 at 6 (quoting Defendant's own documents discussing the "huge" and "immense amount" of emails Collingsworth had).

There is also circumstantial evidence that strongly suggests Collingsworth selectively deleted emails from his Gmail account, including emails which evidenced payments to Jaime

Blanco.  *Defamation* Doc. 352 at 2-3.  Given the fact that other emails from Mr. Collingsworth's Gmail account exist which are from the same time period, *id.* at 3, the only logical explanation for the disappearance of this email, which reflects a $35,000 payment to Defendants' "breakthrough witness" in *Balcero*, is intentional and selective deletion.  It is also undisputed that the disposal of Collingsworth's devices, including his Mac laptop, resulted in the loss of his emails.

Collingsworth's emails are unique sources of evidence.  History shows that Collingsworth will lie until he is presented with a document that gives him no choice but to admit the truth, which makes his emails critical.  Moreover, the time periods during which Collingsworth's emails have disappeared overlap exactly with critical time periods in which Defendants were sending hundreds of thousands of dollars to Colombian witnesses in exchange for testimony.  It is hard to imagine what could be more prejudicial to Drummond.

What is now clear is that the disappearance of Collingsworth's emails occurred contemporaneously with Defendants' relentless, wide-ranging, and intentional effort to hide the truth.  As explained below, the evidence of spoliation, and Defendants' proffered excuses for the loss of Collingsworth's ESI, should be viewed with the context of contemporaneous events that have come to light through the crime-fraud discovery.

I.    **DEFENDANTS WERE FULLY AWARE THAT COLLINGSWORTH'S EMAILS WERE GONE LONG BEFORE THEY DISCLOSED IT TO DRUMMOND AND THIS COURT.**

The opening section of Defendants' Opposition to Drummond's Motion for Sanctions represented that the loss of Collingsworth's emails was "unknown to Defendants until 2015, when they were discovered by the top national forensic computer expert hired by Defendants."  Doc. 300 at 1.  This representation—which was intended to portray the Defendants as dutifully and promptly self-reporting this issue—was false.  Emails produced pursuant to the crime-fraud exception show that, at least as early as July 2014, the Defendants were acutely aware that

2

Collingsworth's emails were missing.  On July 11, 2014, C&S employee Charity Ryerson told other C&S personnel that "another exciting twist in this is that there is about an 18 month period in which Terry's emails are lost.  Sometime in 2010 and 2011 as I recall … He will probably need to explain this in an affidavit at some point."  Ex. 3 (CS_TC139330).  The day prior, Ryerson told Collingsworth that "there was a period of a year or two, maybe in 2010, when we lost all your emails for some reason."  Ex. 4 (CS_TC104142).  In May 2014, Susana Tellez was searching Collingsworth's email account because she "need[ed] to log our communications with Chiquita group re:  ethics of paying a witness' lawyer fees," but she "couldn't find the emails in Terry's account."  Ex. 5 (CS_TC092326).  Notably, Defendants never told Brad Smith—their counsel at the time in the defamation case—that Collingsworth's emails were missing.  Ex. 6 (B. Smith Dep.) 48:11-17.

Defendants knew that an untold number of Collingsworth's emails were missing at the same time they were representing to this Court and to Drummond that they had searched for and produced all responsive documents relating to witness payments.  As this Court recognized in its crime-fraud opinion when specifically discussing the spoliation issue, "If Defendants performed a cursory search for documents in August 2013, they would have noticed that emails prior to March 2013 were missing. With the looming evidence of a crime or fraud, an explanation about what search for documents occurred is relevant to the question of whether evidence was being secreted about payments to witnesses. This, in turn, bears directly on the fraud on the court question."  Doc. 417 (Crime-Fraud Op.) at 38.

## II. COLLINGSWORTH'S MISSING EXTERNAL HARD DRIVE CONTAINED CRITICAL EVIDENCE.

A month after the *Defamation* lawsuit was filed, Collingsworth stated in an email that he wanted to "save really sensitive stuff [on] an external hard drive" and that "I could take a couple

hours and pull sensitive emails onto an external hard drive myself." Doc. 352 at 10.  Collingsworth subsequently utilized an external hard drive, and this device was plugged into the C&S devices on dates in which Defendants would have been searching for documents in this case.  Doc. 352-6 (Lynch Decl.) ¶¶ 54-56.  After being plugged into a C&S computer on December 8, 2014—in the midst of Defendants' searches for documents following the Court's privilege log order (*Defamation* Doc. 151)—this hard drive disappeared without any explanation whatsoever.

In their response to Drummond's original spoliation motion, Defendants attempted to marginalize the importance of this hard drive, saying that the "loss of the Seagate external hard drive was not significant" because the missing emails "would not have been preserved on the Seagate external hard drive anyway."  Doc. 300 at 20, 22.  Documents produced pursuant to the crime-fraud exception confirm that this device did, in fact, contain Collingsworth's emails (and likely other "really sensitive stuff").

As explained in the Lynch Declaration, this device was plugged into a Dell OptiPlex computer on September 8, 2013, which is when Defendants were searching for and gathering documents in response to Drummond's requests for production.  C&S paralegal Susana Tellez's billing entry from September 9 confirms that she was searching for and pulling Collingsworth's "2010 IRAdvocates' emails" from "Terry's external":

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 09/09/13 | Review and evaluate search for communications with Albert Van Bilderbeek in both of Terry's accounts, my email account, and Maggie's; search Terry's external for 2010 IRAdvocates' emails, start sorting communications into privileged and responsive | RE | NB** | ST | 8.50 | 0.00 | 3DG6708 N |

Ex. 7 (CS_TC218665) at 09/09/13 entry.  As this billing entry reflects, important emails *were* on that external hard drive, and Defendants knew it.

III.    THE CRIME-FRAUD DISCOVERY CONFIRMS THAT COLLINGSWORTH IS INCAPABLE
        OF TELLING THE TRUTH, AND YET DEFENDANTS RELY ON HIS TESTIMONY AT KEY
        POINTS IN THEIR SPOLIATION ARGUMENT.

Accepting Defendants' arguments with respect to the loss of Collingsworth's emails, computers, and hard drives necessarily requires believing Collingsworth's testimony that he did not intentionally delete emails or deep six his hard drives and devices.  But in C&S's own words, "Collingsworth will say whatever he needs to say to get through the crisis at the moment," Ex. 8 (CSWRS-001065), and "can't be trusted."  Ex. 9 (CSWRS-000359).  Drummond's Renewed Motion for Sanctions, which is being filed contemporaneously in the *Defamation* case, sets forth a mountain of evidence which proves that C&S and Collingsworth engaged in an unrelenting campaign to hide the truth.  The events which form the basis of Drummond's spoliation motion occurred during the same time period in which Defendants were lying to this Court, to Drummond, and to other courts all across the country.  *See id.* and *Defamation* Doc. 417 (Crime-Fraud Op.) at 8-20.

As one court aptly stated after observing a litigant's demeanor firsthand during a 3-day evidentiary hearing (just like this Court):

> While there is no direct evidence establishing that the Defendants intentionally destroyed or altered these pieces of evidence, there is a wealth of circumstantial evidence in this regard. It is the sheer strength of this circumstantial evidence, considered in the aggregate, that leads the Court to the inescapable conclusion that the Defendants engaged in spoliation as to these two sets of proof.
>
> **Witness credibility weighed heavily in the Court's factual determinations. The opportunity to closely observe each witness's demeanor as they answered questions over the course of the three-day evidentiary hearing significantly aided in the Court's resolution of disputed facts**. For the most part, Plaintiff's witnesses were more credible and their factual accounts more reasonable than the Defendants' witnesses. **In fact, the obvious lack of candor by certain of the defense witnesses was quite troubling to the Court, as portions of the record reflect**.

*Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 795 (N.D. Tex. 2011) (striking defendants' defenses to liability as a spoliation sanction) (emphasis added).

After observing Mr. Collingsworth's testimony and demeanor firsthand at the crime-fraud hearing, this Court observed that "I think there's an inference that can be drawn now that Collingsworth misrepresents things until such time as he can no longer misrepresent things." Doc. 390 (Crime-Fraud Hrg. Tr.) at 480:19-22. And the Court subsequently found that Collingsworth "repeatedly made knowingly false representations." Doc. 417 (Crime-Fraud Op.) at 17.

Collingsworth claims that his MacBook computer was stolen at a coffee shop in Brazil after he purportedly gave it to his niece. He testified that he thought it was appropriate to give the computer to his niece—while this case was pending—because he thought the email on his MacBook was being backed up on C&S's server. Doc. 293-4 (Collingsworth Decl.) ¶ 15. There is no documentary evidence to support that the computer was ever stolen, and no documentary evidence which shows that Collingsworth actually thought his emails on that computer were being saved elsewhere. In fact, the evidence is to the contrary and shows that Collingsworth knew full well that his MacBook was the *sole* repository of many of his most critical emails. In June 2012, former C&S paralegal Maggie Crosby emailed Collingsworth with the subject "TC's old emails" and discussed searching for documents in response to Drummond's 5th Requests for Production in *Balcero*. Ex. 10 (CS_TC050470). Crosby told Collingsworth that she needed to search his emails for "All your communication[s] with Ivan Otero (oteromivan@hotmail.com)" and "All your communication[s] with Jaime (jblanco1999@yahoo.com) and any attached or linked documents that may be responsive." *Id.* Crosby then directly told Collingsworth that searches on the IRAdvocates and C&S accounts "would NOT include the emails that he has pulled and saved to

your mac." *Id.* This email chain proves that Collingsworth was informed and fully aware that emails resided only on his MacBook.

Coincidentally, it also further proves that Collingsworth will lie to anyone about anything when it suits his purpose. Indeed, Collingsworth told Crosby that "I can say for sure that I've never emailed Ivan and he has never emailed me." *Id.* That was demonstrably false, and Collingsworth knew it. Documents produced pursuant to the crime-fraud exception include numerous emails sent between Otero and Collingsworth. In fact, just three days before he Collingsworth falsely stated that he "can say for sure" that Otero "has never emailed me," Otero emailed Collingsworth directly telling him that "the matter of the brothers" was causing "serious inconveniences" and that "the security for those in Valledupar" had not arrived. Ex. 11 (CS_TC053001).

Accepting Defendants' argument that Collingsworth did not selectively delete emails from his Gmail account also necessarily and similarly requires crediting Collingsworth's story that he never did this. This denial is also contrary to objective evidence, Doc. 352 at 2-3, and is also nothing more than a self-serving statement from a person who "will say whatever he needs to say to get through the crisis at the moment." Ex. 8 (CSWRS-001065).

If Collingsworth's self-serving claims on these critical issues are not credited, then there can be no legitimate dispute that Defendants acted with the intent to deprive Drummond of relevant evidence.

## IV.   THE MISSING EMAILS ARE CRITICAL AND IRREPLICABLE SOURCES OF EVIDENCE, PARTICULARLY UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE.

The importance of Collingsworth's missing emails—and the prejudice to Drummond—is clear. Collingsworth will "misrepresent things until such time as he can no longer misrepresent things," Doc. 390 (Crime-Fraud Hrg. Tr.) at 480:19-22, *i.e.*, until he is shown an email that forces

him to tell the truth.  The importance of Collingsworth's emails is amplified by Defendants' litigation strategy and collective amnesia of critical events.  Collingsworth and every C&S lawyer that has testified to date have consistently claimed not to have any memory of critical events, rendering documents the only source of evidence available to Drummond.  The loss of Collingsworth's emails is therefore highly prejudicial to Drummond, which further supports the imposition of sanctions.  *Estate of Hill by and through Grube v. NaphCare, Inc.*, 2022 WL 1464830, at *14-15 (E.D. Wash. May 9, 2022) (entering default judgment against defendants who spoliated a video and holding that "[w]ithout the direct visual evidence of the checks that the spoliated video would have provided, Plaintiffs have only the medical watch log and testimony of the corrections officers, most of whom have little to no memory of the incident.").

## LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation" … A district court has "broad discretion" to impose sanctions as part of its "inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases."  Sanctions for spoliation of evidence are intended to accomplish two objectives: "prevent unfair prejudice to litigants and to insure the integrity of the discovery process.

…

Federal Rule of Civil Procedure 37(e) addresses ESI. Effective December 1, 2015, Rule 37(e) was amended to establish the findings necessary to support certain curative measures for failure to preserve electronically stored information—which is what is at issue here. Amended Rule 37(e) provides:

**Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

    (A) presume that the lost information was unfavorable to the party;

    (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

    (C) dismiss the action or enter a default judgment.

*Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 739-40 (N.D. Ala. 2017) (citations omitted), *aff'd*, No. 20-11141, 2022 WL 433457 (11th Cir. Feb. 14, 2022).

Here, there is no legitimate dispute that Collingsworth's emails are evidence that should have been preserved. *Id.* at 740. He is a party to the litigation, and his devices and emails went mysteriously missing during the pendency of the defamation case. *Id.*

Defendants also failed to take reasonable steps to preserve Collingsworth's devices and emails. *Id.* at 741. Defendants failed to institute any litigation hold to preserve evidence. Doc. 287 at 9-10, 15. By the time they engaged a forensic expert to look at Collingsworth's email accounts, there were *no* emails whatsoever prior to March 23, 2013 contained in Mr. Collingsworth's Conrad & Scherer Inbox, or in the Inbox or Sent Items of his IRAdvocates email account. *Id.* at 6-7. Defendants allowed Collingsworth to dispose of his MacBook computer while litigation was pending, knowing full well that it was the sole repository of certain of Collingsworth's emails. They also "lost" an external drive that Collingsworth used to store "sensitive stuff" and which they knew contained his emails. And they failed to preserve Collingsworth's Gmail account, which was undisputedly used to communicate regarding witness

testimony and payments, thereby allowing Collingsworth to selectively delete emails from his Gmail account.

Nor can Defendants avoid spoliation sanctions by speculatively claiming that some of Collingsworth's emails may have been found through searches performed on other custodians. *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 2022 WL 433457 at *16 ("Boeing argues that the evidence lost on Blake's computer was relatively unimportant and that it likely was produced elsewhere in discovery. But, of course, Boeing cannot substantiate its speculation because the evidence that could do so has been permanently deleted."). *See also Fed. Trade Comm'n v. F&G Int'l Grp. Holdings, LLC*, 339 F.R.D. 325, 330 (S.D. Ga. 2021) ("Conveniently, though, they argue that the *other* emails they are unable to produce are *not* relevant, without the ability to describe in any meaningful way what those deleted emails might contain."). Moreover, Collingsworth regularly emailed with third parties outside of C&S and IRAdvocates regarding important subjects such as witness payments and witness testimony. Those third parties include Albert Van Bilderbeek and Ivan Otero, who have failed to respond to Drummond's discovery requests and willfully disobeyed this Court's order granting Drummond's motion to compel. *See RICO* Doc. 265.

The next question in the Rule 37(e) analysis is whether Drummond is prejudiced by the loss of this ESI. *Ala. Aircraft*, 319 F.R.D. at 743. As explained above on pages 7-8, Drummond is clearly and severely prejudiced by the loss of Collingsworth's emails, and there is no credible argument to the contrary.

There is also ample evidence of bad faith. When analyzing whether evidence was spoliated in bad faith, "[t]he context of the spoliation is relevant." *Id.* at 744. Here, the context shows that Defendants spoliated Collingsworth's emails in the midst of a massive fraud on the court. And

the crime-fraud discovery has revealed that many of Defendants' excuses for spoliating evidence—i.e., that Collingsworth did not know his emails were only on his MacBook and that his external hard drive did not contain anything of significance—are not true, which is additional evidence of bad faith.

Defendants also failed to preserve, and Collingsworth selectively deleted, emails from his Gmail account, including an email discussing paying Jaime Blanco which was responsive to Drummond's discovery requests.  *FTC*, 339 F.R.D. at 331 (sanctioning a litigant with adverse inference jury instructions and explaining "Not only did they not implement any preservation measures, Davis, acting on behalf of Defendants, continued to actively delete emails on a completely subjective, *ad hoc* basis. Intentionally deleting emails that have been requested during a lawsuit is not reasonable.").

This same evidence also shows that Defendants acted with an intent to deprive Drummond of the opportunity to use evidence in this litigation.  *Ala. Aircraft*, 319 F.R.D. *Id.* at 745 (citing 2015 advisory committee notes to Fed R. Civ. P. 37(e)(2)).  *See also id.* at 746 ("At least one court has suggested that 'the intent to deprive' standard in Rule 37(e)(2) may very well be harmonious with the 'bad faith' standard previously established by the Eleventh Circuit.").  Bad faith exists where

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator

*Id.* (quoting *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010)).  The first three factors are clearly met here—Collingsworth's emails and ESI are unquestionably relevant, there were multiple affirmative acts causing them to be lost, and

Defendants are a lawyer and a law firm who clearly understood they had a duty to preserve evidence relevant to pending litigation.  The only question is whether Defendants' acts can be "credibly explained."  They cannot.  Defendants' reasons for disposing of Collingsworth's computers and hard drive are contradicted by the documentary evidence, and rely on the credibility of an individual that has repeatedly and intentionally lied to Drummond, this Court, and other courts across the country.

## CONCLUSION

What Collingsworth said in the emails that have been lost will never be known, but it is likely that they contained damning admissions about the scope, nature and extent of Defendants' witness payments.  It is hard to imagine a more prejudicial loss of evidence.    Drummond respectfully submits that a default judgment is the appropriate sanction for Defendants' spoliation of evidence.  At the very least, Defendants' spoliation warrants an adverse inference instruction to the jury.

Respectfully submitted,

/s/ Benjamin T. Presley                                         /s/ Sara E. Kropf
William Anthony Davis, III (ASB-5657-D65W)          Sara E. Kropf
H. Thomas Wells, III (ASB-4318-H62W)                   KROPF MOSELEY PLLC
Benjamin T. Presley (ASB-0136-I71P)                       1100 H. Street NW, Suite 1220
STARNES DAVIS FLORIE LLP                                  Washington, DC 20005
100 Brookwood Place, 7th Floor                               (202) 627-6900
Birmingham, AL  35209
(205) 868-6000
fax: (205) 868-6099

*Attorneys for Drummond Company, Inc. and Drummond Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2024, I filed the foregoing electronically with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record. In addition, a copy of this motion was sent, via electronic mail, to the following:

Albert Van Bilderbeek
albert@vanbilderbeek.com

Ivan Otero
oteromivan@hotmail.com


*/s/ Benjamin T. Presley*
Benjamin T. Presley (ASB-0136-I71P)