FILED

2024 Feb-15  PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 6

**In The Matter Of:**

**Drummond Company, Inc. v. Terrence P. Collingsworth, et al.**

_____

Bradley J. Smith

*November 21, 2023*

_____

Bain & Associates Court Reporting Services, Inc.
505 20th Street North
Suite 1250
Birmingham, AL 35203
Toll Free 1.888.326.0594

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

```
 1         IN THE UNITED STATES DISTRICT COURT
 2       FOR THE NORTHERN DISTRICT OF ALABAMA
 3              SOUTHERN DIVISION
 4
 5 DRUMMOND COMPANY, INC.,)
 6      Plaintiff,        )
 7                        )
 8 VS.                    )   CASE NO:
 9 TERRENCE P.            )2:11-CV-3695-RDP
10 COLLINGSWORTH, et al.  )  (Defamation)
11      Defendants.       )
12                        )
13 DRUMMOND COMPANY,      )
14 INC., et al.           )
15      Plaintiff,        )
16                        )
17 VS.                    )   CASE NO.:
18 TERRENCE P.            )2:15-CV-0506-RDP
19 COLLINGSWORTH, et al.  )    (RICO)
20      Defendants.       )
21
22         S T I P U L A T I O N S
23
24         IT IS STIPULATED AND AGREED, by and
25 between the parties through their respective
                                           Page 1
```

```
 1 counsel, that the deposition of:
 2            BRADLEY J. SMITH,
 3 may be taken before Merit Gilley, Commissioner
 4 and Notary Public, State at Large, at the Law
 5 Offices of Starnes Davis Florie, LLP, 100
 6 Brookwood Place, 7th Floor, Birmingham, Alabama
 7 35209, on the 21st day of November, 2023,
 8 commencing at approximately 9:12 a.m.
 9
10         IT IS FURTHER STIPULATED AND AGREED
11 that the signature to and reading of the
12 deposition by the witness is waived, the
13 deposition to have the same force and effect as
14 if full compliance had been had with all laws
15 and rules of Court relating to the taking of
16 depositions.
17
18         IT IS FURTHER STIPULATED AND AGREED
19 that it shall not be necessary for any
20 objections to be made by counsel to any
21 questions, except as to form or leading
22 questions, and that counsel for the parties may
23 make objections and assign grounds at the time
24 of the trial, or at the time said deposition is
25 offered in evidence, or prior thereto.
                                           Page 2
```

```
 1              A P P E A R A N C E S
 2
 3 FOR DRUMMOND COMPANY AND DRUMMOND LIMITED:
 4         BENJAMIN T. PRESLEY
 5         WILLIAM ANTHONY DAVIS
 6         H. THOMAS WELLS, III
 7         Attorneys at Law
 8         Starnes Davis Florie, LLP
 9         100 Brookwood Place
10         7th Floor
11         Birmingham, Alabama  35209
12         (205) 868-8000
13         bpresley@starneslaw.com
14         Tdavis@starneslaw.com
15         twells@starneslaw.com
16
17 FOR CONRAD & SCHERER AND BILL SCHERER:
18         WILLIAM T. PAULK
19         Attorney at Law
20         Spotswood Sansom & Sansbury, LLC
21         Financial Center
22         505 20th Street North
23         Birmingham, Alabama  35203
24         (205) 986-3620
25         wpaulk@spotswoodllc.com
                                           Page 3
```

```
 1 FOR FRANCISCO RAMERIZ:
 2         ANIL MUJUMDAR
 3         Attorney at Law
 4         Dagney Law
 5         2120 1st Avenue North
 6         Birmingham, Alabama  35203
 7         (205) 974-4860
 8         anil@dagneylaw.com
 9
10 ALSO PRESENT:
11         Paige Byrd, Videographer
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                           Page 4
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 1 (1 - 4)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

```
 1                                           1 20   Tab 37 - 2-28-14 Regarding Purple      89
 2            EXAMINATION INDEX              2           Category
 3                                           3 21   Tab 40 - 3-14-14 Email Regarding       94
 4 Bradley J. Smith                          4           Attached Image
 5 BY MR. PRESLEY . . . . . . . . . . . 11   5 22   Tab 50 - 4-1-14 Email Regarding        96
 6 BY MR. PAULK . . . . . . . . . . . .196   6           Urgent Drummond
 7 BY MR. MUJUMDAR . . . . . . . . . .239    7 23   Tab 60 - Transcript of Hearing         98
 8 FURTHER BY MR. PRESLEY . . . . . .240     8           Before Judge Proctor and Judge
 9 FURTHER BY MR. PAULK . . . . . . . 243    9 24   Putnam
10                                          10      Tab 12 - 8-28-13 Emai Regarding       106
11                                          11           Activity in Case 2:11-cv-03695-RDP
12            EXHIBIT INDEX                 12 25   Drummond Company, Inc. V.
13                                          13           Collingsworth et al. Order
14 Plaintiff's Exhibit              MAR     14 26   Tab 19 - 9-26-13 Email Regarding      108
15 1   Tab 36 - 1-21-14 Email Regarding 16  15           Oct. 10
16       POAs to Produce                    16 27   Tab 18 - 9-25-13 Email Regarding      109
17 2   Tab 7 - 7-10-13 Email Regarding  21  17           Privilege Log
18       Motion to Compel                   18 28   Tab 20 - 9-30-13 Email Regarding Log  113
19 3   Tab 8 - 7-10-13 Email Regarding  25  19           and Documents
20       Motion to Compel                   20 29   Tab 21 - 10-1-13 Email Regarding Log  115
21 4   Tab 9 - 7-10-13 Email Regarding  26  21           and Documents
22       Attached Image                     22 30   Tab 33 - 12-19-13 Email Regarding     119
23 5   Tab 97 - Motion to Withdraw      31  23           Log and Brief
24 6   Tab 98 - Memorandum Opinion and  41  24 31   Tab 34 - 12-20-13 Letter Regarding    121
25       Order                              25           Drummond V. Terrence Collingsworth,
                               Page 5                   et al.
                                                   Tab 28 - 11-8-13 Email Regarding     123
                                                        Drummond Libel
                                                                              Page 7
 1 7   Tab 6 - 6-25-13 Email Regarding  49   1 32   Drummond Company Inc.'s Emergency     128
 2       Security Payments                   2           Motion for Sanctions
 3 8   Tab 1 - 3-14-13 Email Regarding Doc 55 3 33  Tab 54 - 4-7-14 Email Regarding       129
 4       Responses                           4           Brief
 5 9   Tab 10 - 7-17-13 Email Regarding 57   5 34   Tab 102 - Defendants' Opposition to   130
 6       Brief is Attached                   6           Drummond's Motion for Sanctions and
 7 10  Tab 13 - 9-6-13 Email Regarding  59   7           Cross-Motion to Compel Drummond's
 8       Letter Re:  Ryerson Subpoenas               Response to Defendants' Second
 9 11  Tab 22 - 10-2-13 Email Regarding 62           Requesr for Production of Documents
10       Resend of Letter                    8 35   Tab 62 - 4-23-14 Email Regarding      132
11 12  Tab 26 - Transcript of Motion to 64   9           Another Meet and Confer Point
12       Compel Before Judge Proctor        10 36   Tab 79 - 6-25-14 Email Regarding      136
13 13  Tab 15 - 9-9-13 Email Regarding  66  11           Attached Image
14       Privilege Log                      12 37   Tab 46 - 3-18-14 Email Regarding      137
15 14  Tab 3 - 6-20-13 Email Regarding  70  13           IRad
16       Response for Second Request for    14 38   Tab 86 - 7-11-14 Email Regarding      139
17       Production                         15           Perez
17 15  Tab 17 - 9-23-13 Email Regarding 73  16 39   Tab 65 - 4-25-14 Email Regarding      145
18       Agenda of Meeting with Brad and    17           Attached Image
         Agreement Attached                 18 40   Tab 66 - 4-26-14 Email Regarding      148
19 16  Tab 24 - 10-2-13 Email Regarding TC 78 19         Cost Docs
20       Memo on Argument Issues            20 41   Tab 69 - 4-28-14 Email Regarding      149
21 17  Tab 2 - 5-14-13 Letter Regarding  81 21           Part 3 of 4
22       Drummond V. Terrence collingsworth, 22 42  Tab 72 - 4-30-14 Email Regarding      151
         et al.                             23           Brads Doc 1/2
23 18  Tab 99 - Attorney-Client Agreement 85 24 43 Tab 73 - 5-9-14 Email Regarding       156
24 19  Tab 38 - 2-28-14 Email Regarding  87 25           Various CS Bates Docs to be Produced
25       Drummond Company, Inc. V.                                            Page 8
         Collingsworth, et al. (29164)
                               Page 6
```

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

| 1 | 44 | Tab 77 - 6-24-14 Email Regarding Drummond and Wichmann | 162 |
| 2 | | | |
| 3 | 45 | Tab 78 - 6-25-14 Email Regarding Drummond and Wichmann | 172 |
| 4 | | | |
| 5 | 46 | Tab 82 - 7-7-14 Email Regarding Crime Fraud | 174 |
| 6 | | | |
| 7 | 47 | Tab 87 - 7-9-14 Email Regarding Drummond and Wichmann | 178 |
| 8 | | | |
| 9 | 48 | Tab 103 - 7-9-14 Email Regarding Drummond V. Terrence Collingsworth, et al DOA: 09/20/2011 CHS# 9500-31 | 181 |
| 10 | | | |
| 11 | 49 | Tab 71 - Bank Statements | 168 |
| 12 | 50 | Tab 89 - 8-27-14 Email Regarding Attached Image | 183 |
| 13 | | | |
| 14 | 51 | Tab 96 - 11-6-14 Email Regarding Drummond and Wichmann | 187 |
| 15 | | | |
| 16 | | | |
| 17 | Defendant's Exhibit | | |
| 18 | 1 | Defense Tab 7 - 3-14-14 Email Regarding Attached Image | 225 |
| 19 | | | |
| 20 | 2 | Defense Tab 10 - 6-25-14 Email Regarding Drummond and Wichmann | 228 |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |

1    I, Merit Gilley, a Court Reporter of
2 Birmingham, Alabama, and a Notary Public for the
3 State of Alabama at Large, acting as
4 Commissioner, certify that on this date, as
5 provided by the Federal Rules of Civil Procedure
6 and the foregoing stipulation of counsel, there
7 came before me on the 21st day of November,
8 2023, at the law offices of Starnes Davis
9 Florie, LLP, 100 Brookwood Place, 7th Floor,
10 Birmingham, Alabama 35209, commencing at
11 approximately 9:12 a.m., BRADLEY J. SMITH,
12 witness in the above cause, for oral
13 examination, whereupon the following proceedings
14 were had:
15        THE VIDEOGRAPHER:  We now commence
16 the videotaped deposition in the United States
17 District Court for the Northern District of
18 Alabama Southern Division in the matter of
19 Drummond Company, Incorporated versus Terrence
20 P. Collingsworth, et al.  Case Number
21 2:11-CV-3695-RDP.
22        Our witness today is Bradley
23 J. Smith.  Today's date is Tuesday, November
24 21st, 2023.  The time is 9:12 a.m. Central time.
25 We are located at Starnes Davis Florie in

1 Birmingham, Alabama.  Will all attorneys present
2 please state their names and whom they
3 represent.
4        MR. PRESLEY:  Ben Presley for
5 Drummond Company and Drummond Limited.
6        MR. WELLS:  Trey Wells for Drummond.
7        MR. DAVIS:  Tony Davis for Drummond.
8        MR. MUJUMDAR:  Anil Mujumdar for
9 Francisco Rameriz.
10        MR. PAULK:  William Paulk for Conrad
11 & Scherer and Bill Scherer.
12        BRADLEY J. SMITH
13 being first duly sworn, was examined and
14 testified as follows:
15        THE COURT REPORTER:  All right.
16 Usual stipulations?
17        MR. PAULK:  Fine.
18        MR. PRESLEY:  Yes.
19        EXAMINATION
20 BY MR. PRESLEY:
21 Q        Mr. Smith, can you please state your
22 full name for the record.
23 A        **Bradley John Smith.**
24 Q        And you're a licensed attorney;
25 correct?

1 A        **I am.**
2 Q        Okay.  And we'll dispense with all
3 the normal predeposition rules and whatnot.
4 Just let me know if you want to take a break.
5 Be happy to do that.
6 A        **Okay.**
7 Q        How long have you been a licensed
8 attorney in Alabama?
9 A        **Almost 24 years -- 23 years.**
10 Q        Okay.  And are you licensed in any
11 other states?
12 A        **I am not.**
13 Q        And where did you go to law school?
14 A        **Alabama.**
15 Q        And just walk me through very
16 briefly if you would where you've worked since
17 you graduated law school from Alabama.
18 A        **I was hired by Clark & Scott out of**
19 **law school.  I left in 2001, 2002 with Jay**
20 **Clark, and we started what's now Clark, Hair &**
21 **Smith.**
22 Q        Okay.  And, generally, what type of
23 work do you do?
24 A        **100 percent litigation; primarily**
25 **defending civil lawsuits.**

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 3 (9 - 12)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 Q        Okay.  And you understand since you
2 are a licensed lawyer that there are certain
3 ethical rules that lawyers have to abide by;
4 correct?
5 A        I do.
6 Q        Okay.  For example, a lawyer has a
7 duty to zealously represent their client; right?
8 A        Yes.
9 Q        And you also have ethical
10 responsibilities that you owe to a Court; right?
11 A        Yes.
12 Q        And as part of those ethical
13 responsibilities, you are required to tell the
14 truth to the Court; right?
15 A        Yes.
16 Q        And to opposing counsel?
17 A        Yes.
18 Q        And even if your client's case may
19 be helped by lying, you cannot lie to a Court or
20 to opposing counsel; correct?
21 A        Correct.
22 Q        Okay.  Did you meet with anybody to
23 prepare for this deposition today?
24 A        I did not.
25 Q        Okay.  Did you review any documents

Page 13

1 in preparation for this deposition?
2 A        I did.
3 Q        Okay.  And what documents did you
4 review?
5 A        I was provided a copy of what I
6 understood to be my file.  I don't know how it
7 got to that point.  I briefly reviewed it; you
8 know, tried to get through it as quick as I
9 could.
10 Q        Okay.  And who provided you that
11 copy?
12 A        Mr. Paulk.
13 Q        Okay.  Did you -- I think my earlier
14 question was limited to meeting with anybody to
15 prepare for your deposition.
16          Did you have any conference calls or
17 any Zoom calls with anyone to prepare?
18 A        I did not.
19 Q        So you referenced a second ago that
20 you reviewed briefly your file; is that right?
21 A        That's correct.
22 Q        And your file for what case?
23 A        Drummond versus Collingsworth.  The
24 defamation case.  How about that?
25 Q        Yes.  So that's a good -- that's a

Page 14

1 good point.  There's two cases here.
2          There's the defamation case; right?
3 A        Right.
4 Q        And you were counsel of record in
5 the defamation case; correct?
6 A        That is correct.
7 Q        Okay.  And is it your understanding
8 there's also a civil RICO case that Drummond has
9 filed?
10 A        It's my understanding, but I know
11 nothing about it.  It was filed long after -- or
12 after I was no longer involved in the case.
13 Q        Okay.  So did you have any
14 involvement at all in the defense of the RICO
15 case?
16 A        I did not.
17 Q        Okay.  And is it your understanding
18 that Drummond sent a subpoena to your law firm
19 for your file in the defamation case?
20 A        I don't recall.  I know that we did
21 secure it 10 or 11 years ago and put it on some
22 of electronic media and -- and provided it.  And
23 I think the paper copy is still at my office.
24 Q        Okay.  Did you have any involvement
25 in the review of that file to determine whether

Page 15

1 certain documents were privileged or not?
2 A        It's my understanding it was our
3 entire file, that nothing was removed for
4 privilege.
5 Q        Okay.
6 A        And it was provided maybe to the
7 special master.
8 Q        Okay.
9 A        Yeah.  No.  Nothing from our point
10 of view was taken out.
11 Q        Okay.
12 A        It was the complete file.
13 Q        All right.  And I noticed in
14 reviewing the materials that we did get that it
15 appeared to be the -- the materials we got
16 appeared to be mostly printed hard copies of
17 emails; is that right?
18 A        I think so.
19 Q        Okay.  And let me show you --
20          MR. PRESLEY:  This is tab 36 for the
21 exhibit coordinator.
22 Q        -- Plaintiff's Exhibit 1.
23          (Plaintiff's Exhibit 1 was
24          marked for identification)
25 Q        So you can see in the bottom

Page 16

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 4 (13 - 16)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 right-hand corner this has a Bates label that
2 would -- I assume was affixed by -- or do you
3 know who was that was affixed by?
4 A        I don't.
5 Q        Okay.
6 A        I don't.
7 Q        Do you recognize this email as a
8 document from your file?
9 A        It's got my email address on it.
10 Q        Okay.  There were several emails
11 like this that appeared to have an attachment on
12 them, but the copies we got did not have
13 attachments produced with the emails.
14        Do you know why that is?
15 A        I don't.
16 Q        Okay.
17 A        I don't.
18 Q        In your practice, do you typically
19 print emails and instruct an assistant to save
20 them to the file?
21 A        A little bit of both.  I think my
22 assistant probably save -- I would probably
23 forward her the email and have her save it to
24 the file.
25 Q        Okay.  And is that practice
                                                Page 17

1 consistent today with what it was at the time
2 these emails were sent in 2014?
3 A        Probably not.
4 Q        Okay.  How -- how is -- how did it
5 change?
6 A        Well, I would just say that we're a
7 little bit -- I guess probably have a better
8 computer system than 10 or 11 years ago, and I'm
9 probably a little bit better at saving some of
10 these things than I was --
11 Q        Okay.
12 A        -- 10 or 11 years ago.  Other than
13 that, I don't know.
14 Q        When you would send emails to your
15 assistant and ask her to print them or you would
16 print them to the file, did you typically print
17 them with attachments or without attachments?
18 A        I just don't recall.  I -- I don't
19 know what this was.  I -- you know, it would
20 just depend on what it was.
21 Q        Okay.  We talked a little bit
22 earlier about the fact you're a licensed
23 attorney.
24        Are you going to be offering any
25 opinion in this case on the legality of witness
                                                Page 18

1 payments?
2 A        No.
3 Q        Are you going to be offering any
4 opinion in this case on the ethical
5 considerations of witness payments?
6 A        No.
7 Q        When were you retained in the
8 defamation case?
9 A        I don't recall.
10 Q        Okay.  How were you retained in the
11 defamation case?
12 A        I don't recall that either.
13 Q        Were you retained through an
14 insurance company?
15 A        Yes.
16 Q        Okay.  Was your first contact with
17 the insurance company about the defamation case?
18 A        Probably.
19 Q        Okay.  And what insurance company
20 was that?
21 A        Firemans Fund.
22 Q        Okay.  And is that an insurance
23 company that your firm had regularly done work
24 for?
25 A        Yes.
                                                Page 19

1 Q        And is that still true today?
2 A        Yes.
3 Q        And who were your clients in the
4 defamation case?
5 A        Mr. Collingsworth and the law firm.
6 Q        Okay.  And during the course of the
7 defamation case, who were you reporting to?
8 A        What do you mean report?
9 Q        Sure.
10        So, for example, when there were
11 filings in the case and you would send them to
12 the client and/or the insurance company; who at
13 Conrad & Scherer and who at the insurance
14 company were you reporting to?
15 A        Primarily Terry.
16 Q        Okay.
17 A        I guess my other contact at the firm
18 would have been Billy Scherer.
19 Q        Okay.  Outside of Billy Scherer and
20 Terry Collingsworth, were you regularly
21 reporting to anyone else at Conrad & Scherer?
22 A        I don't think so at all.  No.
23 Q        And were the reports that you were
24 making; were they written, oral, both?
25 A        I don't recall.  Probably written
                                                Page 20

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 5 (17 - 20)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 primarily, but a lot of oral conversations.
2 Q        Okay.  And would you keep both Billy
3 Scherer and Terry Collingsworth up to speed on
4 developments, filings in the case.
5 A        I -- probably Terry much more.  I
6 mean, we were talking daily on this during
7 certain times of it; maybe a couple of times a
8 day.
9 Q        And were those talks usually via
10 telephone?
11 A        Probably.  Yes.
12 Q        Okay.  Let me show you --
13          MR. PRESLEY:  This is tab number 7
14 for the exhibit coordinator.  Thank you.
15          MR. WELLS:  Identify the exhibit.
16 Q        (By Mr. Presley)  This is
17 Plaintiff's Exhibit 2.
18               (Plaintiff's Exhibit 2 was
19               marked for identification)
20 Q        And this is -- the bottom email is
21 an email dated July 10, 2013, from Terry
22 Collingsworth to you; correct?
23 A        I'm sorry.  Say that again.
24 Q        Sure.
25          The -- the bottom email is an email
                                        Page 21

1 dated July 10, 2013 --
2 A        Yes.
3 Q        -- from Terry to you?
4 A        Yes.
5 Q        And he's copying Christian Levesque,
6 Susana Tellez, and William R. Scherer, the
7 third?
8 A        Yes.
9 Q        And he's reporting on a motion to
10 compel that Drummond's filed?
11 A        Looks like it.
12 Q        Okay.  Is it your understanding that
13 Christian Levesque was a Conrad & Scherer
14 attorney?
15 A        Either that or an IRA attorney.  I
16 don't remember which one, but yeah.
17 Q        She could have had positions at both
18 as far as you know?
19 A        As far as I know.
20 Q        Okay.  And do you know who Susana
21 Tellez was?
22 A        I believe that was Terry's
23 paralegal.
24 Q        At Conrad & Scherer?
25 A        Again, I don't know what the
                                        Page 22

1 difference between IRA and -- yes.  Probably so.
2 Q        Okay.  And now would be a good time.
3          So IRAdvocates, what is your
4 understanding of what IRAdvocates was?
5 A        It was a nonprofit organization that
6 Terry ran that -- prior to joining Conrad &
7 Scherer.
8 Q        And did you have an understanding of
9 what type of work IRAdvocates performed?
10 A        Human rights work.
11 Q        Litigation?
12 A        Yes.  Well, both I guess.  They did
13 a lot of things I think.
14 Q        Other than litigation, what was your
15 understanding?
16 A        Well, I remember there were maybe
17 some documentaries they were involved in.  But I
18 don't know, you know, how much that was involved
19 in IRA.
20 Q        Did you ever see any of those
21 documentaries?
22 A        Seems like I did see one of them.
23 Q        Do you remember what the subject
24 matter of that documentary was?
25 A        Coca-Cola.
                                        Page 23

1 Q        Okay.
2 A        And I believe y'all were asking
3 about it in discovery is maybe what piqued my
4 interest.
5 Q        Okay.  So is it your understanding
6 that IRAdvocates pursued not only litigation but
7 also what I would call extra-judicial --
8 A        I don't know enough about it --
9 Q        Okay.
10 A        -- to answer that.
11 Q        All right.  And William R. Scherer,
12 the third; is that Billy Scherer?
13 A        I believe so.
14 Q        Okay.  And then on the -- the top
15 email in this chain, Billy Scherer's responding
16 to you; correct?
17 A        Yes.
18 Q        And you see he has now copied in
19 William R. Scherer.
20          Do you see that?
21 A        I do see that.
22 Q        And is it your understanding that
23 William R. Scherer is Bill Scherer?
24 A        I guess so.  Yeah.
25 Q        Okay.  Did you ever have any
                                        Page 24

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 6 (21 - 24)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 conversations with Bill Scherer during the
2 course of your representation in the defamation
3 case?
4 A        I don't believe so.  If I did, it
5 was at the end.
6 Q        Did you have any understanding as to
7 whether Billy Scherer was keeping Bill Scherer
8 apprised of developments in the defamation case?
9 A        I -- I don't know.
10 Q        Okay.  Let's look --
11        MR. PRESLEY:  This is tab 8 for the
12 exhibit coordinator.
13 Q        This will be Plaintiff's Exhibit 3.
14        (Plaintiff's Exhibit 3 was
15        marked for identification.)
16 Q        And recognizing you're not on this
17 email, Mr. Smith; but does this appear to be an
18 email on July 10th, same date that we just
19 looked at on Plaintiff's Exhibit 2, from Billy
20 Scherer to Bill Scherer?
21 A        That's what it says.
22 Q        Okay.  And there's a man named
23 Richard Drath copied on that.
24        Do you know who Richard Drath is?
25 A        If I recall -- and really from
Page 25

1 looking at some of my file yesterday, maybe he
2 was a firm administrator.
3 Q        Okay.  A firm administrator for
4 Conrad & Scherer?
5 A        Correct.
6 Q        Did you have any communications with
7 Mr. Drath during the course of your
8 representation --
9 A        Not that I recall.
10 Q        -- in the defamation case?
11 A        Not that I recall.
12 Q        Okay.  All right.  Let's look at tab
13 number 9 for the exhibit coordinator.  This will
14 be Plaintiff's Exhibit 4.
15        (Plaintiff's Exhibit 4 was
16        marked for identification.)
17 Q        And so this is, again, an email from
18 July 10th.
19        And you are sending Billy Scherer a
20 copy of Drummond's motion to compel; correct?
21 A        That's correct.
22 Q        Okay.  And at this time, Drummond
23 was moving to compel the defendants, Conrad &
24 Scherer and Collingsworth, to produce certain
25 documents particularly related to witness
Page 26

1 payments and case financing.
2        Do you recall that?
3 A        I recall there were several motions
4 to compel.
5 Q        Right.
6        And is it consistent with your
7 recollection that Drummond was specifically and
8 very much interested in witness payments and
9 case financing documents in those motions?
10 A        Yes.
11 Q        Okay.  And it would -- this email
12 here, we can go through additional examples.
13 But typically as these filings would come in
14 from Drummond in the defamation case, was it
15 your pattern and practice that you would then
16 forward them on to the client and report to the
17 client as to this is what's been filed by
18 Drummond?
19 A        Yes.
20 Q        And that would be true in any case?
21        That's not unusual.  That's what you
22 would do as an attorney; right?
23 A        Right.
24 Q        Keep the client informed?
25 A        Yes.
Page 27

1 Q        Okay.  Now, you had said earlier
2 that Terry Collingsworth was your primary point
3 of contact in the defamation case?
4 A        Correct.
5 Q        Okay.  And is that true throughout
6 your representation and work in that case?
7 A        Yes.
8 Q        Okay.  Did you ever have any
9 dealings with Al Frevola?
10 A        No.
11 Q        Eric Hager?
12 A        His name came up because I think he
13 was included in maybe some discovery requests.
14 Q        Okay.  But as far as dealing with
15 him directly?
16 A        No.
17 Q        Okay.  What about a person named
18 Lorraine Leete?
19 A        The name fam -- sounds familiar, but
20 I never met her.  May have spoke to her.  I
21 don't know.  I don't recall.
22 Q        Do you have any understanding of
23 what her responsibilities were as a member of
24 Collingsworth's litigation team?
25 A        I'd be guessing.
Page 28

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 7 (25 - 28)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 Q        Okay.  How was it decided that Terry
2 Collingsworth would be your primary point of
3 contact in the defamation case?
4 A        Initial conversation with Billy
5 Scherer.
6 Q        Okay.  And so it was -- well, you
7 tell me.
8        Did Billy Scherer instruct you to
9 coordinate with Mr. Collingsworth in the defense
10 of the defamation case?
11 A        Yes.  In an initial telephone
12 conversation.
13 Q        Okay.  And did Billy Scherer tell
14 you that Mr. Collingsworth had been given the
15 authority by the firm to be the point person --
16 A        No.
17 Q        -- in the defamation case?
18 A        No.  There was no -- those direct
19 words were not used.  It was probably more along
20 the lines he knows the most about this case.
21 Q        Okay.  But you were instructed by
22 Billy Scherer to coordinate with
23 Mr. Collingsworth?
24 A        I guess.  If you -- I don't know if
25 "instructed" is the correct word.  But I was
Page 29

1 told he was the person most knowledgeable, and
2 he's who I would be dealing with and
3 coordinating with in the case.
4 Q        Okay.  In the course of your work in
5 the defamation case, did you ever talk to any
6 Colombian paramilitary witnesses?
7 A        No.
8 Q        Did you ever talk with any witnesses
9 in Colombia?
10 A        No.
11 Q        Did you ever speak with anyone
12 during the course of your work in the defamation
13 case who claimed to have firsthand knowledge of
14 Drummond being complicit with the AUC?
15 A        Repeat that.
16 Q        Sure.
17        During the course of your
18 representation in the defamation case, did you
19 ever talk with anyone who claimed they had
20 firsthand knowledge of Drummond being complicit
21 with the AUC in Colombia?
22 A        I don't recall.
23 Q        Do you recall the date on which your
24 representation in the defamation case of Terry
25 Collingsworth and Conrad & Scherer ended?
Page 30

1 A        No.  No.  It was after Ken McNeil
2 and Chris Niewoehner.  Well, they were both
3 involved.  We were involved together for a
4 little while; and then, yeah, it was -- I guess
5 I filed a motion to withdraw at some point.
6 They could probably direct you to it.
7 Q        Okay.
8 A        But I was out of it before then
9 though I would say.
10 Q        Okay.  And I'm going to show you
11 what's been marked as Plaintiff's Exhibit 5.
12        MR. PRESLEY:  This is tab 97 for the
13 exhibit coordinator.
14 Q        And it is your motion to withdraw.
15 A        Yeah.
16        (Plaintiff's Exhibit 5 was
17        marked for identification)
18 Q        And this is filed on September 25th,
19 2015; correct?
20 A        Yeah.  I would have been -- I would
21 not have any involvement well before this.
22 Q        Okay.  Give me your best
23 recollection as to when your involvement in the
24 defense of the defamation case ceased.
25 A        Well, there was -- I think there was
Page 31

1 a big hearing on y'all's motion of the crime
2 fraud hearing.  I was out of it well before
3 that.
4 Q        Okay.
5 A        I didn't have any involvement in
6 that.
7 Q        So the crime fraud hearing, I'll
8 represent to you, was on September 1st through
9 3rd, of 2015.
10 A        So that was before this motion was
11 filed.
12 Q        Correct.
13 A        Yeah.
14 Q        And I think you just said that you
15 had no involvement in that hearing?
16 A        I did not.
17 Q        Did you have any involvement in
18 preparation for that hearing?
19 A        Other than trying to, you know, keep
20 the -- the new firm, Susman Godfrey, and, I
21 guess, Steptoe Johnson, up to speed on kind of
22 what we had done; but not -- no involvement.
23 No.  No strategic or -- no.  No involvement
24 other than that.
25 Q        In preparation for the crime fraud
Page 32

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 8 (29 - 32)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 hearing, did anyone ask you about what you had
2 been told by Mr. Collingsworth about the scope,
3 nature, and extent of witness payments?
4 A        Probably.
5 Q        Do you recall who that would have
6 been?
7 A        Probably Chris Niewoehner maybe.
8 Q        Anybody else ask you that question?
9 A        I'd be guessing.
10 Q        And what did you tell
11 Mr. Niewoehner?
12 A        What -- ask the question again.
13 Q        Sure.
14        I understand that -- from your
15 answer that Mr. Niewoehner asked you what Terry
16 had told you about the scope, nature, and extent
17 of witness payments; correct?
18        Did he ask you what Terry told you
19 about that?
20 A        Yeah.  And I would say -- and -- and
21 let me just -- let me say this:  I'm not sure
22 what the parameters are as far as the
23 attorney-client privileges and work product of
24 what, you know, is -- is -- what I need to be
25 testifying to.
Page 33

1        THE WITNESS:  I would assume that
2 you would object if that's not a question I need
3 to answer.
4        MR. PAULK:  That's correct.
5        THE WITNESS:  And -- and what about
6 Terry?  Who -- who would be objecting for him?
7        MR. PAULK:  He's -- he's -- he was
8 invited to the deposition.
9        THE WITNESS:  And did not come?
10        MR. PAULK:  Correct.
11        MR. PRESLEY:  Right.
12        THE WITNESS:  Okay.  And it's your
13 understanding I should answer that question?
14        MR. PAULK:  I will instruct you not
15 to answer if you shouldn't.
16        THE WITNESS:  Okay.
17 A        I would say that what he had told me
18 would be what was in discovery responses and
19 what he got up and told Judge Proctor at one of
20 the hearings, that there were only three that
21 had been paid.
22 Q        (By Mr. Presley)  Okay.  Now, by
23 that point in preparation for the crime fraud
24 hearing; obviously, it had come out that there
25 had been more than three; correct?
Page 34

1 A        I remember that vaguely.  Yes.  Yes.
2 Q        Okay.  Did Mr. Collingsworth ever
3 tell you why he told you there were only three
4 witnesses when, in fact, there were more than
5 three?
6 A        He did not.  We never had that
7 conversation.
8 Q        When did you first become aware that
9 there were more than three witnesses?
10 A        I think it would have been on the
11 eve or around the time of -- of that hearing.
12 Q        Was there a time period prior to the
13 crime fraud hearing in which you were not
14 involved at all in the defense of the defamation
15 case?
16        In other words, your involvement
17 ended -- active involvement ended; and then for
18 an extended period of time you had no
19 involvement until preparation for the crime
20 fraud hearing?
21 A        That's probably fair.
22 Q        Okay.  Do you have any judgment as
23 to how long a period of time that was?
24 A        I don't.
25 Q        Did you ever ask anybody else at
Page 35

1 Conrad & Scherer about -- strike that.
2        Did you ever have a conversation
3 with anybody else at Conrad & Scherer about the
4 fact that more than three witnesses had been
5 paid?
6 A        I don't recall.  It's possible, but
7 I don't recall.
8 Q        When was the last time that you
9 spoke with Terry Collingsworth?
10 A        I don't recall.
11 Q        Has it been within the last five
12 years?
13 A        No.  No.  I haven't spoken to him --
14 it would have been before that crime fraud --
15 Q        Okay.
16 A        -- hearing.
17 Q        What about anyone at the firm of
18 Conrad & Scherer?
19        When is the last time you spoke with
20 anyone at Conrad & Scherer?
21 A        I don't think I've spoken to anyone.
22 Mr. Paulk's the only one I've spoken to, and
23 that's been one or two times over the last ten
24 years I guess.
25        MR. PAULK:  For the record, I'm
Page 36

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 9 (33 - 36)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 counsel for Conrad & Scherer --
2          MR. PRESLEY:  Right.  Yeah.
3          MR. PAULK:  -- not Conrad & Scherer.
4          MR. PRESLEY:  Yes.
5 Q        (By Mr. Presley)  But, I mean, at
6 some point we took -- went through this earlier.
7          You were speaking with Billy
8 Scherer, reporting to him on developments?
9 A        **Oh, I hadn't spoken to him in a --**
10         MR. PAULK: Object to the form.
11         THE WITNESS:  I'm sorry.  Go ahead.
12 Are you good?  Are you good?
13         MR. PAULK: Uh-huh.
14 A        **Okay.  I think Billy may have left**
15 **the firm at some point.  So, yeah, I -- I -- you**
16 **know, I -- I have not -- it would have been a**
17 **while before even the crime fraud --**
18 Q        (By Mr. Presley)  Okay.
19 A        **-- that I had spoken to Billy**
20 **Scherer.**
21 Q        So let's just do it this way:  Since
22 the crime fraud hearing, you have not spoken
23 with Terry Collingsworth?
24 A        **No.**
25 Q        You have not spoken with anyone at

1 Conrad & Scherer?
2 A        **No.**
3 Q        Have you spoken with anyone at
4 IRAdvocates?
5 A        **No.**
6 Q        Now, what about -- and this is an
7 ever question, and we can narrow it if we need
8 to.
9          Have you ever spoken with Ivan
10 Otero?
11 A        **No.**
12 Q        Have you ever spoken with Francisco
13 Rameriz?
14 A        **No.**
15 Q        Have you ever spoken with Albert Van
16 Bilderbeek?
17 A        **No.**
18 Q        Did you ever ask to speak to any of
19 those people?
20 A        **I don't recall.  There was always a**
21 **chance we were going to go to Colombia at some**
22 **point.**
23 Q        To do what?
24 A        **Take depositions probably that were**
25 **noticed by Drummond.**

1 Q        What about lawyers -- any lawyer at
2 Susman Godfrey; when was the last time you spoke
3 to a lawyer at Susman Godfrey?
4 A        **Would have been around the same**
5 **time, last time I talked with Terry probably or**
6 **the -- I guess around the crime fraud.**
7 Q        And Ken McNeil was the lead lawyer
8 from Susman Godfrey?
9 A        **Yeah.  He's the only one I remember.**
10 Q        And then Steptoe & Johnson lead
11 lawyer Was Chris Niewoehner?
12 A        **Correct.**
13 Q        And when was the last time you spoke
14 with anyone from Steptoe & Johnson?
15 A        **Same.**
16 Q        Okay.  Have you talked with anybody
17 outside of counsel for Conrad & Scherer about
18 the defamation case or the RICO case since the
19 crime fraud hearing?
20 A        **Not that I recall.**
21 Q        Has any defendant in this case put
22 you on notice of any potential claim?
23 A        **No.**
24 Q        Do you have any written or oral
25 agreements with any other -- with any of the

1 defendants in this case?
2 A        **No.**
3 Q        When was the last time -- well, let
4 -- let me lay a foundation first.
5          You recall that the defendants
6 retained an expert, Professor Hobbs from the
7 University of Alabama?
8 A        **Yes.**
9 Q        Okay.  And his work included
10 providing a declaration that spoke to ethics of
11 witness payments?
12 A        **Correct.**
13 Q        When was the last time you spoke
14 with Professor Hobbs?
15 A        **A long time ago.**
16 Q        Before the crime fraud hearing?
17 A        **Yes.  Yes.**
18 Q        Okay.
19 A        **Yes.**
20 Q        Do you know if he's aware of Judge
21 Proctor's crime fraud opinion?
22 A        **I don't.**
23 Q        Okay.
24 A        **I don't.**
25 Q        Are you aware of Judge Proctor's

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 crime fraud opinion?
2 A        Generally.  I don't know that I've
3 read it, but I am aware of it.
4 Q        Okay.  Let me -- let me give you a
5 copy of that.
6        MR. PRESLEY:  Is this Exhibit 6?
7        MR. WELLS:  Yeah.
8 Q  (By Mr. Presley)  This is
9 Plaintiff's Exhibit 6.
10        (Plaintiff's Exhibit 6 was
11        marked for identification)
12 Q        This is a copy of Judge Proctor's
13 crime fraud opinion in the defamation case.
14        Does that appear to be correct?
15 A        Yep.
16 Q        Okay.  Now, are you generally
17 familiar with this document?
18 A        No.
19 Q        Are you familiar at all with what
20 Judge Proctor found in this document?
21 A        That there were you -- waivers of
22 privilege and -- and work product.  Generally,
23 that's what my understanding is.
24 Q        Okay.  Are you aware that in this
25 opinion Judge Proctor found that there had been
                                        Page 41

1 Q        Okay.  Well, let's just look so that
2 we can establish a foundation here.  Let's look,
3 if you would, Mr. Smith, on page ten, please.
4 A        (Witness complies.)  Okay.
5 Q        And in the middle of that page,
6 there's a quote that says, "The False
7 Representation."
8 A        Yeah.
9 Q        "On July 1, 2013, Drummond filed a
10 motion to compel responses in its First and
11 Second written discovery requests, setting forth
12 documentary evidence of Defendants' payments to
13 three witnesses - Halcon, Charris, and Duarte."
14        Do you see that?
15 A        I do.
16 Q        And then he says, "On July 18, 2013
17 Defendants filed a response to the motion to
18 compel.  That response states:  'First, all of
19 the "evidence" Drummond has' -- has 'produced by
20 Plaintiffs in the Balcero case,' -- I'm sorry.
21 It looks like there's a typo there.  Let me
22 reread that.  'First, all of the "evidence"
23 Drummond has was produced by Plaintiffs in the
24 Balcero case, and Plaintiffs produced every
25 responsive document they had.'"
                                        Page 43

1 false representations made by the defendants?
2 A        Probably.  Yeah.  I guess that's --
3 that's -- yeah.
4 Q        Okay.  And are you aware that those
5 false representations included
6 misrepresentations that were in the underlying
7 cases that Mr. Collingsworth filed against
8 Drummond?
9 A        Probably.  Yeah.
10 Q        And then there were also
11 misrepresentations made in filings and discovery
12 responses and in open court in the defamation
13 case by the defendants; correct?
14 A        Correct.
15 Q        Okay.  Now, those misrepresentations
16 were made in the defamation case in not only
17 pleadings but also discovery responses; correct?
18 A        That Judge Proctor found?
19 Q        Correct.
20 A        I don't -- I don't know enough about
21 it to be -- really to testify on that.
22 Q        You understand there were
23 misrepresentations made about the number of
24 witnesses who had been paid for example?
25 A        Yes.
                                        Page 42

1        Did I read that correctly?
2 A        You did.
3 Q        And then Judge Proctor says, "This
4 representation to the court was false"; correct?
5        MR. PAULK:  Object to the form.
6 A        That's what it says.
7 Q        (By Mr. Presley)  All right.  So
8 that response to the motion to compel was filed
9 by you; correct?
10 A        That's correct.
11 Q        Okay.  Now, there were also
12 statements made to Judge Proctor if you flip to
13 page 14, Mr. Smith.
14 A        (Witness complies.)
15 Q        And I may have said statements by
16 Judge Proctor.  Let me rephrase that.  He also
17 recounted in this opinion statements that were
18 made to him in open court.  And on the top of
19 page 14, I'll let you read that.  You tell me
20 when you're ready for me to ask my question.
21 A        Which -- what do you want me to
22 read?
23 Q        The first paragraph on -- the
24 double-spaced paragraph on the top of page 14.
25 A        (Witness complies.)  Yes.
                                        Page 44

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 11 (41 - 44)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 Q        Okay.  So when you made that
2 representation to Judge Proctor that all
3 responsive documents had been produced --
4 A        Correct.
5 Q        -- what were you relying on -- who
6 were you relying on for the factual information
7 in order to make that representation?
8 A        Mr. Collingsworth.
9 Q        And who else?
10 A        No one else other than -- that was
11 my understanding at the time.
12 Q        Okay.
13 A        I don't remember -- recall which
14 hearing that was.
15 Q        Okay.  Now, it's -- typically when
16 you're a lawyer in a case and you've got a
17 client and you're making factual representations
18 about what was produced or what the underlying
19 facts of the case are; you, as the lawyer, are
20 relying on your client for that factual
21 information; correct?
22 A        They are.  And we had searched
23 documents also.  But, yeah, that's -- yes.  Yes.
24 Q        And it's no different in this case.
25          You're relying on Mr. Collingsworth

Page 45

1 and Conrad & Scherer, your clients, to provide
2 you accurate information; correct?
3          MR. PAULK:  Object to the form.
4 A        I would say that.  I don't recall
5 which hearing that was.  I know that there was a
6 developing list of interrogatory questions that
7 got more and more specific.  And early on I
8 think we -- we felt that, you know, everything
9 had been produced at that time.  Obviously, I
10 did not know that there was anyone else that,
11 you know, involved payments.  So I don't -- I
12 don't recall when that -- when that statement
13 was made.  But, certainly, I believe that's --
14 we had produced them.
15 Q        (By Mr. Presley)  What did you do
16 outside of relying on Mr. Collingsworth and
17 Conrad & Scherer to ensure that the factual
18 representations that the defendants were making
19 in discovery responses and briefs and in open
20 court were accurate with respect to witness
21 payments?
22          MR. PAULK:  Object to the form.
23 A        Reviewed all the documents I could
24 get my hands on.
25 Q        (By Mr. Presley)  And where did you

Page 46

1 get those documents from?
2 A        From -- from Terry.
3 Q        And did you actually perform the
4 searches for those documents?
5 A        No.
6 Q        Do you know what material was
7 searched in order to find those documents?
8 A        I probably did at the time or had an
9 understanding.  I don't now.
10 Q        Do you know what search criteria was
11 applied by Terry and Conrad & Scherer?
12 A        I don't.  Not as I sit here today.
13 Q        Do you recall having any involvement
14 in crafting the search criteria?
15 A        I don't recall.
16 Q        Do you recall having any involvement
17 in determining what data sources or files were
18 supposed to be searched?
19 A        I -- I -- I assume it probably would
20 have been everything they had.
21 Q        Okay.  You assume that, but my
22 question was:  Did you have any involvement?
23 A        I certainly would have not limited
24 it to anything.
25 Q        Okay.  Let me ask it this way:  Do

Page 47

1 you know what data sources Conrad & Scherer and
2 Terry Collingsworth searched?
3 A        You mean what specific computers?
4 Q        Custod -- anything?
5 A        I would think the Conrad & Scherer
6 server and then any computers they had.
7 Q        Okay.  And where does that
8 understanding come from?
9 A        I don't recall.  It would have been
10 my intent that that's what you would have done.
11 Q        Were you ever told at any point that
12 there were emails for Mr. Collingsworth that
13 were missing?
14 A        I don't recall that.
15 Q        So you could have been told that;
16 could not, or you don't recall that happening?
17 A        I don't recall that happening.
18 Q        Okay.  Would that have been
19 something that you would like to know as Conrad
20 & Scherer and Terry Collingsworth's lawyer, that
21 his emails -- or some of his emails were
22 missing?
23 A        Yes.  But I don't recall if I knew
24 that.
25 Q        Okay.

Page 48

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 12 (45 - 48)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 A          I don't recall it as I sit here
2 today.
3 Q          When was the first time that you
4 remember talking to Mr. Collingsworth about the
5 subject of witness payments?
6 A          I don't recall.  If I would have
7 seen something, probably it would have been a
8 discovery request maybe.  Yeah.
9 Q          Okay.
10          MR. PRESLEY:  Let me get tab 6,
11 please.
12 Q          And you can put the crime fraud
13 opinion off to the side, but keep it handy
14 because we'll refer back to it.
15 A          (Witness complies.)
16             (Plaintiff's Exhibit 7 was
17             marked for identification)
18 Q          All right.  Mr. Smith, I'm going to
19 hand you what's been marked as Plaintiff's
20 Exhibit 7.  And this is an email chain dated
21 June 24 and 25, of 2013.
22          Does that appear to be correct?
23 A          Yes.
24 Q          And it's an email chain between you
25 and Mr. Collingsworth as well as Ms. Levesque
*Page 49*

1 payments, that it was to those three witnesses?
2 A          Yes.
3 Q          Okay.  Now, do you recall anything
4 about any conversations with Mr. Collingsworth
5 at this time, verbal conversations that you had
6 with him about witness payments?
7 A          I don't.  I -- I would assume there
8 would have been, but I don't -- don't recall.
9 Q          Okay.  Do you recall whether
10 Mr. Collingsworth made any statements to you
11 about whether a witness named El Tigre had been
12 paid?
13 A          He certainly wouldn't have told me
14 that there were any payments that went to El
15 Tigre.  It would have been these three.
16 Q          Okay.  And then same question with
17 respect to a witness who is named Somario:  Did
18 you ever have a conversation with
19 Mr. Collingsworth about whether Somario had been
20 paid?
21 A          I don't recall -- you're asking a
22 broad question.  I can say there was never a
23 conversation where I was told Somario was
24 provided any security payments.
25 Q          Okay.  Did you -- do you recall ever
*Page 51*

1 and Ms. Lorraine Leete; is that right?
2 A          Yes.
3 Q          And I want to first focus on the
4 first email in this chain.  And you're asking
5 Mr. Collingsworth, quote, "What are the
6 documents Drummond refers to as 'reflecting
7 payments and correspondence to witnesses'?"
8          Did I read that correctly?
9 A          You did.
10 Q          Okay.  So does this refresh your
11 recollection on about the time you would have
12 had -- first had a conversation with
13 Mr. Collingsworth about witness payments?
14 A          It appears to be.
15 Q          Okay.  And in the next email
16 Mr. Collingsworth says, quote, "Susana can you
17 please send to Brad our discovery responses
18 about legitimate security funds provided to the
19 families of Halcon, Charris and Duarte?
20 Thanks."
21          Did I read that correctly?
22 A          You did.
23 Q          And is that consistent with your
24 recollection of what Mr. Collingsworth was
25 telling you about the scope of the witness
*Page 50*

1 asking Mr. Collingsworth that question?
2 A          I would say that probably as
3 discovery requests continued to broaden or
4 become more narrow; there probably would have
5 been a conversation where, Are you certain.
6 Q          Okay.  Let's -- let's make sure
7 that's clear.
8          So that that conversation would have
9 been between you and Mr. Collingsworth; correct?
10 A          Correct.
11 Q          Anybody else involved in that
12 conversation?
13 A          Maybe someone at my firm.
14 Q          Okay.  Now -- and you said a second
15 ago "Are you certain?"  So I take it you would
16 have been asking Mr. Collingsworth Are you
17 certain these are the only witnesses that
18 received payments?
19          Is that -- am I understanding your
20 testimony correctly?
21 A          I don't remember the specific
22 conversation, but I think at some point the
23 conversation probably was had.
24 Q          Okay.  What did Terry say in
25 response?
*Page 52*

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

---

1 **A         I don't recall.  It's something in**
2 **the negative.  I can -- I can be certain of**
3 **that.**
4 Q       Okay.  Something in the negative; in
5 other words, yes, I'm certain it was three
6 witnesses, and none of these other witnesses
7 were paid?
8       MR. PAULK:  Object to the form.
9 **A         I can recall he got up in a hearing**
10 **on one of these, against my advice probably -- I**
11 **certainly would not have asked him to stand up.**
12 **But it's on the record what he said to Judge**
13 **Proctor, and that was my understanding.**
14 Q       And that's what he was telling you
15 too?
16 **A         Correct.  Correct.**
17 Q       Okay.  In those conversations with
18 Mr. Collingsworth, did he ever tell you that he
19 had memory issues and had trouble recalling
20 facts?
21 **A         I don't recall.  I don't recall.**
22 Q       You don't recall one way or the
23 other?
24 **A         I don't recall one way or the other.**
25 Q       Did it ever appear to you when you
Page 53

---

1 were asking Mr. Collingsworth questions about
2 this case and about witness payments that he had
3 memory issues?
4 **A         I don't -- I don't remember anything**
5 **specific about that.  I -- I really don't.**
6 Q       Okay.
7 **A         It was a lot of information.  It was**
8 **thousands and thousands of documents, so I don't**
9 **know what he remembered and what he didn't.**
10 Q       But he was telling you the same
11 thing he was telling Judge Proctor?
12 **A         That's correct.**
13 Q       Which was there were exactly three
14 witnesses?
15 **A         That's correct.**
16 Q       And you had that conversation with
17 him one on one; perhaps with another lawyer from
18 your firm, but you asked that question to him
19 during your representation?
20 **A         I -- I feel certain I did.  I know**
21 **there were declarations that said the same thing**
22 **and other sworn --**
23 Q       Okay.  So get back out, if you
24 would, please, Mr. Smith, the crime fraud
25 opinion, which is Plaintiff's Exhibit 6.
Page 54

---

1 **A         (Witness complies.)**
2 Q       And flip with me, if you would, to
3 page 32.
4 **A         (Witness complies.)**
5       MR. PRESLEY:  It's tab 98 for the
6 exhibit coordinator.
7 Q       Now, one of the things that Judge
8 Proctor found in his crime fraud opinion was
9 that Drummond was entitled to explore who was
10 drafting the pleadings and other papers that
11 included misrepresentations about witness
12 payments.
13       Do you see that on the center of
14 page 32?
15 **A         I do.**
16 Q       Okay.  All right.  Let's look at tab
17 number 1, please.  And this will be Plaintiff's
18 Exhibit 8.
19           (Plaintiff's Exhibit 8 was
20            marked for identification)
21 Q       And I -- I just want to first talk
22 about that bottom email, which is an email from
23 Mr. Collingsworth to you copying Christian
24 Levesque dated March 14, of 2013; is that right?
25 **A         Yes.**
Page 55

---

1 Q       And Mr. Collingsworth is attaching
2 to this email draft responses to Drummond's
3 discovery requests; is that right?
4 **A         Yes.**
5 Q       And then he says in the second
6 paragraph that he will have draft responses to
7 Drummond's document requests to you by the close
8 of business tomorrow.
9       Do you see that?
10 **A         I don't see that.  Where is that?**
11 Q       In the -- the second paragraph in
12 the bottom email?
13 **A         Yeah.  Yeah.  Yeah.  I see it.  Yes.**
14 **Yes.**
15 Q       Okay.  Now, is this consistent with
16 your recollection that Mr. Collingsworth and his
17 associates were the ones who were primarily
18 responsible for drafting responses to Drummond's
19 discovery requests?
20       MR. PAULK:  Object to the form.
21 **A         They were heavily involved in it.**
22 Q       (By Mr. Presley)  Okay.  Generally
23 speaking, would they take -- would they draft
24 them initially and send them to you for review?
25 **A         Interrogatories in particular, yes.**
Page 56

---

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

---

1 Q        Okay.  And then in the second
2 paragraph -- well, I guess it's technically the
3 third paragraph, but it -- it starts with "FYI.
4 I've copied Christian, my colleague in the
5 Drummond litigation and our discover maven."
6        Do you see that?
7 A        Yes.
8 Q        Okay.  What did Mr. Collingsworth
9 mean by "our discovery maven"?
10 A        I -- I have no idea.
11 Q        Well, what --
12 A        I would assume it was she was a
13 pretty good discovery lawyer.
14 Q        Okay.  Was it your understanding
15 that Ms. Levesque had a deep knowledge of the
16 facts like Mr. Collingsworth as it related to
17 the Drummond litigation?
18 A        I don't recall.  I think she was
19 involved in it.
20 Q        Okay.  Let's look at tab 10.
21        (Plaintiff's Exhibit 9 was
22        marked for identification.)
23 Q        And this is another email to you,
24 Mr. Smith, from Terry Collingsworth.  Also on
25 the email are Ms. Levesque again and Susana

Page 57

---

1 being a whole lot of pleadings other than
2 discover -- well, I guess this was a response to
3 the motion to compel.
4 Q        (By Mr. Presley)  Right.  And just
5 to be technically accurate, let's say filings
6 rather than pleadings.
7 A        Okay.  Yeah.
8 Q        Fair?
9 A        Yes.
10 Q        Okay.  Now, with respect to the
11 factual representations that are being made in
12 draft filings, and ultimately the final filings,
13 that are being submitted in this case by the
14 defendants; are you relying on Mr. Collingsworth
15 and Conrad & Scherer for the accuracy of those
16 factual representations as it relates to witness
17 payments?
18        MR. PAULK:  Object to the form.
19 A        Yes.
20 Q        (By Mr. Presley)  Okay.  All right.
21 Let's go to tab 13, which will be Plaintiff's
22 Exhibit 10.
23
24        (Plaintiff's Exhibit 10 was
25        marked for identification.)

Page 59

---

1 Tellez, and this is dated July 17th, of 2013;
2 correct?
3 A        Correct.
4 Q        And this will be Plaintiff's
5 Exhibit --
6        MR. PRESLEY:  Is this --
7        MR. WELLS:  That's 9.
8 Q        (By Mr. Presley)  -- 9.  So we
9 looked a second ago at -- at an example of
10 Mr. Collingsworth sending you draft discovery
11 responses, and here we have Mr. Collingsworth
12 sending you what he describes as Christian's
13 draft with my track changes.
14        And is this a draft of the
15 defendant's response to Drummond's motion to
16 compel?
17 A        Appears to be.
18 Q        And is that also consistent with
19 your recollection that typically
20 Mr. Collingsworth and others at Conrad & Scherer
21 would be the ones who would initially draft
22 pleadings in the case for your review?
23        MR. PAULK:  Object to the form.
24 A        They were heavily involved.  As far
25 as pleadings, I don't -- I don't recall there

Page 58

---

1 Q        And this is an email from Christian
2 Levesque to you on September 6th, of 2013;
3 correct?
4 A        Correct.
5 Q        And do you recall in 2013 that
6 Drummond issued several third-party subpoenas
7 for documents in this case?
8 A        I do.
9 Q        Okay.  And Ms. Levesque is telling
10 you in this email that Drummond has tried to
11 serve Charity Ryerson, a Conrad & Scherer
12 attorney on our legal team, with a subpoena.
13        Do you see that in the first
14 sentence?
15 A        I do see that.
16 Q        Okay.  And then a little bit further
17 down in her email she is saying that "we can
18 file the motion to quash, which will" almost --
19 which will "be almost identical to the others.
20 We'll circulate a draft to you on Monday for
21 your review."  Did I read that correctly?
22        Did I read that correctly?
23 A        I believe so.
24 Q        Okay.  And so we've been through an
25 example of discovery responses, been through an

Page 60

---

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 15 (57 - 60)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 example of a brief filed in the defamation case,
2 and now this is an example of the defendants
3 drafting either motions to quash or objections
4 related to third-party subpoenas?
5 A        Correct.
6 Q        Okay.  And is that also consistent
7 with your recollection that they were drafting
8 those filings for your review?
9 A        I would think we -- we certainly
10 would have reviewed them, but it -- I -- if I
11 recall, the -- the -- the motions to quash and
12 those briefs were very similar in all the
13 jurisdictions that they went out.
14 Q        And similar question as to the
15 briefs:  With respect to the factual
16 representations in those motions to quash that
17 related to witness payments, who were you
18 relying on for the accuracy of those factual
19 representations?
20 A        Well, I -- if I recall, almost
21 everything -- there was usually -- Terry would
22 do a declaration that went with it, a sworn
23 declaration.  So, yeah, I would rely upon that.
24 Yes.
25 Q        Okay.  Let's go to tab 22 please,
Page 61

1 which will be Exhibit 11.
2                 (Plaintiff's Exhibit 11 was
3                 marked for identification)
4 Q        And this is an email from
5 Mr. Collingsworth to you copying Susana Tellez
6 dated October 2nd, 2013; is that right?
7 A        Yes.
8 Q        And it attaches a draft letter with
9 some comments from Ms. Levesque; is that right?
10 A        Yes.
11 Q        Okay.  And so with respect to
12 letters that were sent to Drummond that made
13 representations about witness payments, is it
14 also true that those letters were drafted by the
15 defendants for your review?
16                 MR. PAULK:  Object to the form.
17 A        I don't think so.  I think we
18 probably would have drafted this, and they would
19 have given us some input on it if I -- I don't
20 recall this specific letter, but I would think
21 we probably would have done a draft, and then
22 they would have provided comments.
23 Q        (By Mr. Presley) Okay.  For the
24 items that you drafted that were making factual
25 representations about witness payments, what
Page 62

1 were you relying on to make sure that those
2 representations were accurate?
3 A        Regarding witness payments?  Yeah.
4 Terry.
5 Q        Okay.  What about with respect to
6 what documents had been searched and/or logged?
7                 What were you relying on to make
8 sure that those representations were accurate?
9 A        Terry.  But I think that our -- our
10 document pro -- I never felt by the time I got
11 that it was complete, that it was still an
12 ongoing process is what I feel like; including
13 the privilege log.  If I remember, one of the
14 last things I did was negotiating what was going
15 on the privilege log.
16 Q        Well, you do know there were
17 representations made that all documents had been
18 produced relating to witness payments; right?
19                 MR. PAULK:  Object to the form.
20 A        I think so.  Yes.
21 Q        (By Mr. Presley) And you do know
22 there were representations made about all
23 documents relating to witness payments that we
24 believe are privileged have been logged; right?
25 A        I don't recall that specifically.  I
Page 63

1 recall that we were still working on privilege
2 logs; and at some point there was, you know,
3 still some work to do.
4 Q        Okay.  All right.  Let's look at tab
5 26, which will be Plaintiff's Exhibit --
6                 MR. PRESLEY:  What are we on here?
7                 THE COURT REPORTER:  12.
8 Q        -- 12.
9                 (Plaintiff's Exhibit 12 was
10                 marked for identification)
11 Q        All right.  Mr. Smith, this is a
12 transcript of a hearing with Judge Proctor on
13 October 10th, of 2013, in the defamation case.
14 A        Okay.
15 Q        Does that appear to be correct to
16 you?
17 A        It does.
18 Q        All right.  I want to direct your
19 attention to page 26 starting on line nine of
20 the transcript.
21 A        (Witness complies.)
22 Q        And it reads, quote, "MR. SMITH:
23 The question is are the security payments
24 information discoverable?"  Judge Proctor says,
25 "Yeah, discoverable in the defamation action."
Page 64

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 16 (61 - 64)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 Your response:  "Your Honor, we think they are,
2 and we have produced responsive documents.  With
3 the exception of one that is on our Privilege
4 Log, we have produced all responsive documents."
5       Did I read that correctly?
6 A       **You did.**
7 Q       Okay.  Now, we're not going to have
8 a dispute, are we, that that representation is
9 intended to make Drummond and the Court believe
10 that all security payment documents have been
11 produced or logged, are we?
12       MR. PAULK:  Object to the form.
13 A       **I think that -- this is the first**
14 **motion to compel hearing?**
15 Q       (By Mr. Presley)  Correct.
16 A       **I would think based upon the**
17 **discovery that was out there and my**
18 **understanding -- obviously, I wouldn't have made**
19 **that statement if that wasn't my understanding.**
20 **I'll say that.**
21 Q       Right.
22 A       **Based upon -- I -- I don't think**
23 **it's just as simple as, you know, I don't know**
24 **what all was subsequently asked or -- but, yeah,**
25 **that was certainly my understanding at that time**
Page 65

1 **or I would never made that statement.**
2 Q       And that understanding came from
3 who?
4 A       **Terry.  Terry.**
5 Q       Okay.  Why don't we take a quick
6 break.
7 A       **All right.**
8       THE VIDEOGRAPHER:  The time is
9 10:15 a.m.  We are off the record.
10       (Short recess taken.)
11       THE VIDEOGRAPHER:  The time is
12 10:23 a.m.  We are back on the record.
13 Q       (By Mr. Presley)  All right.
14 Mr. Smith, I'm going to show you --
15       MR. PRESLEY:  This is tab 15 for the
16 exhibit coordinator.
17 Q       -- Plaintiff's Exhibit 13.
18       (Plaintiff's Exhibit 13 was
19       marked for identification)
20 Q       And, Mr. Smith, we had talked
21 earlier about searches for documents in response
22 to Drummond's discovery requests, right, and who
23 performed those searches and reviewed those
24 documents?
25 A       **What's the question?**
Page 66

1 Q       Do you -- you recall the testimony
2 earlier you gave about searching for documents;
3 who was responsible for that, the searches that
4 were applied, the criteria --
5 A       **Yes.**
6 Q       -- the sources?
7       Okay.  My -- my question here is --
8 is very narrow.  So if you see in the second
9 paragraph of this email -- and this email is a
10 September 9th, 2013, email from Christian
11 Levesque to Mr. Smith copying Ms. Collingsworth
12 and Ms. Tellez.  The second to last sentence
13 says, "the privilege log Trey receives from"
14 Conrad & Scherer "will be the same as any
15 privilege log IRAdvocates would ever produce."
16       Did I read that correctly?
17 A       **Yes.**
18 Q       Okay.  And do you recall that
19 Drummond in 2013 when it started issuing
20 subpoenas, one of those subpoenas went to
21 IRAdvocates?
22 A       **Yes.**
23 Q       Okay.  And was it your understanding
24 that you were -- were you being told by the
25 defendants that IRAdvocates' file and Conrad &
Page 67

1 Scherer's file is one and the same for purposes
2 of discovery?
3       MR. PAULK:  Object to the form.
4 A       **I don't recall if there's -- there's**
5 **probably something that says that, but I don't**
6 **recall that specifically.**
7 Q       Okay.  All right.  What -- you said
8 you never spoke with Ivan Otero; correct?
9 A       **Not that I recall.**
10 Q       Do you speak Spanish?
11 A       **I do not.**
12 Q       Okay.  What was your understanding
13 about what Ivan Otero's role was as a member of
14 Mr. Collingsworth's litigation team?
15 A       **Local counsel.**
16 Q       Local counsel where?
17 A       **Colombia.**
18 Q       Okay.  What kind of work did you
19 understand that Mr. Otero did in Colombia?
20 A       **I don't know the -- just local**
21 **counsel, whatever he was doing.**
22 Q       Local counsel in what cases?
23 A       **I don't recall.  I don't -- I don't**
24 **know when he came on board, and I don't know**
25 **what was pending.  The civil cases, I think, the**
Page 68

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 17 (65 - 68)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 **human rights cases that -- that Terry had**
2 **pending against Drummond.**
3 Q        Okay.
4 A        -- in Colombia.  Or, no, they were
5 **in Judge Proctor's court; but, yes, those cases.**
6 Q        All right.  So you cleaned that up
7 for me.
8          My point is he was not local counsel
9 in the defamation case?
10 A        No.
11 Q        Okay.  He was local -- your
12 understanding is he was local counsel for
13 Mr. Collingsworth and Conrad & Scherer in the
14 underlying ATS cases against Drummond?
15 A        Correct.
16 Q        Okay.  Do you have an understanding
17 as to whether Mr. Otero had a financial interest
18 in the cases against Drummond?
19 A        **I know that at some point that there**
20 **was an agreement that was produced in discovery**
21 **I think that I probably would have seen.  What**
22 **it was, I don't have any recollection of that;**
23 **but, yes, there was -- that was something that**
24 **was an issue in discovery I believe.**
25 Q        Okay.  What was your understanding

Page 69

1 with respect to whether Mr. Otero was the
2 criminal attorney for Colombian paramilitaries?
3 A        **I don't recall.**
4 Q        Okay.  Let's look at tab 3, please;
5 and this will be Plaintiff's Exhibit 14.
6          (Plaintiff's Exhibit 14 was
7          marked for identification)
8 Q        And this is a June 20th, 2013, email
9 from Mr. Collingsworth to Ali Van Tassell with a
10 copy to you, Ms. Levesque, and Ms. Tellez; is
11 that right?
12 A        Yes.
13 Q        And who is Ali Van Tassell?
14 A        **She would have been an assistant in**
15 **my office back then?**
16 Q        All right.  I noticed on some of
17 your emails it has this -- or some of the emails
18 that have produced from your file in response to
19 Drummond's subpoena that it has a categories,
20 and it says "Purple Category."
21 A        **I have no idea what that is.**
22 Q        All right.  I don't either; just
23 thought I'd ask.
24 A        **That maybe something Terry did.  I**
25 **don't know.**

Page 70

1 Q        Okay.  In any event, the subject is
2 "Response to Second Request for Production";
3 correct?
4 A        Yes.
5 Q        Okay.  And the body of the email is
6 discussing Mr. Otero and request for production
7 number 8.
8          Do you see that?
9 A        Yes.
10 Q        And Mr. Collingsworth tells you in
11 the first sentence, quote, "Brad, The only
12 absolute change we need to make is for number 8
13 dealing with Ivan Otero, to make it consistent
14 with what we have been saying in Balcero."
15          Do you see that?
16 A        I see that.
17 Q        All right.  And then below that he
18 gives you a response with objections to that
19 discovery request; correct?
20 A        Correct.
21 Q        And he says in the middle of that
22 response, quote, "Mr. Otero represents former
23 paramilitaries who are providing testimony
24 against Drummond in this case, he cooperates
25 with Plaintiffs' counsel, and such

Page 71

1 communications concern Plaintiffs' counsel's
2 case strategies and are not discoverable."
3          Did I read that correctly?
4 A        You did.
5 Q        Okay.  So Mr. Collingsworth is
6 telling you in this email that Mr. Otero
7 represents former paramilitaries who are
8 witnesses; correct?
9 A        Correct.
10 Q        And is that -- does that refresh
11 your recollection as to what your understanding
12 was at the time of Mr. Otero's role?
13 A        **Not really.  I mean, he -- he may**
14 **have known he was a criminal attorney; but I --**
15 **other than that, I don't really -- I don't have**
16 **any independent recollection of really what his**
17 **role was.**
18 Q        Do you have any --
19 A        **I remember the name; certainly**
20 **remember the name.**
21 Q        Do you have any reason to dispute
22 what Mr. Collingsworth is saying here?
23 A        No, I don't.  No.  No.
24 Q        Okay.  All right.  Let's go to tab
25 17, which will be Plaintiff's Exhibit 15.

Page 72

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 18 (69 - 72)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1                    (Plaintiff's Exhibit 15 was
2                    marked for identification)
3  Q           And this is a September 23rd, 2013,
4  email from Ms. Levesque to Mr. Collingsworth;
5  correct?
6  A           Yes.
7  Q           And you are not on this email, are
8  you?
9  A           I am not.
10 Q           Okay.  The subject though says,
11 "Agenda of meeting with Brad and Agreement
12 Attached."
13 A           I see that.
14 Q           All right.  And then there's an
15 attachment here which is an attorney cooperation
16 agreement.  The first two pages are the Spanish
17 version; the last page is the English version --
18 A           Yes.
19 Q           -- of that agreement; okay?
20 A           Yes.
21 Q           And it's between Mr. Otero and
22 Mr. Collingsworth of Conrad & Scherer; correct?
23 A           Correct.
24 Q           And it provides for in paragraph one
25 an $80,000 payment to Ivan Otero's bank account.
                                              Page 73

1  Do you see that?
2  A           That's what it says.  Yes.
3  Q           And then in paragraph two, a 25
4  percent contingency fee in the cases against
5  Drummond.
6            Do you see that?
7  A           I do.
8  Q           All right.  Now, flipping back to
9  the -- the email here, says the subject, again,
10 is "Agenda of meeting with Brad."
11           Did you have a meeting with
12 Mr. Collingsworth regarding Ivan Otero and
13 witness payments in September of 2013?
14 A           I don't recall.
15 Q           Okay.
16 A           I can't -- I remember these
17 documents were requested in discovery, I think;
18 and we ultimately produced it but were objecting
19 to it originally maybe.  I don't -- I don't
20 recall.  I remember there was a -- a fee
21 agreement that was, I think, on what we
22 produced.
23 Q           Let me ask it this way:  You recall
24 earlier we looked at a hearing transcript from
25 October 10th, of 2013, on Drummond's motion to
                                              Page 74

1  compel?
2  A           Yes.
3  Q           Okay.  And that was Plaintiff's
4  Exhibit 12 --
5  A           Yes.
6  Q           -- I believe?
7  A           Yes.
8  Q           Okay.  Do you recall meeting with
9  Mr. Collingsworth in advance of that hearing to
10 discuss the issues and the positions that the
11 defendants were going to take in that hearing?
12 A           Yes.
13 Q           Okay.  In that -- who else was
14 present at that meeting other than you and
15 Mr. Collingsworth?
16 A           I don't recall.
17 Q           Was that meeting here in Birmingham?
18 A           Was he present at the hearing?
19 Q           The meeting with Mr. Collingsworth?
20 A           No.  I -- I guess -- I don't recall
21 if he was present at the hearing.  I think he
22 was; maybe he wasn't.
23 Q           Well, he speaks on the record at the
24 hearing.
25 A           Okay.  Then he was.
                                              Page 75

1  Q           Yeah.
2  A           He was there.  Eric Bonner at my
3  firm was there.  I would say we would have had
4  more than one discussion about that hearing I
5  would think.
6  Q           Okay.
7  A           And also had emailed back and forth,
8  I would assume, too.
9  Q           Okay.  During your meetings with
10 Mr. Collingsworth in preparation for that
11 October 10th, 2013, hearing; did he tell you
12 that his biggest concerns were payments and Ivan
13 Otero communications?
14 A           I don't recall.  In my mind, I don't
15 remember thinking Ivan Otero was a big issue at
16 that time.  But that -- again, that's been ten
17 years ago.
18 Q           And why -- what gave you that
19 impression that he was not a big issue?
20 A           I just thought he was local counsel
21 to be honest with you.
22 Q           And your understanding that he was
23 local counsel and the nature of whatever role he
24 was playing was based on information that was
25 provided to you by who?
                                              Page 76

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

---

**Page 77**

1 A       Terry.

2 Q       Anybody else?

3 A       Not that I recall.

4 Q       Did Terry tell you at the meeting to

5 prepare for the October 10, 2013, hearing that

6 Ivan Otero had a 25 percent contingency fee in

7 litigation against Drummond?

8 A       I don't recall.

9 Q       Did he tell you that Ivan Otero had

10 received $80,000 from Conrad & Scherer?

11 A       It says it in that document.  So I

12 guess if I would have read that document, I

13 would have known whenever I received that

14 document; which would have been, I assume,

15 around the time it was produced.

16 Q       Okay.

17 A       I'm assuming it was produced.  I

18 don't recall every document that was produced,

19 but I think it was.

20 Q       Do you recall the first time you saw

21 this document?

22 A       I don't.  I don't.

23 Q       Do you recall whether you saw this

24 document prior to the October 10th hearing?

25 A       I don't recall.

---

**Page 78**

1 Q       Okay.  Let's go to tab 24, please;

2 which will be Plaintiff's Exhibit 16.

3         (Plaintiff's Exhibit 16 was

4         marked for identification)

5 Q       And this is an October 2nd, 2013,

6 email from Mr. Collingsworth to you; is that

7 right?

8 A       Yes.

9 Q       And he is attaching a document that

10 is titled "TC Argument Notes."

11         Do you see that?

12 A       Yes.

13 Q       And in the body of the email, he's

14 talking about the upcoming October 10th hearing

15 and saying it's crucial; right?

16 A       Yes.

17 Q       All right.  So flip with me if you

18 would to the third page of the attachment, which

19 is Bates labeled CS_TC196161.

20 A       The underlined?  Is that what you're

21 asking me?

22 Q       No.  No.  Next page, that -- the

23 highlighting on the second page was as it was

24 produced to us.

25 A       (Witness complies.)

---

**Page 79**

1 Q       I'm looking at the -- there's a

2 paragraph number two that is titled

3 "Relationship with Ivan Otero"; correct?

4 A       Okay.

5 Q       Yes.  Correct.

6 A       Okay.  What's the question?

7 Q       So in that paragraph it's safe to

8 say that Mr. Collingsworth is telling you what

9 Ivan Otero's role was?

10 A       Yes.

11 Q       Just take a second and read it.

12         Okay.  You agree with that?

13 A       Yes.

14 Q       Okay.  And he says in the second to

15 last sentence "We did not have a written

16 agreement, although he hounded me for it."

17         Do you see that?

18 A       Yes.

19 Q       So we just looked at an email

20 between Ms. Levesque and Mr. Collingsworth from

21 about ten days earlier attaching the written

22 agreement with Ivan Otero.

23         Do you remember that?

24 A       I do.

25 Q       Okay.  And here he's telling you

---

**Page 80**

1 that they did not have a written agreement with

2 Ivan Otero; right?

3 A       That's what this says.

4 Q       Okay.

5 A       So maybe I mistook that I had ever

6 seen that.  I don't recall specifically.  I

7 remember it being an issue; but, again, we're

8 going back ten years.  I don't remember a lot of

9 this stuff.

10 Q       Okay.  What did -- let me ask it

11 this way:  What is your understanding of who

12 Albert Van Bilderbeek is?

13 A       My understanding was that the Van --

14 Van Bilderbeek brothers owned Llanos Oil, which

15 was a Dutch energy company that had a concession

16 in Colombia that was -- that they claimed was

17 maybe stolen by Drummond.

18 Q       And did you understand that

19 Mr. Collingsworth had a relationship with Llanos

20 Oil and Albert Van Bilderbeek?

21 A       I don't know what the extent of the

22 relationship was, but I think that they did know

23 each other.  I was told they had -- they did

24 know each other.

25 Q       Okay.  Let's go to tab 2, please.

---

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 20 (77 - 80)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 And this will be Plaintiff's Exhibit 17.
2                    (Plaintiff's Exhibit 17 was
3                    marked for identification)
4 A            Okay.
5 Q        And this appears to be a letter
6 written by you, Mr. Smith, to Terry
7 Collingsworth dated May 14, of 2013.
8        Is that right?
9 A        Yes.
10 Q        Okay.  And, generally, what you're
11 doing is you are informing Mr. Collingsworth
12 about discovery issues that Drummond has raised
13 in the defamation case.
14        Is that a fair characterization?
15 A        Well, it looks like the general
16 issues; I'm kind of talking about ways to, you
17 know, successfully defend the defamation case --
18 Q        Well --
19 A        -- I guess.
20 Q        Okay.
21 A        Kind of breaking down the specific
22 statements trying to find defenses to it.
23 Q        All right.
24 A        Because that's what was important to
25 understand is I was always focused on the
Page 81

1 defamation case; right?
2 Q        Right.
3 A        Okay.
4 Q        I understand that.
5 A        All right.  So go ahead.  I'm sorry.
6 Ask your question.
7 Q        That's all right.  Let's go to page
8 seven of the letter.
9 A        Who made the redactions on these?
10 Q        I'll represent to you that this is
11 how the document was produced to Drummond
12 pursuant to the crime fraud exception, and the
13 redactions were made by Conrad & Scherer's
14 counsel.
15        MR. PRESLEY:  William, jump in if I
16 am incorrect.
17        MR. PAULK:  That's correct.  I mean,
18 I don't -- I can't personally testify to these
19 redactions.
20        MR. PRESLEY:  Right.
21        MR. PAULK:  But under our guidance
22 they were provided.
23 Q        (By Mr. Presley)  Okay.  This is how
24 the document was produced to us in discovery.
25 A        Okay.
Page 82

1 Q        All right.  On page seven, the first
2 paragraph starts with "The fifth category of
3 information relates to the relationship with
4 Llanos Oil."
5        Do you see that?
6 A        Yes.
7 Q        And you tell Mr. Collingsworth that
8 Judge Acker and Judge Proctor have asked you
9 questions about what the relationship is between
10 Mr. Collingsworth and Llanos Oil.
11        Do you see that?
12 A        Yes.
13 Q        And -- and that you've responded
14 that you're not aware of what that relationship
15 is?
16 A        Correct.
17 Q        All right.  And then you say, quote,
18 "Terry has previously stated that there is no
19 finance arrangement," end quote.
20        Do you see that?
21 A        Yes.
22 Q        All right.  So that leads me to
23 believe that you had asked Terry Collingsworth
24 what the relationship was between Llanos Oil and
25 him.
Page 83

1 A        I would -- I would think so.  I
2 don't have any independent recollection.
3 Q        All right.  And that may answer my
4 next question.
5        But outside of what's written in
6 this letter, which is Terry told me there is no
7 financial arrangement; do you remember anything
8 specific about what Mr. Collingsworth told you
9 the relationship was between Llanos Oil and him?
10 A        I don't recall.
11 Q        All right.  Let's go to tab 36.
12        MR. WELLS:  Which is Exhibit 1.
13 Q        (By Mr. Presley)  -- which is
14 Exhibit 1.  That's the very first document that
15 we looked at.
16        MR. PRESLEY:  And then we'll need
17 tab 99.
18        MR. WELLS:  Okay.
19 A        Go back to the first document you
20 asked me about?
21 Q        (By Mr. Presley)  Yes.  Plaintiff's
22 Exhibit 1.
23 A        Okay. (Witness complies.)
24 Q        All right.  So this is the email
25 from Ms. Tellez to you with a cc to
Page 84

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 Mr. Collingsworth and, I guess, Ms. Duke; is
2 that right, A -- A. Duke?
3 **A        That's my assistant.**
4 Q        Okay.  And the body of the email
5 says, quote, "You can tell Drummond that any
6 responsive documents for agreements with 'Llanos
7 Oil and/or Albert Van Bilderbeek and/or Hendrik
8 Van Bilderbeek' were already produced at
9 CS000891-893."
10        Did I read that correctly?
11 **A        You did.**
12 Q        All right.  Let me show you this is
13 tab 99, which will be Plaintiff's Exhibit 18.
14        (Plaintiff's Exhibit 18 was
15        marked for identification)
16 Q        And do the Bates numbers on that
17 document correspond to the Bates numbers that
18 Ms. Tellez put in her email of January 21st,
19 2014?
20 **A        They do.**
21 Q        Okay.  And that document is a -- an
22 agreement between Mr. Collingsworth and Llanos
23 Oil; correct?
24 **A        Yes.**
25 Q        And she's telling you this is the
*Page 85*

1 only agreement that exists between -- or --
2 yeah.
3        This is the only agreement that
4 exists involving Llanos Oil, Albert Van
5 Bilderbeek or Hendrik Van Bilderbeek; correct?
6 **A        She says it's the only responsive**
7 **document for agreements.  Yes.**
8 Q        Okay.  Now, in 2013, again, in
9 parallel with a motion to compel and the party
10 discovery issues that we've talked about in the
11 defamation case; Drummond issued subpoenas,
12 right, to a bunch of third parties?
13 **A        Correct.**
14 Q        You recall that one of those
15 subpoenas went to Parker Waichman?
16 **A        Yes.**
17 Q        Okay.  And please tell the jury who
18 Parker Waichman is to your understanding.
19 **A        It is a plaintiff's personal injury**
20 **firm in New York that was cocounsel.**
21 Q        Cocounsel with who?
22 **A        Terry, in some of the human rights**
23 **cases.  Or they -- there was discussions of it.**
24 **I don't know what the ultimate relationship was,**
25 **but they were involved in the cases at some**
*Page 86*

1 **point.**
2 Q        And, again, when you say the case --
3 "the human rights cases," you're referring to
4 the underlying litigation that Terry and Conrad
5 & Scherer filed against Drummond --
6 **A        Well, I think --**
7 Q        -- and/or --
8 **A        Well --**
9 Q        -- and other companies --
10 **A        I think so.  Yes.**
11 Q        -- right?
12 **A        Yes.**
13 Q        Now, in response to that subpoena
14 that Drummond served on Parker Waichman, do you
15 recall that Parker Waichman produced a privilege
16 log and then ultimately produced documents?
17 **A        Yes.**
18 Q        Okay.  Let's look at tab 38, which
19 is Plaintiff's Exhibit 19.
20        (Plaintiff's Exhibit 19 was
21        marked for identification)
22 Q        And what we have done here,
23 Mr. Smith, is -- there were a lot of attachments
24 to this email as you can see from the attachment
25 list.
*Page 87*

1 **A        Okay.**
2 Q        They included documents from Western
3 Union and MoneyGram; which, as you may recall,
4 Drummond also subpoenaed.
5 **A        Right.**
6 Q        It also includes documents -- I'm
7 sorry -- Parker Waichman's privilege logs.
8        Do you see that?
9 **A        Yes.**
10 Q        Okay.  And you're sending this
11 document to Mr. Collingsworth on February 28th,
12 of 2014; right?
13 **A        Looks like I'm sending it to my**
14 **assistant to print.  But yes.  Yes.  Terry is**
15 **cc'd on it.**
16 Q        Okay.  Now, at the time that you
17 received this privilege log and then sent it to
18 Mr. Collingsworth; do you recall any discussions
19 that you had with Mr. Collingsworth about the
20 Parker Waichman subpoena and the privilege log
21 that they produced?
22 **A        Well, at some point the decision was**
23 **made to attempt to claw back some of the**
24 **documents.  I remember that.  But other than**
25 **that -- that -- yes.  It was the understanding**
*Page 88*

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 22 (85 - 88)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 **that some privileged documents had been**
2 **produced.**
3 Q        Okay.  What about as it relates to
4 the privilege log here --
5 **A        I don't --**
6 Q        -- what --
7 **A        I don't recall.  I don't recall this**
8 **privilege log.**
9 Q        Okay.
10 **A        Obviously, I would have seen it; but**
11 **I don't -- as I sit here today, I don't recall**
12 **it.**
13 Q        All right.  Let's look at tab 37,
14 which will be Plaintiff's Exhibit 20.
15            (Plaintiff's Exhibit 20 was
16            marked for identification)
17 **A        Okay.**
18 Q        And this is later that afternoon of
19 February 28th, 2014, an email chain between
20 you --
21 **A        Yeah.  Okay.**
22 Q        -- and Mr. Collingsworth.
23            All right.  And you see you asked
24 Mr. Collingsworth at 5:01 "Have you had a chance
25 to look at PW's privilege log?  There are
Page 89

1 several documents identified as 'money for JBM.'
2 I assume that is Jaime Blanco and Drummond
3 thinks they have found something.  Do you recall
4 the memos and can you provide some insight?"
5            Did I read that correctly?
6 **A        You did read it correctly.**
7 Q        Okay.  Is it your understanding that
8 Jaime Blanco was one of the defendants'
9 Colombian witnesses in the litigation against
10 Drummond?
11 **A        I don't remember the extent of what**
12 **he was -- whether he was a witness.  I remember**
13 **he was the alleged owner of, I guess, the**
14 **cafeteria that was alleged to have hired some --**
15 **participated in the murders of the labor union**
16 **leaders I think.  That's what I remember about**
17 **him.**
18 Q        Okay.  And you're directing
19 Mr. Collingsworth's attention to documents on
20 the log --
21 **A        Yes.**
22 Q        -- as "money for JBM" --
23 **A        Yes.**
24 Q        -- right?
25 **A        Yes.**
Page 90

1 Q        Okay.  And Mr. Collingsworth
2 responds to you that "There was a discussion of
3 whether to help with his attorneys fees related
4 to his preparation for and assessment of
5 consequences of his testimony.  The fees were
6 not paid after much discussion.  I had research
7 done as to whether we could ethically pay fees
8 associated with his testimony, and the
9 conclusion was we could, but we didn't.  So if
10 Mike Hugo is deposed and Drummond overcomes the
11 privilege, if asked if we paid the fees the
12 answer is no."
13            Did I read that correctly?
14 **A        You did.**
15 Q        All right.  Now, do you know who
16 Mike Hugo is?
17 **A        I do.**
18 Q        Who is Mike Hugo?
19 **A        Well, I recall it from reviewing**
20 **some documents yesterday that he was an attorney**
21 **at Parker Waichman that worked with Terry.  I**
22 **guess he was the parker Waichman attorney that**
23 **worked with Terry on these cases.**
24 Q        Okay.
25 **A        And I think I maybe even called him**
Page 91

1 **at some point.**
2 Q        Okay.  When did you call Mike Hugo?
3 **A        I don't recall, but there is a**
4 **document that I reviewed yesterday that**
5 **refreshes my -- refreshed my recollection on the**
6 **matter.**
7 Q        Do you recall anything about your
8 conversation with Mr. Hugo, what was said?
9 **A        Only thing I probably recall is that**
10 **he did not like Terry.**
11 Q        Okay.  Did he tell you why he didn't
12 like Terry?
13 **A        I don't -- I don't recall.**
14 Q        What was the reason for the call?
15 **A        Had he -- maybe there was something**
16 **from Paul Wolfe or there was an affidavit --**
17 **there was something -- I don't -- I don't**
18 **recall.  There was something -- there was a**
19 **reason, but I don't recall what it was.**
20 Q        Okay.  Did you speak with him more
21 than once or just that one time?
22 **A        Just one time.**
23 Q        Okay.  And that was by telephone?
24 **A        I believe so.**
25 Q        Did you speak with anybody else at
Page 92

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 Parker Waichman?
2 A        **They had an attorney that I dealt**
3 **with.**
4 Q        David Cohen?
5 A        **Yes.  Yes.**
6 Q        Okay.  Set him aside for the moment.
7         Anyone else at Parker Waichman you
8 spoke with other than Mike Hugo?
9 A        **Not that I recall.**
10 Q        Okay.  Mr. Collingsworth references
11 in his email to you that they had research done
12 as to whether they could ethically pay the fees.
13         Did you ever see that research?
14 A        **I don't recall.**
15 Q        In any event, Mr. Collingsworth says
16 we've researched it, but we didn't make the
17 payment; right?
18 A        **Correct.**
19 Q        And is that consistent with what he
20 was telling you verbally at this time as well,
21 that Blanco was not paid; we considered it, but
22 we didn't pay him?
23 A        **I was told there were only three**
24 **that were paid.  Yes.**
25 Q        That --
Page 93

1 A        **That was my only understanding.**
2 Q        And Blanco was not one of them?
3 A        **He was not one of them.**
4 Q        All right.  Let's -- let's look at
5 tab 40, which is Plaintiff's Exhibit 21.
6         (Plaintiff's Exhibit 21 was
7          marked for identification)
8 Q        So this is a couple of weeks after
9 that February 28th email we just looked at.
10         This is a March 14, 2014, chain
11 between you and Mr. Collingsworth; is that
12 right?
13 A        **Yes.**
14 Q        Okay.  And you say at the bottom
15 that Parker Waichman "has produced documents";
16 correct?
17 A        **Yes.**
18 Q        All right.  And then at the top,
19 very top email, Mr. Collingsworth again tells
20 you, quote, "I think there are docs in which we
21 discussed WHETHER WE COULD assist Jaime's
22 lawyers, and I wanted to, but ultimately we did
23 not."
24         Did I read that correctly?
25 A        **Yes.**
Page 94

1 Q        All right.  So, again, this is
2 consistent with what Mr. Collingsworth is
3 otherwise representing to you, which is Jaime
4 Blanco was not paid.  He was not one of the
5 three witnesses who received a payment?
6 A        **That's correct.**
7 Q        All right.  Now, did
8 Mr. Collingsworth at any time -- when he's
9 talking about payments to Jaime Blanco, did he
10 ever say to you Jaime Blanco was paid, but those
11 payments were made by Albert Van Bilderbeek?
12 A        **I don't -- I don't recall that.  No.**
13 Q        Did Mr. Collingsworth ever tell you
14 that Jaime Blanco was paid, but I'm making a
15 distinction in my head as to why those payments
16 are different than the other three witnesses who
17 were paid?
18 A        **Only thing I recall is that he**
19 **wasn't paid.**
20 Q        Okay.  Now let's go to tab --
21         MR. PRESLEY:  Let's go to 50, Trey.
22         MR. WELLS:  Hold on.  I've lost my
23 sticker.  Is what was the last exhibit?
24         MR. PRESLEY:  21, I believe, was the
25 last exhibit.
Page 95

1         THE COURT REPORTER:  Yes.  21.
2 Q        (By Mr. Presley)  All right.
3 Mr. Smith, I'm showing you what's been marked as
4 Plaintiff's Exhibit 22, which is an April 1,
5 2014, email from Mr. Collingsworth to you with a
6 subject:  "urgent drummond."
7         (Plaintiff's Exhibit 22 was
8          marked for identification)
9 Q        Do you see that?
10 A        **I do.**
11 Q        All right.  And we've just gone
12 through several emails where you're having
13 discussions with Mr. Collingsworth about
14 documents that Parker Waichman has produced and
15 a privilege log that they've produced and
16 whether or not Jaime Blanco was paid; right?
17 A        **(No response.)**
18 Q        We just went through those
19 documents; right?
20 A        **Let's see.  I -- yes.**
21 Q        Okay.
22 A        **I -- I think the -- seems like there**
23 **was more than just Jaime Blanco documents that**
24 **we were trying to claw back.  I can't recall.**
25 Q        Right.
Page 96

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 24 (93 - 96)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1       But my question is just:  You had
2 just been discussing payments to Jaime Blanco
3 with Mr. Collingsworth.  And he's telling you we
4 considered it, but we didn't make those
5 payments; right?
6 **A**       **Yes.  Back on March 14th.**
7 Q       All right.  So in the first two
8 sentences of those paragraphs, Mr. Collingsworth
9 tells you that, quote, "I'm in Bogota and am on
10 same time zone as you.  Going to prison to visit
11 Jaime Blanco for all of the morning and won't
12 have contact info."
13       Why was Mr. Collingsworth going to
14 Bogota to see Jaime Blanco?
15 **A**       **I don't know.**
16 Q       Do you recall other times when you
17 were representing the defendants in the
18 defamation case when Mr. Collingsworth would go
19 to Colombia to see imprisoned witnesses?
20 **A**       **Yes.**
21 Q       Okay.  What about Jaime Blanco in
22 particular?
23       Do you recall?
24 **A**       **I don't recall other than what I**
25 **described earlier as what I recalled his role to**

Page 97

1 **be.  I think he thought that he played a factor**
2 **in his cases against Drummond.  Yes.**
3 Q       Did Mr. Collingsworth tell you that
4 his visit to Jaime Blanco had anything to do
5 with the fact that there had just been documents
6 produced discussing payments to Blanco or the
7 possibility of making payments?
8 **A**       **I didn't -- I did not connect it.**
9 **That's -- I didn't.  No.**
10 Q       He didn't -- he didn't say that to
11 you?
12 **A**       **No, he did --**
13 Q       Okay.
14 **A**       **-- not.**
15 Q       Did he give you any reason for going
16 to see Jaime Blanco in Bogota at this time?
17 **A**       **No.  But he wouldn't have -- I don't**
18 **-- I don't --**
19 Q       All right.  Let's go to tab 60,
20 which will be Plaintiff's Exhibit 23.
21       (Plaintiff's Exhibit 23 was
22       marked for identification.)
23 Q       All right.  Mr. Smith, this is a
24 hearing transcript from April 21, of 2014, with
25 Judge Proctor in the defamation case; correct?

Page 98

1 **A**       **Correct.**
2 Q       All right.  And you recall -- or do
3 you recall that a few weeks before this hearing
4 Drummond filed an emergency motion for sanctions
5 against the defendants?
6       Looks like you might?
7 **A**       **I -- I remember you filing that**
8 **motion.  I don't recall where it was in time to**
9 **this hearing.**
10 Q       Okay.
11 **A**       **Is this the hearing on that motion?**
12 Q       Yes.
13 **A**       **Okay.**
14 Q       All right.
15 **A**       **Okay.**
16 Q       And do you generally recall that
17 Drummond's motion for -- emergency motion for
18 sanctions was asserting that the defendants had
19 not produced all documents relating to witness
20 payments and pointing to the Parker Waichman
21 production as additional documents that had not
22 been logged or produced by the defendants?
23 **A**       **I don't remember all that, but I do**
24 **remember there being a motion for sanctions that**
25 **gave me a lot of heartburn.**

Page 99

1 Q       Okay.  Now let's look at page 21 of
2 that transcript in your Plaintiff's Exhibit 23
3 page 21.
4 **A**       **(Witness complies.)  Okay.**
5 Q       All right.  Now, there's a
6 discussion about Jaime Blanco's legal fees.
7       Do you see that?
8 **A**       **Correct.**
9 Q       All right.  And Judge Proctor says,
10 quote, "The $100,000 criminal defense fee.  What
11 is the basis -- that was troubling to me.  Let
12 me hear from the defendant about the basis, the
13 legal basis, proper basis, for that."
14       And you respond "Well, Your Honor,
15 there was no payment made"; right?
16 **A**       **That's what -- that's what I said.**
17 Q       All right.  And that's consistent
18 with what you were being told by
19 Mr. Collingsworth; correct?
20 **A**       **Yes.**
21 Q       All right.  And Mr. Collingsworth
22 was not telling you that Albert Van Bilderbeek
23 made that -- may have made a payment, so I made
24 a distinction in my head.
25       He was just telling you there was no

Page 100

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 25 (97 - 100)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

---

1 payment made; right?
2 A       I think what he told me is
3 memorialized in one of the emails we just looked
4 at.
5 Q       Okay.  Did Mr. Collingsworth ever
6 give you a reason as to why they decided to
7 purportedly not make payments to Jaime Blanco?
8 A       I don't recall.  I just -- you know,
9 I don't recall.
10 Q      Okay.  When was the first time you
11 learned that Jaime Blanco had -- did receive
12 payments?
13 A       I don't know that I ever did other
14 than your -- it was my understanding without
15 specifics that there were some additional
16 payments made.  I don't know any specifics about
17 who or what or when or where.
18 Q       And do you -- right.  Fair enough.
19          But do you recall when you first
20 learned that information?
21 A       I believe maybe I met with some
22 attorneys with William's firm on the eve of that
23 -- one of those hearings.
24 Q       Well, it -- all right.  There --
25 there's been several hearings.

Page 101

---

1 would it have been on the eve of the
2 crime fraud hearing?
3 A       Yes.  I believe so.  Yes.
4 Q       Okay.  Have you ever heard of a
5 company called Nicox B.V.?
6 A       No.
7 Q       Have you ever heard of a company
8 called HP Metals B.V.?
9 A       No.
10 Q       Have you ever heard of a person
11 named Herman de Leeuw?
12 A       No.
13 Q       Paul Akermohns?
14 A       No.
15 Q       James Elwood?
16 A       No.
17 Q       None of those names --
18 A       Do not --
19 Q       -- ring a bell at all?
20 A       -- ring a bell.  No.
21 Q       Okay.  Did Mr. Collingsworth ever
22 tell you that he had received a one and a half
23 million dollar loan from a company called Nicox
24 B.V.?
25 A       No.

Page 102

---

1 Q       Did Mr. Collingsworth ever tell you
2 that he gave half the proceeds of that loan to
3 Albert Van Bilderbeek?
4 A       No.  Now to be fair, I do recall him
5 attempting to get some additional financing and
6 being in Europe doing that.  I remember --
7 vaguely remember that.  My understanding would
8 have been that the Van Bilderbeeks would have
9 been pocketed and not be some -- would have been
10 giving instead of receiving I guess.
11 Q       Did you ever see any written
12 agreements between Mr. Collingsworth and Nicox
13 B.V.?
14 A       Never heard of them, so no.
15 Q       Okay.
16 A       I say that.  I don't recall, you
17 know.  If that were something I produced, I
18 don't recall.
19 Q       All right.  Let's look at -- back at
20 the hearing transcript, which is Plaintiff's
21 Exhibit 23.
22 A       Yes.  (Witness complies.)
23 Q       And if you look on pages 30 and 31
24 of that hearing transcript, I think you alluded
25 to this earlier in your deposition.

Page 103

---

1 This is when Mr. Collingsworth stood
2 up and answered Judge Proctor's question about
3 what witnesses have been paid?
4 A       Correct.
5 Q       Okay.  And we don't have to go
6 through this quote, but it goes from page 30
7 line 19 to 31 line 19.  And he says -- he being
8 Mr. Collingsworth -- that "There were exactly in
9 this case three payments" who received
10 payments.
11          And that's consistent with what he
12 was telling you; right?
13 A       That's correct.
14 Q       Okay.  Are you aware that
15 Mr. Collingsworth has represented to Drummond
16 and to the Court in this case that he forgot
17 that El Tigre and Somario had been paid?
18 A       I think I may have heard that
19 somewhere.
20 Q       Did he ever tell you that he forgot
21 that they were paid?
22 A       No.  Because I never had the
23 conversation with him that anyone other than the
24 three that we've already discussed were paid.
25 Q       All right.  And you've been a lawyer

Page 104

---

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 26 (101 - 104)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

---

**Page 105**

```
 1 for how long?
 2 A        Now?
 3 Q        Yes.
 4 A        23 years.
 5 Q        And in your 23-year career, have you
 6 ever made tens of thousands of dollars in
 7 payments to fact witnesses?
 8 A        No.
 9 Q        Is that something you would remember
10 if you had?
11 A        Well, I wouldn't do it.  But I
12 didn't have cases that were involving a civil
13 war and all the other things that were going on.
14 So whether there's an excuse for it, I don't
15 know.  But I absolutely have never had a case
16 where I have considered or -- to pay any type of
17 witness.
18 Q        Right.
19          The question was:  Is that something
20 you would forget?
21          MR. PAULK:  Object to the form.
22 Q   (By Mr. Presley)  I mean, it's
23 unusual --
24 A        I -- I --
25          -- at the least?
```

**Page 106**

```
 1 A        Yeah.  Yeah.  I don't think I would
 2 forget it, but who --
 3 Q        Okay.
 4 A        But, you know, I don't --
 5          MR. PRESLEY:  All right.  What time
 6 is it, Trey?
 7          MR. WELLS:  11:08.
 8          MR. PRESLEY:  All right.  I'm about
 9 to shift to a new topic, so do you -- do we --
10 where are we on lunch?
11          MR. WELLS:  Menus have been sent
12 out, but I haven't got an ETA.
13          MR. PRESLEY:  All right.
14          MR. DAVIS:  Let's keep going.
15 Q   (By Mr. Presley)  Let's keep going.
16 A        Yeah.  Let's can if we -- yeah,
17 because I've got to get some stuff down.
18 Q        No.  I understand.
19          All right.
20          MR PRESLEY:  Let's go to tab 12 for
21 the exhibit coordinator.
22 Q        And this will be Plaintiff's Exhibit
23 24.
24 A        Okay.
25          (Plaintiff's Exhibit 24 was
```

**Page 107**

```
 1          marked for identification)
 2 Q        So we're going back in time for a
 3 second here, Mr. Smith.
 4          Do you recall -- and I'll direct
 5 your attention to the very first part of this
 6 email chain.  And it is a copy of a text order
 7 entered by Judge Proctor on August 28th of
 8 2013 --
 9 A        Yes.
10 Q        -- about privilege logs?
11 A        Yes.
12 Q        All right.  And he's ordering the
13 defendants to produce privilege logs in the
14 defamation case; right?
15 A        That's what it looks like.
16 Q        Okay.  Who -- who was responsible
17 for searching for and logging documents on a
18 privilege log in the defamation case in August
19 and September of 2013?
20 A        Well, Terry's team was doing the
21 majority of it.  They were doing the searches,
22 you know.  Yes.
23 Q        And they were reviewing the
24 documents to make the privilege calls on those
25 documents?
```

**Page 108**

```
 1 A        I think they were -- yes.  I think
 2 so.
 3 Q        Okay.  Do you know as part of that
 4 search what -- what document -- what sources of
 5 documents they were -- whose emails they were
 6 looking at or what files they were looking at to
 7 create that privilege log?
 8 A        As I sit here today, I do not.  I
 9 know at some point I thought y'all sent maybe
10 something specific asking that we were making
11 these searches.
12 Q        Okay.  And we'll get to that --
13 A        Yeah.
14 Q        -- in a minute.
15          Let's look at tab 19.  And this will
16 be Plaintiff's Exhibit 25.
17          (Plaintiff's Exhibit 25 was
18          marked for identification)
19 Q        So this is almost a month after that
20 order we just looked at, which was in late
21 August.
22          And it's an email chain with you and
23 Mr. Collingsworth as well as Christian Levesque
24 and Susana Tellez; right?
25 A        Yes.
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 27 (105 - 108)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 Q          All right.  And I want to direct
2 your attention to the bottom email where
3 Mr. Collingsworth tells you "There is no draft
4 log yet.  Won't really have a meaningful draft
5 until Sunday night or Monday morning."
6          Do you see where I've read that last
7 sentence?
8 A          Yes.
9 Q          Okay.  And the date of this email is
10 September 26th; right?
11 A          Yes.
12 Q          All right.  Let's look at tab 18.
13          (Plaintiff's Exhibit 26 was
14          marked for identification)
15 Q          And, Mr. Smith, this is an email
16 from the day before, right, September 25th,
17 2013?
18 A          Okay.
19 Q          And it's an email from Ms. Tellez to
20 Ms. Levesque; right?
21 A          Correct.
22 Q          You are not on this email, are you?
23 A          No.
24 Q          Okay.  And Ms. Tellez is attaching
25 to this email a document that is titled

Page 109

1 A          (Witness complies.)  Okay.
2 Q          Second entry from the bottom with
3 the number 27 beside it.
4 A          Okay.
5 Q          And in the notes it quotes that
6 document in saying, quote, "I can transfer funds
7 as soon as the two declarations we discussed are
8 ready."
9          Did I read that correctly?
10 A          Yes.
11 Q          And that's a -- that's logged as a
12 December 15th, 2008, email from Ivan Otero to
13 Rebecca Pendleton; right?
14 A          Yes.
15 Q          What declarations are they talking
16 about there?
17          Do you know?
18 A          I don't.
19 Q          All right.  Let's flip to 165502.
20 A          (Witness complies.)
21 Q          Entry 45.  It's a February 8th, 2011
22 email from Lorraine Leete to Ivan Otero.
23          Do you see that?
24 A          I do.
25 Q          And in the notes column it says

Page 111

1 that -- that email says, "In order to send money
2 log-CL NOTES"; right?
1 that -- that email says, "In order to send money
2 to your bank account we need the following info:
3 A          Yes.
3 (then asks for banking details)," quote, "'which
4 Q          Do you know why Mr. Collingsworth
4 is where he said money for his, ET and Sam's
5 would tell you the next day that there was no
5 security should be deposited.'"
6 draft log if, in fact, this draft log had
6          Did I read that correctly?
7 already been created?
7 A          You did.
8 A          Yeah.  I don't know.
8 Q          Any reason to dispute that ET and
9 Q          Okay.  I want you to flip to Bates
9 Sam are El Tigre and Somario?
10 number -- and this -- we're on Plaintiff's
10 A          Yeah.  I don't know.
11 Exhibit 26 right now -- Bates number
11 Q          Any reason to dispute that?
12 CS_TC165494.
12 A          No.  No.
13 A          (Witness complies.)  Say that again.
13 Q          Okay.  Now let's look at the next
14 Q          165494.
14 page, 165503, entry 52, top entry.
15 A          Okay.
15 A          Okay.
16 Q          All right.  And you see the numbered
16 Q          This is an April 15th, 2011, email
17 entries 82 and 83 in the center of that page?
17 from Ivan Otero to Lorraine Leete.  And in the
18 A          Yes.
18 right-hand column it says, quote, "To S and T
19 Q          And you see in the far right-hand
19 1800 each was given.  From this 800 was for the
20 column they're describing a $35,000 payment to
20 transfer of their nuclear families and 1000 to
21 Ivan Otero in June -- I'm sorry -- July of 2012
21 sustain them for one month."
22 as well as a $60,000 payment in September of
22          Any reason to dispute that S and T
23 2011?
23 are Somario and El Tigre?
24 A          I see that.  Yes.
24 A          No.
25 Q          Okay.  Flip with me now to 165499.
25 Q          All right.  Now, let's go to tab 20.

Page 110

Page 112

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 28 (109 - 112)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 A          (Witness complies.)
2 Q          And keep that one handy.
3              (Plaintiff's Exhibit 27 was
4              marked for identification)
5 Q          So, Mr. Smith, this is an email from
6 Mr. Collingsworth to you copying Susana Tellez
7 on September 30th, of 2013; right?
8 A          Yes.
9 Q          Five days after the draft privilege
10 log that we just looked at; right?
11 A         Yes.
12 Q          And four days after he had told you
13 that there was no draft privilege log; right?
14 A         Yes.
15 Q          And Mr. Collingsworth says, quote,
16 "Hey Brad, Attached please find the DRAFT
17 privilege log"; right?
18 A         Yes.
19 Q          And then that log, which is attached
20 to this email, has 175 entries on it.
21              Do you see that?
22 A         Okay.  Yes.  I see that.
23 Q          The draft log that we had looked at
24 just a minute ago that you did not see had 210
25 entries on it; right?
Page 113

1 documents in a case, there's two ways that your
2 adversary can know a document exists; right?
3              You can either produce it to them;
4 or, if you say it's privileged, it can be a log;
5 right?
6 A          Correct.  Correct.
7 Q          All right.  So let's go to tab 21.
8              (Plaintiff's Exhibit 28 was
9              marked for identification)
10 Q          Before we get there, does that
11 concern you that there's documents being pulled
12 off a draft privilege log that you never saw and
13 you were never told about?
14 A         I certainly wouldn't have done it.
15 Yeah.  I mean, that's -- I don't know what the
16 context of all that was.  But, yeah, no, I don't
17 -- yeah.  I guess it would concern me.  Yeah.
18 Q          All right.  Let me show you what is
19 Plaintiff's Exhibit 28.  It's -- well, I'm
20 sorry.  Before we get to that document,
21 Mr. Smith, if you could go back to 27.
22 A         (Witness complies.)
23              I had a couple more questions on
24 that email.
25 A         All right.
Page 115

1 A          Yes.
2 Q          Did anybody ever tell you that they
3 were pulling documents off of draft privilege
4 logs?
5 A          No.
6 Q          Did anybody ever tell you that they
7 had logged documents that would reflect that El
8 Tigre, Somario, and Blanco had been paid but
9 then decided to pull them off that log?
10 A         Did somebody tell me what you just
11 said?
12 Q          Yes.
13 A         No.
14 Q          Did you have any idea that was going
15 on?
16 A         No.
17 Q          Learning it for the first time
18 today?
19 A         I -- I see what you're showing me.
20 Yes.  I don't --
21 Q          Okay.
22 A         Again, my testimony was pretty
23 clear:  I was not aware of any payments to the
24 two people you've just mentioned.
25 Q          Okay.  And when you're producing
Page 114

1 Q          In the second sentence -- I'm
2 sorry -- the second paragraph first sentence,
3 Mr. Collingsworth tells you, quote, "Please note
4 that all or virtually all of the 'security
5 payment' docs are going to be produced because
6 they are not privileged."
7              Did I read that correctly?
8 A          You did.
9 Q          And that was consistent with what
10 your understanding was at the time, which is
11 Judge Proctor has ordered the production of
12 witness payment information.  It's not
13 privileged; right?
14 A         Correct.
15 Q          All right.  Now we can go to the --
16 the other email.  That's tab 21, Plaintiff's
17 Exhibit 28.
18              And I want to direct your attention
19 to the email between you and Mr. Collingsworth
20 third from the top on the first page of this
21 email chain.
22 A         Okay.
23 Q          Mr. Collingsworth tells you, quote,
24 "Brad, there are thousands of pages" of
25 documents "and no they are not translated."
Page 116

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 29 (113 - 116)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 Susana created the notes so that you could
2 understand why we asserted the privilege with
3 the understanding that if you had a question
4 about any rationale she could explain the
5 documents to you.  Judge Proctor won't have the"
6 documents "at the hearing so you just need to be
7 comfortable that you understand the basis for
8 each entry.  We are very conservative."
9          Did I read that correctly?
10 A        **You did.**
11 Q        So was it your understanding that
12 Mr. Collingsworth was involved in the
13 preparation of the draft log and the privilege
14 calls that were made with respect to that log?
15 A        **Yes.**
16 Q        And he's telling you that they were
17 very conservative in those calls; right?
18 A        **That's it he says.  Yes.**
19 Q        All right.  Flip back to -- this is
20 tab 26; and it's going to be the October 10th,
21 2016, hearing -- 12 --
22          MR. WELLS:  Uh-huh.
23 Q        (By Mr. Presley)  Okay.  Exhibit 12.
24 A        **Okay.  (Witness complies.)**
25          And on page 21 -- I'm sorry -- 26,
                                          Page 117

1 A        **Correct.**
2 Q        All right.  Lets go to tab 33, and
3 this is Plaintiff's Exhibit 29.
4              (Plaintiff's Exhibit 29 was
5              marked for identification)
6 A        **Okay.**
7 Q        And it is a December 19th, 2013,
8 email chain involving you, Terry Collingsworth,
9 and Susana Tellez; right?
10 A        **Yes.**
11 Q        All right.  And Mr. Collingsworth
12 and Ms. Tellez are emailing you about the
13 preparation of a supplemental privilege log;
14 correct?
15 A        **Correct.**
16 Q        And consistent with the previous
17 draft logs that we looked at, is it your
18 understanding that the defendants were
19 responsible for putting together those draft
20 privilege logs for your review?
21          MR. PAULK:  Object to the form.
22 A        **Ask that question again.**
23 Q        (By Mr. Presley)  Yeah.  That was a
24 -- that was a poor question.
25          Same -- we looked at the emails
                                          Page 119

1 not 21, of this transcript, middle of the page;
2 this is the quote we had talked about earlier
3 where Judge Proctor asked you if payment
4 information is discoverable and the response is,
5 They are.  We think it is, "and we have produced
6 responsive documents.  With exception of one
7 that is on our Privilege Log, we have produced
8 all responsive documents."
9 A        **Correct.**
10 Q        Now, at the time you made that
11 representation to Judge Proctor; did you know
12 that the defendants had pulled documents off of
13 a draft privilege log that reflected payments to
14 El Tigre and Somario?
15          MR. PAULK:  Object to the form.
16 A        **I did not.**
17 Q        (By Mr. Presley)  Did you know they
18 had pulled documents off of a privilege log that
19 had reflected payments to Jaime Blanco?
20          MR. PAULK:  Object to the form.
21 A        **I didn't believe there were any**
22 **documents that would have reflected payments to**
23 **anybody but the three.**
24 Q        (By Mr. Presley)  Because that's
25 what you were told by the defendants?
                                          Page 118

1 earlier which showed that they were create --
2 the defendants were creating the draft privilege
3 logs; right?
4          MR. PAULK:  Object to the form.
5 A        **Correct.**
6 Q        All right.  And is that same thing
7 happening here, they're creating the draft
8 supplemental privilege logs?
9          MR. PAULK:  Object to the form.
10 A        **Yeah.  I think they created this**
11 **document.  Yes.**
12 Q        (By Mr. Presley)  Okay.  And
13 Ms. Tellez tells you in the top email that
14 basically the exact same privilege log we
15 previously produced on October 2nd is attached,
16 and then they have a supplemental log with it;
17 right?
18 A        **That's what it says.**
19 Q        All right.  And do you know whether
20 on that supplemental log those documents that we
21 had just looked at which were pulled off of the
22 draft log, do you know those -- whether those
23 were added to the supplemental log?
24 A        **Are you asking me are the entries**
25 **that -- on the log that I -- the log that I did**
                                          Page 120

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 30 (117 - 120)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1  **not see, are these on this one?**
2  Q        Right.  Let's do it this way:  I'll
3  represent to you that they are not on that
4  supplemental privilege log.
5  **A        Okay.**
6  Q        Do you know why that is?
7  **A        I don't.**
8  Q        All right.  Let's go to tab 34,
9  which will be Plaintiff's Exhibit 30.
10                (Plaintiff's Exhibit 30 was
11                marked for identification)
12  Q        And, Mr. Smith, this is a December
13  20th, letter from you to Drummond's counsel in
14  this case enclosing the supplemental privilege
15  log that we had just looked at in Plaintiff's
16  Exhibit 29; right?
17  **A        Is this the same one we just looked**
18  **at?**
19          **Is that what you're asking?**
20  Q        Right.  It's being produced to
21  Drummond the next day.
22  **A        It's the privilege log being**
23  **produced to Drummond.  Yes.  Everything that's**
24  **on it, I don't recall.**
25  Q        Okay.  Focusing just on the letter
                                        Page 121

1  for the moment, the second sentence of that
2  letter says, "These logs list privileged
3  documents, if any, responsive to Plaintiffs'
4  requests for production," and then it lists off
5  of a bunch of them; right?
6  **A        Yes.**
7  Q        And I'll represent to you that
8  plaintiffs' second request for production number
9  eight sought all communications with Ivan Otero.
10  **A        Okay.**
11  Q        All right.  Who are you relying on
12  to make that factual representation to Drummond
13  that all communications with Otero have been
14  logged?
15  **A        I would say Terry.  But I would also**
16  **say that at some point there were still a lot of**
17  **discussions, disputes, negotiations regarding**
18  **what was discoverable, what was to be logged.**
19  **And, ultimately, at the time I was getting out,**
20  **the parameters of logging and production were**
21  **negotiated, I think.  And Chris Niewoehner**
22  **probably played a bigger role in that than I**
23  **did, but I was involved in that.**
24  Q        But -- but there was no dispute in
25  December of 2013 that the fact of witness
                                        Page 122

1  payment information was relevant, discoverable,
2  and not privileged.  I mean, Judge Proctor had
3  entered an order --
4  **A        I think that's right.**
5  Q        -- about that.
6  **A        I think that's right.**
7  Q        All right.  Let's go to tab 28, and
8  this will be Plaintiff's Exhibit 31.
9                (Plaintiff's Exhibit 31 was
10                marked for identification)
11  Q        And this is an email from
12  Mr. Collingsworth to Bill Scherer, Billy
13  Scherer, Richard Drath, Lou Zehil, and Pauline
14  Koper.
15          Do you see that?
16  **A        Okay.**
17  Q        And it's dated November 8th, 2013.
18          You were -- you were not on this
19  email; right?
20  **A        No.**
21  Q        All right.  Now, do you know who Lou
22  Zehil is?
23  **A        No.**
24  Q        Do you know who Pauline Koper is?
25  **A        No.**
                                        Page 123

1          In any event, Mr. Collingsworth is
2  attaching Drummond's supplemental brief -- I'm
3  sorry -- defendant's supplemental brief in
4  opposition to Drummond's motion to compel;
5  right?
6  **A        Okay.**
7  Q        And this is a little over a month
8  after the draft privilege log documents that we
9  had looked at earlier in late September of 2013
10  and the pulling of those documents off the draft
11  log that you ultimately saw; right?
12  **A        Yes.**
13  Q        Okay.  And Mr. Collingsworth is
14  telling everyone on this email that Drummond is
15  making wild and false accusations and that the
16  Court's not going to be happy with Drummond;
17  right?
18  **A        Correct.**
19  Q        And then in the second paragraph he
20  kind of unloads on you.
21  **A        I see that.**
22  Q        And he says that you are, quote,
23  "extremely incompetent, which has caused our
24  office to do 99.99% of the work in" our -- in
25  this "case."
                                        Page 124

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 31 (121 - 124)

**Drummond Company, Inc. v. Terrence P. Collingsworth, et al.**

**Bradley J. Smith**
**11/21/2023**

---

**Page 125**

1 A        Okay.

2 Q        Now, do you feel that's a fair
3 characterization by Mr. Collingsworth?

4 A        I don't think he thought that; but,
5 no, I don't think that's a fair
6 characterization.

7 Q        Did you get the --

8 A        He certainly never expressed that to
9 me.

10 Q        That was my next question:  He never
11 expressed that thought to you, did he?

12 A        No.

13 Q        Did you get the impression when you
14 were working with Mr. Collingsworth that he
15 tended to blame others?

16 A        I don't know.  I don't know.  That's
17 -- I didn't have a personal relationship with
18 him.  He had enemies.

19 Q        Like who?

20 A        Drummond.

21 Q        Other than Drummond, who else?

22 A        Mike Hugo didn't like him.

23 Q        Anybody else you can recall?

24 A        Paul Wolfe.

25 Q        Who else?

---

**Page 126**

1 A        You know, I can't remember.

2 Q        Did you like Terry?

3 A        I did.  Yeah.  Yeah.  I didn't have
4 a problem with him.

5 Q        But he never told you you were
6 extremely incompetent to your face?

7 A        He did not.

8 Q        Just behind your back?

9 A        He certainly did not.  And I would
10 have been happy to have gotten out of it at that
11 point for sure.

12 Q        He says in closing there that I
13 wrote 100% of this brief because Brad still does
14 not have a clue of what is going on with the
15 facts or the law.  Cheers, Terry°; right?

16 A        Right.  I see that.

17 Q        Do you think it's fair for him to
18 say that you have no idea what's going on with
19 the facts when they're pulling documents off of
20 privilege logs that show that witnesses have
21 been paid?

22 A        Well, I don't know all of that.  So
23 I would think if he wrote the majority of it,
24 it's because he wanted to and pretty much
25 demanded to.  I know he wanted to have a heavy

---

**Page 127**

1 hand in writing everything for sure.

2 Q        Did you ever talk with a lawyer at
3 Conrad & Scherer named Jim Carroll?

4 A        No.  Never heard of him.

5 Q        Did you ever hear about a memo that
6 Jim Carroll had written in May of 2012 that
7 related to the Drummond case?

8 A        I remember some memo -- a memo, but
9 I don't remember that name.

10 Q        What do you remember about the memo?

11 A        I remember there being a couple of
12 memos about the propriety of paying witnesses.
13 Who wrote them I can't recall.

14 Q        Do you recall whether those memos
15 identified which witnesses had been paid?

16 A        No.  No.  There were -- I never saw
17 anything that did anything -- that identified
18 anyone other than the three that we've already
19 discussed.

20 Q        Okay.  I think now would be a -- a
21 good time for a break, at least for me.  I could
22 use a break.

23 A        All right.

24          THE VIDEOGRAPHER:  The time is
25 11:36 a.m.  We are off the record.

---

**Page 128**

1          (Short recess taken.)

2          THE VIDEOGRAPHER:  The time is
3 11:42 a.m.  We are back on the record.

4 Q        (By Mr. Presley)  Mr. Smith, did
5 you -- in preparation for this deposition, did
6 you review any of your billing records from the
7 defamation case?

8 A        I did not.

9 Q        Okay.  Do those still exist?

10 A        I don't know.  I would assume they
11 would.

12 Q        Okay.  Let me show you what has been
13 marked as Plaintiff's Exhibit 32.

14 A        Okay.

15          (Plaintiff's Exhibit 32 was
16           marked for identification)

17 Q        And we had touched on this earlier
18 in the deposition, but this is Drummond's
19 emergency motion for sanctions that was filed on
20 April 2nd, of 2014; right?

21 A        Okay.

22 Q        And let me show you -- give us one
23 second here.

24          MR. PRESLEY:  Do you have a clip
25 that I can put on this exhibit to keep it

---

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 32 (125 - 128)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 together?  Okay.  Perfect.  Thank you.
2 Q          (By Mr. Presley)  All right.
3 Mr. Smith, let me show you Exhibit 33 --
4          MR PRESLEY:  -- which is tab 54 for
5 the exhibit coordinator.
6          (Plaintiff's Exhibit 33 was
7          marked for identification)
8 Q          This is an April 7, 2014, email from
9 you to Mr. Collingsworth -- or I'm sorry -- from
10 Mr. Collingsworth to you.
11 **A          Okay.**
12 Q          And --
13          MR. PAULK:  If we could just get the
14 Bates number.
15          MR. PRESLEY:  Yeah.  Give me just a
16 second.  Having to share a copy here.
17 Q          (By Mr. Presley)  So this is -- this
18 is a few days after Drummond filed its emergency
19 motion for sanctions; right?
20 **A          Yes.**
21 Q          Okay.  And consistent with how we've
22 seen in other emails that you've looked at
23 today, this is Mr. Collingsworth sending you a
24 draft opposition to that motion for sanctions;
25 correct?

Page 129

1 **A          Yes.**
2 Q          And consistent with what you
3 testified to earlier, this was generally how it
4 operated because Mr. Collingsworth insisted on
5 having a heavy hand in drafting these type of
6 filings; right?
7 **A          Seems like this -- these type**
8 **discovery motions, yes, he was more so than**
9 **others.**
10 Q          Okay.  And then let me see tab 102,
11 which is Plaintiff's Exhibit 34.
12          (Plaintiff's Exhibit 34 was
13          marked for identification)
14 **A          Okay.**
15 Q          This is the filed version of the
16 Defendants' opposition to Drummond's motion for
17 sanctions; is that right?
18 **A          Correct.**
19 Q          And this is document 114 in the
20 defamation case.
21          On page one at the bottom, second
22 sentence of the very last paragraph says, quote,
23 "There is absolutely no issue of the propriety
24 of the Defendants' searches or the completeness
25 of their production."

Page 130

1          Do you see that?
2 **A          Yes.**
3 Q          And so was it -- and -- well, let's
4 just confirm:  That's your signature on the page
5 30 of this brief; right?
6 **A          Yes.**
7 Q          And so that representation that's
8 being made on page one of this brief that you
9 signed is based on information that you're
10 receiving from the defendants; correct?
11          MR. PAULK:  Object to the form.
12 **A          Yes.  And our understanding of what**
13 **the facts were at the time.**
14 Q          (By Mr. Presley)  And that
15 understanding came from the defendants as far as
16 who was paid; correct?
17          MR. PAULK:  Object to the form.
18 **A          Yes.**
19 Q          (By Mr. Presley)  Okay.  Page nine
20 of that brief, there's a header number three in
21 bold text.
22 **A          Okay.**
23 Q          Says, quote, "The Privileged Emails
24 Between" Parker Waichman "and Mr. Collingsworth
25 Reveal that There Was a Discussion about Whether

Page 131

1 They Could Cover Additional Attorney Fees
2 Incurred by Jaime Blanco for Testifying, and
3 Ultimately Did Not Do So."
4          Did I read that correctly?
5 **A          You did.**
6 Q          And that, again, is consistent with
7 what you're being told by the defendants; which
8 is we discussed paying Jaime Blanco, but we
9 didn't make those payments?
10          MR. PAULK:  Object to the form.
11 **A          I think so.  I think there was an**
12 **email that referenced that that we've already**
13 **gone over.**
14 Q          Okay.  Now, let's look at tab 62,
15 please.
16          (Plaintiff's Exhibit 35 was
17          marked for identification)
18 **A          Okay.**
19 Q          And you'll recall there was an
20 exhibit we marked earlier that was the hearing
21 transcript from April 21, 2014, with Judge
22 Proctor, right, on the motion for sanctions?
23 **A          Say that again.**
24 Q          Sure.
25          That you recall that there was an

Page 132

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 33 (129 - 132)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 exhibit that we marked earlier --
2          MR. PRESLEY:  What was that exhibit,
3 Trey?  Tab 60?
4 Q          Exhibit 23 was the hearing
5 transcript on Drummond's motion for sanctions --
6 A          **Okay.**
7 Q          -- on April 21, 2014?
8 A          **Yes.**
9 Q          So this is three -- a couple of days
10 after that, right, this email chain we're
11 looking at?
12 A          **Yes.**
13 Q          Plaintiff's Exhibit 35.
14          And it's an email chain between you
15 and Mr. Collingsworth.
16          And email chain starts with you
17 telling Mr. Collingsworth that you don't want to
18 deal with another motion for sanctions; right?
19 A          **That's correct.  That would be a**
20 **fact.**
21 Q          And Mr. Collingsworth's response to
22 you is, You're overreacting.
23          Do you see that?
24 A          **Yes.**
25 Q          And he says, "Brad I need to say

Page 133

1 that your first reaction to Drummond's bullshit
2 emergency motion for my hard drives was to give
3 up and produce our hard drives.  We are going to
4 fight all reasonable positions to protect MY
5 interests."
6          Do you see that?
7 A          **Yes.**
8 Q          Did you --
9 A          **Yes.**
10 Q          And at this time, Mr. Collingsworth
11 is still telling you, like he's told Judge
12 Proctor, that three witnesses have been paid;
13 right?
14 A          **Yes.**
15 Q          And you respond "I hope it was an
16 overreaction" and "We certainly dodged a bullet
17 yesterday."
18          Do you see that?
19 A          **Yes.**
20 Q          Now, you also recall -- and we can
21 look at the transcript if we need to -- but one
22 of the things that Judge Proctor did at that
23 hearing on April 21st is he said, All right.  I
24 want everybody to brief the crime fraud
25 exception.

Page 134

1          Do you recall that?
2 A          **I don't recall it, but --**
3 Q          All right.
4 A          **-- I -- I can accept your --**
5 Q          All right.
6 A          **-- your representation.  Yes.**
7 Q          Okay.  And he also entered an order
8 that required the defendants to preserve their
9 hard drives and emails and computers.
10          Do you recall that?
11 A          **I do.  Yes.**
12 Q          Okay.
13 A          **Yes.**
14          Now, safe to say that following the
15 crime -- the sanctions hearing in April of 2014,
16 everyone is laser focused on witness payments at
17 that point; right?
18          The crime fraud exception is being
19 briefed.  The whole premise of the crime fraud
20 exception is the scope, nature, and extent and
21 misrepresentations about witness payments;
22 right?
23          MR. PAULK:  Object to the form.
24 A          **I don't know if I recall it that**
25 **way.  I can recall that I was still focused on**

Page 135

1 **defending a defamation action and getting it to**
2 **summary judgment; which, you know, could never**
3 **get it on course.  But that's what my focus was.**
4 **And I certainly didn't think there were any**
5 **other witness payments.**
6 Q          Let's look at -- let's look at tab
7 -- I think this has already been marked.
8          MR. PRESLEY:  79, has that been
9 marked yet?
10          MR. WELLS:  Huh-uh.
11          MR. PRESLEY:  Okay.  Let me get tab
12 79.
13          (Plaintiff's Exhibit 36 was
14          marked for identification)
15 Q          (By Mr. Presley)  All right.
16 Mr. Smith, this is document 36.  And what I'm --
17 I'm sorry -- Exhibit 36.  Yeah.  Tab 79.
18 A          **Yes.**
19 Q          And this is an email from you to
20 Billy Scherer on June 25th, of 2014; right?
21 A          **Yes.**
22 Q          And attached to it is Judge
23 Proctor's order from April 21st.  And in
24 paragraph two of that order --
25 A          **Yes.**

Page 136

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 34 (133 - 136)

**Drummond Company, Inc. v. Terrence P. Collingsworth, et al.**

**Bradley J. Smith**
**11/21/2023**

1 Q        -- is the direction about preserving
2 all emails and electronic data; right?
3 A        **Yes.**
4 Q        Okay.
5 A        **Yes.**
6 Q        And then number nine of that same
7 order, paragraph nine, Judge Proctor's ordering
8 everybody to brief the crime fraud exception.
9 A        **Yeah.  I see that.**
10 Q       All right.  Okay.  So you had
11 mentioned earlier in your deposition that you
12 recalled asking Terry Collingsworth what had
13 been searched and that you got a memo or
14 something to that effect.
15          Do you recall that testimony?
16 A        **I thought I recall -- well --**
17 Q        Let's -- let's get tab 46.
18 A        **All right.**
19 Q        This may help --
20 A        **Okay.**
21 Q        -- refresh your recollection.
22          (Plaintiff's Exhibit 37 was
23              marked for identification)
24 Q        All right.  This is Plaintiff's
25 Exhibit 37.
Page 137

1          MR. PRESLEY:  Tab 46 for the exhibit
2 coordinator.
3 Q        This is a March 18th, 2014, email
4 from Mr. Collingsworth to you copying Susana
5 Tellez; right?
6 A        **Yes.  So this would have been**
7 **something, yeah, that I think probably Trey**
8 **would have sent asking what we were searching;**
9 **and this would have been any response --**
10 Q       Okay.
11 A        **-- is my recollection --**
12 Q        Okay.
13 A        **-- of what this probably was.**
14 Q        Okay.  So -- right.  And that would
15 be consistent with the cover email.
16 Mr. Collingsworth is telling you "Brad, here is
17 our draft response" --
18 A        **Yeah.**
19 Q        -- "to the questions you agreed to
20 answer re: IRAdvocates' servers and emails."
21 A        **Yes.**
22 Q        Okay.  So Mr. Collingsworth then is
23 attaching a document which tells you everything
24 they searched with respect to IRAdvocates;
25 right?
Page 138

1 A        **Yes.**
2 Q        And under the section that says,
3 "The following email accounts and computers have
4 been searched," very first one listed is
5 Terrence Collingsworth searched
6 tc@iradvocates.org, terrypc@gmail.com and his
7 work desktop and laptop."
8          Do you see that?
9 A        **I do.**
10 Q       Let's look at tab 86.
11          (Plaintiff's Exhibit 38 was
12              marked for identification)
13 Q        All right.  Mr. Smith, this is
14 Plaintiff's Exhibit 38 --
15 A        **Okay.**
16 Q        -- tab 86.
17          And I recognize that you are not on
18 this email chain; correct?
19 A        **I am not.**
20 Q        Okay.  But you do see that
21 Charity -- a woman named Charity Ryerson is on
22 this email chain?
23 A        **Yes.**
24 Q        And you recall we looked at an
25 exhibit earlier which reflected that Charity
Page 139

1 Ryerson was a member of Collingsworth's
2 litigation team and someone that Drummond had
3 sent a subpoena to?
4 A        **Yes.**
5 Q        All right.  So she and a couple of
6 other people; Matthew Wells and Jenny Xie,
7 spelled X-i-e; are discuss --  discussing what
8 appear to be searches of Mr. Collingsworth's
9 emails; right?
10 A        **Yes.**
11 Q        Okay.  And Mr. Ryer -- Ms. Ryerson
12 says in the very top email, "Well, another
13 exciting twist in this is that there is about an
14 18 month period in which Terry's emails are
15 lost.  Sometime in 2010 and 2011 as I recall, so
16 that might" explain -- "explain the problem.  He
17 will probably need to explain this in an
18 affidavit at some point."
19          Did I read that correctly?
20 A        **You did.**
21 Q        Now, did Ms. Ryerson ever come to
22 you and tell you that 18 months of Terry's
23 emails were lost?
24 A        **I don't recall.**
25 Q        Did anyone ever come to you and tell
Page 140

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 35 (137 - 140)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 you that?
2 A          I don't recall.
3 Q          Did -- before today sitting here in
4 this conference room, were you aware that there
5 were emails from Mr. Collingsworth that were
6 missing?
7 A          I just don't remember.
8 Q          Okay.  Let me rephrase that question
9 because it was a little unclear.
10 A          If I was aware of it, it would have
11 been disclosed at some point.
12 Q          Okay.
13 A          And if I disclosed it, I'm sure
14 you're about to show it me.
15 Q          Okay.  Well, I'll represent to you
16 that it wasn't disclosed until 2015 --
17 A          Okay.
18 Q          -- to Drummond.
19            Did you have any hand in the
20 discussions about disclosing that fact to
21 Drummond, any participation in those
22 discussions?
23 A          I don't recall it being --
24 Q          Okay.
25 A          I -- I -- I just don't recall.

Page 141

1 Q          All right.  When this litigation
2 started and you first came on board with
3 Mr. Collingsworth -- as counsel -- as counsel
4 for Mr. Collingsworth and Conrad & Scherer, did
5 you give any type of verbal instruction to the
6 defendants that they needed to preserve all
7 emails?
8 A          I don't recall.  I usually would do
9 that, but I don't recall specifically doing it.
10 Q          Given --
11 A          I don't recall.
12 Q          Sorry.  Are you done?
13 A          I am.
14 Q          Given that the defendants are a
15 lawyer and a law firm, would you expect them to
16 understand the obligation to preserve evidence
17 in a lawsuit?
18            MR. PAULK: Object to the form.
19 A          I would, but I don't think anybody
20 would have ever dreamed that the actual
21 attorneys' emails were going to be discoverable.
22 You know, you don't usually think that's going
23 to happen in a case.  Well, I guess they were
24 defendants.  So I just don't recall any of that.
25 I -- I assume there probably was.  You know,

Page 142

1 that was 2011.  I don't know what the state of
2 E-discovery was at that time, what the rules
3 said at that time.  But I -- I normally do that.
4 Q          Okay.  But, regardless, no one ever
5 came to you and said, There's 18 months of
6 Terry's emails that are missing?
7 A          I just don't recall.  I don't recall
8 that.
9 Q          Okay.  All right.  Let's go back to
10 the crime fraud opinion --
11            MR. PRESLEY:  -- which is tab 98
12 for the exhibit coordinator.
13            MR. WELLS:  Exhibit 6.
14 Q          (By Mr. Presley)  Exhibit 6.
15 A          (Witness complies.)  Okay.
16            All right.  And I direct your
17 attention to page 31 of that opinion.
18 A          (Witness complies.)  Okay.
19 Q          And the heading at the top of page
20 31, Judge Proctor is telling the parties in this
21 order that another topic of discovery is going
22 to be the redaction and withholding of documents
23 produced by defendants in May of 2014 which
24 reflected that payments to El Tigre and Somario
25 had been made; right?

Page 143

1 A          Yes.
2 Q          Okay.  Are you familiar with that
3 production and the redaction of those documents?
4 A          Yes.
5 Q          Okay.
6 A          Yes.
7 Q          So you recall then that in -- in May
8 of 2014, there were documents that were produced
9 to Drummond which were partially redacted --
10 A          Correct.
11 Q          -- right?
12            Okay.  And underneath some of those
13 redactions were monthly payments to Ivan Otero
14 in the amount of $2700; right?
15 A          I don't recall what was specifically
16 redacted.
17 Q          Okay.  Do you recall that they were
18 -- there was information redacted which would
19 have reflected that those payments -- that there
20 had been monthly payments to Ivan Otero for El
21 Tigre and Somario?
22            MR. PAULK: Object to the form.
23 A          I recall that those were something
24 that we referred to as financing documents I
25 think.  And I was getting something from Trey

Page 144

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 36 (141 - 144)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 about every two days about when we were going to
2 produce the financing documents, and so I was
3 doing my best to produce the financing
4 documents.  They had to be -- if I understand --
5 if I recall, they had to be located in a
6 warehouse somewhere maybe.  They were eventually
7 provided to us.  We were about to produce them,
8 and Terry asked us to redact all that in order
9 to produce them or -- to redact them.  And that
10 was the only way we were going to get them
11 produced.  And I think there was an email that I
12 saw yesterday that refers to that process.
13 Q        (By Mr. Presley)  Okay.
14 A        That's what I remember about it.
15 What specifically was being redacted as I sit
16 here today, I don't recall.
17 Q        Okay.  Let's look at some of those
18 emails.  Let's go to tab 65, please.
19 A        All right.
20          (Plaintiff's Exhibit 39 was
21           marked for identification)
22 Q        All right.  This is Plaintiff's
23 Exhibit 39.
24 A        Okay.
25 Q        And this is an April 25th, 2014,

1 A        The redactions?
2 Q        Just the documents in general?
3 A        This (indicating)?
4 Q        Yes.
5 A        So he would approve what was
6 redacted so I could produce them.
7 Q        Okay.  So the redactions that have
8 been made on these documents -- and there's a
9 couple of hand -- what I would call Sharpie
10 redactions.
11 A        I think they were all.  And if I
12 recall, it was over a weekend.  And I think I
13 had said -- told Trey that we're going to get
14 these to you.  And I was pretty adamant that we
15 were going to get them to them.
16 Q        Right.
17          My question is --
18 A        And I -- we -- we didn't have staff
19 to do an electronic redaction over the weekend.
20 Q        Okay.
21 A        That's why it was done with a
22 Sharpie.
23 Q        Okay.  So your office is doing the
24 black Sharpie redactions?
25 A        Myself and Eric Bonner did all of

1 email from you to Mr. Collingsworth; right?
2 A        Yes.
3 Q        Okay.  And it attaches what appears
4 to be a scan of several pages of documents; is
5 that right?
6 A        Yes.
7 Q        All right.  And you'll see the first
8 page of that scan includes monthly wires to
9 Charris and to Halcon; right?
10 A        Well, let's see.  Okay.
11 Q        All right.  And then flip with me to
12 the very last page of the attachment.
13 A        Okay.  (Witness complies.)  Okay.
14 Q        And on that email; which is dated
15 June 19th, of 2012; it relates to several wires,
16 none of which are redacted; right?
17 A        In the email?
18 Q        Yes.
19 A        I see monthly wire requests, wires
20 to -- yes.  Okay.
21 Q        There's a -- there's a wire request
22 to Ivan Otero for $2700; right?
23 A        Yes.
24 Q        Okay.  Why are you sending these
25 documents to Terry on April 25th?

1 them.  Yes.
2 Q        Okay.  And you are, I think you said
3 a second ago, sending this to Mr. Collingsworth
4 so that he can approve the redactions?
5 A        That's correct.
6 Q        All right.  Let's look at tab -- I
7 lost my place here.  Hold on just a second --
8 66.  Yeah.  66, please.
9          MR. PRESLEY:  Thank you.
10          (Plaintiff's Exhibit 40 was
11           marked for identification)
12 Q        All right.  This is Plaintiff's
13 Exhibit 40, Mr. Smith.
14 A        Okay.
15 Q        And this is the next day, April
16 26th, email chain, you and Mr. Collingsworth;
17 right?
18 A        Yes.
19 Q        Okay.  And I just want to focus your
20 attention on the top email from
21 Mr. Collingsworth.  He's saying to you "Let me
22 know if we need further discussion on this and
23 whether you are unclear as to how documents
24 needs to be redacted."
25 A        That's correct.

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 37 (145 - 148)

**Drummond Company, Inc. v. Terrence P. Collingsworth, et al.**

**Bradley J. Smith**
**11/21/2023**

---

1 Q          All right.  So that's -- that
2 reflects what you just said earlier, which is to
3 the extent there are documents being redacted;
4 the information that is supposed to be redacted,
5 you are getting that from Mr. Collingsworth?
6 A          That is correct.
7 Q          All right.  Let's look at tab 69.
8               (Plaintiff's Exhibit 41 was
9               marked for identification)
10 Q          This is Plaintiff's Exhibit 41 --
11 A          Okay.
12 Q          -- which is another email between
13 you and Mr. Collingsworth a couple of days later
14 on March -- on April 28th, of 2014; right?
15 A          Yes.
16 Q          And, again, you're attaching a large
17 PDF attachment of documents that have been
18 redacted; right?
19 A          That is correct.
20 Q          And is the purpose the same here:
21 You're sending these to Mr. Collingsworth so
22 that he can review the redactions that you've
23 done with the information he's provided and
24 approve them?
25 A          That's correct.

Page 149

---

1 recall that Mr. Collingsworth give you to redact
2 these documents?
3 A          Not that I can recall as I sit here
4 today.  I think we had an expectation too that
5 these were probably going to go en camera in
6 front of -- I don't know if there was a special
7 master at that time or a magistrate judge.
8 Q          Okay.  Let's look at tab 72, please.
9               (Plaintiff's Exhibit 42 was
10               marked for identification)
11 Q          And this will be Plaintiff's Exhibit
12 42.
13 A          Okay.
14 Q          So we've looked at some emails that
15 were redacted, right --
16 A          Yes.
17 Q          -- in the past couple of exhibits?
18          You told there were also bank
19 records that were produced in May of 2014 by the
20 defendants?
21 A          I don't recall.  I recall everything
22 that was redacted over that long weekend; which,
23 I think, that's what these are; were related to
24 the production of financing documents.
25 Q          Okay.

Page 151

---

1 Q          All right.  Let's look to Bates
2 number CS_TC132422 on the attachment.  132422.
3 A          Okay.  (Witness complies.)
4 Q          And do you recognize this email to
5 be another copy of that June 19th, 2012, email
6 that we had looked at earlier that you had sent
7 Mr. Collingsworth?
8 A          Appears to be.
9 Q          And now it's redacted, the Ivan
10 Otero payments?
11 A          Yes.
12 Q          And that would have been done
13 pursuant to Mr. Collingsworth's instructions?
14 A          Yes.
15 Q          Did he tell you why that payment
16 needed to be -- that -- that information needed
17 to be redacted?
18 A          If I recall, I think he was always
19 concerned that y'all could trace his
20 investigation in Colombia.
21 Q          That payments to Ivan Otero would
22 reflect fact investigation?
23 A          Maybe.  Maybe.  Don't hold me to
24 that.  It was something along those lines.
25 Q          Any other reasons that you can

Page 150

---

1 A          That's what I recall.
2 Q          All right.  Now, this email
3 Collingsworth is sending to Grace Kaissal and
4 Susana Tellez.
5          Do you know who grace Kaissal is?
6 A          I don't.
7 Q          Okay.  In any event, the subject is
8 Brad's docs one of two.
9          Do you see that?
10 A          I do.
11 Q          So are these documents that you also
12 redacted pursuant to Mr. Collingsworth's
13 instructions?
14 A          It looks like it because they were
15 done with a Sharpie.
16 Q          All right.  So one question I have
17 is:  It looks like there's two different kinds
18 of redactions on this document; right?
19          There are the Sharpie redactions
20 that we've been talking about --
21 A          Right.
22 Q          -- and then there are just complete
23 white-out's of transactions.
24 A          I don't see that.
25 Q          Well, let's just look at the first

Page 152

---

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 38 (149 - 152)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 -- the first attachment -- or the first page of
2 the attachment.
3            I mean, this is a bank statement,
4 right, from Conrad & Scherer's operating
5 account?
6 **A        Appears to be.**
7 Q         All right.  And then it has
8 withdrawals and the activity description and
9 date columns?
10 **A       Yes.**
11 Q         So, I mean, does it not appear to
12 you that there are transactions there where
13 there's white that have been whited out for some
14 reason?
15 **A        I don't know.  I assume that's been**
16 **asked some -- I can tell you I didn't white out**
17 **anything on any documents.**
18 Q         All right.  There you go.
19            When you got these documents, the
20 bank records, from -- well, let's ask that
21 question first:  Did Mr. Collingsworth send you
22 all these bank records for redaction?
23 **A        If I recall --**
24            THE WITNESS:  And, William, you may
25 want to listen to this closely and object.  I --

Page 153

1 because I don't know where we're getting.
2 **A        If I recall, we were going to**
3 **produce all of them; and we were ready to**
4 **produce them.  And at the last minute, a**
5 **decision was made that redactions need to be**
6 **made in there.  And I kind of did them all**
7 **weekend so they can be produced and meet a**
8 **deadline that we had -- had told y'all we were**
9 **going to meet.**
10 Q         (By Mr. Presley)  Whose --
11 **A        That's what my recollection was.**
12 Q         Whose last-minute decision was it to
13 redact the documents?
14 **A        Terry's.**
15 Q         Okay.
16 **A        And I think there's some emails that**
17 **reflect that.**
18 Q         But as far as what I'm going to call
19 the white-out redactions on these, you don't
20 know who performed those?
21 **A        I don't.  I don't.**
22 Q         Or what the reason was for it?
23 **A        I don't.  Or if it was even there**
24 **when I saw it.**
25 Q         But the Sharpie redactions --

Page 154

1 **A        They're --**
2 Q         -- are redactions that your office
3 made with information and at the direction of
4 Terry Collingsworth?
5 **A        That's correct.**
6 Q         All right.  Other than -- you -- you
7 mentioned a last-second decision to redact the
8 documents, right, made by Terry?
9 **A        Yes.**
10 Q         Was there anything other than the
11 payments to Ivan Otero that the decision was
12 made at the last second We need to redact these.
13 **A        I don't recall.  I don't recall.  My**
14 **guess would be it was a specific, you know,**
15 **formula, I guess, of what was to be redacted.**
16 **And there was some discussion about it.  I**
17 **remember that.  But, specifically, I -- I don't**
18 **recall.**
19 Q         And who were those discussions
20 between?
21 **A        Myself, Terry, and Eric Bonner.**
22 Q         And were those on the telephone?
23 **A        I believe so.**
24 Q         All right.  Let's look at tab 73,
25 please.  This is Plaintiff's Exhibit 43,

Page 155

1 Mr. Smith.
2            (Plaintiff's Exhibit 43 was
3            marked for identification)
4 **A        Okay.**
5 Q         And this is an email from your
6 assistant, Alana Duke -- am I saying that right?
7 Alana?  Alana?
8 **A        Alana.**
9 Q         Alana Duke to Mr. Collingsworth and
10 Susana Tellez with a cc to you; right?
11 **A        Yes.**
12 Q         And due to the size of this email
13 and the attachments, the only attachment that I
14 have included in this exhibit is the chart which
15 is listed as the first -- first or second
16 attachment there.
17 **A        Okay.**
18 Q         And I'll represent to you that when
19 Drummond received the production of these
20 documents in May of 2014; in addition to
21 documents being redacted to -- well, in addition
22 to Ivan Otero -- payments to Ivan Otero in the
23 amount of $2700, which are for El Tigre and
24 Somario, being redacted; the documents that were
25 produced were not in sequential Bates label

Page 156

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 39 (153 - 156)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

---

1 order. There were gaps in that production, and
2 those gaps are reflected on this chart here in
3 front of you. So if you look at it, I mean,
4 just the first four entries; it's apparent that
5 it's not a sequential production.
6          Do you see that?
7 A        Yes.
8 Q        Why did that happen?
9 A        No idea. Who -- who did this
10 spreadsheet? Is that something y'all did, or is
11 that something that Alana attached to the
12 production?
13 Q        That was attached to this email?
14 A        This was?
15 Q        That was attached to the email that
16 Alana is sending to Mr. Collingsworth.
17 A        Yeah. I don't have any idea or
18 recollection of that.
19 Q        Okay. So if, in fact, there were
20 documents removed from this production; was that
21 a decision that was made by your office or by
22 Mr. Collingsworth?
23 A        I just don't recall. I -- I don't
24 recall what -- I just don't remember anything
25 about that.

Page 157

---

1 Q        Okay. Other than you and
2 Mr. Bonner, was anybody else in -- involved in
3 the hand redaction of these documents?
4 A        I don't think so.
5 Q        Other than Mr. Collingsworth, was
6 anybody involved on the defendant's side in
7 giving you information as to how to redact those
8 documents?
9 A        I don't think so.
10 Q       Do you know now sitting here today
11 that the Ivan Otero payments that were $2700 per
12 month which was redacted were, in fact, payments
13 that were going to El Tigre and Somario?
14 A       I don't. No.
15 Q       But the state of the world at the
16 time these redactions were made is witness
17 payments are relevant, discoverable, and not
18 privileged; right?
19          That's your understanding of the
20 case?
21 A       I think so. Yeah.
22 Q       At what point did you first have
23 communications with Ken McNeil?
24 A       Well, you know, he was doing
25 document production and privilege logs related

Page 158

---

1 to another case that the same information was
2 being requested. So the first time I -- I don't
3 know. He called me one day. I don't -- when it
4 was, I don't know.
5 Q        And the other case -- Who were Ken
6 McNeil's clients in the other case?
7 A        Conrad & Scherer.
8 Q        And you said he called you one day?
9 A        I think so. Yeah.
10 Q       Was it out of the blue?
11 A       I don't recall.
12 Q       Do you recall having a -- getting a
13 heads up from anybody that Ken McNeil would be
14 calling you or what he wanted to discuss with
15 you?
16 A       I don't. I don't recall.
17 Q       Do you have an approximate time
18 frame as to when that first call with Mr. Ken
19 McNeil was?
20 A       I don't. I don't.
21 Q       What is your understanding of the
22 nature of the case that Mr. McNeil represented
23 Conrad & Scherer in?
24 A       Conrad & Scherer attorney had left
25 the firm and taken a bunch of tobacco cases.

Page 159

---

1 And they had sued him, I believe. And I think
2 his defense was that maybe counsel was paying
3 witnesses maybe, something like that. I don't
4 know.
5 Q        Okay. So it was your understanding
6 that payments to witnesses was an issue in that
7 case as well?
8 A        At some --
9          MR. PAULK: Object to --
10 A       -- point I realized --
11          MR. PAULK: Well, I'm objecting to
12 the form; but you can go ahead.
13 A       Okay. At some point I realized that
14 the attorneys in that case were asking the same
15 exact questions that Drummond was asking.
16 Q       (By Mr. Presley) Okay. Did you
17 ever talk with a lawyer named Bill Wichmann?
18 A       No. That was the defendant in that
19 case or --
20 Q       Did you ever talk with his lawyer?
21 A       Who was it?
22 Q       (No response.)
23 A       I don't know that I would have ever
24 had a reason to.
25 Q       Okay. How often during your

Page 160

---

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 40 (157 - 160)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 representation of Conrad & Scherer and Terry
2 Collingsworth would Billy Scherer send you
3 documents?
4 **A**          Not often.
5 Q          How often would -- well, let me ask
6 you this:  When people did send you documents
7 from Conrad & Scherer; typically, who was it
8 that was sending those documents?
9 **A**          Terry.
10 Q          Or one of his assistants?
11 **A**          Yeah.
12 Q          Okay.  And what was your
13 understanding of Billy Scherer's involvement in
14 the Wichmann case?
15 **A**          I don't -- I don't know.  Don't have
16 **any idea.**
17 Q          Billy Scherer left Conrad & Scherer
18 for a period of time.
19          Do you have any knowledge as to why
20 he did that?
21 **A**          I don't.
22 Q          Okay.  I think this is a good break
23 point, and we're about to be -- we're close to
24 the end.
25 **A**          Okay.
                                              Page 161

1 Q          So if we want to go ahead and eat
2 lunch real quick, and then it -- it won't be
3 very much longer.
4 **A**          Okay.
5          THE VIDEOGRAPHER:  The time is
6 12:23 p.m.  We are off the record.
7          (The lunch recess was taken.)
8          THE VIDEOGRAPHER:  The time is 1
9 o'clock p.m.  We are back on the record.
10 Q          (By Mr. Presley)  All right.
11 Mr. Smith, before we broke for lunch, we had
12 talked about the hearing on Drummond sanctions
13 motion in April of 2014 and Judge Proctor's
14 order about preservation and then briefing the
15 crime fraud exception.
16          Do you recall that?
17 **A**          Yes.
18 Q          Okay.  And so let me show you
19 Exhibit 44.
20          MR. PRESLEY:  This is tab 77 for the
21 exhibit coordinator.
22          (Plaintiff's Exhibit 44 was
23            marked for identification)
24 Q          If you would, just read the -- the
25 email there on the first page of the exhibit;
                                              Page 162

1 and then let me know and you're ready.
2 **A**          (Witness complies.)  Okay.
3 Q          All right.  This is a June 24, 2014,
4 email from Billy Scherer to you; correct?
5 **A**          Yes.
6 Q          And it copies Ken McNeil?
7 **A**          Yes.
8 Q          Who we talked about earlier; right?
9 **A**          Yes.
10 Q          He was the lawyer who was
11 representing the firm, Conrad & Scherer, in the
12 Wichmann case; correct?
13 **A**          Yes.
14 Q          All right.  And then the other cc
15 people Mr. Stuart Kusin, Jordan Connors, and
16 Abigail Noebles.
17          Do you know who those people are?
18 **A**          I do not.
19 Q          Okay.  In any event, the subject of
20 Billy Scherer's email to you is called "Drummond
21 and Wichmann"; right?
22 **A**          Yes.
23 Q          And I think you testified earlier
24 that it was your understanding that the issue of
25 witness payments had come up in the Wichmann
                                              Page 163

1 case as well?
2 **A**          Yes.
3 Q          Now, Billy Scherer is emailing to
4 you several attached documents; right?
5 **A**          Yes.
6 Q          All right.  Why is he emailing you
7 these documents?
8 **A**          I don't recall.
9 Q          In any event, Ken McNeil forwards
10 this email to Bill Scherer; right?
11 **A**          That's what it looks like.
12 Q          Okay.  This was, I believe, the
13 first time that I saw that Billy Scherer emailed
14 you documents.
15          Do you have a recollection of him
16 emailing you documents on any other occasion?
17 **A**          I don't recall.
18 Q          Okay.  Was Billy Scherer performing
19 his own searches for documents that related to
20 witness payments?
21          MR. PAULK:  Object to the form.
22 Q          (By Mr. Presley)  Do you know?
23 **A**          I don't know.
24 Q          His email to you says that he's come
25 "across two internal memos on researching the
                                              Page 164

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 41 (161 - 164)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 propriety of witness payments."
2          Do you see that?
3 **A          Yes.**
4 Q          Okay.  And then he also references
5 Jaime Blanco asking to be paid $150,000 in May
6 of '11; right?
7 **A          Yes.**
8 Q          And then, quote, "Other
9 miscellaneous payments," end quote, that are
10 discussed in the emails, which he attaches;
11 right?
12 **A          Yes.**
13 Q          Okay.  There is an associate that he
14 references named Jerry Tamayo in the Fort
15 Lauderdale office.
16          Did you ever have any conversations
17 with Jerry Tamayo?
18 **A          I did not.**
19 Q          All right.  Let's look at Bates
20 label -- one second -- 95844.
21 **A          (Witness complies.)  Okay.**
22 Q          And I'll represent to you that this
23 email from Mr. Collingsworth, which is dated May
24 22nd, of 2011, and is to various Parker Waichman
25 lawyers and copies Richard Drath and Bill
*Page 165*

1 Scherer and has the subject Other Developments;
2 this is what we call in this case the deps in
3 the can email.
4 **A          Okay.**
5 Q          All right.  And you see down in
6 number ten of Mr. Collingsworth's email point
7 ten.
8          Do you see that?
9 **A          Yes.**
10 Q          And he refers to having given Ivan
11 "$5,400 for security costs for him, ET and
12 Somario."  And then "Need to pay $2,700 per
13 month to maintain until we get the deps in the
14 can."
15          Do you see that?
16 **A          Yes.**
17 Q          Okay.  Is this the first time that
18 you saw this email --
19 **A          Yes.**
20 Q          -- "this" being June 24, of 2014?
21 **A          Yes.**
22 Q          Do you recall receiving this email
23 from Billy Scherer?
24 **A          Yes.**
25 Q          Okay.  And what did you do after you
*Page 166*

1 received this email from Billy Scherer?
2 **A          I talked to Terry about it and then**
3 **thought that it either needed to be logged or**
4 **produced.**
5 Q          Okay.  You talked to Terry about all
6 of the attachments that Billy Scherer has put
7 upon --
8 **A          Yes.**
9 Q          -- on this email?
10 **A          Yes.**
11 Q          As well as the deps in the can email
12 that they need to be logged or produced?
13 **A          Yes.**
14 Q          Because it reflects payments being
15 made to El Tigre and Somario?
16 **A          Yes.**
17 Q          And we can look back at the exhibits
18 that we looked at earlier when we talked about
19 redaction of documents that were produced in May
20 of 2014, about a month earlier.  But you recall
21 that these redactions were made to those $2700
22 monthly payments to Ivan Otero?
23          Do you recall that?
24 **A          I don't recall.**
25 Q          All right.  Let's look at tab 71.
*Page 167*

1          MR. WELLS:  This is going to be a
2 skip.
3          MR. PRESLEY:  That's fine.
4 Q          (By Mr. Presley)  All right.  Here's
5 just an example of what I'm talking about,
6 Mr. Smith.  This is Plaintiff's Exhibit 49.
7          (Plaintiff's Exhibit 49 was
8          marked for identification)
9          MR. PRESLEY:  Tab 71 for the
10 exhibit coordinator.
11 Q          The -- this is just a comparison
12 exhibit that Drummond actually filed with the
13 Court which shows how in the first -- first copy
14 of this bank statement that the $2700 monthly
15 payment is redacted; and then in a subsequently
16 produced copy, it is not redacted.
17          Do you see that in that document
18 right there (indicating)?
19 **A          Okay.  Yeah.**
20 Q          Right.  Okay.
21          What did Mr. Collingsworth tell you
22 after you told him that this needed to be
23 produced or logged?
24 **A          He agreed with me.**
25 Q          He agreed with you?
*Page 168*

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 42 (165 - 168)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

```
1 A        Yes.
2 Q        Okay.  So he agreed that this
3 reflected a witness payment, that it was
4 discoverable, and that it needed to be disclosed
5 to Drummond?
6          MR. PAULK:  Object to the form.
7 A        I think he -- he would have agreed
8 that it was discoverable.
9 Q        (By Mr. Presley)  Okay.  And should
10 be disclosed to Drummond?
11 A        Yes.  Or logged.
12 Q        Okay.  Now, look for a second at --
13 there's some other documents that are attached
14 to this email from Billy Scherer.  And I want to
15 direct your attention to, first, 95832, Bates
16 label CS_TC95832.
17 A        Okay.
18 Q        And Mr. Collingsworth is telling
19 Bill Scherer and Richard Drath in the first
20 email; which is dated October 21, 2011; that
21 they need to -- quote, they need -- quote, "We
22 needed a heavyweight to go over their heads to
23 the Ministry of Interior.  We have the right
24 people, but they are expensive."  100,000 "to
25 start," 100,000 "when we get everything we need
```
Page 169

```
1 and the depos are done.  They can deliver.  They
2 introduced me to the right people.  Don't want
3 to put details here."
4          Did I read that correctly?
5 A        You did.
6 Q        Do you know -- have you ever heard
7 of a person named Andre Lasserre?
8 A        I don't recall.
9 Q        Okay.  I take it, then, you don't
10 have any knowledge as to whether
11 Mr. Collingsworth paid Andre Lasserre $100,000?
12 A        I vaguely remember something like
13 that, but I do not remember any details.
14 Q        Do you have any idea as to what work
15 Mr. Lasserre did in exchange for that payment?
16 A        No.  No.  No.  No idea.
17 Q        Okay.  When did you come to learn
18 that Mr. Lasserre, Andre Lasserre, had received
19 $100,000 from Terry Collingsworth?
20 A        I don't know that I did.
21 Q        Okay.  Let's look at 95847.
22 A        (Witness complies.)  Okay.
23 Q        And this is a memo on Conrad &
24 Scherer letterhead from JDT to BS dated May
25 28th, of 2011.
```
Page 170

```
1          Do you see that?
2 A        Yes.
3 Q        And had you ever seen this
4 memorandum before you received it from Billy
5 Scherer on June --
6 A        No.
7 Q        -- on June 24th, of 2014?
8 A        No.  I don't believe so.
9 Q        Okay.  Did you have any discussions
10 with Billy Scherer after you received this email
11 from him about the attachments to the email?
12 A        I don't think so.  No.  I would have
13 asked Terry about this stuff.
14 Q        Okay.  Did you have any discussions
15 with Ken McNeil about this email from Billy
16 Scherer or the attachments to the email?
17 A        I don't recall.  I would have had
18 conversations with Chris Niewoehner at some
19 point whenever he came on board, which was
20 pretty soon after this, about these.
21 Q        Okay.  What was Ken McNeil's role in
22 the defamation case at this point?
23          MR. PAULK:  Object to the form.
24 A        If I remember correctly, and don't
25 hold me completely to this, but seems like we
```
Page 171

```
1 took some depositions down there at the Conrad &
2 Scherer office.  Trey and Tony were there.  I
3 spoke to Billy down there on that time -- at
4 that time.  Pretty soon afterwards maybe, this
5 happened.  Then we took Paul Wolfe's deposition
6 pretty soon after that in Colorado.  4th of July
7 holiday everybody was off for a week.  And then
8 pretty soon after that, it seems like McNeil and
9 Niewoehner were getting pretty involved.
10 Somewhere within a month of that would be my
11 vague recollection.
12 Q        (By Mr. Presley)  Within a month of
13 -- I think -- within a month of Billy Scherer's
14 June 24th --
15 A        I would --
16 Q        -- 2014 email?
17 A        -- think so.
18 Q        Okay.  Let's look at tab 78, please.
19          (Plaintiff's Exhibit 45 was
20           marked for identification)
21 Q        And this is Plaintiff's Exhibit 45.
22 A        Okay.
23 Q        And this is Alana Duke, your
24 assistant; right?
25 A        Right.
```
Page 172

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 43 (169 - 172)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 Q        And she's, it appears to be,
2 forwarding Billy Scherer a copy of the email he
3 had just sent to you the day before; right?
4 A        **Yeah.  And I have no idea why she**
5 **would do that.**
6 Q        Okay.  That was my question:  Do you
7 know why?
8 A        **Yeah.  I have no idea unless it was**
9 **a mistake or -- there would be no reason for her**
10 **to do that.**
11 Q        Would she -- typically when she's
12 sending an email to a client like this, is this
13 something that she's doing at your instruction?
14 A        **Oh, yes.**
15 Q        Okay.
16 A        **Yeah.**
17 Q        All right.
18 A        **But she would have copied me on it.**
19 **That's why I don't -- yeah.  I don't -- this**
20 **must have been some sort of mistake.  That's the**
21 **only thing I can think.**
22 Q        Okay.
23 A        **I would forward it to her probably**
24 **and tell her to print it and save it to the file**
25 **when I received it.**
Page 173

1 Q        Okay.
2 A        **But there would be no reason for her**
3 **to -- to -- to email Billy Scherer.**
4 Q        All right.
5        MR. PAULK:  Hey, Ben, before you go
6 on; is that 45 or 46, this one that you just
7 showed him?
8        MR. PRESLEY:  45.
9        MR. PAULK:  45.  All right.
10 Q        (By Mr. Presley)  Let's go to tab
11 82, please.
12        (Plaintiff's Exhibit 46 was
13         marked for identification)
14 Q        This is Plaintiff's --
15        MR. PAULK:  Did y'all not mark this
16 one?
17        MR. PRESLEY:  Oh, we went out of
18 order.  You're right.
19        MR. WELLS:  That's 49.
20        MR. PAULK:  49.  All right.
21 Q        (By Mr. Presley)  Tell me the
22 Exhibit Number that you have in your hand,
23 please, Mr. Smith.
24 A        **That's 46.**
25 Q        46 I've just handed to you..
Page 174

1        MR. PRESLEY:  This is tab 82 for the
2 exhibit coordinator.
3 Q        And this is a July 7, 2014, email
4 from Terry Collingsworth to you; correct?
5 A        **Yes.**
6 Q        All right.  And consistent with past
7 practice, Mr. Collingsworth is sending to you a
8 draft of the crime fraud brief --
9 A        **Yeah.**
10 Q        -- right?
11 A        **Yes.**
12 Q        And this is what Judge Proctor had
13 directed the parties to brief at the conclusion
14 of the April 2014 sanctions hearing?
15 A        **Yes.**
16 Q        Okay.  On page three of the draft
17 that Mr. Collingsworth has sent you; the end of
18 the first paragraph there, there's some
19 statements about PAX in a report that they had
20 written.
21        Do you see that?
22 A        **I do.**
23 Q        Did you ever have any conversations
24 with Mr. Collingsworth about his communications
25 with PAX?
Page 175

1 A        **I don't recall having conversations**
2 **with him about his communications with PAX.  At**
3 **some point I would have become aware of PAX and**
4 **that they had done some sort of report, and I**
5 **probably was provided a copy of it.**
6 Q        Okay.  And do you know whether
7 Mr. Collingsworth was in communication with PAX
8 about that report?
9 A        **I don't specifically recall.**
10 Q        Okay.  Do you know whether
11 Mr. Collingsworth or anyone else at Conrad &
12 Scherer provided information or documents to PAX
13 to be used in that report?
14 A        **I don't know.**
15 Q        Okay.  On the next page, page four,
16 in this draft brief that's been prepared by
17 Mr. Collingsworth, at the bottom of that page
18 there's a paragraph that talks about witness
19 payments; right?
20 A        **Yep.**
21 Q        And we see there second to last
22 sentence, quote, "The three witnesses who
23 received security assistance, Libardo Duarte,
24 Jose Gelvez Albarracin, and Jairo Jesus Charris
25 Castro, all provided a written statement to
Page 176

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 44 (173 - 176)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 either Plaintiffs' counsel or the Colombian
2 authorities."
3                    Did I read that correctly?
4 A        You did.
5 Q        And this is consistent with what
6 we've seen previously about it was three
7 witnesses, three witnesses, three witnesses?
8 A        That's correct.
9 Q        All right.  Now, on page six of this
10 draft brief in the center, there's a discussion
11 about Blanco.
12                    Do you see that?
13 A        Same page?
14 Q        Page six.
15 A        Oh, okay.
16 Q        And that paragraph concludes with
17 the statement of, "Again, the various emails
18 discussing the topic conclusively revealed
19 defendants and their co-counsel discussed
20 whether it was ethically permissible to assist a
21 witness with his attorneys fees, concluded it
22 was ethical under certain conditions, but then
23 declined to do so for tactical reasons."
24                    Did I read that correctly?
25 A        You did.
                                              Page 177

1 A        Yes.
2 Q        Which had attached the deps in the
3 can email; correct?
4 A        Yes.
5 Q        Okay.  Why are you sending this to
6 Mr. Collingsworth on July 9th?
7 A        Well, to -- hopefully, he can
8 explain to me what's going on here.
9 Q        Okay.  Explain to you what's going
10 on here in terms of why hasn't this document
11 been produced or logged?
12 A        Well, yeah.  In particular I was
13 interested in "Gave Ivan $5,400 for security
14 costs for him, ET and Somario."
15 Q        Okay.  Now, let's look at tab 10 --
16 what -- what did -- what did Collingsworth tell
17 you in response to this email?
18 A        In -- specifically in regards to
19 that?
20 Q        Sure.
21 A        The $5400?
22         That I think Ivan had been provided
23 money to send his actual security people to
24 drive by these people's houses.  And this was
25 actually paying Ivan this -- the money, that it
                                              Page 179

1 Q        And that, again, is consistent with
2 what you've been told by Mr. Collingsworth all
3 the way up to this point --
4 A        That --
5 Q        -- which is that we considered it,
6 but there was never any payment made to Blanco?
7 A        Yes.
8 Q        Did Mr. Collingsworth ever tell you
9 what tactical reasons he had for not paying
10 Jaime Blanco?
11 A        If he did, I don't recall.
12 Q        All right.
13         MR. PRESLEY:  Let's look at tab 84,
14 please, Trey.
15 Q        This is Plaintiff's Exhibit 47.
16 A        Okay.
17              (Plaintiff's Exhibit 47 was
18              marked for identification)
19 Q        And this is a July 9th, 2014, email
20 from you to Mr. Collingsworth; correct?
21 A        Let's see.  Yes.  Forwarding the
22 documents.  Yes.
23 Q        Right.
24         Forwarding Billy Scherer's June 24
25 email?
                                              Page 178

1 wasn't going to Somario or El Tigre.  Either
2 way, this needed to be produced or logged.
3 Q        Okay.  So Mr. Collingsworth told you
4 that this money was not going to El Tigre and
5 Somario?
6 A        Correct.
7 Q        In your entire -- in the entire
8 course of your representation of Conrad &
9 Scherer and Terry Collingsworth, did you ever
10 see a single receipt or other document that
11 would objectively reflect how a payment to a
12 witness was spent?
13         MR. PAULK:  Object to the form.
14 A        I don't know that I can answer that.
15 I wouldn't -- I mean, they're -- you're talking
16 about thousands of documents that were reviewed
17 at some point.  I don't -- I -- I couldn't
18 answer that.
19 Q        Do you recall one sitting here
20 today?
21 A        Ask the question again.
22 Q        Sure.
23         During your representation of the
24 defendants in the defamation case, you
25 understand it was their contention this these
                                              Page 180

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 45 (177 - 180)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

---

1 payments were made for security purposes; right?
2 A          Correct.
3          MR. PAULK:  Object to the form.
4 Q          (By Mr. Presley)  Okay.  Did you
5 ever see a single invoice or receipt which would
6 reflect that one of those payments was used for
7 a specific security measure by one of those
8 witnesses?
9 A          I just don't know.
10 Q          Okay.  Let's go to tab 103.  So this
11 is Plaintiff's Exhibit 48.
12          (Plaintiff's Exhibit 48 was
13              marked for identification)
14 Q          And this is an email where your
15 assistant is submitting to the special master
16 the defendants' crime fraud brief; correct?
17 A          Okay.  All right.
18 Q          And it's on the same day about two
19 hours after the email that we just looked at
20 where you're sending Mr. Collingsworth Billy
21 Scherer's email which attaches the deps in the
22 can email; right?
23 A          It is.  I don't remember these
24 taking place at the same time; but, obviously,
25 they're dated the same.  Yes.
                                        Page 181

---

1 Q          Okay.  Page four of the brief filed
2 with the special -- special master --
3 A          Okay.
4 Q          -- at the bottom there, the same
5 language regarding there being three witnesses
6 that received payments.
7          And those witnesses being Duarte,
8 Gelvez, and Charris; right?
9 A          Correct.
10 Q          How does that representation get
11 made to the special master when the defendants
12 have located the deps in the can email, and
13 you've sent it to Mr. Collingsworth saying this
14 has to be produced or logged?
15          MR. PAULK:  Object to the form.
16 A          Well, I think, one, the explanation
17 he gave me; two, I think this was, I guess, more
18 of a general, you know, memorandum on the law
19 regarding the crime fraud that had been worked
20 on well in advance of -- well, I say that.
21 Billy had sent this to me about two weeks prior
22 I believe, right, looking at the dates.  I
23 certainly still believe that there were only
24 three that were paid.  I can tell you that.  If
25 that's the question, yes.  Certainly in my mind,
                                        Page 182

---

1 there were only three that was being paid.  And
2 I was assured that by Mr. Collingsworth.
3 Q          Okay.  So your belief was based on
4 assurances you had been given by
5 Mr. Collingsworth?
6 A          Yes.
7 Q          And those assurances were I've seen
8 the deps in the can email, you've sent it to me,
9 you called him about.  And he says, Brad, that
10 payment that's discussed in point number ten of
11 the deps in the can email; that payment didn't
12 actually go to El Tigre and Somario.  It just
13 went to Ivan Otero.
14          Is that what he told you?
15 A          Correct.  Correct.  and I assume
16 there's probably a declaration with -- that was
17 filed with this that has the same lang -- him
18 saying the same thing, isn't there?
19 Q          He filed a lot of declarations.
20 A          Yeah, he did.  He did.
21 Q          All right.
22          MR. PRESLEY:  Let's look at tab 89,
23 please, Trey.
24          (Plaintiff's Exhibit 50 was
25              marked for identification)
                                        Page 183

---

1 Q          This is Plaintiff's Exhibit 50.
2 A          Okay.  50.  Okay.
3 Q          And this is an email from you to
4 Mr. Collingsworth.
5          Chris Niewoehner is also copied;
6 correct?
7 A          Correct.
8 Q          Dated August 27th, 2014, so about a
9 month and a half later; right?
10 A          Yes.
11 Q          All right.  And first attachment to
12 this email is yet again the deps in the can
13 email; right?
14 A          Yes.
15 Q          And you're telling them -- or you're
16 telling Terry, I want to get out the
17 supplemental privilege log, and I don't see
18 where the attached email is listed on the log.
19 A          Yes.  Yes.
20 Q          All right.  Couple of questions:
21 First off; at this point, how long had Chris
22 Niewoehner been involved?
23 A          I don't know.  Be a guess.  He was
24 involved though.
25 Q          Involved in the defamation case?
                                        Page 184

---

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 46 (181 - 184)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 A          Yes.
2 Q          Okay.  And what did Terry tell you
3 in response to this email?
4 A          I don't recall.
5 Q          Did he tell you anything about why
6 it was not on a log?
7 A          Well, I think at that point I think
8 Chris Niewoehner was going to handle any logs
9 would be my assumption.  But I certainly -- once
10 I saw that email -- from the time I saw it until
11 the time I left, I was concerned about it and
12 thought it needed to be logged or -- or just --
13 or produced.
14 Q          And is it your understanding that
15 Mr. Niewoehner is a white-collar criminal
16 defense lawyer?
17 A          No.
18 Q          That's not your understanding?
19 A          No.
20 Q          Did you ever --
21 A          I think he was in the U.S.
22 attorney's office.  But it was my understanding
23 he was an expert in privileges.  That was my
24 understanding, but I maybe wrong.
25 Q          Okay.  Why --

Page 185

1 A          I would have had a discussion with
2 him about the deps in the can; whether this -- I
3 would assume we had already discussed it by this
4 time.
5 Q          Okay.  And what -- what was said in
6 those discussions about the deps in the can
7 email?
8 A          Like I said, from the moment I saw
9 that email; I thought it needed to be produced
10 or logged.  And I don't -- I don't think I was
11 the one that ever actually did that.  I don't
12 think I was involved in it.  And so anyone who
13 was asking me, What's going on with the case; I
14 would say this just came up, and it needs to be
15 handled.
16 Q          Okay.
17          MR. PRESLEY:  Trey, I'm going to
18 skip 91 and go to 90 -- tab 96.
19          (Plaintiff's Exhibit 51 was
20          marked for identification)
21 Q          All right.  Mr. Smith, this is
22 Plaintiff's Exhibit 51.
23          MR. PRESLEY:  Tab 96 for the exhibit
24 coordinator.
25 A          Okay.

Page 187

1 A          I certainly did not think he was
2 brought in because of criminal issues.
3 Q          Okay.  But it's your understanding
4 that at this point Chris Niewoehner -- well, let
5 me ask this:  Who is Chris Niewoehner
6 representing at this point?
7 A          I believe Terry, and maybe the firm
8 too.  I can't recall if it was -- yeah.  I don't
9 recall if it was both.
10 Q          But he's a privilege expert, and
11 he's being brought in to help make sure what?
12 That everything has been searched for and
13 logged?
14 A          Well, I think so and that, you know,
15 privileges are maintained to the extent they can
16 be.  I think they were concerned.  I mean, this
17 wasn't -- this got beyond my little defamation
18 case, which I thought was pretty simple, into
19 all these other cases that, you know, Drummond
20 had with -- with Terry or that -- yeah.
21 Q          Did you have any discussions with
22 Mr. Niewoehner about this email; this email
23 being the one you sent on August 27th, 2014?
24 A          This email (indicating)?
25 Q          Yes.

Page 186

1 Q          And this is a November 6, 2014,
2 email from you to Savannah Marion, Kendall
3 Enyard, and Ken McNeil; is that right?
4 A          Yes.
5 Q          And, yet again, you are sending --
6 this time not Mr. Niewoehner, but the Susman
7 Godfrey lawyers, resending them Billy Scherer's
8 June 24th emails which attached the deps in the
9 can email; right?
10 A          And I think Kendall Enyard was --
11 maybe Savannah also -- were Steptoe Johnson
12 lawyers.
13 Q          Okay.  In any event you say, quote,
14 "Attached are the documents we discussed that
15 were discovered during Ken's search in Florida";
16 right?
17 A          Yes.
18 Q          Ken being Ken McNeil?
19 A          Yes.
20 Q          What search was Ken McNeil
21 performing in Florida?
22 A          Ken was doing the same thing I -- I
23 was doing in relation to the Wic -- Witcher
24 case.
25 Q          Wichmann?

Page 188

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 47 (185 - 188)

**Drummond Company, Inc. v. Terrence P. Collingsworth, et al.**

**Bradley J. Smith**
**11/21/2023**

1 A          Wichmann.  Yes.  Wichmann.
2 Q          "The same thing" being looking for
3 documents that reflected payments to witnesses
4 and making sure that they were either produced
5 or logged?
6 A          Yes.  Yes.
7 Q          When did that search that Ken
8 performed in Florida, when did that occur?
9 A          I don't know.  I think it was
10 ongoing.
11 Q          Okay.  But it's your understanding
12 that the documents that are attached to your
13 email and which were attached originally to
14 Billy Scherer's June 24th email were documents
15 that were discovered by Mr. McNeil during a
16 search in Florida?
17 A          I don't know.  I see Billy's email
18 saying he came across it, so I don't -- I don't
19 know.  To be honest with you, I put Ken -- I
20 don't know.  I don't know.  I could have been,
21 you know -- I could have misunderstood it.  I
22 don't know.
23 Q          Did Ken -- did you ever have any
24 conversation with Ken McNeil about this email
25 that you sent on November 6th, of 2014?
Page 189

1 A          I'm sure I did.
2 Q          Why are you sure you did?
3 A          Because I would have met with all
4 them when I was kind of phasing out and they
5 were taking over and given them a history of
6 what had been done in the case.  And I would
7 have said, just like I've told you, This is
8 something that I think is a problem that needs
9 to be produced or it needs to be logged.
10 Q          Okay.
11 A          It's responsive to what the Court
12 had ordered to be produced.
13 Q          Now, you mentioned just a second ago
14 that you phased out shortly after this email was
15 sent; is that right?
16 A          I was already out by this time.
17 Q          Okay.
18 A          Yeah.  Yeah.
19 Q          So this is, at least based on my
20 review, the last email that was produced
21 chronologically from your file in this case;
22 November 6th, of 2014?
23 A          Could have been.
24          Was this after the sanction hearing
25 or crime fraud hearing?
Page 190

1 Q          No.  Crime fraud hearing wasn't
2 until --
3 A          After this?
4 Q          -- September of 2015.
5 A          Oh.  Yeah.  I don't know.
6 Q          Okay.  Who -- who made the decision
7 that you were going to phase out of this case?
8 A          I don't know.  I know that -- well,
9 that's going to get us into some privileged
10 things too.  I mean, I don't -- I don't know
11 that --
12          MR. PAULK:  I mean, do you know the
13 answer to who made the decision?
14          THE WITNESS:  I don't.  I don't.
15          (By Mr. Presley)  Do you know the
16 reason why you were phased out?
17 A          I don't.  I assumed, you know, it
18 was a -- this is getting into insurance policy
19 stuff.  But it was a wasting policy; and there
20 was, you know, not a lot of money left.
21 Q          So it wasn't your decision to phase
22 out?
23 A          It certainly wasn't, you know,
24 excited about staying in any more.  I mean, this
25 was -- you know, doing discovery motions every
Page 191

1 week was not, you know, how I envisioned
2 spending the rest of my life.  And y'all are
3 still doing it ten years later, so -- but, yeah.
4 No.  I -- I don't know.
5 Q          In other words, this wasn't a
6 situation where you stepped back and said, I'm
7 out?
8 A          No, it wasn't.
9 Q          Okay.
10 A          No, it wasn't.
11 Q          Okay.
12 A          I think somebody said, Ken or -- or
13 -- or Niewoehner or somebody said, We're taking
14 over; and you need to file a motion to withdraw
15 on this date I think.
16 Q          Okay.  And we touched on this a
17 little bit earlier, but -- well, let me ask you
18 this:  Do you recall after this November 6,
19 2014, email; did you ever have any other
20 discussions after this email was sent with
21 anybody, whether Terry or somebody else at
22 Conrad & Scherer or their counsel, about the
23 scope, nature, and extent of witness payments
24 between then and the crime fraud hearing?
25 A          Not with Terry, but probably with
Page 192

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 48 (189 - 192)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 McNeil or Niewoehner.
2 Q        Okay.  And what were the nature of
3 those discussions?
4        MR. PAULK:  Well, hang on a minute.
5 Leading up to the crime fraud hearing.
6        MR. PRESLEY:  Let me ask it -- let
7 me ask it slightly differently.
8        MR. PAULK:  Okay.
9 Q        (By Mr. Presley)  When you were
10 discussing with Mr. Niewoehner and/or Mr. McNeil
11 witness payments, were you telling them what
12 your understanding was of the scope of the
13 witness payments that had been made; who had
14 been paid and why?
15 A        Probably.  Whatever Terry -- yes.
16 Yes.  What Terry had maintained throughout.
17 Yes.  These three were paid, and they were paid
18 because of this.  Yes.
19 Q        Okay.  Did -- were you ever told by
20 anyone that Terry had forgotten that he paid El
21 Tigre and Somario?
22 A        Seems like somebody may have told
23 me.  So you're saying that hearing was a full
24 year after this?
25 Q        Little bit less than a year after
Page 193

1 this.
2        But to be fair, we don't have your
3 whole file.  I'm just talking about what was
4 produced to us.  This is the last email --
5 A        Well --
6 Q        -- in that.
7 A        -- I think I would have gone over to
8 maybe William's office on the eve of that
9 hearing; and they would have asked me questions
10 again.
11 Q        Okay.
12 A        But I don't remember doing anything
13 that late in it.  But, you know, I remember
14 going to his office at some point.
15 Q        Okay.  Let's take a quick break.
16        MR. PRESLEY:  I may be about done,
17 William --
18        MR. PAULK:  Okay.
19        MR. PRESLEY:  -- but let me just
20 confer real quick.
21        THE COURT:  The time is 1:41 p.m.
22 We are off the record.
23        (Short recess taken.)
24        THE VIDEOGRAPHER:  The time is
25 1:47 p.m.  We are back on the record.
Page 194

1 Q        (By Mr. Presley)  All right.
2 Mr. Smith, I just want to make sure that I'm
3 clear on one thing.
4        Is it true that from the time you
5 started your work in the defamation case
6 representing Terry Collingsworth and Conrad &
7 Scherer all the way up until, I guess, the eve
8 of the crime fraud hearing in September of 2015
9 that Mr. Collingsworth never disclosed to you
10 that Jaime Blanco had been paid?
11 A        I would say -- well, first, I would
12 say I have never had a conversation with Terry
13 Collingsworth where he told me Jaime Blanco was
14 paid.
15 Q        Okay.
16 A        Never.  Never had that conversation
17 with him.  I never had any conversation with
18 Terry from fall, what, 2014 until now.
19 Q        Well, you haven't had one -- yeah.
20 Okay.  I see what you're saying.
21 A        Yeah.
22 Q        All right.
23        MR. PRESLEY:  Go ahead, William,
24 subject to redirect.
25        MR. PAULK:  Anil, have you got
Page 195

1 anything?
2        MR. MUJUMDAR:  I can go ahead of
3 you, or I can go after you.  I mean, if you're
4 ready, I want you to go.
5        MR. PAULK:  Okay.
6        EXAMINATION
7 BY MR. PAULK:
8 Q        Okay.  Brad, when you were first
9 hired to defend the defamation case, were you
10 aware of the law firm Conrad & Scherer?
11 A        No.
12 Q        Were you aware of a lawyer named
13 Terry Collingsworth?
14 A        No.
15 Q        And Conrad & Scherer is located in
16 Fort Lauderdale, Florida; right?
17 A        Correct.
18 Q        They're not in Birmingham?
19 A        Correct.
20 Q        And Terry at the time was based in
21 Conrad & Scherer's Washington, DC office;
22 correct?
23 A        Correct.
24 Q        Did you do any investigation into
25 the relationship between the DC office and the
Page 196

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 49 (193 - 196)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

---

1 Fort Lauderdale office of Conrad & Scherer?
2 A          I'm sure I had a conversation with
3 Terry about it at some point.
4 Q          Do you recall what he told you about
5 that relationship?
6 A          He had his separate firm.  And at
7 some point he met Bill Scherer, and they
8 discussed going in together on some cases.  And
9 they, I guess, took Terry in as a partner and
10 made Terry's office a Conrad & Scherer
11 Washington office.
12 Q          And did Terry ever tell you, once he
13 joined Conrad & Scherer, about the working
14 relationship between the DC office and the Fort
15 Lauderdale office?
16 A          I don't remember any specifics of
17 that.
18 Q          During your representation of Terry
19 and Conrad & Scherer, did you develop an opinion
20 about the relationship between the two offices?
21          MR. WELLS:  Object to the form.
22          MR. PRESLEY:  Object to the form.
23 A          I guess I would say Terry was kind
24 of out on his own doing his own thing.
25 Q          (By Mr. Paulk)  What -- what leads

Page 197

---

1 you to say that?
2 A          Because I don't think there was
3 anyone in Fort Lauderdale that was really
4 involved in the human rights cases.
5 Q          When you say "the human rights
6 cases," are you referring to the underlying
7 cases that Terry had filed against Drummond?
8 A          Yeah.  I think he had them against a
9 lot of other companies.  Yes.
10 Q          Okay.  I thought you testified very
11 early in your deposition that you don't recall
12 ever having a conversation with Bill Scherer; is
13 that right?
14 A          Not until -- I think he was maybe at
15 the meeting I referred to at your office on the
16 eve of the crime fraud.  I think I may have met
17 him there or sometime in that time frame.
18 Q          Okay.  And that would have been
19 2015?
20 A          After I was actively -- yes.
21 Q          Correct.
22          And you were hired to defend the
23 defamation case in fall of 2011.
24          Does that sound about right??
25 A          I think that's correct.  Yes.

Page 198

---

1 Q          All right.  So almost a four-year
2 period goes by where you never had a
3 conversation with the founder and managing
4 partner of one of your clients, Conrad &
5 Scherer; right?
6 A          That's correct.
7 Q          Okay.  Do you recall testifying
8 earlier about a conversation you had with Billy
9 Scherer where he told you that Terry should be
10 the point person on the case?
11 A          Yes.
12 Q          All right.  Did that conversation --
13 well, let me back up.
14          Do you recall that after the
15 defamation case was filed; shortly after that,
16 there was a fight over personal jurisdiction?
17 A          Yes.
18 Q          Do you recall that?
19 A          Yes.
20 Q          And there ended up being an appeal
21 relating to personal jurisdiction.
22          Do you recall that?
23 A          Vaguely.  And just remembered today
24 that Judge Acker had it originally.
25 Q          That's right.  He did.

Page 199

---

1 A          Yes.
2 Q          And as a result of that, discovery
3 in the case really didn't get going until 2013
4 or so?
5 A          That's correct.
6 Q          Is that about right?
7 A          That's correct.
8 Q          And this conversation you had with
9 Billy; did that occur before the personal
10 jurisdiction appeal, or did that occur after?
11 A          That would have been within a couple
12 of days of me being retained in the case.  Yes.
13 Q          So that conversation you had with
14 Billy, then, did not occur contemporaneously
15 with discovery starting in the case?
16 A          I don't think so.  No.
17 Q          All right.  Did -- did Billy Scherer
18 ever tell you that you shouldn't approach
19 anybody at the firm about the defamation case
20 other than Terry?
21 A          No.
22 Q          Did anybody at Conrad & Scherer say,
23 Don't talk to us; Handle it with Terry; We don't
24 want to hear about the defamation case?
25          MR. PRESLEY:  Object to the form.

Page 200

---

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 50 (197 - 200)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

---

1 **A         No.**
2 Q         (By Mr. Paulk)  Okay.  Do you have
3 an understanding about why Chris Niewoehner and
4 Ken McNeil got involved in the defamation case
5 in summer, fall of 2014?
6         MR. PRESLEY:  Object to the form.
7 **A         I think there was concern about the**
8 **privilege issues in all the other cases that**
9 **were going on and thought that this was going to**
10 **-- the defamation effect was going -- case was**
11 **going to affect the other cases.  I think Ken**
12 **was doing the other case down in Fort**
13 **Lauderdale.  And at some point it -- it was**
14 **determined, and I think everyone agreed, that**
15 **everything was going to have to be gone through.**
16 Q         (By Mr. Paulk)  What do you mean?
17 **A         All -- all -- all documents were**
18 **going to have to be gone through.  So they led a**
19 **complete, you know, search of everything.**
20 Q         So it's your testimony that -- that
21 additional outside counsel got involved to, as
22 you say, go through everything?
23 **A         I think so.  Yes.  Yes.**
24 Q         When Chris Niewoehner became
25 involved in the defamation case, were you aware

1 of any prior representation he had had of Conrad
2 & Scherer or any relationship between those two?
3 **A         I don't think there was.**
4 Q         Okay.  The exhibits that you have in
5 front of you that you were shown, I'm going to
6 refer to a couple of them.
7         If you can pull out Plaintiff's
8 Exhibit 2 to start with.
9 **A         (Witness complies.)**
10         MR. PAULK:  And I don't have tab
11 numbers of those.
12         MR. PRESLEY:  It's tab 7.
13         MR. PAULK:  All right.
14 **A         Okay.**
15 Q         (By Mr. Paulk)  And do you recall
16 this is the email you were asked about regarding
17 a motion to compel that Drummond filed?
18 **A         Yes.**
19 Q         And in paragraph two of Terry's
20 email to you, he mentions three witnesses who
21 had received payments, or his family had
22 received payments, Halcon, Charris, and Duarte.
23 **A         Correct.**
24 Q         Do you see that?
25         And up until the crime fraud hearing

1 at least, this -- this type of information was
2 what you were consistently getting from Terry in
3 writing about the number of witnesses that had
4 received payments; correct?
5 **A         That's correct.**
6         MR. PRESLEY:  Object to the form.
7 Q         (By Mr. Paulk)  And the top email is
8 one from Billy Scherer to you and Terry.  And he
9 says, "Were discovery responses served on the
10 behalf of the firm?  I need to see these and be
11 involved in the firm's responses."
12         Do you see that?
13 **A         Yes.**
14 Q         What did you do to ensure moving
15 forward that Billy was involved in the firm's
16 discovery responses?
17 **A         I think I remember calling him right**
18 **after that, and we had a discussion.  And I**
19 **think there may have been some discussion at**
20 **some point whether there was possibly a conflict**
21 **and there needed to be separate counsel for the**
22 **firm and Terry.  I know that conversation was**
23 **had at some point.  And the decision was made**
24 **that there wasn't, and I could continue to**
25 **represent them both.**

1 Q         Did Billy's statement here that he
2 needed to be involved in the firm's responses,
3 did that cause you to change your approach about
4 who you were supposed to be reporting to at the
5 firm?
6 **A         I don't recall.  I know I would have**
7 **had a conversation with him after this.**
8 Q         With who?
9 Q         With Billy.
10 Q         If you will, please pull up
11 Plaintiff's Exhibit 7.
12         MR. PRESLEY:  That is tab 6 for the
13 exhibit coordinator.
14 **A         Okay.  (Witness complies.)**
15 Q         (By Mr. Paulk)  Do you recall seeing
16 this email earlier today?
17 **A         I do.**
18 Q         And I believe you testified that
19 this was the first time that you became aware
20 that Drummond was asking about payments to
21 witnesses?
22         MR. PRESLEY:  Object to the form.
23 **A         I think I testified -- well, I think**
24 **the email under it where I'm asking about that**
25 **would -- that -- that seems to indicate that.**

---

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 51 (201 - 204)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 Q          (By Mr. Paulk)  Right.
2 A          **Whether do I remember specifically**
3 **getting this and seeing that?  I -- I can't tell**
4 **you that.**
5 Q          Okay.
6 A          **But certainly seeing me -- sent him**
7 **an email asking him about that.**
8 Q          And --
9 A          **It indicates that or supports that.**
10 **yes.**
11 Q          And at the top of the second page,
12 Terry says, "Susana can you please send Brad our
13 discovery responses about legitimate security
14 funds provided to the families of Halcon,
15 Charris and Duarte?  Thanks."
16 A          **I see that.**
17 Q          Do you see that?
18 A          **Yes.**
19 Q          In your 20-plus years of practice,
20 have you ever been involved in a case in which
21 security payments were made to the families of
22 witnesses?
23 A          **No.**
24 Q          And is that true both your own cases
25 -- well, let me strike that.
                                            Page 205

1          When Terry told you that there had
2 been security payments made to the families of
3 these witnesses, did you feel like you needed to
4 go to the firm to make sure they were aware of
5 this?
6 A          **I think I assumed that the firm was**
7 **aware of it.**
8 Q          And did you assume that because
9 Terry was telling you that?
10 A          **Probably.  But, you know, I -- like**
11 **I said, I -- I don't recall.**
12 Q          Did you feel as though you should
13 have gone to Conrad & Scherer and said, Hey,
14 just want to make sure you guys are aware this
15 security payment issue is coming up with
16 witnesses who are providing testimony in your
17 cases; it kind of seems like a big deal?
18 A          **I didn't have --**
19          MR. PRESLEY:  Object to the form.
20 A          **I didn't have any concerns at that**
21 **time that they weren't aware.**
22 Q          (By Mr. Paulk)  Okay.  Do you recall
23 during the course of the defamation case after
24 discovery started that there was a lot of back
25 and forth with Drummond, and eventually we
                                            Page 206

1 Court, about what information was discoverable
2 or not?
3 A          **Yes.**
4 Q          And that the Court actually issued a
5 couple of orders purporting to lay out what was
6 discoverable, what was not discoverable; right?
7 A          **Yes.**
8 Q          What was privileged, what was not
9 privileged?
10 A          **Yes.**
11 Q          Do you recall that there were often
12 ambiguities in those orders about what was
13 privileged or not privileged?
14          MR. PRESLEY:  Object to the form.
15 A          **I do.**
16 Q          (By Mr. Paulk)  And in light of
17 that, were those issues that you had to deal
18 with with Terry in terms of trying to figure
19 out, what do we produce or what do we log?
20          MR. PRESLEY:  Same objection.
21 A          **That's correct.**
22 Q          (By Mr. Paulk)  And in -- we all
23 know this sitting in this room, but the jury may
24 not know this, that in response to discovery
25 requests, parties can object to requests; right?
                                            Page 207

1 A          **That's correct.**
2 Q          All right.  And if they have an
3 objection, they don't have an obligation to
4 produce documents based on that objection;
5 right?
6          MR. PRESLEY:  Object to the form.
7 A          **That's correct.**
8 Q          (By Mr. Paulk)  All right.  And
9 during the course of your representation of
10 Terry and the firm when -- at times you would
11 say, We've produced responsive documents.
12          Were you doing so accounting for any
13 objections that may have been made?
14 A          **Yes.**
15          MR. PRESLEY:  Object to the form.
16 A          **And, in fact, I -- I considered**
17 **discovery really to be open still working on**
18 **trying to accomplish it until the day I was no**
19 **longer on the case and trying to get a privilege**
20 **-- final privilege log and trying to get final**
21 **discovery responses.**
22 Q          (By Mr. Paulk)  One of the
23 underlying cases that we've talked about a
24 little today was a case known as Balcero?
25 A          **Yes.**
                                            Page 208

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 52 (205 - 208)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 Q        Are you familiar with that case?
2 A        Yes.
3 Q        And do you recall that Drummond had
4 started asking questions about payments to
5 witnesses in that case?
6 A        Yes.
7 Q        All right.  Were you aware of
8 distinctions that Terry and his team drew in
9 that case in interpreting discovery requests
10 between payments to witnesses versus payments to
11 witnesses' families?
12 A        Yes.
13 Q        Were you aware of distinctions that
14 Terry and his team drew in Balcero about
15 payments to actual witnesses versus payments to
16 potential witnesses or witnesses they were no
17 longer going to call in trial?
18          MR. PRESLEY:  Object to the form.
19 A        **I don't remember the specifics of**
20 **all this.  I remember that there were continuing**
21 **evolving questions and continuing evolving**
22 **responses.**
23 Q        (By Mr. Paulk)  And that continued
24 into the defamation case, didn't it?
25 A        Yes.
                                        Page 209

1 Q        And the requests continued changing
2 in the defamation case?
3 A        Yes.
4          MR. PRESLEY:  Object to the form.
5 Q        (By Mr. Paulk)  And did certain
6 definitions about what constitutes a payment to
7 a witness, for example, change in the defamation
8 case?
9          MR. PRESLEY:  Object to the form.
10 A        Yes.
11 Q        (By Mr. Paulk)  From the time you
12 were hired in fall of 2011 until you withdrew,
13 you were representing Conrad & Scherer and
14 Terry; correct?
15 A        Correct.
16 Q        You had two different clients?
17 A        Yes.
18 Q        Terry was not representing Conrad &
19 Scherer in the defamation case, was he?
20          MR. PRESLEY:  Object to the form.
21          As -- as their lawyer?
22 Q        (By Mr. Paulk)  Terry was not
23 representing Conrad & Scherer as their lawyer in
24 the defamation case?
25 A        **He didn't make a formal appearance,**
                                        Page 210

1 **but he was heavy involved in it.**
2 Q        Okay.  You made the formal
3 appearance; right?
4 A        Yes.  Yes.
5 Q        And in doing so, you had ethical
6 obligations to Terry.
7 A        Yes.
8 Q        And you had ethical obligations to
9 the firm?
10 A        Yes.
11 Q        At any point during your
12 representation of Conrad & Scherer, did you
13 knowingly make any misrepresentations to
14 Drummond regarding the scope or number of
15 witness payments?
16 A        **Absolutely not.**
17 Q        At any point during your Conrad --
18 your representation of Conrad & Scherer in the
19 defamation case, did you knowingly make any
20 misrepresentations to the Court or to the
21 special master about the scope or nature of
22 witness payments?
23 A        **No.**
24 Q        We've talked a lot about issues
25 relating to witness payments but not a lot about
                                        Page 211

1 the merits of the case.
2          The defamation case, do you recall,
3 was prompted by a couple of letters that Terry
4 sent to a Japanese corporation in the Dutch
5 government?
6 A        **Correct.**
7 Q        Do you recall that?
8          And Drummond claims in the
9 defamation case that they have been defamed by
10 those letters.
11          My -- my question is:  Did you form
12 an opinion about whether or not Terry believed
13 those statements to be true?
14          MR. PRESLEY:  Object to the form.
15 A        **I believe he believed the statements**
16 **to be true.**
17 Q        (By Mr. Paulk)  And why do you think
18 that?
19 A        **Just his actions and his deal and**
20 **everything about him indicated to me he believed**
21 **what he was doing.**
22 Q        And did you ever doubt that?
23 A        **I did not.**
24 Q        A couple of times today you were
25 asked about information that you received from
                                        Page 212

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 53 (209 - 212)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

---

**Page 213**

1 the defendants or information that you received
2 from Terry and his team or Terry and his
3 associates.
4          Did anyone from Conrad & Scherer
5 other than Terry tell you that only three
6 witness had received payments?
7 **A          I don't recall.**
8 Q          Did anyone other than Terry from
9 Conrad & Scherer tell you that no payments had
10 been made to Jaime Blanco?
11 **A          I would have never had that**
12 **conversation with anyone there because I -- I --**
13 **I was not aware of the payments.  No.  No.  I**
14 **would --**
15 Q          So the answer is no.
16 **A          The answer is no.**
17 Q          And do you have any recollection of
18 anyone other than Terry weighing in at all about
19 the number of witness payments that had been
20 made?
21          MR. PRESLEY:  Object to the form.
22 Q          (By Mr. Paulk)  About the number --
23 let me -- let me back up.
24          Do you have any recollection about
25 anyone other than Terry weighing in on the

---

**Page 214**

1 number of witnesses that had received payments?
2          MR. PRESLEY:  Same objection.
3 **A          I wouldn't have had those**
4 **conversations because Terry was my -- you know,**
5 **was my main contact; and that had been made to**
6 **clear from the start that that's who I was**
7 **dealing with.**
8 Q          (By Mr. Paulk)  So you didn't have
9 conversations with anyone else at Conrad &
10 Scherer about that?
11 **A          I did not.  I did not.**
12 Q          You testified when the first
13 motion -- emergency motion for sanctions was
14 filed in April 2014, I think you said it gave
15 you a lot of heartburn?
16 **A          It did.**
17 Q          Do you remember saying that?
18 **A          It did.**
19 Q          And why was that?
20 **A          Well, I mean, I was just ready to**
21 **get to the merits of the case and quit, you**
22 **know, battling discovery stuff and having to go**
23 **before Judge Proctor and, you know, argue**
24 **discovery.  It just -- it wasn't fun.  I was**
25 **ready to try to get to the merits of the case**

---

**Page 215**

1 **and defend the defamation action.**
2 Q          Was the fact that Drummond was
3 contending that not all documents had been
4 produced, did that cause you concern?
5 **A          I think at that time we were still**
6 **working on production.  We were still trying to**
7 **determine what the scope and parameters of**
8 **discovery were, so not really at that time.**
9 **Yeah.  No.  Just -- just having to continuously**
10 **go in front of Judge Proctor on this because he**
11 **does not like handling discovery disputes.  We**
12 **had already been in front of him one time and**
13 **didn't want to -- you know, didn't want to**
14 **continue to have to do that.**
15 Q          When Drummond filed its motion for
16 emergency sanctions in April 2014, did you pick
17 up the phone and call someone else at Conrad &
18 Scherer to make sure they were aware of what was
19 going on?
20 **A          I don't recall.  It would have been**
21 **Billy if I did.**
22 Q          Do you recall doing so?
23 **A          I don't.**
24 Q          You were asked a number of questions
25 about privilege logs that were prepared in

---

**Page 216**

1 September and October of 2013.
2          Do you recall talking to anyone in
3 Conrad & Scherer's Fort Lauderdale office about
4 the preparation of those privilege logs?
5 **A          I don't recall.**
6 Q          If you will, please pull up
7 Plaintiff's Exhibit 34.
8          MR. PRESLEY:  This is tab 102 for
9 the exhibit coordinator.
10          What is this, William?
11          MR. PAULK:  The filed sanctions
12 brief.
13          MR. PRESLEY:  Okay.
14 **A          30 --**
15 Q          (By Mr. Paulk)  It's this one
16 (indicating), Brad.
17          MR. PRESLEY:  Yeah.
18 **A          Well, this (indicating) -- yeah.**
19 **I've got it.**
20 Q          (By Mr. Paulk)  And you see at the
21 top, the file stamp on this is April 14, 2014 --
22 **A          Uh-huh.**
23 Q          -- is that correct?
24          And that is before the email you
25 received from Billy Scherer in June of 2014

---

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

---

1 sending you a number of documents including what
2 Drummond has referred to as the deps in the can
3 email; correct?
4 **A        Yes.**
5 Q        And on the cover page here, you're
6 identified as the attorney for defendants
7 Terrence Collingsworth and Conrad & Scherer;
8 correct?
9 **A        Yes.**
10 Q        And on page 30 you signed this brief
11 as attorney for defendants, Terry Collingsworth
12 and Conrad & Scherer; correct?
13 **A        That's correct.**
14 Q        Do you recall providing a copy of
15 this brief to anybody at Conrad & Scherer other
16 than Terry before it was filed?
17 **A        I don't recall.**
18 Q        Do you recall if anyone other than
19 Terry from Conrad & Scherer provided input or
20 comments on this brief?
21 **A        I don't.  But I considered, you**
22 **know, Terry to be the Conrad & Scherer**
23 **representative as well.**
24 Q        Although he -- he was a separate
25 defendant though; right?

Page 217

---

1 **A        He was.**
2 Q        If you'll pull up exhibit --
3 Plaintiff's Exhibit 35 for me.
4        MR. PRESLEY:  I believe this is tab
5 62.
6 **A        Okay.**
7 Q        (By Mr. Paulk)  I'll let these guys
8 get it.
9        Let me ask you this while we get
10 there:  We've talked about a lot today Terry did
11 disclose to you that at least three witnesses or
12 their families had received security payments;
13 correct?
14 **A        That's correct.**
15 Q        Did you ever have any doubt in your
16 mind about whether that's what actually those
17 payments were for?
18        MR. PRESLEY:  Object to the form.
19 **A        You know, I really didn't.  I mean,**
20 **he had -- he testified to it under oath several**
21 **times, provided declarations.  And -- yeah.  No,**
22 **I didn't -- I -- I thought that's what it --**
23 **now, did I think it could affect his case and**
24 **they were, you know -- it was going to affect**
25 **them on cross-examination?  Yeah.  But as far as**

Page 218

---

1 **did I believe he was telling me -- yes.  Yes.**
2 **Yes.**
3 Q        (By Mr. Paulk)  On the second page
4 of Plaintiff's Exhibit 35 -- and this is
5 actually a portion you were asked about earlier
6 where at the top Terry says, "Brad I need to say
7 that your first reaction to Drummond's bullshit
8 emergency motion for my hard drives was to give
9 up and produce our hard drives.  We are going to
10 fight all reasonable positions to protect MY
11 interests."  And the word "my" is capitalized
12 there.
13        Do you see that?
14 **A        I do.**
15 Q        Who was protecting Conrad &
16 Scherer's interests at this time?
17 **A        I think I was, or I was trying to.**
18 Q        When you got this order for -- this
19 order which came in from Judge Putnam
20 referencing the email below, did you talk to
21 anybody at Conrad & Scherer about it?
22 **A        I think I did.  And I think I sent**
23 **it to Billy Scherer and said, Make sure all of**
24 **the computers are maintained; right?  Wasn't**
25 **that in response to that one?  I don't know.**

Page 219

---

1 Q        I'm -- I'm just asking.
2 **A        Yeah.**
3 Q        Do you recall having a conversation
4 with anyone at Conrad & Scherer about this
5 order?
6 **A        I don't recall.**
7 Q        If you'll look at Plaintiff's
8 Exhibit 38, please, sir.
9        MR. PRESLEY:  Tab 36 for the exhibit
10 coordinator.
11 **A        All right.  (Witness complies.)**
12 Q        (By Mr. Paulk)  Were you aware
13 during the defamation case that Terry was
14 litigating human rights cases against other
15 companies?
16 **A        I was.**
17 Q        Were you familiar with a case that
18 he had filed against Chiquita?
19 **A        Chiquita or Dole.  Yeah.  The banana**
20 **cases, I guess, is what he referred to them as.**
21 Q        The banana cases.
22        In the Dole case in particular, do
23 you recall that the name of the caption of that
24 case was Perez versus Dole?
25 **A        I don't recall that.**

Page 220

---

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 55 (217 - 220)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 Q        And what is marked as Plaintiff's
2 Exhibit 38, do you have any understanding or
3 knowledge as to whether this was related to the
4 Dole case or to the Drummond case?
5 A        **Yeah. I don't have any idea.**
6 Q        Were you involved in the Dole case?
7 A        **Well, it says Perez. Yeah.**
8 Q        Were you involved in the Dole case?
9 A        **I was not. I was not.**
10 Q        What about the Chiquita case?
11 A        **I was not.**
12 Q        You were asked a number of questions
13 about redactions made to emails and bank
14 statements, some of which would have reflected
15 payments -- a $2700 payment to Ivan Otero.
16        Do you recall those redactions and
17 our conversations about them?
18 A        **I do.**
19 Q        Do you recall whether -- well, let
20 me ask you this: Did Terry ever instruct you to
21 redact information that you believed should have
22 been produced?
23 A        **There was an ar -- there was a**
24 **discussion about it, and I think they're**
25 **referenced in some of my emails. I don't think**

Page 221

1 **we've discussed them more; but I ran cross one**
2 **yesterday that, you know, he said we've got to**
3 **get past this and -- yes. Yes. There was some**
4 **discussions.**
5 Q        And -- and what do you mean by "some
6 discussions?"
7        About what?
8 A        **About what needed to be produced,**
9 **and my -- my position was those financing**
10 **documents needed to be produced.**
11 Q        And Terry took the opposite
12 position?
13        Is that right?
14 A        **Well, at the last minute he stated**
15 **that there needed to be redactions.**
16 Q        And was it because he viewed those
17 as case expenses?
18        MR. PRESLEY: Object to the form.
19 A        **I can't remember the specific**
20 **reason. And their probably is an email**
21 **somewhere in which we discussed that.**
22 Q        (By Mr. Paulk) Do you recall if he
23 gave you a reason as to why they needed to be
24 produced --
25 A        **I think so.**

Page 222

1 Q        -- with redacted -- excuse me. Let
2 --
3 A        **I think so.**
4 Q        -- me ask that again.
5        Do you recall if he gave you a
6 reason as to why the $2700 payments to Otero
7 needed to be redacted?
8 A        **I think that -- and I think I**
9 **mentioned this earlier. If I recall correctly,**
10 **there were some discussions where he had**
11 **concerns about Drummond being able to trace his**
12 **investigation in Colombia through the expenses.**
13 **I remember him saying that at some point.**
14 Q        So he viewed them as expenses?
15 A        **I can't remember the distinction on**
16 **that. I can't. I think that's maybe what he**
17 **was saying is maybe -- yes. I don't remember**
18 **the specifics of it. I'm sorry.**
19 Q        In any event, you made the
20 redactions; right?
21 A        **I did.**
22 Q        And produced them to Drummond?
23 A        **I did.**
24 Q        And you wouldn't have done that if
25 you didn't think there was at least an arguable

Page 223

1 basis for making those redactions; right?
2 A        **That's correct. That's correct.**
3 Q        You wouldn't just take your client
4 -- you wouldn't take your clients direction and
5 do whatever they said unless there's at lease
6 some basis for doing that?
7        MR. PRESLEY: Object to the form.
8 A        **No. And I also anticipated that**
9 **those were probably going to be reviewed en**
10 **camera at some point, and -- and -- and the**
11 **judge or magistrate or special master was going**
12 **to decide whether they need to be produced.**
13 Q        (By Mr. Paulk) And during the time
14 that you were having these discussions with
15 Terry about redacting the $2700 payments to
16 Otero; he never told you that, in fact, some
17 portion of those payments were for the benefits
18 of El Tigre's and Somario's family; right?
19 A        **Absolutely not.**
20 Q        Did you, when you were having these
21 discussions with Terry, ever call Billy Scherer
22 or anyone else at Conrad & Scherer to say, Hey,
23 just want to make sure y'all know what we're
24 doing here and where we're -- where we're --
25 where the dividing line is between what's

Page 224

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 56 (221 - 224)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

1 getting redacted or not?
2 **A          I don't remember on that specific**
3 **instance.**
4 Q          I'm going to -- let's see.
5          If we can pull up tab 7, please; and
6 I'm going to mark this as Plaintiff's Exhibit --
7 excuse me -- Defendants' Exhibit 1.
8          (Defendants' Exhibit 1 was
9          marked for identification)
10          MR. PRESLEY:  So this was
11 Plaintiff's 2.
12          MR. PAULK:  This is our -- I'm
13 sorry.  This is my tab 7.
14          MR. PRESLEY:  Oh, okay.
15          MR. PAULK:  This is my tab 7, and
16 it's going to be Defendants' Exhibit 1.
17 Q          (By Mr. Paulk)  Just let me know
18 when you've had a chance to look at that, Brad.
19 **A          (Witness complies.)  Okay.**
20 Q          I want to first ask you about the
21 email in the middle of this page right below the
22 first redaction where Terry says, "Yes, there is
23 a lot of back and forth over whether to pay some
24 fees for JBM, but we didn't and nothing says we
25 did."
Page 225

1          Do you understand that JBM is a
2 reference to Jaime Blanco?
3 **A          I think so.  Yeah.**
4 Q          Near the end of that paragraph, he
5 says -- well, let me back up.
6          Third full sentence says, "There
7 were problems with the fee split because of the
8 other local lawyer, Francisco Rameriz, and I
9 don't think CS agreed to pay the" $80,000
10 "retainer.  I've asked again about our docs and
11 what record we have of making any payment to
12 Ivan at that time."
13          And do you recall some discussion
14 earlier about an $80,000 potential retainer
15 payment being made to Ivan Otero?
16 **A          I don't recall that specifically.**
17 Q          All right.  In response to that
18 email at the top, you discussed that Otero
19 agreement and at the end of your paragraph say,
20 "We need to confirm the 80K was not paid to
21 Otero."
22          Do you recall whether you were able
23 to confirm whether or not the 80K was paid to
24 Otero?
25 **A          I don't.**
Page 226

1 Q          Did you make an effort to contact
2 anyone in, let's say, Conrad & Scherer's
3 accounting department to determine if they had
4 made an $80,000 payment to Otero?
5 **A          I did not.**
6 Q          If you will, pull up Plaintiff's
7 Exhibit 45.
8 **A          (Witness complies.)**
9          MR. PRESLEY:  Tab 78.
10 **A          Okay.**
11          MR. PAULK:  Yeah.  I've got 45 as
12 being this (indicating).
13          MR. PRESLEY:  That's what I have.
14 Yeah.
15          MR. PAULK:  45?
16          MR. PRESLEY:  Yeah.  That was a
17 single page.  Yeah.  That was 46 that you had.
18          MR. PAULK:  It gets lost in that
19 stack pretty easy.
20          MR. PRESLEY:  Yeah.  It may be right
21 on the back of that one.  Yeah.
22 **A          Okay.**
23 Q          (By Mr. Paulk)  You were asked
24 earlier about why Alana Duke, your assistant,
25 would be sending these -- or at least appear to
Page 227

1 be trying to send these documents back to Billy
2 Scherer just a day or two after he had sent them
3 to you.
4          Do you recall that?
5 **A          Do I recall him asking me questions**
6 **on that?**
7 Q          Right.  Right.
8          Seeing this email -- I'm going to
9 mark --
10 **A          I do.**
11 Q          -- Defendants' Exhibit 2, which is
12 going to be my tab 10.
13          (Defendants' Exhibit 2 was
14          marked for identification)
15 **A          Okay.**
16 Q          And my question is whether seeing
17 what I've marked as Defendants' Exhibit 2 helps
18 you remember if there were problems -- if your
19 firm had problems accessing the documents that
20 Billy had sent you?
21 **A          That's what it looks like.**
22 Q          All right.  And do you happen to
23 know if that's maybe why Alana was trying to
24 communicate further with Billy Scherer about the
25 documents?
Page 228

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 57 (225 - 228)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

---

**Page 229**

1  A        Yes.

2  Q        Staying on Defendants' Exhibit 2 for

3  a moment.  In Billy's second email -- excuse

4  me -- second paragraph of his email to you, he

5  says, "The firm didn't make the payment to my

6  knowledge."

7        And in the context of that paragraph

8  and the previous paragraph, you understand he

9  was referring to a payment being made to Jaime

10 Blanco?

11 A        (No response.)

12 Q        Feel free to read it if you need to.

13 A        (Witness complies.)  Yes.

14 Q        All right.  And that was your --

15 consistent with your understanding at the time

16 that no payment had been made to Jaime Blanco;

17 right?

18 A        That's correct.

19 Q        And he notes at the end of his email

20 there on the first page that I'm copying -- he

21 says, "I am hoping that you already know all of

22 this and have all of this stuff from the prior

23 documents and email searches."

24        Was it your understanding that Billy

25 Scherer was sending you this information out of

---

**Page 230**

1  an abundance of caution to make sure that you

2  had everything?

3        MR. PRESLEY:  Object to the form.

4  A        Yes.

5  Q        (By Mr. Paulk)  And he then says, "I

6  am copying our Wichmann team so" that "they are

7  in the loop."

8        And the Wichmann team, as you've

9  testified, included Ken McNeil and other lawyers

10 from Susman Godfrey; right?

11 A        Yes.

12 Q        When you saw the email from Billy

13 Scherer, the June 24th email with a number of

14 attachments to it; did you become concerned that

15 maybe you didn't have everything from prior

16 documents and email searches?

17 A        Possibly.  Yes.

18 Q        Possibly or probably?

19 A        I don't know if it would be

20 probably, but certainly knew at that time some

21 additional work needed to be done.  Yes.

22 Q        All right.  And what did -- what

23 additional work did you do as counsel for Conrad

24 & Scherer to make sure that whatever was due to

25 be produced was going to be produced or logged?

---

**Page 231**

1  A        Well, I think I already testified

2  that -- so this would have been a couple of days

3  after I had met with Billy at their office.

4  Then we went and took Paul Wolfe's deposition in

5  Colorado.  Then we had 4th of July -- I know I

6  stayed in Colorado for a week.  Then we came

7  back.  And soon thereafter, Chris Niewoehner got

8  involved.

9  Q        All right.  And in this meeting with

10 Billy Scherer at their office, are you talking

11 about the Fort Lauderdale office?

12 A        Yes.

13 Q        Was Terry there?

14 A        No.

15 Q        Why did you go to Fort Lauderdale to

16 meet with Billy Scherer?

17 A        To take two depositions.

18 Q        And Terry did not attend those?

19 A        He did not.

20 Q        And what was the purpose of meeting

21 with Billy while you were there for the

22 depositions?

23 A        Just to discuss the status of the

24 litigation.

25 Q        Did you express any concern to Billy

---

**Page 232**

1  at the time that, you know, Look, we've had the

2  sanctions motion be filed.  We've got this

3  litigation hold order out there.  I'm a little

4  concerned about where things -- what -- what --

5  what kind of conversations did you have with

6  Billy --

7  A        Probably had --

8  Q        -- in regards to this litigation?

9  A        Probably discussed all that and also

10 probably discussed whether we still felt whether

11 there was a conflict and there needed to be

12 separate counsel.

13 Q        Did you actually have that

14 discussion with Billy?

15 A        I believe so.

16 Q        At that meeting?

17 A        I had that conversation with him at

18 some point.  Whether it was at that specific

19 time, I don't know.

20 Q        By the time of this meeting in June

21 of 2014, were you concerned that there was a

22 conflict between the firm and Terry?

23 A        I didn't know.  What I was concerned

24 about was trying to finish a privilege log.  I

25 think we were still negotiating the parameters

---

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 58 (229 - 232)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

1 of the privilege -- privilege log.  So I think
2 at that time we didn't even know if every email
3 I have ever sent throughout the litigation --
4 and the same for them -- was going to have to be
5 on a privilege log.  So there was still a lot of
6 negotiations going on.  At some point Chris
7 Niewoehner was involved in that.  I think my
8 thought after this was probably before
9 everything was certified, this is our final last
10 just production.  We're going to have to get a
11 third party to go through computers with
12 everybody.  I think that's ultimately what the
13 Susman and Godfrey, Steptoe Johnson team did.
14 Q         In order to make sure --
15 A         So, hopefully, that answers your
16 question.
17 Q         It does.
18           And the go through the computers
19 that you've mentioned; that was to make sure
20 that, best as humanly possible, everything that
21 was due to be produced should be produced or
22 logged; right?
23 A         That's right.  That's right.
24 Q         Do you actually recall seeing the
25 email that is on -- let's see.

Page 233

1 the attachments?
2 Q         It was.
3 A         Yes.
4 Q         Do you --
5 A         And, ultimately, we got it whether
6 there was problems with us getting a copy open.
7 But yes.  Yes.
8 Q         Do you recall reading this email
9 after you received it?
10 A         Yes.
11 Q         How soon after receiving this email
12 did you contact Mr. Collingsworth about the
13 statements made in paragraph ten?
14 A         I don't know when I actually first
15 read this.  It would have been pretty soon after
16 I would have read it.  What's the email?
17 There's an email, I think, where I asked him
18 about it, isn't there?
19 Q         Well, in Plaintiff's Exhibit 47 you
20 forwarded this email to Terry on July 9th; so
21 two weeks later.
22           And I guess what I'm wondering is:
23 Did you have any conversations with Terry about
24 what's -- Drummond has referred to as the deps
25 in the can email and, in particular, the $5400

Page 235

1           Why don't you go to Plaintiff's
2 Exhibit 44 so we're working from the same
3 document.
4 A         (Witness complies.)
5           MR. PRESLEY:  Tab 77.
6 A         Okay.
7 Q         (By Mr. Paulk)  Let me get my page
8 number here.  Hold on a second.
9           So it's the email which is on the
10 Bates ending 95844.
11           MR. PRESLEY:  Object to the form.
12 Asked and answered.
13 A         No.  I thought you said Plaintiff's
14 Exhibit 44?
15           What are you looking for?
16 Q         (By Mr. Paulk)  Yes.  Plaintiff's
17 Exhibit 44.
18 A         Okay.  you want to me to turn to
19 page --
20 Q         The Bates ending 95844.
21 A         (Witness complies.)  Yes.
22 Q         And I believe you testified earlier
23 that you recalled receiving this email from
24 Billy?
25 A         I believe so.  Wasn't that one of

Page 234

1 references for Otero, ET, and Somario before
2 forwarding this email to Terry on July 9th?
3 A         I don't recall.  I recall that --
4 like I said, we all went to Colorado; took
5 depositions.  We were out there for, I don't
6 know, a couple of days; and then I stayed out
7 there for a week.  So I don't remember when I
8 first.  And I don't know when I first read this.
9 Q         Billy Scherer sent you this on June
10 24th.
11           Was that before or after you were in
12 Fort Lauderdale for the deposition and had a
13 meeting with him?
14 A         I think you could probably look and
15 see what the date of those depositions were.  I
16 think it was pretty close in proximity.
17 Q         But you don't remember sitting here
18 today?
19 A         I don't.
20 Q         Okay.  And Terry's response at some
21 point to you about this paragraph ten and the
22 references to ET and Somario's family; I think
23 you testified earlier was that Ivan had been
24 provided money to drive by those people's
25 houses.

Page 236

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 59 (233 - 236)

**Drummond Company, Inc. v. Terrence P. Collingsworth, et al.**

**Bradley J. Smith**
**11/21/2023**

| | |
|---|---|
| 1          Is that -- | 1                     EXAMINATION |
| 2 **A       Maybe not Ivan specifically, but his** | 2 BY MR. MUJUMDAR: |
| 3 **security personnel or whatever he had.  Yes.** | 3 Q         Okay.  Afternoon, Brad.  I'll be |
| 4 Q        All right.  And did you do anything | 4 super quick. |
| 5 else to verify that what Mr. Collingsworth was | 5 **A       Okay.** |
| 6 telling you was the purpose of that money, that | 6 Q         Do you know Francisco Rameriz? |
| 7 that was accurate? | 7 **A       I don't.  The name sounds familiar.** |
| 8 **A       Well, like I -- I think I've already** | 8 **But for me to tell you who he was, I -- I** |
| 9 **testified to; around the same time, I discussed** | 9 **wouldn't be able to tell you right now.** |
| 10 **it with Niewoehner and McNeil who were taking** | 10 Q        What about the name -- do you know |
| 11 **over the case and said -- and I think there was** | 11 the name Francisco C-u-e-l-l-a-r? |
| 12 **an email -- this needs to be logged or produced.** | 12         And I think that's C-u-e-l-l-a-r? |
| 13 Q        But you didn't, for example, go to | 13 **A       That name -- I've seen that name on** |
| 14 Conrad & Scherer's accounting department and | 14 **something today or yesterday in review.** |
| 15 say, Hey, Do y'all have any -- anything that | 15         Is that the same person? |
| 16 would relate to these witnesses, El Tigre and | 16 Q        Yes. |
| 17 Somario? | 17 **A       Okay.** |
| 18 **A       Well, I think now that we look at** | 18 Q        What about the name Rebecca |
| 19 **it -- and I didn't look at it that way -- I** | 19 Pendleton? |
| 20 **think I already had it.** | 20         Is that a name you recognize? |
| 21 Q        What do you mean? | 21 **A       That was someone that worked for** |
| 22 **A       Didn't I have the bank records that** | 22 **Terry and maybe ended up marrying who you were** |
| 23 **we redacted?  I think I probably already had it.** | 23 **talking about.  Yeah.  I think I remember that** |
| 24 **I didn't put it together; but, yeah, I already** | 24 **vaguely.  Yes.** |
| 25 **had it.** | 25 Q        Other than just having some |
| Page 237 | Page 239 |
| 1 Q        Well, those bank records reflected a | 1 familiarity with the name, is there anything |
| 2 $2700 payment to Otero; right? | 2 specifically or generally that you remember |
| 3 **A       Yes.** | 3 about Francisco Rameriz? |
| 4 Q        The ones that we've looked at today? | 4 **A       No.** |
| 5 **A       Yes.** | 5 Q        Is there anything specifically or |
| 6 Q        Have you seen any bank records that | 6 generally that you remember about Rebecca |
| 7 reflect a payment to El Tigre and Somario? | 7 Pendleton? |
| 8        MR. PRESLEY:  Object to the form. | 8 **A       No.** |
| 9 **A       I don't know.** | 9 Q        All right.  That's all I've got. |
| 10 Q        (By Mr. Paulk)  In any event; when | 10         FURTHER EXAMINATION |
| 11 you got this email, you did not go to Conrad & | 11 BY MR. PRESLEY: |
| 12 Scherer other than to Terry to try and get an | 12 Q        Just real quickly, Mr. Smith. |
| 13 explanation for these payments; right? | 13         You were asked at one point whether |
| 14        MR. PRESLEY:  Object to the form. | 14 when Mr. Collingsworth told you that the |
| 15 **A       I don't recall.** | 15 payments that he had made to witnesses that he |
| 16 Q        (By Mr. Paulk)  That's all I have | 16 actually disclosed to you, three of them were |
| 17 for now, Mr. Smith.  Thank you. | 17 for security, whether you doubted that. |
| 18        MR. PRESLEY:  Just very -- well, I'm | 18         And your answer was that you |
| 19 sorry, Anil.  Go ahead. | 19 department doubt that at the time when he told |
| 20        MR. MUJUMDAR:  No.  I'm happy for | 20 you that; right? |
| 21 you to -- | 21 **A       Right.** |
| 22        MR. PRESLEY:  No.  No.  You go | 22 Q        Does your opinion change if you knew |
| 23 ahead. | 23 that Mr. Collingsworth had stood up in open |
| 24 | 24 court here in Birmingham and told Judge Proctor |
| 25 | 25 a lie to his face? |
| Page 238 | Page 240 |

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 60 (237 - 240)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

```
1          Does that cause you to question
2 whether Mr. Collingsworth is telling you the
3 truth?
4 A          I -- about what?
5 Q    About what witnesses have been paid?
6          You understand he made that false
7 representation to Judge Proctor on April 21st,
8 of 2014, in the hearing where you were?
9 A          Right.  Yes.  Yes.  Yes.  Yes.
10 Which led more credence to me, you know, taking
11 at face value what he was saying.  Yes.
12 Q          The fact that he lies to a federal
13 judge?
14 A          No.  No.  No.  The fact that he was
15 only paying three witnesses.  I had no reason to
16 question it.
17 Q          Right.
18          So you -- you thought surely if he's
19 making this representation to a federal judge,
20 then he must be telling the truth?
21 A          Absolutely.
22 Q          Right.
23          And we now know that that was not
24 the truth?
25 A          I don't know really what the truth
```
Page 241

```
1 was to be honest with you.  All that took place
2 after I was gone, and I don't know what his
3 explanation was or how -- what was determined or
4 what.  So I don't -- I don't -- I can't comment
5 on that.
6 Q          All right.  Well, I'll represent to
7 you that that representation was found to be
8 false by Judge Proctor in this crime fraud
9 opinion.
10 A          Okay.
11 Q          So the fact that Mr. Collingsworth
12 has made false representations to a federal
13 judge here in Birmingham, does that cause you to
14 question things that he told you as fact during
15 the representation -- during your representation
16 of him in this case?
17 A          Maybe.  But I don't know what his
18 response was once he did -- did -- what his
19 explanation was for why he didn't disclose the
20 other ones or -- or -- or really what the
21 context was that he had done others.
22 Q          So you --
23 A          I just don't know.
24 Q          Right.
25          You don't know what he told Judge
```
Page 242

```
1 Proctor his reason was for not disclosing El
2 Tigre and Somario?
3 A          I do not.
4 Q          And you don't know what he told
5 Judge Proctor his reason was for not disclosing
6 Jaime Blanco had been paid?
7 A          I do not.
8 Q          And you don't know whether those
9 reasons that he told Judge Proctor are provably
10 true or provably false?
11 A          I don't.
12 Q          All right.  No further questions.
13          FURTHER EXAMINATION
14 BY MR. PAULK:
15 Q          Couple of real quick follow ups.
16          During your representation of Conrad
17 & Scherer in the defamation case, did you get
18 the feeling that the firm was trying to hide
19 anything from Drummond?
20          MR. WELLS:  Object to the form.
21          MR. PRESLEY:  Object to the form.
22 A          No.
23 Q          (By Mr. Paulk)  What about hide
24 anything from the Court?
25 A          No.
```
Page 243

```
1          MR. PRESLEY:  Same objection.
2 A          No.
3 Q          (By Mr. Paulk)  And in your
4 interactions with Conrad & Scherer, did you ever
5 get any guidance or instructions that you felt
6 was unethical or impermissible in terms of what
7 you should be doing?
8 A          No.
9          MR. PRESLEY:  Object to the form on
10 that.
11 Q          No further questions.
12          MR. WELLS:  All right.  Thank you.
13          MR. PAULK:  Thanks, Brad.
14          THE WITNESS:  All right, guys.
15          MR. PAULK:  Do you want to read and
16 sign?  It's up to you.
17          THE WITNESS:  No.
18          MR. PAULK:  Get that on the record?
19          THE VIDEOGRAPHER:  The time is
20 2:39 p.m.  We are off the record.
21     (THE DEPOSITION WAS CONCLUDED AT 2:40 P.M.)
22
23
24
25
```
Page 244

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 61 (241 - 244)

```
1
2                C E R T I F I C A T E
3
4 STATE OF ALABAMA )
5 JEFFERSON COUNTY )
6
7          I hereby certify that the above
8 and foregoing deposition was taken down
9 by me in stenotype, and the questions and
10 answers thereto were reduced to computer
11 print under my supervision, and that the
12 foregoing represents a true and correct
13 transcript of the deposition given by
14 said witness upon said hearing.
15
16          I further certify that I am
17 neither of counsel nor of kin to the
18 parties to the action, nor am I in
19 anywise interested in the result of said
20 cause.
21
22
23
24          /s/Merit Gilley
            Merit Gilley, Commissioner
25          ACCR NO. 67
                                    Page 245
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 62 (245 - 245)

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

### WORD INDEX

**< $ >**
**$100,000**   100:10
170:11, 19
**$150,000**   165:5
**$2,700**   166:12
**$2700**   144:14
146:22   156:23
158:11   167:21
168:14   221:15
223:6   224:15
238:2
**$35,000**   110:20
**$5,400**   166:11
179:13
**$5400**   179:21
235:25
**$60,000**   110:22
**$80,000**   73:25
77:10   226:9,
14   227:4

**< 0 >**
**09/20/2011**   9:10

**< 1 >**
**1**   5:15   6:3
9:18   16:22, 23
43:9   55:17
84:12, 14, 22
96:4   162:8
225:7, 8, 16
**1/2**   8:22
**1:41**   194:21
**1:47**   194:25
**10**   6:5, 7
7:12   9:20
15:21   18:8, 12
21:21   22:1
57:20   59:22,
24   77:5
179:15   228:12
**10:15**   66:9
**10:23**   66:12
**100**   2:5   3:9
10:9   12:24
126:13
**100,000**   169:24,
25
**1000**   112:20
**10-1-13**   7:18

**102**   8:5
130:10   216:8
**10-2-13**   6:9, 19
**103**   9:9   181:10
**106**   7:9
**108**   7:12
**109**   7:14
**10th**   25:18
26:18   64:13
74:25   76:11
77:24   78:14
117:20
**11**   5:5   6:9
15:21   18:8, 12
62:1, 2   165:6
**11:08**   106:7
**11:36**   127:25
**11:42**   128:3
**113**   7:16
**114**   130:19
**115**   7:18
**11-6-14**   9:14
**11-8-13**   7:24
**119**   7:20
**12**   6:11   7:9
64:7, 8, 9
75:4   106:20
117:21, 23
**12:23**   162:6
**121**   7:22
**1-21-14**   5:15
**12-19-13**   7:20
**12-20-13**   7:22
**123**   7:24
**128**   8:1
**129**   8:3
**13**   6:7, 13
59:21   66:17, 18
**130**   8:5
**132**   8:8
**132422**   150:2
**136**   8:10
**137**   8:12
**139**   8:14
**14**   6:15   44:13,
19, 24   55:24
70:5, 6   81:7
94:10   216:21
**145**   8:16
**148**   8:18
**149**   8:20
**14th**   97:6

**15**   6:13, 17
66:15   72:25
73:1
**151**   8:22
**156**   8:24
**15th**   111:12
112:16
**16**   5:15   6:19
78:2, 3
**162**   9:1
**165494**   110:14
**165499**   110:25
**165502**   111:19
**165503**   112:14
**168**   9:11
**17**   6:17, 21
72:25   81:1, 2
**172**   9:3
**174**   9:5
**175**   113:20
**178**   9:7
**17th**   58:1
**18**   6:23   7:14
43:16   85:13,
14   109:12
140:14, 22
143:5
**1800**   112:19
**181**   9:9
**183**   9:12
**187**   9:14
**18th**   138:3
**19**   6:24   7:12
87:19, 20
104:7   108:15
**196**   5:6
**19th**   119:7
146:15   150:5
**1st**   4:5   32:8

**< 2 >**
**2**   5:17   6:21
9:20   21:17, 18
25:19   80:25
202:8   225:11
228:11, 13, 17
229:2
**2:11-cv-03695-RDP**
7:9
**2:11-CV-3695-RDP**
1:9   10:21

**2:15-CV-0506-RDP**
1:18
**2:39**   244:20
**2:40**   244:21
**20**   7:1, 16
89:14, 15
112:25
**2001**   12:19
**2002**   12:19
**2008**   111:12
**2010**   140:15
**2011**   110:23
111:21   112:16
140:15   143:1
165:24   169:20
170:25   198:23
210:12
**2012**   110:21
127:10   146:15
150:5
**2013**   21:21
22:1   43:9, 16
49:21   55:24
58:1   60:2, 5
62:6   64:13
67:10, 19   70:8
73:3   74:13, 25
76:11   77:5
78:5   81:7
86:8   107:8, 19
109:17   110:1
113:7   119:7
122:25   123:17
124:9   200:3
216:1
**2014**   18:2
85:19   88:12
89:19   94:10
96:5   98:24
128:20   129:8
132:21   133:7
135:15   136:20
138:3   143:23
144:8   145:25
149:14   151:19
156:20   162:13
163:3   166:20
167:20   171:7
172:16   175:3,
14   178:19
184:8   186:23
188:1   189:25

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 1

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

190:22    192:19
195:18    201:5
214:14    215:16
216:21, 25
232:21    241:8
**2015**    31:19
32:9    141:16
191:4    195:8
198:19
**2016**    117:21
**2023**    2:7    10:8,
24
**205**    3:12, 24
4:7
**20-plus**    205:19
**20th**    3:22
70:8    121:13
**21**    5:17    7:3,
18    94:5, 6
95:24    96:1
98:24    100:1, 3
115:7    116:16
117:25    118:1
132:21    133:7
169:20
**210**    113:24
**2120**    4:5
**21st**    2:7    10:7,
24    85:18
134:23    136:23
241:7
**22**    6:9    7:5
61:25    96:4, 7
**225**    9:18
**228**    9:20
**2-28-14**    6:24
7:1
**22nd**    165:24
**23**    7:7    12:9
98:20, 21
100:2    103:21
105:4    133:4
**239**    5:7
**23rd**    73:3
**23-year**    105:5
**24**    6:19    7:9
12:9    49:21
78:1    106:23,
25    163:3
166:20    178:24
**240**    5:8
**243**    5:9

**24th**    171:7
172:14    188:8
189:14    230:13
236:10
**25**    5:19    7:12
49:21    74:3
77:6    108:16, 17
**25th**    31:18
109:16    110:1
136:20    145:25
146:25
**26**    5:21    6:11
7:14    64:5, 19
109:13    110:11
117:20, 25
**26th**    109:10
148:16
**27**    7:16    111:3
113:3    115:21
**27th**    184:8
186:23
**28**    7:18, 24
115:8, 19
116:17    123:7
**28th**    88:11
89:19    94:9
107:7    149:14
170:25
**29**    7:20    119:3,
4    121:16
**29164**    6:25
**2nd**    62:6    78:5
120:15    128:20

**< 3 >**
**3**    5:19    6:15
8:20    25:13, 14
70:4
**30**    7:22
103:23    104:6
121:9, 10
131:5    216:14
217:10
**30th**    113:7
**31**    5:23    7:24
103:23    104:7
123:8, 9
143:17, 20
**3-14-13**    6:3
**3-14-14**    7:3
9:18
**3-18-14**    8:12

**32**    8:1    55:3,
14    128:13, 15
**33**    7:20    8:3
119:2    129:3, 6
**34**    7:22    8:5
121:8    130:11,
12    216:7
**35**    8:8    132:16
133:13    218:3
219:4
**35203**    3:23    4:6
**35209**    2:7
3:11    10:10
**36**    5:15    8:10
16:20    84:11
136:13, 16, 17
220:9
**37**    7:1    8:12
89:13    137:22,
25
**38**    6:24    8:14
87:18    139:11,
14    220:8    221:2
**39**    8:16
145:20, 23
**3rd**    32:9

**< 4 >**
**4**    5:21    8:20
26:14, 15
**40**    7:3    8:18
94:5    148:10, 13
**41**    5:24    8:20
149:8, 10
**4-1-14**    7:5
**42**    8:22    151:9,
12
**4-23-14**    8:8
**4-25-14**    8:16
**4-26-14**    8:18
**4-28-14**    8:20
**43**    8:24
155:25    156:2
**4-30-14**    8:22
**44**    9:1    162:19,
22    234:2, 14, 17
**45**    9:3    111:21
172:19, 21
174:6, 8, 9
227:7, 11, 15
**46**    8:12    9:5
137:17    138:1

174:6, 12, 24,
25    227:17
**47**    9:7    178:15,
17    235:19
**4-7-14**    8:3
**48**    9:9    181:11,
12
**49**    6:1    9:11
168:6, 7
174:19, 20
**4th**    172:6
231:5

**< 5 >**
**5**    5:23    31:11,
16
**5:01**    89:24
**50**    7:5    9:12
95:21    183:24
184:1, 2
**505**    3:22
**51**    9:14
187:19, 22
**5-14-13**    6:21
**52**    112:14
**54**    8:3    129:4
**55**    6:3
**57**    6:5
**59**    6:7
**5-9-14**    8:24

**< 6 >**
**6**    5:24    6:1
41:6, 9, 10
49:10    54:25
143:13, 14
188:1    192:18
204:12
**60**    7:7    98:19
133:3
**62**    6:9    8:8
132:14    218:5
**6-20-13**    6:15
**6-24-14**    9:1
**6-25-13**    6:1
**6-25-14**    8:10
9:3, 20
**64**    6:11
**65**    8:16    145:18
**66**    6:13    8:18
148:8

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 2

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

67    245:25
69    8:20    149:7
6th    60:2
 189:25    190:22

< 7 >
7    5:17    6:1
 9:18    21:13
 49:16, 20
 129:8    175:3
 202:12    204:11
 225:5, 13, 15
70    6:15
71    9:11
 167:25    168:9
7-10-13    5:17,
19, 21
7-11-14    8:14
7-17-13    6:5
72    8:22    151:8
73    6:17    8:24
 155:24
77    9:1    162:20
 234:5
7-7-14    9:5
78    6:19    9:3
 172:18    227:9
79    8:10    136:8,
12, 17
7-9-14    9:7, 9
7th    2:6    3:10
 10:9

< 8 >
8    5:19    6:3
 25:11    55:18,
19    71:7, 12
800    112:19
80K    226:20, 23
81    6:21
82    9:5    110:17
 174:11    175:1
8-27-14    9:12
8-28-13    7:9
83    110:17
84    178:13
85    6:23
86    8:14
 139:10, 16
868-8000    3:12
87    6:24    9:7

89    7:1    9:12
 183:22
8th    111:21
 123:17

< 9 >
9    5:21    6:5
 26:13    57:21
 58:7, 8
9:12    2:8
 10:11, 24
90    187:18
91    187:18
9-23-13    6:17
9-25-13    7:14
9-26-13    7:12
9-30-13    7:16
94    7:3
9500-31    9:10
95832    169:15
95844    165:20
 234:10, 20
95847    170:21
96    7:5    9:14
 187:18, 23
9-6-13    6:7
97    5:23    31:12
974-4860    4:7
98    5:24    7:7
 55:5    143:11
986-3620    3:24
99    6:23    84:17
 85:13
99.99    124:24
9-9-13    6:13
9th    67:10
 178:19    179:6
 235:20    236:2

< A >
a.m    2:8    10:11,
24    66:9, 12
 127:25    128:3
abide    13:3
Abigail    163:16
able    223:11
 226:22    239:9
absolute    71:12
absolutely
 105:15    130:23
 211:16    224:19

 241:21
abundance    230:1
accept    135:4
accessing    228:19
accomplish
 208:18
account    73:25
 112:2    153:5
accounting
 208:12    227:3
 237:14
accounts    139:3
ACCR    245:25
accuracy    59:15
 61:18
accurate    46:2,
20    59:5    63:2,
8    237:7
accusations
 124:15
Acker    83:8
 199:24
acting    10:3
action    64:25
 136:1    215:1
 245:18
actions    212:19
active    35:17
actively    198:20
Activity    7:9
 153:8
actual    142:20
 179:23    209:15
adamant    147:14
added    120:23
addition    156:20,
21
additional
 27:12    99:21
 101:15    103:5
 132:1    201:21
 230:21, 23
address    17:9
administrator
 26:2, 3
advance    75:9
 182:20
adversary    115:2
advice    53:10
affect    201:11
 218:23, 24

affidavit    92:16
 140:18
affixed    17:2, 3
afternoon    89:18
 239:3
Agenda    6:17
 73:11    74:10
ago    14:19
 15:21    18:8, 12
 40:15    52:15
 58:9    76:17
 113:24    148:3
 190:13
agree    79:12
AGREED    1:24
 2:10, 18
 138:19    168:24,
25    169:2, 7
 201:14    226:9
Agreement    6:18,
23    69:20
 73:11, 16, 19
 74:21    79:16,
22    80:1    85:22
 86:1, 3    226:19
agreements
 39:25    85:6
 86:7    103:12
ahead    37:11
 82:5    160:12
 162:1    195:23
 196:2    238:19,
23
Akermohns    102:13
al    1:10, 14, 19
 6:22, 25    7:10,
23    9:10    10:20
 28:9
ALABAMA    1:2
 2:6    3:11, 23
 4:6    10:2, 3,
10, 18    11:1
 12:8, 14, 17
 40:7    245:4
Alana    156:6, 7,
8, 9    157:11, 16
 172:23    227:24
 228:23
Albarracin
 176:24
Albert    38:15
 80:12, 20    85:7

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 3

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

86:4    95:11
100:22    103:3
**Ali**    70:9, 13
**alleged**    90:13,
14
**alluded**    103:24
**ambiguities**
207:12
**amount**    144:14
156:23
**and/or**    20:12
63:6    85:7
87:7    193:10
**Andre**    170:7, 11,
18
**ANIL**    4:2    11:8
195:25    238:19

**anil@dagneylaw.com**
4:8
**answer**    24:10
33:15    34:3, 13,
15    84:3    91:12
138:20    180:14,
18    191:13
213:15, 16
240:18
**answered**    104:2
234:12
**answers**    233:15
245:10
**ANTHONY**    3:5
**anticipated**
224:8
**anybody**    13:22
14:14    33:8
35:25    36:3
39:16    52:11
77:2    92:25
114:2, 6
118:23    125:23
142:19    158:2,
6    159:13
192:21    200:19,
22    217:15
219:21
**anywise**    245:19
**apparent**    157:4
**appeal**    199:20
200:10
**appear**    25:17
41:14    49:22

53:25    64:15
140:8    153:11
227:25
**appearance**
210:25    211:3
**appeared**    16:15,
16    17:11
**appears**    50:14
58:17    81:5
146:3    150:8
153:6    173:1
**applied**    47:11
67:4
**apprised**    25:8
**approach**    200:18
204:3
**approve**    147:5
148:4    149:24
**approximate**
159:17
**approximately**
2:8    10:11
**April**    96:4
98:24    112:16
128:20    129:8
132:21    133:7
134:23    135:15
136:23    145:25
146:25    148:15
149:14    162:13
175:14    214:14
215:16    216:21
241:7
**ar**    221:23
**arguable**    223:25
**argue**    214:23
**Argument**    6:19
78:10
**arrangement**
83:19    84:7
**aside**    93:6
**asked**    33:15
53:11    54:18
65:24    83:8, 23
84:20    89:23
91:11    118:3
145:8    153:16
171:13    194:9
202:16    212:25
215:24    219:5
221:12    226:10

227:23    234:12
235:17    240:13
**asking**    24:2
50:4    51:21
52:1, 16    54:1
78:21    108:10
120:24    121:19
137:12    138:8
160:14, 15
165:5    187:13
204:20, 24
205:7    209:4
220:1    228:5
**asks**    112:3
**asserted**    117:2
**asserting**    99:18
**assessment**    91:4
**assign**    2:23
**assist**    94:21
177:20
**assistance**
176:23
**assistant**    17:19,
22    18:15
70:14    85:3
88:14    156:6
172:24    181:15
227:24
**assistants**
161:10
**associate**    165:13
**associated**    91:8
**associates**
56:17    213:3
**assume**    17:2
34:1    47:19, 21
51:7    57:12
76:8    77:14
90:2    128:10
142:25    153:15
183:15    187:3
206:8
**assumed**    191:17
206:6
**assuming**    77:17
**assumption**    185:9
**assurances**
183:4, 7
**assured**    183:2
**ATS**    69:14
**Attached**    5:21
6:5, 18    7:3

8:10, 16    9:12,
18    73:12
113:16, 19
120:15    136:22
157:11, 13, 15
164:4    169:13
179:2    184:18
188:8, 14
189:12, 13
**attaches**    62:8
146:3    165:10
181:21
**attaching**    56:1
78:9    79:21
109:24    124:2
138:23    149:16
**attachment**
17:11    73:15
78:18    87:24
146:12    149:17
150:2    153:1, 2
156:13, 16
184:11
**attachments**
17:13    18:17
87:23    156:13
167:6    171:11,
16    230:14
235:1
**attempt**    88:23
**attempting**    103:5
**attend**    231:18
**attention**    64:19
90:19    107:5
109:2    116:18
143:17    148:20
169:15
**Attorney**    3:19
4:3    11:24
12:8    18:23
22:14, 15
27:22    60:12
70:2    72:14
73:15    91:20,
22    93:2    132:1
159:24    217:6,
11
**Attorney-Client**
6:23    33:23
**Attorneys**    3:7
11:1    91:3

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 4

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

101:22    142:21
160:14    177:21
attorney's
185:22
AUC    30:14, 21
August    107:7,
18    108:21
184:8    186:23
authorities
177:2
authority    29:15
Avenue    4:5
aware    35:8
40:20, 25    41:3,
24    42:4    83:14
104:14    114:23
141:4, 10
176:3    196:10,
12    201:25
204:19    206:4,
7, 14, 21    209:7,
13    213:13
215:18    220:12

< B >
B.V    102:5, 8,
24    103:13
back    49:14
54:23    66:12
70:15    74:8
76:7    80:8
84:19    88:23
96:24    97:6
103:19    107:2
115:21    117:19
126:8    128:3
143:9    162:9
167:17    192:6
194:25    199:13
206:24    213:23
225:23    226:5
227:21    228:1
231:7
Balcero    43:20,
24    71:14
208:24    209:14
banana    220:19,
21
Bank    9:11
73:25    112:2
151:18    153:3,
20, 22    168:14

221:13    237:22
238:1, 6
banking    112:3
based    65:16, 22
76:24    131:9
183:3    190:19
196:20    208:4
basically    120:14
basis    100:11,
12, 13    117:7
224:1, 6
Bates    8:24
17:1    78:19
85:16, 17
110:9, 11
129:14    150:1
156:25    165:19
169:15    234:10,
20
battling    214:22
behalf    203:10
belief    183:3
believe    22:22
24:2, 13    25:4
46:13    60:23
63:24    65:9
69:24    75:6
83:23    92:24
95:24    101:21
102:3    118:21
155:23    160:1
164:12    171:8
182:22, 23
186:7    204:18
212:15    218:4
219:1    232:15
234:22, 25
believed    212:12,
15, 20    221:21
bell    102:19, 20
Ben    11:4    174:5
benefits    224:17
BENJAMIN    3:4
best    31:22
145:3    233:20
better    18:7, 9
beyond    186:17
big    32:1
76:15, 19
206:17
bigger    122:22
biggest    76:12

Bilderbeek
38:16    80:12,
14, 20    85:7, 8
86:5    95:11
100:22    103:3
Bilderbeeks
103:8
BILL    3:17
11:11    24:23
25:1, 7, 20
123:12    160:17
164:10    165:25
169:19    197:7
198:12
billing    128:6
Billy    20:18, 19
21:2    24:12, 15
25:7, 19    26:19
29:4, 8, 13, 22
37:7, 14, 19
123:12    136:20
161:2, 13, 17
163:4, 20
164:3, 13, 18
166:23    167:1,
6    169:14
171:4, 10, 15
172:3, 13
173:2    174:3
178:24    181:20
182:21    188:7
189:14    199:8
200:9, 14, 17
203:8, 15
204:9    215:21
216:25    219:23
224:21    228:1,
20, 24    229:24
230:12    231:3,
10, 16, 21, 25
232:6, 14
234:24    236:9
Billy's    189:17
204:1    229:3
Birmingham    2:6
3:11, 23    4:6
10:2, 10    11:1
75:17    196:18
240:24    242:13
bit    17:21
18:7, 9, 21

60:16    192:17
193:25
black    147:24
blame    125:15
Blanco    90:2, 8
93:21    94:2
95:4, 9, 10, 14
96:16, 23    97:2,
11, 14, 21    98:4,
6, 16    101:7, 11
114:8    118:19
132:2, 8    165:5
177:11    178:6,
10    195:10, 13
213:10    226:2
229:10, 16
243:6
Blanco's    100:6
blue    159:10
board    68:24
142:2    171:19
body    71:5
78:13    85:4
Bogota    97:9, 14
98:16
bold    131:21
Bonner    76:2
147:25    155:21
158:2
bottom    16:25
21:20, 25
55:22    56:12
94:14    109:2
111:2    130:21
176:17    182:4
bpresley@starnesla
w.com    3:13
Brad    6:17
50:17    71:11
73:11    74:10
113:16    116:24
126:13    133:25
138:16    183:9
196:8    205:12
216:16    219:6
225:18    239:3
244:13
BRADLEY    2:2
5:4    10:11, 22
11:12, 23
Brads    8:22
Brad's    152:8

1-888-326-0504  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 5

break    12:4
  66:6   127:21,
  22    161:22
  194:15
breaking    81:21
Brief    6:5
  7:20    8:3
  61:1    124:2, 3
  126:13    131:5,
  8, 20    134:24
  137:8    175:8,
  13    176:16
  177:10    181:16
  182:1    216:12
  217:10, 15, 20
briefed    135:19
briefing    162:14
briefly    12:16
  14:7, 20
briefs    46:19
  61:12, 15
broad    51:22
broaden    52:3
broke    162:11
Brookwood    2:6
  3:9    10:9
brothers    80:14
brought    186:2,
  11
BS    170:24
bullet    134:16
bullshit    134:1
  219:7
bunch    86:12
  122:5    159:25
business    56:8
Byrd    4:11

< C >
cafeteria    90:14
call    24:7
  92:2, 14    147:9
  154:18    159:18
  166:2    209:17
  215:17    224:21
called    91:25
  102:5, 8, 23
  159:3, 8
  163:20    183:9
calling    159:14
  203:17

calls    14:16, 17
  107:24    117:14,
  17
camera    151:5
  224:10
capitalized
  219:11
caption    220:23
career    105:5
Carroll    127:3, 6
CASE    1:8, 17
  7:9    10:20
  13:18    14:22,
  24    15:2, 5, 8,
  12, 15, 19
  18:25    19:4, 8,
  11, 17    20:4, 7,
  11    21:4    25:3,
  8    26:10    27:1,
  9, 14, 20    28:3,
  6    29:3, 10, 17,
  20    30:3, 5, 13,
  18, 24    31:24
  35:15    39:18,
  21    40:1    41:13
  42:13, 16
  43:20, 24
  45:16, 19, 24
  54:2    58:22
  59:13    60:7
  61:1    64:13
  69:9    71:24
  72:2    81:13, 17
  82:1    86:11
  87:2    97:18
  98:25    104:9,
  16    105:15
  107:14, 18
  115:1    121:14
  124:25    127:7
  128:7    130:20
  142:23    158:20
  159:1, 5, 6, 22
  160:7, 14, 19
  161:14    163:12
  164:1    166:2
  171:22    180:24
  184:25    186:18
  187:13    188:24
  190:6, 21
  191:7    195:5
  196:9    198:23

  199:10, 15
  200:3, 12, 15,
  19, 24    201:4,
  10, 12, 25
  205:20    206:23
  208:19, 24
  209:1, 5, 9, 24
  210:2, 8, 19, 24
  211:19    212:1,
  2, 9    214:21, 25
  218:23    220:13,
  17, 22, 24
  221:4, 6, 8, 10
  222:17    237:11
  242:16    243:17
cases    15:1
  42:7    68:22, 25
  69:1, 5, 14, 18
  74:4    86:23, 25
  87:3    91:23
  98:2    105:12
  159:25    186:19
  197:8    198:4, 6,
  7    201:8, 11
  205:24    206:17
  208:23    220:14,
  20, 21
Castro    176:25
categories    70:19
Category    7:1
  70:20    83:2
cause    10:12
  204:3    215:4
  241:1    242:13
  245:20
caused    124:23
caution    230:1
cc    84:25
  156:10    163:14
cc'd    88:15
ceased    31:24
Center    3:21
  55:13    110:17
  177:10
Central    10:24
certain    13:2
  16:1    21:7
  26:24    52:5, 15,
  17    53:2, 5
  54:20    177:22
  210:5

certainly    46:13
  47:23    51:13
  53:11    61:9
  65:25    72:19
  115:14    125:8
  126:9    134:16
  136:4    182:23,
  25    185:9
  186:1    191:23
  205:6    230:20
certified    233:9
certify    10:4
  245:7, 16
chain    24:15
  49:20, 24    50:4
  89:19    94:10
  107:6    108:22
  116:21    119:8
  133:10, 14, 16
  139:18, 22
  148:16
chance    38:21
  89:24    225:18
change    18:5
  71:12    204:3
  210:7    240:22
changes    58:13
changing    210:1
characterization
  81:14    125:3, 6
Charity    60:11
  139:21, 25
Charris    43:13
  50:19    146:9
  176:24    182:8
  202:22    205:15
chart    156:14
  157:2
Cheers    126:15
Chiquita    220:18,
  19    221:10
Chris    31:2
  33:7    39:11
  122:21    171:18
  184:5, 21
  185:8    186:4, 5
  201:3, 24
  231:7    233:6
Christian    22:5,
  13    55:23    57:4
  60:1    67:10
  108:23

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 6

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

Christian's
58:12
chronologically
190:21
CHS    9:10
circulate    60:20
Civil    10:5
  12:25    15:8
  68:25    105:12
claim    39:22
claimed    30:13,
19    80:16
claims    212:8
Clark    12:18, 20
claw    88:23
  96:24
cleaned    69:6
clear    52:7
  114:23    195:3
  214:6
client    13:7
  20:12    27:16,
  17, 24    45:17,
  20    173:12
  224:3
clients    20:3
  46:1    159:6
  199:4    210:16
  224:4
client's    13:18
clip    128:24
close    56:7
  161:23    236:16
closely    153:25
closing    126:12
clue    126:14
Coca-Cola    23:25
cocounsel    86:20,
21
co-counsel
  177:19
Cohen    93:4
colleague    57:4
COLLINGSWORTH
  1:10, 19    6:21,
  25    7:10, 22
  9:9    10:20
  14:23    20:5, 20
  21:3, 22    26:24
  28:2    29:2, 9,
  14, 23    30:25
  33:2    35:2

36:9    37:23
42:7    45:8, 25
46:16    48:2, 12
49:4, 25    50:5,
13, 16, 24    51:4,
10, 19    52:1, 9,
16    53:18    54:1
55:23    56:1, 16
57:8, 16, 24
58:10, 11, 20
59:14    62:5
67:11    69:13
70:9    71:10
72:5, 22    73:4,
22    74:12    75:9,
15, 19    76:10
78:6    79:8, 20
80:19    81:7, 11
83:7, 10, 23
84:8    85:1, 22
88:11, 18, 19
89:22, 24    91:1
93:10, 15
94:11, 19    95:2,
8, 13    96:5, 13
97:3, 8, 13, 18
98:3    100:19,
21    101:5
102:21    103:1,
12    104:1, 8, 15
108:23    109:3
110:4    113:6,
15    116:3, 19,
23    117:12
119:8, 11
123:12    124:1,
13    125:3, 14
129:9, 10, 23
130:4    131:24
133:15, 17
134:10    137:12
138:4, 16, 22
139:5    141:5
142:3, 4    146:1
148:3, 16, 21
149:5, 13, 21
150:7    151:1
152:3    153:21
155:4    156:9
157:16, 22
158:5    161:2
165:23    168:21

169:18    170:11,
19    175:4, 7, 17,
24    176:7, 11,
17    178:2, 8, 20
179:6, 16
180:3, 9
181:20    182:13
183:2, 5    184:4
195:6, 9, 13
196:13    217:7,
11    235:12
237:5    240:14,
23    241:2
242:11
Collingsworth's
  28:24    48:20
  68:14    90:19
  133:21    140:1,
  8    150:13
  152:12    166:6
Colombia    30:9,
  21    38:21
  68:17, 19    69:4
  80:16    97:19
  150:20    223:12
Colombian    30:6
  70:2    90:9
  177:1
Colorado    172:6
  231:5, 6    236:4
column    110:20
  111:25    112:18
columns    153:9
come    27:13
  34:9, 24    48:8
  140:21, 25
  163:25    164:24
  170:17
comfortable
  117:7
coming    206:15
commence    10:15
commencing    2:8
  10:10
comment    242:4
comments    62:9,
  22    217:20
Commissioner
  2:3    10:4
  245:24
communicate
  228:24

communication
  176:7
communications
  26:6    72:1
  76:13    122:9,
  13    158:23
  175:24    176:2
companies    87:9
  198:9    220:15
COMPANY    1:5, 13
  3:3    6:24
  7:10    8:1
  10:19    11:5
  19:14, 17, 19,
  23    20:12, 14
  80:15    102:5, 7,
  23
comparison
  168:11
Compel    5:17, 19
  6:11    8:6
  22:10    26:20,
  23    27:4    43:10,
  18    44:8    58:16
  59:3    65:14
  75:1    86:9
  124:4    202:17
complete    16:12
  63:11    152:22
  201:19
completely
  171:25
completeness
  130:24
compliance    2:14
complicit    30:14,
20
complies    43:4
  44:14, 25
  49:15    55:1, 4
  64:21    78:25
  84:23    100:4
  103:22    110:13
  111:1, 20
  113:1    115:22
  117:24    143:15,
  18    146:13
  150:3    163:2
  165:21    170:22
  202:9    204:14
  220:11    225:19

1-888-326-0504  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 7

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

227:8    229:13
234:4, 21
**computer**   18:8
245:10
**computers**   48:3,
6   135:9   139:3
219:24   233:11,
18
**concern**   72:1
115:11, 17
201:7   215:4
231:25
**concerned**
150:19   185:11
186:16   230:14
232:4, 21, 23
**concerns**   76:12
206:20   223:11
**concession**   80:15
**concluded**
177:21   244:21
**concludes**   177:16
**conclusion**   91:9
175:13
**conclusively**
177:18
**conditions**
177:22
**Confer**   8:8
194:20
**conference**
14:16   141:4
**confirm**   131:4
226:20, 23
**conflict**   203:20
232:11, 22
**connect**   98:8
**Connors**   163:15
**CONRAD**   3:17
11:10   20:13,
21   22:13, 24
23:6   26:4, 23
30:25   36:1, 3,
18, 20   37:1, 3
38:1   39:17
46:1, 17   47:11
48:1, 5, 19
58:20   59:15
60:11   67:14,
25   69:13
73:22   77:10
82:13   87:4

127:3   142:4
153:4   159:7,
23, 24   161:1, 7,
17   163:11
170:23   172:1
176:11   180:8
192:22   195:6
196:10, 15, 21
197:1, 10, 13,
19   199:4
200:22   202:1
206:13   210:13,
18, 23   211:12,
17, 18   213:4, 9
214:9   215:17
216:3   217:7,
12, 15, 19, 22
219:15, 21
220:4   224:22
227:2   230:23
237:14   238:11
243:16   244:4
**consequences**
91:5
**conservative**
117:8, 17
**considerations**
19:5
**considered**
93:21   97:4
105:16   178:5
208:16   217:21
**consistent**   18:1
27:6   50:23
56:15   58:18
61:6   71:13
93:19   95:2
100:17   104:11
116:9   119:16
129:21   130:2
132:6   138:15
175:6   177:5
178:1   229:15
**consistently**
203:2
**constitutes**
210:6
**contact**   19:16
20:17   28:3
29:3   97:12
214:5   227:1
235:12

**contemporaneously**
200:14
**contending**   215:3
**contention**
180:25
**context**   115:16
229:7   242:21
**contingency**
74:4   77:6
**continue**   203:24
215:14
**continued**   52:3
209:23   210:1
**continuing**
209:20, 21
**continuously**
215:9
**conversation**
29:4, 12   35:7
36:2   50:12
51:18, 23   52:5,
8, 12, 22, 23
54:16   92:8
104:23   189:24
195:12, 16, 17
197:2   198:12
199:3, 8, 12
200:8, 13
203:22   204:7
213:12   220:3
232:17
**conversations**
21:1   25:1
51:4, 5   53:17
165:16   171:18
175:23   176:1
214:4, 9
221:17   232:5
235:23
**cooperates**   71:24
**cooperation**
73:15
**coordinate**   29:9,
22
**coordinating**
30:3
**coordinator**
16:21   21:14
25:12   26:13
31:13   55:6
66:16   106:21
129:5   138:2

143:12   162:21
168:10   175:2
187:24   204:13
216:9   220:10
**copied**   24:18
25:23   57:4
173:18   184:5
**copies**   16:16
17:12   163:6
165:25
**copy**   14:5, 11
15:23   26:20
41:5, 12   70:10
107:6   129:16
150:5   168:13,
16   173:2
176:5   217:14
235:6
**copying**   22:5
55:23   62:5
67:11   113:6
138:4   229:20
230:6
**corner**   17:1
**corporation**
212:4
**correct**   11:25
13:4, 20, 21
14:21   15:5, 6
21:22   24:16
26:5, 20, 21
28:4   29:25
31:19   32:12
33:17   34:4, 10,
25   39:12
40:12   41:14
42:13, 14, 17,
19   44:4, 9, 10
45:4, 21   46:2
49:22   52:9, 10
53:16   54:12,
15   58:2, 3
60:3, 4   61:5
64:15   65:15
68:8   69:15
71:3, 19, 20
72:8, 9   73:5,
22, 23   79:3, 5
82:17   83:16
85:23   86:5, 13
93:18   94:16
95:6   98:25

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

99:1    100:8, 19
104:4, 13
109:21    115:6
116:14    118:9
119:1, 14, 15
120:5    124:18
129:25    130:18
131:10, 16
133:19    139:18
144:10    148:5,
25    149:6, 19,
25    155:5
163:4, 12
175:4    177:8
178:20    179:3
180:6    181:2,
16    182:9
183:15    184:6,
7    196:17, 19,
22, 23    198:21,
25    199:6
200:5, 7
202:23    203:4,
5    207:21
208:1, 7
210:14, 15
212:6    216:23
217:3, 8, 12, 13
218:13, 14
224:2    229:18
245:12
**correctly**    44:1
50:8, 21    52:20
60:22    65:5
67:16    72:3
85:10    90:5, 6
91:13    94:24
111:9    112:6
116:7    117:9
132:4    140:19
170:4    171:24
177:3, 24    223:9
**correspond**    85:17
**correspondence**
50:7
**Cost**    8:18
**costs**    166:11
179:14
**counsel**    2:1, 20,
22    10:6    13:16,
20    15:4    37:1
39:17    68:15,

16, 21, 22    69:8,
12    71:25
76:20, 23
82:14    121:13
142:3    160:2
177:1    192:22
201:21    203:21
230:23    232:12
245:17
**counsel's**    72:1
**COUNTY**    245:5
**couple**    21:7
94:8    115:23
127:11    133:9
140:5    147:9
149:13    151:17
184:20    200:11
202:6    207:5
212:3, 24
231:2    236:6
243:15
**course**    20:6
25:2    26:7
30:4, 12, 17
136:3    180:8
206:23    208:9
**COURT**    1:1
2:15    10:1, 17
11:15    13:10,
14, 19    42:12
44:4, 18    46:20
64:7    65:9
69:5    96:1
104:16    168:13
190:11    194:21
207:1, 4
211:20    240:24
243:24
**Court's**    124:16
**Cover**    132:1
138:15    217:5
**crafting**    47:14
**create**    108:7
120:1
**created**    110:7
117:1    120:10
**creating**    120:2,
7
**credence**    241:10
**Crime**    9:5
32:1, 7, 25
34:23    35:13,

19    36:14
37:17, 22    39:6,
19    40:16, 21
41:1, 13    49:12
54:24    55:8
82:12    102:2
134:24    135:15,
18, 19    137:8
143:10    162:15
175:8    181:16
182:19    190:25
191:1    192:24
193:5    195:8
198:16    202:25
242:8
**criminal**    70:2
72:14    100:10
185:15    186:2
**criteria**    47:10,
14    67:4
**cross**    222:1
**cross-examination**
218:25
**Cross-Motion**    8:6
**crucial**    78:15
**CS**    8:24    226:9
**CS_TC132422**
150:2
**CS_TC165494**
110:12
**CS_TC196161**
78:19
**CS_TC95832**
169:16
**CS000891-893**
85:9
**C-u-e-l-l-a-r**
239:11, 12
**Custod**    48:4

**< D >**
**Dagney**    4:4
**daily**    21:6
**data**    47:17
48:1    137:2
**date**    10:4, 23
25:18    30:23
109:9    153:9
192:15    236:15
**dated**    21:21
22:1    49:20
55:24    58:1

62:6    81:7
123:17    146:14
165:23    169:20
170:24    181:25
184:8
**dates**    182:22
**David**    93:4
**Davis**    2:5    3:5,
8    10:8, 25
11:7    106:14
**day**    2:7    10:7
21:8    109:16
110:5    121:21
148:15    159:3,
8    173:3
181:18    208:18
228:2
**days**    79:21
113:9, 12
129:18    133:9
145:1    149:13
200:12    231:2
236:6
**DC**    196:21, 25
197:14
**de**    102:11
**deadline**    154:8
**deal**    133:18
206:17    207:17
212:19
**dealing**    28:14
30:2    71:13
214:7
**dealings**    28:9
**dealt**    93:2
**December**    111:12
119:7    121:12
122:25
**decide**    224:12
**decided**    29:1
101:6    114:9
**decision**    88:22
154:5, 12
155:7, 11
157:21    191:6,
13, 21    203:23
**declaration**
40:10    61:22,
23    183:16
**declarations**
54:21    111:7,

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 9

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

*15*   183:19
218:21
**declined**   177:23
**deep**   57:15
**Defamation**   1:10
14:24   15:2, 5,
*19*   19:8, 11, 17
20:4, 7   25:2,
*8*   26:10   27:14
28:3   29:3, 10,
*17*   30:5, 12, 18,
*24*   31:24
35:14   39:18
41:13   42:12,
*16*   61:1   64:13,
*25*   69:9   81:13,
*17*   82:1   86:11
97:18   98:25
107:14, 18
128:7   130:20
136:1   171:22
180:24   184:25
186:17   195:5
196:9   198:23
199:15   200:19,
*24*   201:4, 10,
*25*   206:23
209:24   210:2,
*7, 19, 24*
211:19   212:2,
*9*   215:1
220:13   243:17
**defamed**   212:9
**defend**   81:17
196:9   198:22
215:1
**defendant**   39:21
100:12   160:18
217:25
**Defendants**   1:11,
*20*   8:5, 6
26:23   40:1, 5
42:1, 13   43:12,
*17*   46:18
59:14   61:2
62:15   67:25
75:11   90:8
97:17   99:5, 18,
*22*   107:13
118:12, 25
119:18   120:2
130:16, 24

131:10, 15
132:7   135:8
142:6, 14, 24
143:23   151:20
177:19   180:24
181:16   182:11
213:1   217:6,
*11*   225:7, 8, 16
228:11, 13, 17
229:2
**Defendant's**
9:17   58:15
124:3   158:6
**defending**   12:25
136:1
**Defense**   9:18,
*20*   15:14   29:9
31:24   35:14
100:10   160:2
185:16
**defenses**   81:22
**definitions**
210:6
**deliver**   170:1
**demanded**   126:25
**department**
227:3   237:14
240:19
**depend**   18:20
**depos**   170:1
**deposed**   91:10
**deposited**   112:5
**deposition**   2:1,
*12, 13, 24*
10:16   13:23
14:1, 15   34:8
103:25   128:5,
*18*   137:11
172:5   198:11
231:4   236:12
244:21   245:8,
*13*
**depositions**
2:16   38:24
172:1   231:17,
*22*   236:5, 15
**deps**   166:2, 13
167:11   179:2
181:21   182:12
183:8, 11
184:12   187:2,

*6*   188:8   217:2
235:24
**described**   97:25
**describes**   58:12
**describing**
110:20
**description**
153:8
**desktop**   139:7
**details**   112:3
170:3, 13
**determine**   15:25
215:7   227:3
**determined**
201:14   242:3
**determining**
47:17
**develop**   197:19
**developing**   46:6
**developments**
21:4   25:8
37:8   166:1
**difference**   23:1
**different**   45:24
95:16   152:17
210:16
**differently**
193:7
**direct**   29:18
31:6   64:18
107:4   109:1
116:18   143:16
169:15
**directed**   175:13
**directing**   90:18
**direction**   137:1
155:3   224:4
**directly**   28:15
**disclose**   218:11
242:19
**disclosed**
141:11, 13, 16
169:4, 10
195:9   240:16
**disclosing**
141:20   243:1, 5
**discover**   57:5
59:2
**discoverable**
64:24, 25   72:2
118:4   122:18
123:1   142:21

158:17   169:4,
*8*   207:1, 6
**discovered**
188:15   189:15
**discovery**   24:3
28:13   34:18
42:11, 17
43:11   46:19
49:8   50:17
52:3   56:3, 19
57:9, 13   58:10
60:25   65:17
66:22   68:2
69:20, 24
71:19   74:17
81:12   82:24
86:10   130:8
143:21   191:25
200:2, 15
203:9, 16
205:13   206:24
207:24   208:17,
*21*   209:9
214:22, 24
215:8, 11
**discuss**   75:10
140:7   159:14
231:23
**discussed**   94:21
104:24   111:7
127:19   132:8
165:10   177:19
183:10   187:3
188:14   197:8
222:1, 21
226:18   232:9,
*10*   237:9
**discussing**   71:6
97:2   98:6
140:7   177:18
193:10
**discussion**   76:4
91:2, 6   100:6
131:25   148:22
155:16   177:10
187:1   203:18,
*19*   221:24
226:13   232:14
**discussions**
86:23   88:18
96:13   122:17
141:20, 22

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 10

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

155:19    171:9,
14    186:21
187:6    192:20
193:3    222:4, 6
223:10    224:14,
21
dispense    12:2
dispute    65:8
72:21    112:8,
11, 22    122:24
disputes    122:17
215:11
distinction
95:15    100:24
223:15
distinctions
209:8, 13
DISTRICT    1:1, 2
10:17
dividing    224:25
DIVISION    1:3
10:18
DOA    9:10
Doc    6:3    8:22
Docs    8:18, 24
94:20    116:5
152:8    226:10
document    17:8
41:17, 20
43:25    56:7
63:10    77:11,
12, 14, 18, 21,
24    78:9    82:11,
24    84:14, 19
85:17, 21    86:7
88:11    92:4
108:4    109:25
111:6    115:2,
20    120:11
130:19    136:16
138:23    152:18
158:25    168:17
179:10    180:10
234:3
documentaries
23:17, 21
documentary
23:24    43:12
Documents    7:16,
18    8:7    13:25
14:3    16:1
26:25    27:9

45:3, 23    46:23
47:1, 4, 7
50:6    54:8
60:7    63:6, 17,
23    65:2, 4, 10
66:21, 24    67:2
74:17    85:6
87:16    88:2, 6,
24    89:1    90:1,
19    91:20
94:15    96:14,
19, 23    98:5
99:19, 21
107:17, 24, 25
108:5    114:3, 7
115:1, 11
116:25    117:5,
6    118:6, 8, 12,
18, 22    120:20
122:3    124:8,
10    126:19
143:22    144:3,
8, 24    145:2, 4
146:4, 25
147:2, 8
148:23    149:3,
17    151:2, 24
152:11    153:17,
19    154:13
155:8    156:20,
21, 24    157:20
158:3, 8    161:3,
6, 8    164:4, 7,
14, 16, 19
167:19    169:13
176:12    178:22
180:16    188:14
189:3, 12, 14
201:17    208:4,
11    215:3
217:1    222:10
228:1, 19, 25
229:23    230:16
dodged    134:16
doing    68:21
81:11    103:6
107:20, 21
142:9    145:3
147:23    158:24
173:13    188:22,
23    191:25
192:3    194:12

197:24    201:12
208:12    211:5
212:21    215:22
224:6, 24    244:7
Dole    220:19, 22,
24    221:4, 6, 8
dollar    102:23
dollars    105:6
double-spaced
44:24
doubt    212:22
218:15    240:19
doubted    240:17
draft    56:2, 6,
23    58:10, 13,
14, 21    59:12
60:20    62:8, 21
109:3, 4    110:6
113:9, 13, 16,
23    114:3
115:12    117:13
118:13    119:17,
19    120:2, 7, 22
124:8, 10
129:24    138:17
175:8, 16
176:16    177:10
drafted    62:14,
18, 24
drafting    55:10
56:18    61:3, 7
130:5
Drath    25:23, 24
26:7    123:13
165:25    169:19
dreamed    142:20
drew    209:8, 14
drive    179:24
236:24
drives    134:2, 3
135:9    219:8, 9
DRUMMOND    1:5,
13    3:3    6:21,
24    7:5, 10, 22,
24    8:1    9:1, 3,
7, 9, 14, 20
10:19    11:5, 6,
7    14:23    15:8,
18    26:22    27:7,
14, 18    30:14,
20    38:25    42:8
43:9, 19, 23

50:6    55:9
57:5, 17    60:6,
10    62:12    65:9
67:19    69:2, 14,
18    71:24    74:5
77:7    80:17
81:12    82:11
85:5    86:11
87:5, 14    88:4
90:2, 10    91:10
96:6    98:2
99:4    104:15
121:21, 23
122:12    124:14,
16    125:20, 21
127:7    129:18
140:12    141:18,
21    144:9
156:19    160:15
162:12    163:20
168:12    169:5,
10    186:19
198:7    202:17
204:20    206:25
209:3    211:14
212:8    215:2,
15    217:2
221:4    223:11,
22    235:24
243:19
Drummond's    8:5,
6    22:10    26:20
56:2, 7, 18
58:15    66:22
70:19    74:25
99:17    121:13
124:2, 4
128:18    130:16
133:5    134:1
219:7
Duarte    43:13
50:19    176:23
182:7    202:22
205:15
due    156:12
230:24    233:21
Duke    85:1, 2
156:6, 9
172:23    227:24
duly    11:13
Dutch    80:15

1-888-326-0509  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 11

212:4
duty   13:7

< E >
earlier   14:13
18:22   28:1
37:6   66:21
67:2   74:24
79:21   97:25
103:25   118:2
120:1   124:9
128:17   130:3
132:20   133:1
137:11   139:25
149:2   150:6
163:8, 23
167:18, 20
192:17   199:8
204:16   219:5
223:9   226:14
227:24   234:22
236:23
early   46:7
198:11
easy   227:19
eat   162:1
E-discovery
143:2
effect   2:13
137:14   201:10
effort   227:1
eight   122:9
either   19:12
22:15   61:3
70:22   115:3
167:3   177:1
180:1   189:4
El   51:11, 14
104:17   112:9,
23   114:7
118:14   143:24
144:20   156:23
158:13   167:15
180:1, 4
183:12   193:20
224:18   237:16
238:7   243:1
electronic
15:22   137:2
147:19
Elwood   102:15
Emai   7:9

Email   5:15, 17,
19, 21   6:1, 3,
5, 7, 9, 13, 15,
17, 19, 24   7:3,
5, 12, 14, 16, 18,
20, 24   8:3, 8,
10, 12, 14, 16,
18, 20, 22, 24
9:1, 3, 5, 7, 9,
12, 14, 18, 20
17:7, 9, 23
21:20, 21, 25
24:15   25:17,
18   26:17
27:11   49:20,
24   50:4, 15
55:22   56:2, 12
57:23, 25   60:1,
10, 17   62:4
67:9, 10   70:8
71:5   72:6
73:4, 7   74:9
78:6, 13   79:19
84:24   85:4, 18
87:24   89:19
93:11   94:9, 19
96:5   107:6
108:22   109:2,
9, 15, 19, 22, 25
111:12, 22
112:1, 16
113:5, 20
115:24   116:16,
19, 21   119:8
120:13   123:11,
19   124:14
129:8   132:12
133:10, 14, 16
136:19   138:3,
15   139:3, 18,
22   140:12
145:11   146:1,
14, 17   148:16,
20   149:12
150:4, 5   152:2
156:5, 12
157:13, 15
162:25   163:4,
20   164:10, 24
165:23   166:3,
6, 18, 22   167:1,
9, 11   169:14,

20   171:10, 11,
15, 16   172:16
173:2, 12
174:3   175:3
178:19, 25
179:3, 17
181:14, 19, 21,
22   182:12
183:8, 11
184:3, 12, 13,
18   185:3, 10
186:22, 24
187:7, 9   188:2,
9   189:13, 14,
17, 24   190:14,
20   192:19, 20
194:4   202:16,
20   203:7
204:16, 24
205:7   216:24
217:3   219:20
222:20   225:21
226:18   228:8
229:3, 4, 19, 23
230:12, 13, 16
233:2, 25
234:9, 23
235:8, 11, 16,
17, 20, 25
236:2   237:12
238:11
emailed   76:7
164:13
emailing   119:12
164:3, 6, 16
emails   16:17
17:10, 13, 19
18:2, 14   48:12,
21   70:17
96:12   101:3
108:5   119:25
129:22   131:23
135:9   137:2
138:20   140:9,
14, 23   141:5
142:7, 21
143:6   145:18
151:14   154:16
165:10   177:17
188:8   221:13,
25

Emergency   8:1
99:4, 17
128:19   129:18
134:2   214:13
215:16   219:8
en   151:5   224:9
enclosing   121:14
ended   30:25
35:17   199:20
239:22
enemies   125:18
energy   80:15
English   73:17
ensure   46:17
203:14
entered   107:7
123:3   135:7
entire   16:3
180:7
entitled   55:9
entries   110:17
113:20, 25
120:24   157:4
entry   111:2, 21
112:14   117:8
envisioned   192:1
Enyard   188:3, 10
Eric   28:11
76:2   147:25
155:21
establish   43:2
et   1:10, 14, 19
6:22, 25   7:10,
23   9:10   10:20
112:4, 8
166:11   179:14
236:1, 22
ETA   106:12
ethical   13:3, 9,
12   19:4
177:22   211:5, 8
ethically   91:7
93:12   177:20
ethics   40:10
Europe   103:6
eve   35:11
101:22   102:1
194:8   195:7
198:16
event   71:1
93:15   124:1
152:7   163:19

1-888-326-0504   depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 12

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

164:9    188:13
223:19    238:10
**eventually**
145:6    206:25
**everybody**
134:24    137:8
172:7    233:12
**evidence**    2:25
43:12, 19, 22
142:16
**evolving**    209:21
**exact**    120:14
160:15
**exactly**    54:13
104:8
**EXAMINATION**    5:2
10:13    11:19
196:6    239:1
240:10    243:13
**examined**    11:13
**example**    13:6
20:10    42:24
58:9    60:25
61:1, 2    168:5
210:7    237:13
**examples**    27:12
**exception**    65:3
82:12    118:6
134:25    135:18,
20    137:8
162:15
**exchange**    170:15
**excited**    191:24
**exciting**    140:13
**excuse**    105:14
223:1    225:7
229:3
**EXHIBIT**    5:12,
14    9:17    16:21,
22, 23    21:14,
15, 17, 18
25:12, 13, 14,
19    26:13, 14,
15    31:11, 13,
16    41:6, 9, 10
49:16, 20
54:25    55:6, 18,
19    57:21    58:5
59:22, 24    62:1,
2    64:5, 9
66:16, 17, 18
70:5, 6    72:25

73:1    75:4
78:2, 3    81:1,
2    84:12, 14, 22
85:13, 14
87:19, 20
89:14, 15    94:5,
6    95:23, 25
96:4, 7    98:20,
21    100:2
103:21    106:21,
22, 25    108:16,
17    109:13
110:11    113:3
115:8, 19
116:17    117:23
119:3, 4    121:9,
10, 16    123:8, 9
128:13, 15, 25
129:3, 5, 6
130:11, 12
132:16, 20
133:1, 2, 4, 13
136:13, 17
137:22, 25
138:1    139:11,
14, 25    143:12,
13, 14    145:20,
23    148:10, 13
149:8, 10
151:9, 11
155:25    156:2,
14    162:19, 21,
22, 25    168:6, 7,
10, 12    172:19,
21    174:12, 22
175:2    178:15,
17    181:11, 12
183:24    184:1
187:19, 22, 23
202:8    204:11,
13    216:7, 9
218:2, 3    219:4
220:8, 9    221:2
225:6, 7, 8, 16
227:7    228:11,
13, 17    229:2
234:2, 14, 17
235:19
**exhibits**    151:17
167:17    202:4
**exist**    128:9

**exists**    86:1, 4
115:2
**expect**    142:15
**expectation**
151:4
**expenses**    222:17
223:12, 14
**expensive**    169:24
**expert**    40:6
185:23    186:10
**explain**    117:4
140:16, 17
179:8, 9
**explanation**
182:16    238:13
242:3, 19
**explore**    55:9
**express**    231:25
**expressed**    125:8,
11
**extended**    35:18
**extent**    33:3, 16
80:21    90:11
135:20    149:3
186:15    192:23
**extra-judicial**
24:7
**extremely**
124:23    126:6

**< F >**
**face**    126:6
240:25    241:11
**fact**    18:22
35:4    36:4
98:5    105:7
110:6    122:25
133:20    141:20
150:22    157:19
158:12    208:16
215:2    224:16
241:12, 14
242:11, 14
**factor**    98:1
**facts**    45:19
53:20    57:16
126:15, 19
131:13
**factual**    45:6,
17, 20    46:17
59:11, 16

61:15, 18
62:24    122:12
**fair**    35:21
59:8    81:14
101:18    103:4
125:2, 5
126:17    194:2
**fall**    195:18
198:23    201:5
210:12
**false**    42:1, 5
43:6    44:4
124:15    241:6
242:8, 12
243:10
**fam**    28:19
**familiar**    28:19
41:17, 19
144:2    209:1
220:17    239:7
**familiarity**
240:1
**families**    50:19
112:20    205:14,
21    206:2
209:11    218:12
**family**    202:21
224:18    236:22
**far**    22:18, 19
28:14    33:22
58:24    110:19
131:15    154:18
218:25
**February**    88:11
89:19    94:9
111:21
**Federal**    10:5
241:12, 19
242:12
**fee**    74:4, 20
77:6    100:10
226:7
**feel**    54:20
63:12    125:2
206:3, 12
229:12
**feeling**    243:18
**fees**    91:3, 5, 7,
11    93:12
100:6    132:1
177:21    225:24

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 13

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

felt   46:8
63:10   232:10
244:5
fifth   83:2
fight   134:4
199:16   219:10
figure   207:18
file   14:6, 20,
22   15:19, 25
16:3, 12   17:8,
20, 24   18:16
26:1   60:18
67:25   68:1
70:18   173:24
190:21   192:14
194:3   216:21
filed   15:9, 11
22:10   27:17
31:5, 18   32:11
42:7   43:9, 17
44:8   61:1
87:5   99:4
128:19   129:18
130:15   168:12
182:1   183:17,
19   198:7
199:15   202:17
214:14   215:15
216:11   217:16
220:18   232:2
files   47:17
108:6
filing   99:7
filings   20:11
21:4   27:13
42:11   59:5, 12
61:8   130:6
final   59:12
208:20   233:9
finance   83:19
Financial   3:21
69:17   84:7
financing   27:1,
9   103:5
144:24   145:2,
3   151:24   222:9
find   47:7
81:22   113:16
Fine   11:17
168:3
finish   232:24
Firemans   19:21

firm   15:18
19:23   20:5, 17
26:2, 3   29:15
32:20   36:17
37:15   52:13
54:18   76:3
86:20   101:22
142:15   159:25
163:11   186:7
196:10   197:6
200:19   203:10,
22   204:5
206:4, 6
208:10   211:9
228:19   229:5
232:22   243:18
firm's   203:11,
15   204:2
first   11:13
19:16   35:8
40:4   43:10, 18,
22   44:23   49:3
50:3, 4, 12
55:21   60:13
65:13   71:11
73:16   77:20
83:1   84:14, 19
97:7   101:10,
19   107:5
114:17   116:2,
20   134:1
139:4   142:2
146:7   152:25
153:1, 21
156:15   157:4
158:22   159:2,
18   162:25
164:13   166:17
168:13   169:15,
19   175:18
184:11, 21
195:11   196:8
204:19   214:12
219:7   225:20,
22   229:20
235:14   236:8
firsthand   30:13,
20
five   36:11
113:9
flip   44:12
55:2   78:17

110:9, 25
111:19   117:19
146:11
flipping   74:8
Floor   2:6
3:10   10:9
Florida   188:15,
21   189:8, 16
196:16
Florie   2:5
3:8   10:9, 25
focus   50:3
136:3   148:19
focused   81:25
135:16, 25
Focusing   121:25
follow   243:15
following   10:13
112:2   135:14
139:3
follows   11:14
force   2:13
foregoing   10:6
245:8, 12
forget   105:20
106:2
forgot   104:16,
20
forgotten   193:20
form   2:21
37:10   44:5
46:3, 22   53:8
56:20   58:23
59:18   62:16
63:19   65:12
68:3   105:21
118:15, 20
119:21   120:4,
9   131:11, 17
132:10   135:23
142:18   144:22
160:12   164:21
169:6   171:23
180:13   181:3
182:15   197:21,
22   200:25
201:6   203:6
204:22   206:19
207:14   208:6,
15   209:18
210:4, 9, 20
212:11, 14

213:21   218:18
222:18   224:7
230:3   234:11
238:8, 14
243:20, 21
244:9
formal   210:25
211:2
former   71:22
72:7
formula   155:15
Fort   165:14
196:16   197:1,
14   198:3
201:12   216:3
231:11, 15
236:12
forth   43:11
76:7   206:25
225:23
forward   17:23
27:16   173:23
203:15
forwarded   235:20
forwarding
173:2   178:21,
24   236:2
forwards   164:9
found   41:20, 25
42:18   55:8
90:3   242:7
foundation   40:4
43:2
founder   199:3
four   113:12
157:4   176:15
182:1
four-year   199:1
frame   159:18
198:17
FRANCISCO   4:1
11:9   38:12
226:8   239:6,
11   240:3
Fraud   9:5
32:2, 7, 25
34:23   35:13,
20   36:14
37:17, 22   39:6,
19   40:16, 21
41:1, 13   49:12
54:24   55:8

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

82:12    102:2
134:24    135:18,
19    137:8
143:10    162:15
175:8    181:16
182:19    190:25
191:1    192:24
193:5    195:8
198:16    202:25
242:8
**free**    229:12
**Frevola**    28:9
**front**    151:6
157:3    202:5
215:10, 12
**full**    2:14
11:22    193:23
226:6
**fun**    214:24
**Fund**    19:21
**funds**    50:18
111:6    205:14
**FURTHER**    2:10,
18    5:8, 9
60:16    148:22
228:24    240:10
243:12, 13
244:11    245:16
**FYI**    57:3

**< G >**
**gaps**    157:1, 2
**Gelvez**    176:24
182:8
**general**    81:15
147:2    182:18
**generally**    12:22
41:2, 16, 22
56:22    81:10
99:16    130:3
240:2, 6
**getting**    122:19
136:1    144:25
149:5    154:1
159:12    172:9
191:18    203:2
205:3    225:1
235:6
**Gilley**    2:3
10:1    245:24
**Give**    31:22
41:4    98:15

101:6    128:22
129:15    134:2
142:5    151:1
219:8
**given**    29:14
62:19    112:19
142:10, 14
166:10    183:4
190:5    245:13
**gives**    71:18
**giving**    103:10
158:7
**go**    12:13
27:12    37:11
38:21    59:21
61:25    72:24
78:1    80:25
82:5, 7    84:11,
19    95:20, 21
97:18    98:19
104:5    106:20
112:25    115:7,
21    116:15
119:2    121:8
123:7    143:9
145:18    151:5
153:18    160:12
162:1    169:22
174:5, 10
181:10    183:12
187:18    195:23
196:2, 3, 4
201:22    206:4
214:22    215:10
231:15    233:11,
18    234:1
237:13    238:11,
19, 22
**Godfrey**    32:20
39:2, 3, 8
188:7    230:10
233:13
**goes**    104:6
199:2
**going**    18:24
19:3    31:10
38:21    49:18
63:14    65:7
66:14    75:11
80:8    97:10, 13
98:15    105:13
106:14, 15

107:2    114:14
116:5    117:20
124:16    126:14,
18    134:3
142:21, 22
143:21    145:1,
10    147:13, 15
151:5    154:2, 9,
18    158:13
168:1    179:8, 9
180:1, 4    185:8
187:13, 17
191:7, 9
194:14    197:8
200:3    201:9,
10, 11, 15, 18
202:5    209:17
215:19    218:24
219:9    224:9,
11    225:4, 6, 16
228:8, 12
230:25    233:4,
6, 10
**good**    14:25
15:1    23:2
37:12    57:13
127:21    161:22
**gotten**    126:10
**government**    212:5
**Grace**    152:3, 5
**graduated**    12:17
**grounds**    2:23
**guess**    18:7
20:17    23:12
24:24    29:24
31:4    32:21
36:24    39:6
42:2    57:2
59:2    75:20
77:12    81:19
85:1    90:13
91:22    103:10
115:17    142:23
155:14, 15
182:17    184:23
195:7    197:9,
23    220:20
235:22
**guessing**    28:25
33:9
**guidance**    82:21
244:5

**guys**    206:14
218:7    244:14

**< H >**
**Hager**    28:11
**Hair**    12:20
**Halcon**    43:13
50:19    146:9
202:22    205:14
**half**    102:22
103:2    184:9
**hand**    49:19
127:1    130:5
141:19    147:9
158:3    174:22
**handed**    174:25
**handle**    185:8
200:23
**handled**    187:15
**handling**    215:11
**hands**    46:24
**handy**    49:13
113:2
**hang**    193:4
**happen**    142:23
157:8    228:22
**happened**    172:5
**happening**    48:16,
17    120:7
**happy**    12:5
124:16    126:10
238:20
**hard**    16:16
134:2, 3    135:9
219:8, 9
**head**    95:15
100:24
**header**    131:20
**heading**    143:19
**heads**    159:13
169:22
**hear**    100:12
127:5    200:24
**heard**    102:4, 7,
10    103:14
104:18    127:4
170:6
**Hearing**    7:7
32:1, 2, 7, 15,
18    33:1    34:24
35:11, 13, 20
36:16    37:22

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 15

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

39:19    40:16
45:14    46:5
53:9    64:12
65:14    74:24
75:9, 11, 18, 21,
24    76:4, 11
77:5, 24    78:14
98:24    99:3, 9,
11    102:2
103:20, 24
117:6, 21
132:20    133:4
134:23    135:15
162:12    175:14
190:24, 25
191:1    192:24
193:5, 23
194:9    195:8
202:25    241:8
245:14
**hearings**    34:20
101:23, 25
**heartburn**    99:25
214:15
**heavily**    56:21
58:24
**heavy**    126:25
130:5    211:1
**heavyweight**
169:22
**help**    91:3
137:19    186:11
**helped**    13:19
**helps**    228:17
**Hendrik**    85:7
86:5
**Herman**    102:11
**Hey**    113:16
174:5    206:13
224:22    237:15
**hide**    243:18, 23
**highlighting**
78:23
**hired**    12:18
90:14    196:9
198:22    210:12
**history**    190:5
**Hobbs**    40:6, 14
**Hold**    95:22
148:7    150:23
171:25    232:3

234:8
**holiday**    172:7
**honest**    76:21
189:19    242:1
**Honor**    65:1
100:14
**hope**    134:15
**hopefully**    179:7
233:15
**hoping**    229:21
**hounded**    79:16
**hours**    181:19
**houses**    179:24
236:25
**HP**    102:8
**Hugo**    91:10, 16,
18    92:2, 8
93:8    125:22
**Huh-uh**    136:10
**Human**    23:10
69:1    86:22
87:3    198:4, 5
220:14
**humanly**    233:20

< I >
**idea**    57:10
70:21    114:14
126:18    157:9,
17    161:16
170:14, 16
173:4, 8    221:5
**identical**    60:19
**identification**
16:24    21:19
25:15    26:16
31:17    41:11
49:17    55:20
57:22    59:25
62:3    64:10
66:19    70:7
73:2    78:4
81:3    85:15
87:21    89:16
94:7    96:8
98:22    107:1
108:18    109:14
113:4    115:9
119:5    121:11
123:10    128:16
129:7    130:13
132:17    136:14

137:23    139:12
145:21    148:11
149:9    151:10
156:3    162:23
168:8    172:20
174:13    178:18
181:13    183:25
187:20    225:9
228:14
**identified**    90:1
127:15, 17
217:6
**Identify**    21:15
III    3:6
**Image**    5:21
7:3    8:10, 16
9:12, 18
**impermissible**
244:6
**important**    81:24
**impression**
76:19    125:13
**imprisoned**    97:19
**Inc.'s**    8:1
**included**    28:13
40:9    42:5
55:11    88:2
156:14    230:9
**includes**    88:6
146:8
**including**    63:12
217:1
**incompetent**
124:23    126:6
**Incorporated**
10:19
**incorrect**    82:16
**Incurred**    132:2
**independent**
72:16    84:2
INDEX    5:2, 12
**indicate**    204:25
**indicated**    212:20
**indicates**    205:9
**indicating**
147:3    168:18
186:24    216:16,
18    227:12
**info**    97:12
112:2
**information**
45:6, 21    46:2

54:7    64:24
76:24    83:3
101:20    116:12
118:4    123:1
131:9    144:18
149:4, 23
150:16    155:3
158:7    159:1
176:12    203:1
207:1    212:25
213:1    221:21
229:25
**informed**    27:24
**informing**    81:11
**Initial**    29:4, 11
**initially**    56:24
58:21
**injury**    86:19
**input**    62:19
217:19
**insight**    90:4
**insisted**    130:4
**instance**    225:3
**instruct**    17:19
29:8    34:14
221:20
**instructed**
29:21, 25
**instruction**
142:5    173:13
**instructions**
150:13    152:13
244:5
**insurance**    19:14,
17, 19, 22
20:12, 13
191:18
**intended**    65:9
**intent**    48:10
**interactions**
244:4
**interest**    24:4
69:17
**interested**    27:8
179:13    245:19
**interests**    134:5
219:11, 16
**Interior**    169:23
**INTERNAL**    110:1
164:25
**interpreting**
209:9

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 16

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

Interrogatories
 56:25
interrogatory
 46:6
introduced   170:2
investigation
 150:20, 22
 196:24   223:12
invited   34:8
invoice   181:5
involved   15:12
 23:17, 18   31:3
 35:14   46:11
 52:11   56:21
 57:19   58:24
 86:25   117:12
 122:23   158:2,
 6   172:9
 184:22, 24, 25
 187:12   198:4
 201:4, 21, 25
 203:11, 15
 204:2   205:20
 211:1   221:6, 8
 231:8   233:7
involvement
 15:14, 24
 31:21, 23   32:5,
 15, 17, 22, 23
 35:16, 17, 19
 47:13, 16, 22
 161:13
involving   86:4
 105:12   119:8
IRA   22:15
 23:1, 19
IRad   8:12
IRAdvocates
 23:3, 4, 9
 24:6   38:4
 67:15, 21, 25
 138:20, 24
issue   69:24
 76:15, 19   80:7
 130:23   160:6
 163:24   206:15
issued   60:6
 86:11   207:4
Issues   6:19
 53:19   54:3
 75:10   81:12,
 16   86:10

186:2   201:8
 207:17   211:24
issuing   67:19
items   62:24
its   43:10
 129:18   215:15
Ivan   38:9
 68:8, 13   71:13
 73:25   74:12
 76:12, 15   77:6,
 9   79:3, 9, 22
 80:2   110:21
 111:12, 22
 112:17   122:9
 144:13, 20
 146:22   150:9,
 21   155:11
 156:22   158:11
 166:10   167:22
 179:13, 22, 25
 183:13   221:15
 226:12, 15
 236:23   237:2

< J >
Jaime   90:2, 8
 95:3, 9, 10, 14
 96:16, 23   97:2,
 11, 14, 21   98:4,
 16   100:6
 101:7, 11
 118:19   132:2,
 8   165:5
 178:10   195:10,
 13   213:10
 226:2   229:9,
 16   243:6
Jaime's   94:21
Jairo   176:24
James   102:15
January   85:18
Japanese   212:4
Jay   12:19
JBM   90:1, 22
 225:24   226:1
JDT   170:24
JEFFERSON   245:5
Jenny   140:6
Jerry   165:14, 17
Jesus   176:24
Jim   127:3, 6
John   11:23

Johnson   32:21
 39:10, 14
 188:11   233:13
joined   197:13
joining   23:6
Jordan   163:15
Jose   176:24
Judge   6:11
 7:7   34:19
 40:20, 25
 41:12, 20, 25
 42:18   44:3, 12,
 16   45:2   53:12
 54:11   55:7
 64:12, 24   69:5
 83:8   98:25
 100:9   104:2
 107:7   116:11
 117:5   118:3,
 11   123:2
 132:21   134:11,
 22   136:22
 137:7   143:20
 151:7   162:13
 175:12   199:24
 214:23   215:10
 219:19   224:11
 240:24   241:7,
 13, 19   242:8,
 13, 25   243:5, 9
judgment   35:22
 136:2
July   21:21
 22:1   25:18
 26:18   43:9, 16
 58:1   110:21
 172:6   175:3
 178:19   179:6
 231:5   235:20
 236:2
jump   82:15
June   49:21
 70:8   110:21
 136:20   146:15
 150:5   163:3
 166:20   171:5,
 7   172:14
 178:24   188:8
 189:14   216:25
 230:13   232:20
 236:9

jurisdiction
 199:16, 21
 200:10
jurisdictions
 61:13
jury   86:17
 207:23

< K >
Kaissal   152:3, 5
keep   21:2
 27:24   32:19
 49:13   106:14,
 15   113:2
 128:25
keeping   25:7
Ken   31:1   39:7
 158:23   159:5,
 13, 18   163:6
 164:9   171:15,
 21   188:3, 18,
 20, 22   189:7,
 19, 23, 24
 192:12   201:4,
 11   230:9
Kendall   188:2,
 10
Ken's   188:15
kin   245:17
kind   32:21
 68:18   81:16,
 21   124:20
 154:6   190:4
 197:23   206:17
 232:5
kinds   152:17
knew   48:23
 230:20   240:22
know   12:4
 14:6, 8   15:10,
 20   17:3, 14
 18:13, 19
 22:18, 19, 20,
 25   23:18   24:8
 25:9, 24   28:21
 29:24   32:19
 33:24   37:16
 40:20   41:2
 42:20   46:5, 8,
 10, 11   47:6, 10
 48:1, 19   54:9,
 20   63:16, 21

1-888-326-0509  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 17

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

64:2    65:23
68:20, 24
69:19    70:25
80:21, 22, 24
81:17    86:24
91:15    97:15
101:8, 13, 16
103:17    105:15
106:4    107:22
108:3, 9    110:4,
8    111:17
112:10    115:2,
15    118:11, 17
120:19, 22
121:6    123:21,
24    125:16
126:1, 22, 25
128:10    135:24
136:2    142:22,
25    143:1
148:22    151:6
152:5    153:15
154:1, 20
155:14    158:10,
24    159:3, 4
160:4, 23
161:15    163:1,
17    164:22, 23
170:6, 20
173:7    176:6,
10, 14    180:14
181:9    182:18
184:23    186:14,
19    189:9, 17,
19, 20, 21, 22
191:5, 8, 10, 12,
15, 17, 20, 23,
25    192:1, 4
194:13    201:19
203:22    204:6
206:10    207:23,
24    214:4, 22,
23    215:13
217:22    218:19,
24    219:25
222:2    224:23
225:17    228:23
229:21    230:19
231:5    232:1,
19, 23    233:2
235:14    236:6,
8    238:9    239:6,

10    241:10, 23,
25    242:2, 17,
23, 25    243:4, 8
knowingly
211:13, 19
knowledge    30:13,
20    57:15
161:19    170:10
221:3    229:6
knowledgeable
30:1
known    72:14
77:13    208:24
knows    29:20
Koper    123:14, 24
Kusin    163:15

< L >
label    17:1
156:25    165:20
169:16
labeled    78:19
labor    90:15
lang    183:17
language    182:5
laptop    139:7
Large    2:4
10:3    149:16
laser    135:16
Lasserre    170:7,
11, 15, 18
last-minute
154:12
last-second
155:7
late    108:20
124:9    194:13
Lauderdale
165:15    196:16
197:1, 15
198:3    201:13
216:3    231:11,
15    236:12
Law    2:4    3:7,
19    4:3, 4
10:8    12:13, 17,
19    15:18    20:5
126:15    142:15
182:18    196:10
laws    2:14
lawsuit    142:17
lawsuits    12:25

lawyer    13:2, 6
39:1, 3, 7, 11
45:16, 19
48:20    54:17
57:13    104:25
127:2    142:15
160:17, 20
163:10    185:16
196:12    210:21,
23    226:8
lawyers    13:3
39:1    94:22
165:25    188:7,
12    230:9
lay    40:4    207:5
lead    39:7, 10
leaders    90:16
leading    2:21
193:5
leads    83:22
197:25
learn    170:17
learned    101:11,
20
Learning    114:17
lease    224:5
led    201:18
241:10
Leete    28:18
50:1    111:22
112:17
Leeuw    102:11
left    12:19
37:14    159:24
161:17    185:11
191:20
legal    60:12
100:6, 13
legality    18:25
legitimate
50:18    205:13
Lets    119:2
Letter    6:7, 9,
21    7:22    62:8,
20    81:5    82:8
84:6    121:13,
25    122:2
letterhead
170:24
letters    62:12,
14    212:3, 10

Levesque    22:5,
13    49:25
55:24    57:15,
25    60:2, 9
62:9    67:11
70:10    73:4
79:12    108:23
109:20
Libardo    176:23
Libel    7:24
licensed    11:24
12:7, 10    13:2
18:22
lie    13:19
240:25
lies    241:12
life    192:2
light    207:16
LIMITED    3:3
11:5    14:14
47:23
line    64:19
104:7    224:25
lines    29:20
150:24
list    46:6
87:25    122:2
listed    139:4
156:15    184:11
listen    153:25
lists    122:4
litigating
220:14
litigation
12:24    23:11,
14    24:6    28:24
57:5, 17    68:14
77:7    87:4
90:9    140:2
142:1    231:24
232:3, 8    233:3
little    17:21
18:7, 9, 21
31:4    60:16
124:7    141:9
186:17    192:17
193:25    208:24
232:3
Llanos    80:14,
19    83:4, 10, 24
84:9    85:6, 22

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 18

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

86:4
LLC   3:20
LLP   2:5    3:8
10:9
loan   102:23
103:2
Local   68:15, 16,
20, 22   69:8, 11,
12   76:20, 23
226:8
located   10:25
145:5   182:12
196:15
Log   6:13    7:14,
16, 18, 20
63:13, 15   65:4
67:13, 15
87:16   88:17,
20   89:4, 8, 25
90:20   96:15
107:18   108:7
109:4   110:6
113:10, 13, 17,
19, 23   114:9
115:4, 12
117:13, 14
118:7, 13, 18
119:13   120:14,
16, 20, 22, 23,
25   121:4, 15,
22   124:8, 11
184:17, 18
185:6   207:19
208:20   232:24
233:1, 5
log-CL   110:2
logged   63:6, 24
65:11   99:22
111:11   114:7
122:14, 18
167:3, 12
168:23   169:11
179:11   180:2
182:14   185:12
186:13   187:10
189:5   190:9
230:25   233:22
237:12
logging   107:17
122:20
logs   64:2
88:7   107:10,

13   114:4
119:17, 20
120:3, 8   122:2
126:20   158:25
185:8   215:25
216:4
long   12:7
15:11   35:23
40:15   105:1
151:22   184:21
longer   15:12
162:3   208:19
209:17
look   25:10
26:12   43:1, 2
55:16   57:20
64:4   70:4
87:18   89:13,
25   94:4   100:1
103:19, 23
108:15   109:12
112:13   132:14
134:21   136:6
139:10   145:17
148:6   149:7
150:1   151:8
152:25   155:24
157:3   165:19
167:17, 25
169:12   170:21
172:18   178:13
179:15   183:22
220:7   225:18
232:1   236:14
237:18, 19
looked   25:19
58:9   74:24
79:19   84:15
94:9   101:3
108:20   113:10,
23   119:17, 25
120:21   121:15,
17   124:9
129:22   139:24
150:6   151:14
167:18   181:19
238:4
looking   26:1
79:1   108:6
133:11   182:22
189:2   234:15

Looks   22:11
43:21   81:15
88:13   99:6
107:15   152:14,
17   164:11
228:21
loop   230:7
Lorraine   28:18
50:1   111:22
112:17
lost   95:22
140:15, 23
148:7   227:18
lot   21:1
23:13   54:7
59:1   80:8
87:23   99:25
122:16   183:19
191:20   198:9
206:24   211:24,
25   214:15
218:10   225:23
233:5
Lou   123:13, 21
lunch   106:10
162:2, 7, 11
lying   13:19

< M >
magistrate
151:7   224:11
main   214:5
maintain   166:13
maintained
186:15   193:16
219:24
majority   107:21
126:23
making   20:24
45:17   46:18
62:24   95:14
98:7   108:10
124:15   189:4
224:1   226:11
241:19
man   25:22
managing   199:3
MAR   5:14
March   55:24
94:10   97:6
138:3   149:14
Marion   188:2

mark   174:15
225:6   228:9
marked   16:24
21:19   25:15
26:16   31:11,
17   41:11
49:17, 19
55:20   57:22
59:25   62:3
64:10   66:19
70:7   73:2
78:4   81:3
85:15   87:21
89:16   94:7
96:3, 8   98:22
107:1   108:18
109:14   113:4
115:9   119:5
121:11   123:10
128:13, 16
129:7   130:13
132:17, 20
133:1   136:7, 9,
14   137:23
139:12   145:21
148:11   149:9
151:10   156:3
162:23   168:8
172:20   174:13
178:18   181:13
183:25   187:20
221:1   225:9
228:14, 17
marrying   239:22
master   16:7
110:1   151:7
181:15   182:2,
11   211:21
224:11
material   47:6
materials   16:14,
15
matter   10:18
23:24   92:6
Matthew   140:6
maven   57:5, 9
McNeil   31:1
39:7   158:23
159:13, 19, 22
163:6   164:9
171:15   172:8
188:3, 18, 20

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 19

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

189:*15, 24*
193:*1, 10*
201:*4*    230:*9*
237:*10*
**McNeil's**    159:*6*
171:*21*
**mean**    20:*8*
21:*6*    37:*5*
48:*3*    57:*9*
72:*13*    82:*17*
105:*22*    115:*15*
123:*2*    153:*3,*
*11*    157:*3*
180:*15*    186:*16*
191:*10, 12, 24*
196:*3*    201:*16*
214:*20*    218:*19*
222:*5*    237:*21*
**meaningful**    109:*4*
**measure**    181:*7*
**media**    15:*22*
**Meet**    8:*8*
13:*22*    154:*7, 9*
231:*16*
**Meeting**    6:*17*
14:*14*    73:*11*
74:*10, 11*    75:*8,*
*14, 17, 19*    77:*4*
198:*15*    231:*9,*
*20*    232:*16, 20*
236:*13*
**meetings**    76:*9*
**member**    28:*23*
68:*13*    140:*1*
**Memo**    6:*19*
127:*5, 8, 10*
137:*13*    170:*23*
**Memorandum**    5:*24*
171:*4*    182:*18*
**memorialized**
101:*3*
**memory**    53:*19*
54:*3*
**memos**    90:*4*
127:*12, 14*
164:*25*
**mentioned**
114:*24*    137:*11*
155:*7*    190:*13*
223:*9*    233:*19*
**mentions**    202:*20*
**Menus**    106:*11*

**Merit**    2:*3*
10:*1*    245:*24*
**merits**    212:*1*
214:*21, 25*
**met**    28:*20*
101:*21*    190:*3*
197:*7*    198:*16*
231:*3*
**Metals**    102:*8*
**middle**    43:*5*
71:*21*    118:*1*
225:*21*
**Mike**    91:*10, 16,*
*18*    92:*2*    93:*8*
125:*22*
**million**    102:*23*
**mind**    76:*14*
182:*25*    218:*16*
**Ministry**    169:*23*
**minute**    108:*14*
113:*24*    154:*4*
193:*4*    222:*14*
**miscellaneous**
165:*9*

**misrepresentations**
42:*6, 11, 15, 23*
55:*11*    135:*21*
211:*13, 20*
**missing**    48:*13,*
*22*    141:*6*    143:*6*
**mistake**    173:*9,*
*20*
**mistook**    80:*5*
**misunderstood**
189:*21*
**moment**    93:*6*
122:*1*    187:*8*
229:*3*
**Monday**    60:*20*
109:*5*
**money**    90:*1, 22*
112:*1, 4*
179:*23, 25*
180:*4*    191:*20*
236:*24*    237:*6*
**MoneyGram**    88:*3*
**month**    108:*19*
112:*21*    124:*7*
140:*14*    158:*12*
166:*13*    167:*20*

172:*10, 12, 13*
184:*9*
**monthly**    144:*13,*
*20*    146:*8, 19*
167:*22*    168:*14*
**months**    140:*22*
143:*5*
**morning**    97:*11*
109:*5*
**Motion**    5:*17, 19,*
*23*    6:*11*    8:*1,*
*5*    22:*9*    26:*20*
31:*5, 14*    32:*1,*
*10*    43:*10, 17*
44:*8*    58:*15*
59:*3*    60:*18*
65:*14*    74:*25*
86:*9*    99:*4, 8,*
*11, 17, 24*
124:*4*    128:*19*
129:*19, 24*
130:*16*    132:*22*
133:*5, 18*
134:*2*    162:*13*
192:*14*    202:*17*
214:*13*    215:*15*
219:*8*    232:*2*
**motions**    27:*3, 9*
61:*3, 11, 16*
130:*8*    191:*25*
**moving**    26:*23*
203:*14*
**MUJUMDAR**    4:*2*
5:*7*    11:*8*
196:*2*    238:*20*
239:*2*
**murders**    90:*15*

**< N >**
**name**    11:*22*
28:*12, 19*
72:*19, 20*
127:*9*    220:*23*
239:*7, 10, 11,*
*13, 18, 20*    240:*1*
**named**    25:*22*
28:*17*    51:*11,*
*17*    102:*11*
127:*3*    139:*21*
160:*17*    165:*14*
170:*7*    196:*12*

**names**    11:*2*
102:*17*
**narrow**    38:*7*
52:*4*    67:*8*
**nature**    33:*3, 16*
76:*23*    135:*20*
159:*22*    192:*23*
193:*2*    211:*21*
**Near**    226:*4*
**necessary**    2:*19*
**need**    33:*24*
34:*2*    38:*7*
71:*12*    84:*16*
112:*2*    117:*6*
133:*25*    134:*21*
140:*17*    148:*22*
154:*5*    155:*12*
166:*12*    167:*12*
169:*21, 25*
192:*14*    203:*10*
219:*6*    224:*12*
226:*20*    229:*12*
**needed**    142:*6*
150:*16*    167:*3*
168:*22*    169:*4,*
*22*    180:*2*
185:*12*    187:*9*
203:*21*    204:*2*
206:*3*    222:*8,*
*10, 15, 23*
223:*7*    230:*21*
232:*11*
**needs**    148:*24*
187:*14*    190:*8,*
*9*    237:*12*
**negative**    53:*2, 4*
**negotiated**
122:*21*
**negotiating**
63:*14*    232:*25*
**negotiations**
122:*17*    233:*6*
**neither**    245:*17*
**never**    28:*20*
35:*6*    51:*22*
63:*10*    66:*1*
68:*8*    103:*14*
104:*22*    105:*15*
115:*12, 13*
125:*8, 10*
126:*5*    127:*4,*
*16*    136:*2*

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 20

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

178:6   195:9,
12, 16, 17
199:2   213:11
224:16
**new**   32:20
86:20   106:9
**Nicox**   102:5, 23
103:12
**Niewoehner**   31:2
33:7, 11, 15
39:11   122:21
171:18   172:9
184:5, 22
185:8, 15
186:4, 5, 22
188:6   192:13
193:1, 10
201:3, 24
231:7   233:7
237:10
**night**   109:5
**nine**   64:19
131:19   137:6, 7
**Noebles**   163:16
**nonprofit**   23:5
**normal**   12:3
**normally**   143:3
**North**   3:22   4:5
**NORTHERN**   1:2
10:17
**Notary**   2:4
10:2
**note**   116:3
**Notes**   78:10
110:2   111:5,
25   117:1
229:19
**notice**   39:22
**noticed**   16:13
38:25   70:16
**November**   2:7
10:7, 23
123:17   188:1
189:25   190:22
192:18
**nuclear**   112:20
**Number**   10:20
21:13   26:13
42:23   55:17
71:7, 12   79:2
110:10, 11
111:3   122:8

129:14   131:20
137:6   150:2
166:6   174:22
183:10   203:3
211:14   213:19,
22   214:1
215:24   217:1
221:12   230:13
234:8
**numbered**   110:16
**numbers**   85:16,
17   202:11

**< O >**
**oath**   218:20
**object**   34:2
37:10   44:5
46:3, 22   53:8
56:20   58:23
59:18   62:16
63:19   65:12
68:3   105:21
118:15, 20
119:21   120:4,
9   131:11, 17
132:10   135:23
142:18   144:22
153:25   160:9
164:21   169:6
171:23   180:13
181:3   182:15
197:21, 22
200:25   201:6
203:6   204:22
206:19   207:14,
25   208:6, 15
209:18   210:4,
9, 20   212:14
213:21   218:18
222:18   224:7
230:3   234:11
238:8, 14
243:20, 21
244:9
**objecting**   34:6
74:18   160:11
**objection**
207:20   208:3,
4   214:2   244:1
**objections**   2:20,
23   61:3   71:18
208:13

**objectively**
180:11
**obligation**
142:16   208:3
**obligations**
211:6, 8
**obviously**   34:24
46:9   65:18
89:10   181:24
**occasion**   164:16
**occur**   189:8
200:9, 10, 14
**o'clock**   162:9
**Oct**   7:12
**October**   62:6
64:13   74:25
76:11   77:5, 24
78:5, 14
117:20   120:15
169:20   216:1
**offered**   2:25
**offering**   18:24
19:3
**office**   15:23
70:15   124:24
147:23   155:2
157:21   165:15
172:2   185:22
194:8, 14
196:21, 25
197:1, 10, 11,
14, 15   198:15
216:3   231:3,
10, 11
**Offices**   2:5
10:8   197:20
**Oh**   37:9
173:14   174:17
177:15   191:5
225:14
**Oil**   80:14, 20
83:4, 10, 24
84:9   85:7, 23
86:4
**Okay**   12:2, 6,
10, 22   13:1, 6,
22, 25   14:3, 10,
13   15:7, 13, 17,
24   16:5, 8, 11,
19   17:5, 10, 16,
25   18:4, 11, 21
19:10, 16, 19,

22   20:6, 16, 19
21:2, 12   22:12,
20   23:2   24:1,
5, 9, 14, 25
25:10, 22   26:3,
12, 22   27:11
28:1, 5, 8, 14,
17   29:1, 6, 13,
21   30:4   31:7,
10, 22   32:4
34:12, 16, 22
35:2, 22   36:15
37:14, 18
39:16   40:9, 18,
23   41:4, 16, 24
42:4, 15   43:1,
4   44:11   45:1,
12, 15   47:21,
25   48:7, 18, 25
49:9   50:10, 15
51:3, 9, 16, 25
52:6, 14, 24
53:4, 17   54:6,
23   55:16
56:15, 22   57:1,
8, 14, 20   59:7,
10, 20   60:9, 16,
24   61:6, 25
62:11, 23   63:5
64:4, 14   65:7
66:5   67:7, 18,
23   68:7, 12, 18
69:3, 11, 16, 25
70:4   71:1, 5
72:5, 24   73:10,
19   74:15   75:3,
8, 13, 25   76:6,
9   77:16   78:1
79:4, 6, 12, 14,
25   80:4, 10, 18,
25   81:4, 10, 20
82:3, 23, 25
84:18, 23   85:4,
21   86:8, 17
87:18   88:1, 10,
16   89:3, 9, 17,
21   90:7, 18
91:1, 24   92:2,
11, 20, 23   93:6,
10   94:14
95:20   96:21
97:21   98:13

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 21

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

99:10, 13, 15
100:1, 4   101:5,
10   102:4, 21
103:15   104:5,
14   106:3, 24
107:16   108:3,
12   109:9, 18,
24   110:9, 15,
25   111:1, 4
112:13, 15
113:22   114:21,
25   116:22
117:23, 24
119:6   120:12
121:5, 25
122:10   123:16
124:6, 13
125:1   127:20
128:9, 12, 14,
21   129:1, 11,
21   130:10, 14
131:19, 22
132:14, 18
133:6   135:7,
12   136:11
137:4, 10, 20
138:10, 12, 14,
22   139:15, 20
140:11   141:8,
12, 15, 17, 24
143:4, 9, 15, 18
144:2, 5, 12, 17
145:13, 17, 24
146:3, 10, 13,
20, 24   147:7,
20, 23   148:2,
14, 19   149:11
150:3   151:8,
13, 25   152:7
154:15   156:4,
17   157:19
158:1   160:5,
13, 16, 25
161:12, 22, 25
162:4, 18
163:2, 19
164:12, 18
165:4, 13, 21
166:4, 17, 25
167:5   168:19,
20   169:2, 9, 12,
17   170:9, 17,

21, 22   171:9,
14, 21   172:18,
22   173:6, 15,
22   174:1
175:16   176:6,
10, 15   177:15
178:16   179:5,
9, 15   180:3
181:4, 10, 17
182:1, 3   183:3
184:2   185:2,
25   186:3
187:5, 16, 25
188:13   189:11
190:10, 17
191:6   192:9,
11, 16   193:2, 8,
19   194:11, 15,
18   195:15, 20
196:5, 8
198:10, 18
199:7   201:2
202:4, 14
204:14   205:5
206:22   211:2
216:13   218:6
225:14, 19
227:10, 22
228:15   234:6,
18   236:20
239:3, 5, 17
242:10
once   92:21
185:9   197:12
242:18
ones   56:17
58:21   238:4
242:20
ongoing   63:12
189:10
open   42:12
44:18   46:19
208:17   235:6
240:23
operated   130:4
operating   153:4
Opinion   5:24
18:25   19:4
40:21   41:1, 13,
25   44:17
49:13   54:25
55:8   143:10,

17   197:19
212:12   240:22
242:9
opposing   13:16,
20
opposite   222:11
Opposition   8:5
124:4   129:24
130:16
oral   10:12
20:24   21:1
39:24
Order   5:24
7:10   45:7
47:7   107:6
108:20   112:1
123:3   135:7
136:23, 24
137:7   143:21
145:8   157:1
162:14   174:18
219:18, 19
220:5   232:3
233:14
ordered   116:11
190:12
ordering   107:12
137:7
orders   207:5, 12
organization
23:5
originally
74:19   189:13
199:24
Otero   38:10
68:8, 19   69:17
70:1   71:6, 13,
22   72:6   73:21
74:12   76:13,
15   77:6, 9
79:3, 22   80:2
110:21   111:12,
22   112:17
122:9, 13
144:13, 20
146:22   150:10,
21   155:11
156:22   158:11
167:22   183:13
221:15   223:6
224:16   226:15,
18, 21, 24

227:4   236:1
238:2
Otero's   68:13
72:12   73:25
79:9
Outside   20:19
39:17   46:16
84:5   201:21
overcomes   91:10
overreacting
133:22
overreaction
134:16
owe   13:10
owned   80:14
owner   90:13

< P >
p.m   162:6, 9
194:21, 25
244:20, 21
page   43:3, 5
44:13, 19, 24
55:3, 14   64:19
73:17   78:18,
22, 23   82:7
83:1   100:1, 3
104:6   110:17
112:14   116:20
117:25   118:1
130:21   131:4,
8, 19   143:17,
19   146:8, 12
153:1   162:25
175:16   176:15,
17   177:9, 13,
14   182:1
205:11   217:5,
10   219:3
225:21   227:17
229:20   234:7,
19
pages   73:16
103:23   116:24
146:4
paid   34:21
36:5   42:24
51:12, 20   53:7
91:6, 11   93:21,
24   95:4, 10, 14,
17, 19   96:16
104:3, 17, 21,

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 22

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

24   114:8
126:21   127:15
131:16   134:12
165:5   170:11
182:24   183:1
193:14, 17, 20
195:10, 14
226:20, 23
241:5   243:6
**Paige**   4:11
**paper**   15:23
**papers**   55:10
**paragraph**   44:23,
24   56:6, 11
57:2, 3   67:9
73:24   74:3
79:2, 7   83:2
116:2   124:19
130:22   136:24
137:7   175:18
176:18   177:16
202:19   226:4,
19   229:4, 7, 8
235:13   236:21
**paragraphs**   97:8
**paralegal**   22:23
**parallel**   86:9
**parameters**
33:22   122:20
215:7   232:25
**paramilitaries**
70:2   71:23
72:7
**paramilitary**
30:6
**Parker**   86:15,
18   87:14, 15
88:7, 20   91:21,
22   93:1, 7
94:15   96:14
99:20   131:24
165:24
**Part**   8:20
13:12   107:5
108:3
**partially**   144:9
**participated**
90:15
**participation**
141:21
**particular**
56:25   97:22

179:12   220:22
235:25
**particularly**
26:25
**parties**   1:25
2:22   86:12
143:20   175:13
207:25   245:18
**partner**   197:9
199:4
**party**   86:9
233:11
**pattern**   27:15
**Paul**   92:16
102:13   125:24
172:5   231:4
**Pauline**   123:13,
24
**PAULK**   3:18
5:6, 9   11:10,
17   14:12   34:4,
7, 10, 14   36:25
37:3, 10, 13
44:5   46:3, 22
53:8   56:20
58:23   59:18
62:16   63:19
65:12   68:3
82:17, 21
105:21   118:15,
20   119:21
120:4, 9
129:13   131:11,
17   132:10
135:23   142:18
144:22   160:9,
11   164:21
169:6   171:23
174:5, 9, 15, 20
180:13   181:3
182:15   191:12
193:4, 8
194:18   195:25
196:5, 7
197:25   201:2,
16   202:10, 13,
15   203:7
204:15   205:1
206:22   207:16,
22   208:8, 22
209:23   210:5,
11, 22   212:17

213:22   214:8
216:11, 15, 20
218:7   219:3
220:12   222:22
224:13   225:12,
15, 17   227:11,
15, 18, 23
230:5   234:7,
16   238:10, 16
243:14, 23
244:3, 13, 15, 18
**Paulk's**   36:22
**PAX**   175:19, 25
176:2, 3, 7, 12
**pay**   91:7
93:12, 22
105:16   166:12
225:23   226:9
**paying**   127:12
132:8   160:2
178:9   179:25
241:15
**payment**   65:10
73:25   93:17
95:5   100:15,
23   101:1
110:20, 22
116:5, 12
118:3   123:1
150:15   168:15
169:3   170:15
178:6   180:11
183:10, 11
206:15   210:6
221:15   226:11,
15   227:4
229:5, 9, 16
238:2, 7
**Payments**   6:1
19:1, 5   27:1,
8   33:3, 17
40:11   43:12
46:11, 21   49:5
50:7, 13   51:1,
6, 14, 24   52:18
54:2   55:12
59:17   61:17
62:13, 25   63:3,
18, 23   64:23
74:13   76:12
95:9, 11, 15
97:2, 5   98:6,

7   99:20   101:7,
12, 16   104:10
105:7   114:23
118:13, 19, 22
132:9   135:16,
21   136:5
143:24   144:13,
19, 20   150:10,
21   155:11
156:22   158:11,
12, 17   160:6
163:25   164:20
165:1, 9
167:14, 22
176:19   181:1,
6   182:6   189:3
192:23   193:11,
13   202:21, 22
203:4   204:20
205:21   206:2
209:4, 10, 15
211:15, 22, 25
213:6, 9, 13, 19
214:1   218:12,
17   221:15
223:6   224:15,
17   238:13
240:15
**PDF**   149:17
**pending**   68:25
69:2
**Pendleton**
111:13   239:19
240:7
**people**   38:19
114:24   140:6
161:6   163:15,
17   169:24
170:2   179:23
**people's**   179:24
236:24
**percent**   12:24
74:4   77:6
**Perez**   8:14
220:24   221:7
**Perfect**   129:1
**perform**   47:3
**performed**   23:9
66:23   154:20
189:8
**performing**
164:18   188:21

period   35:12,
18, 23   140:14
161:18   199:2
permissible
177:20
person   28:17
29:15   30:1
102:10   170:7
199:10   239:15
personal   86:19
125:17   199:16,
21   200:9
personally   82:18
personnel   237:3
phase   191:7, 21
phased   190:14
191:16
phasing   190:4
phone   215:17
pick   215:16
piqued   24:3
Place   2:6   3:9
10:9   148:7
181:24   242:1
Plaintiff   1:6,
15
Plaintiffs
43:20, 23, 24
71:25   72:1
122:3, 8   177:1
Plaintiff's
5:14   16:22, 23
21:17, 18
25:13, 14, 19
26:14, 15
31:11, 16   41:9,
10   49:16, 19
54:25   55:17,
19   57:21   58:4
59:21, 24   62:2
64:5, 9   66:17,
18   70:5, 6
72:25   73:1
75:3   78:2, 3
81:1, 2   84:21
85:13, 14
86:19   87:19,
20   89:14, 15
94:5, 6   96:4,
7   98:20, 21
100:2   103:20
106:22, 25

108:16, 17
109:13   110:10
113:3   115:8,
19   116:16
119:3, 4   121:9,
10, 15   123:8, 9
128:13, 15
129:6   130:11,
12   132:16
133:13   136:13
137:22, 24
139:11, 14
145:20, 22
148:10, 12
149:8, 10
151:9, 11
155:25   156:2
162:22   168:6,
7   172:19, 21
174:12, 14
178:15, 17
181:11, 12
183:24   184:1
187:19, 22
202:7   204:11
216:7   218:3
219:4   220:7
221:1   225:6,
11   227:6
234:1, 13, 16
235:19
played   98:1
122:22
playing   76:24
pleadings   42:17
55:10   58:22,
25   59:1, 6
please   11:2, 21
43:3   49:11
50:17   54:24
55:17   61:25
70:4   78:1
80:25   86:17
113:16   116:3
132:15   145:18
148:8   151:8
155:25   172:18
174:11, 23
178:14   183:23
204:10   205:12
216:6   220:8

225:5
POAs   5:15
pocketed   103:9
Point   8:8
14:7   15:1
16:9   28:2
29:2, 15   31:5
34:23   37:6, 15
38:22   48:11
52:22   64:2
69:8, 19   87:1
88:22   92:1
108:9   122:16
126:11   135:17
140:18   141:11
158:22   160:10,
13   161:23
166:6   171:19,
22   176:3
178:3   180:17
183:10   184:21
185:7   186:4, 6
194:14   197:3,
7   199:10
201:13   203:20,
23   211:11, 17
223:13   224:10
232:18   233:6
236:21   240:13
pointing   99:20
policy   191:18,
19
poor   119:24
portion   219:5
224:17
position   222:9,
12
positions   22:17
75:10   134:4
219:10
possibility   98:7
possible   36:6
233:20
possibly   203:20
230:17, 18
potential   39:22
209:16   226:14
practice   17:18,
25   27:15
175:7   205:19
predeposition

12:3
premise   135:19
preparation
14:1   32:18, 25
34:23   35:19
76:10   91:4
117:13   119:13
128:5   216:4
prepare   13:23
14:15, 17   77:5
prepared   176:16
215:25
PRESENT   4:10
11:1   75:14, 18,
21
preservation
162:14
preserve   135:8
142:6, 16
preserving   137:1
PRESLEY   3:4
5:5, 8   11:4,
18, 20   16:20
21:13, 16
25:11   31:12
34:11, 22   37:2,
4, 5, 18   41:6,
8   44:7   46:15,
25   49:10   55:5
56:22   58:6, 8
59:4, 20   62:23
63:21   64:6
65:15   66:13,
15   82:15, 20,
23   84:13, 16,
21   95:21, 24
96:2   105:22
106:5, 8, 13, 15,
20   117:23
118:17, 24
119:23   120:12
128:4, 24
129:2, 4, 15, 17
131:14, 19
133:2   136:8,
11, 15   138:1
143:11, 14
145:13   148:9
154:10   160:16
162:10, 20
164:22   168:3,
4, 9   169:9

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 24

172:12    174:8,
10, 17, 21
175:1    178:13
181:4    183:22
187:17, 23
191:15    193:6,
9    194:16, 19
195:1, 23
197:22    200:25
201:6    202:12
203:6    204:12,
22    206:19
207:14, 20
208:6, 15
209:18    210:4,
9, 20    212:14
213:21    214:2
216:8, 13, 17
218:4, 18
220:9    222:18
224:7    225:10,
14    227:9, 13,
16, 20    230:3
234:5, 11
238:8, 14, 18,
22    240:11
243:21    244:1, 9
**pretty**    57:13
114:22    126:24
147:14    171:20
172:4, 6, 8, 9
186:18    227:19
235:15    236:16
**previous**    119:16
229:8
**previously**
83:18    120:15
177:6
**primarily**    12:24
20:15    21:1
56:17
**primary**    28:2
29:2
**print**    17:19
18:15, 16
88:14    173:24
245:11
**printed**    16:16
**prior**    2:25
23:6    35:12
77:24    182:21

202:1    229:22
230:15
**prison**    97:10
**Privilege**    6:13
7:14    16:4
41:22    63:13,
15    64:1    65:3
67:13, 15
87:15    88:7, 17,
20    89:4, 8, 25
91:11    96:15
107:10, 13, 18,
24    108:7
110:1    113:9,
13, 17    114:3
115:12    117:2,
13    118:7, 13,
18    119:13, 20
120:2, 8, 14
121:4, 14, 22
124:8    126:20
158:25    184:17
186:10    201:8
208:19, 20
215:25    216:4
232:24    233:1, 5
**privileged**    16:1
63:24    89:1
115:4    116:6,
13    122:2
123:2    131:23
158:18    191:9
207:8, 9, 13
**privileges**
33:23    185:23
186:15
**pro**    63:10
**probably**    17:22
18:3, 7, 9
19:18    20:25
21:5, 11    23:1
29:19    31:6
33:4, 7    35:21
38:24    39:5
42:2, 9    47:8,
19    49:7    52:2,
4, 23    53:10
62:18, 21    68:5
69:21    92:9
122:22    138:7,
13    140:17
142:25    151:5

173:23    176:5
183:16    192:25
193:15    206:10
222:20    224:9
230:18, 20
232:7, 9, 10
233:8    236:14
237:23
**problem**    126:4
140:16    190:8
**problems**    226:7
228:18, 19
235:6
**Procedure**    10:5
**proceedings**
10:13
**proceeds**    103:2
**process**    63:12
145:12
**Proctor**    6:11
7:7    34:19
41:20, 25
42:18    44:3, 12,
16    45:2    53:13
54:11    55:8
64:12, 24    83:8
98:25    100:9
107:7    116:11
117:5    118:3,
11    123:2
132:22    134:12,
22    143:20
175:12    214:23
215:10    240:24
241:7    242:8
243:1, 5, 9
**Proctor's**    40:21,
25    41:12    69:5
104:2    136:23
137:7    162:13
**Produce**    5:15
26:24    67:15
107:13    115:3
134:3    145:2, 3,
7, 9    147:6
154:3, 4
207:19    208:4
219:9
**Produced**    8:24
17:13    43:19,
23, 24    45:3, 18
46:9, 14    63:18

65:2, 4, 11
69:20    70:18
74:18, 22
77:15, 17, 18
78:24    82:11,
24    85:8    87:15,
16    88:21    89:2
94:15    96:14,
15    98:6    99:19,
22    103:17
116:5    118:5, 7
120:15    121:20,
23    143:23
144:8    145:11
151:19    154:7
156:25    167:4,
12, 19    168:16,
23    179:11
180:2    182:14
185:13    187:9
189:4    190:9,
12, 20    194:4
208:11    215:4
221:22    222:8,
10, 24    223:22
224:12    230:25
233:21    237:12
**producing**    114:25
**product**    33:23
41:22
**Production**    6:16
8:7    71:2, 6
99:21    116:11
122:4, 8, 20
130:25    144:3
151:24    156:19
157:1, 5, 12, 20
158:25    215:6
233:10
**Professor**    40:6,
14
**prompted**    212:3
**proper**    100:13
**propriety**
127:12    130:23
165:1
**protect**    134:4
219:10
**protecting**
219:15
**provably**    243:9,
10

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 25

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

provide    46:1
90:4
provided    10:5
14:5, 10    15:22
16:6    50:18
51:24    62:22
76:25    82:22
145:7    149:23
176:5, 12, 25
179:22    205:14
217:19    218:21
236:24
provides    73:24
providing    40:10
71:23    206:16
217:14
proximity    236:16
Public    2:4
10:2
pull    114:9
202:7    204:10
216:6    218:2
225:5    227:6
pulled    115:11
118:12, 18
120:21
pulling    114:3
124:10    126:19
Purple    7:1
70:20
purportedly
101:7
purporting    207:5
purpose    149:20
231:20    237:6
purposes    68:1
181:1
pursuant    82:12
150:13    152:12
pursued    24:6
put    15:21
39:21    49:12
85:18    128:25
167:6    170:3
189:19    237:24
Putnam    7:8
219:19
putting    119:19
PW's    89:25

< Q >

quash    60:18
61:3, 11, 16
question    14:14
33:8, 12    34:2,
13    38:7    44:20
47:22    51:16,
22    52:1    54:18
61:14    64:23
66:25    67:7
79:6    82:6
84:4    97:1
104:2    105:19
117:3    119:22,
24    125:10
141:8    147:17
152:16    153:21
173:6    180:21
182:25    212:11
228:16    233:16
241:1, 16
242:14
questions    2:21,
22    46:6    54:1
83:9    115:23
138:19    160:15
184:20    194:9
209:4, 21
215:24    221:12
228:5    243:12
244:11    245:9
quick    14:8
66:5    162:2
194:15, 20
239:4    243:15
quickly    240:12
quit    214:21
quote    43:6
50:5, 16    64:22
71:11, 22
83:17, 19    85:5
94:20    97:9
100:10    104:6
111:6    112:3,
18    113:15
116:3, 23
118:2    124:22
130:22    131:23
165:8, 9
169:21    176:22
188:13
quotes    111:5

< R >
raised    81:12
RAMERIZ    4:1
11:9    38:13
226:8    239:6
240:3
ran    23:6    222:1
rationale    117:4
reaction    134:1
219:7
read    41:3
44:1, 19, 22
50:8, 21    60:22
65:5    67:16
72:3    77:12
79:11    85:10
90:5, 6    91:13
94:24    109:6
111:9    112:6
116:7    117:9
132:4    140:19
162:24    170:4
177:3, 24
229:12    235:15,
16    236:8
244:15
reading    2:11
235:8
reads    64:22
ready    44:20
111:8    154:3
163:1    196:4
214:20, 25
real    162:2
194:20    240:12
243:15
realized    160:10,
13
really    25:25
42:21    54:5
72:13, 15, 16
109:4    198:3
200:3    208:17
215:8    218:19
241:25    242:20
reason    72:21
92:14, 19
98:15    101:6
112:8, 11, 22
153:14    154:22
160:24    173:9

174:2    191:16
222:20, 23
223:6    241:15
243:1, 5
reasonable
134:4    219:10
reasons    150:25
177:23    178:9
243:9
Rebecca    111:13
239:18    240:6
recall    15:20
18:18    19:9, 12
20:25    25:25
26:9, 11    27:2,
3    28:21    30:22,
23    33:5    36:6,
7, 10    38:20
39:20    40:5
45:13    46:4, 12
47:13, 15, 16
48:9, 14, 16, 17,
23    49:1, 6
51:3, 8, 9, 21,
25    53:1, 9, 21,
22, 24    57:18
58:25    60:5
61:11, 20
62:20    63:25
64:1    67:1, 18
68:4, 6, 9, 23
70:3    74:14, 20,
23    75:8, 16, 20
76:14    77:3, 8,
18, 20, 23, 25
80:6    84:10
86:14    87:15
88:3, 18    89:7,
11    90:3    91:19
92:3, 7, 9, 13,
18, 19    93:9, 14
95:12, 18
96:24    97:16,
23, 24    99:2, 3,
8, 16    101:8, 9,
19    103:4, 16,
18    107:4
121:24    125:23
127:13, 14
132:19, 25
134:20    135:1,
2, 10, 24, 25

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 26

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

137:15, 16
139:24   140:15,
24   141:2, 23,
25   142:8, 9, 11,
24   143:7
144:7, 15, 17,
23   145:5, 16
147:12   150:18
151:1, 3, 18, 21
152:1   153:23
154:2   155:13,
18   157:23, 24
159:11, 12, 16
162:16   164:8,
17   166:22
167:20, 23, 24
170:8   171:17
176:1, 9
178:11   180:19
185:4   186:8, 9
192:18   197:4
198:11   199:7,
14, 18, 22
202:15   204:6,
15   206:11, 22
207:11   209:3
212:2, 7   213:7
215:20, 22
216:2, 5
217:14, 17, 18
220:3, 6, 23, 25
221:16, 19
222:22   223:5,
9   226:13, 16,
22   228:4, 5
233:24   235:8
236:3   238:15
**recalled**   97:25
137:12   234:23
**recalling**   53:19
**receipt**   180:10
181:5
**receive**   101:11
**received**   52:18
77:10, 13
88:17   95:5
102:22   104:9
156:19   167:1
170:18   171:4,
10   173:25
176:23   182:6
202:21, 22

203:4   212:25
213:1, 6   214:1
216:25   218:12
235:9
**receives**   67:13
**receiving**
103:10   131:10
166:22   234:23
235:11
**recess**   66:10
128:1   162:7
194:23
**recognize**   17:7
139:17   150:4
239:20
**recognizing**
25:16
**recollection**
27:7   31:23
50:11, 24
56:16   58:19
61:7   69:22
72:11, 16   84:2
92:5   137:21
138:11   154:11
157:18   164:15
172:11   213:17,
24
**record**   11:22
15:4   36:25
53:12   66:9, 12
75:23   127:25
128:3   162:6, 9
194:22, 25
226:11   244:18,
20
**records**   128:6
151:19   153:20,
22   237:22
238:1, 6
**recounted**   44:17
**redact**   145:8, 9
151:1   154:13
155:7, 12
158:7   221:21
**redacted**   144:9,
16, 18   145:15
146:16   147:6
148:24   149:3,
4, 18   150:9, 17
151:15, 22
152:12   155:15

156:21, 24
158:12   168:15,
16   223:1, 7
225:1   237:23
**redacting**   224:15
**redaction**
143:22   144:3
147:19   153:22
158:3   167:19
225:22
**redactions**   82:9,
13, 19   144:13
147:1, 7, 10, 24
148:4   149:22
152:18, 19
154:5, 19, 25
155:2   158:16
167:21   221:13,
16   222:15
223:20   224:1
**redirect**   195:24
**reduced**   245:10
**refer**   49:14
202:6
**reference**   226:2
**referenced**
14:19   132:12
221:25
**references**
93:10   165:4,
14   236:1, 22
**referencing**
219:20
**referred**   144:24
198:15   217:2
220:20   235:24
**referring**   87:3
198:6   229:9
**refers**   50:6
145:12   166:10
**reflect**   114:7
150:22   154:17
180:11   181:6
238:7
**reflected**
118:13, 19, 22
139:25   143:24
144:19   157:2
169:3   189:3
221:14   238:1
**reflecting**   50:6

**reflects**   149:2
167:14
**refresh**   50:10
72:10   137:21
**refreshed**   92:5
**refreshes**   92:5
**Regarding**   5:15,
17, 19, 21   6:1,
3, 5, 7, 9, 13,
15, 17, 19, 21,
24   7:1, 3, 5, 9,
12, 14, 16, 18,
20, 22, 24   8:3,
8, 10, 12, 14, 16,
18, 20, 22, 24
9:1, 3, 5, 7, 9,
12, 14, 18, 20
63:3   74:12
122:17   182:5,
19   202:16
211:14
**regardless**   143:4
**regards**   179:18
232:8
**regularly**   19:23
20:20
**relate**   237:16
**related**   26:25
57:16   61:4, 17
91:3   127:7
151:23   158:25
164:19   221:3
**relates**   59:16
83:3   89:3
146:15
**relating**   2:15
63:18, 23
99:19   199:21
211:25
**relation**   188:23
**Relationship**
79:3   80:19, 22
83:3, 9, 14, 24
84:9   86:24
125:17   196:25
197:5, 14, 20
202:2
**relevant**   123:1
158:17
**rely**   61:23
**relying**   45:5, 6,
20, 25   46:16

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 27

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

59:14    61:18
63:1, 7    122:11
**remember**    22:16
23:16, 23    35:1
39:9    45:13
49:4    52:21
54:4    63:13
72:19, 20
74:16, 20
76:15    79:23
80:7, 8    84:7
88:24    90:11,
12, 16    99:7, 23,
24    103:6, 7
105:9    126:1
127:8, 9, 10, 11
141:7    145:14
155:17    157:24
170:12, 13
171:24    181:23
194:12, 13
197:16    203:17
205:2    209:19,
20    214:17
222:19    223:13,
15, 17    225:2
228:18    236:7,
17    239:23
240:2, 6
**remembered**    54:9
199:23
**removed**    16:3
157:20
**Repeat**    30:15
**rephrase**    44:16
141:8
**report**    20:8
27:16    175:19
176:4, 8, 13
**Reporter**    10:1
11:15    64:7
96:1
**reporting**    20:7,
14, 21    22:9
37:8    204:4
**reports**    20:23
**represent**    11:3
13:7    32:8
82:10    121:3
122:7    141:15
156:18    165:22
203:25    242:6

**representation**
25:2    26:8
28:6    30:18, 24
43:7    44:4
45:2, 7    54:19
65:8    118:11
122:12    131:7
135:6    161:1
180:8, 23
182:10    197:18
202:1    208:9
211:12, 18
241:7, 19
242:7, 15
243:16
**representations**
42:1, 5    45:17
46:18    59:11,
16    61:16, 19
62:13, 25    63:2,
8, 17, 22    242:12
**representative**
217:23
**represented**
104:15    159:22
**representing**
95:3    97:17
163:11    186:6
195:6    210:13,
18, 23
**represents**
71:22    72:7
245:12
**Requesr**    8:7
**Request**    6:15
49:8    71:2, 6,
19    122:8
146:21
**requested**    74:17
159:2
**requests**    28:13
43:11    52:3
56:3, 7, 19
66:22    122:4
146:19    207:25
209:9    210:1
**required**    13:13
135:8
**reread**    43:22
**research**    91:6
93:11, 13
**researched**    93:16

**researching**
164:25
**Resend**    6:9
**resending**    188:7
**respect**    46:20
51:17    59:10
61:15    62:11
63:5    70:1
117:14    138:24
**respective**    1:25
**respond**    100:14
134:15
**responded**    83:13
**responding**    24:15
**responds**    91:2
**Response**    6:15
8:6    43:17, 18
44:8    52:25
58:15    59:2
65:1    66:21
70:18    71:2, 18,
22    87:13
96:17    118:4
133:21    138:9,
17    160:22
179:17    185:3
207:24    219:25
226:17    229:11
236:20    242:18
**Responses**    6:3
34:18    42:12,
17    43:10
46:19    50:17
56:2, 6, 18
58:11    60:25
203:9, 11, 16
204:2    205:13
208:21    209:22
**responsibilities**
13:10, 13    28:23
**responsible**
56:18    67:3
107:16    119:19
**responsive**
43:25    45:3
65:2, 4    85:6
86:6    118:6, 8
122:3    190:11
208:11
**rest**    192:2
**result**    200:2
245:19

**retained**    19:7,
10, 13    40:6
200:12
**retainer**    226:10,
14
**Reveal**    131:25
**revealed**    177:18
**review**    13:25
14:4    15:25
56:24    58:22
60:21    61:8
62:15    119:20
128:6    149:22
190:20    239:14
**reviewed**    14:7,
20    46:23
61:10    66:23
92:4    180:16
224:9
**reviewing**    16:14
91:19    107:23
**Richard**    25:23,
24    123:13
165:25    169:19
**RICO**    1:19
15:8, 14    39:18
**right**    11:15
13:7, 10, 14
14:20    15:2, 3
16:13, 17
24:11    26:12
27:5, 22, 23
34:11    37:2
44:7    49:18
50:1    55:16, 24
56:3    59:4, 20
62:6, 9    63:18,
24    64:4, 11, 18
65:21    66:7, 13,
22    68:7    69:6
70:11, 16, 22
71:17    72:24
73:14    74:8
78:7, 15, 17
80:2    81:8, 23
82:1, 2, 5, 7,
20    83:1, 17, 22
84:3, 11, 24
85:2, 12    86:12
87:11    88:5, 12
89:13, 23
90:24    91:15

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 28

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

93:17    94:4, 12,
18    95:1, 7
96:2, 11, 16, 19,
25    97:5, 7
98:19, 23    99:2,
14    100:5, 9, 15,
17, 21    101:1,
18, 24    103:19
104:12, 25
105:18    106:5,
8, 13, 19
107:12, 14
108:24    109:1,
10, 12, 16, 20
110:2, 11, 16
111:13, 19
112:25    113:7,
10, 13, 17, 25
115:2, 5, 7, 18,
25    116:13, 15
117:17, 19
119:2, 9, 11
120:3, 6, 17, 19
121:2, 8, 16, 20
122:5, 11
123:4, 6, 7, 19,
21    124:5, 11,
17    126:15, 16
127:23    128:20
129:2, 19
130:6, 17
131:5    132:22
133:10, 18
134:13, 23
135:3, 5, 17, 22
136:15, 20
137:2, 10, 18,
24    138:5, 14,
25    139:13
140:5, 9    142:1
143:9, 16, 25
144:11, 14
145:19, 22
146:1, 5, 7, 9,
11, 16, 22
147:16    148:6,
12, 17    149:1, 7,
14, 18    150:1
151:15    152:2,
16, 18, 21
153:4, 7, 18
155:6, 8, 24

156:6, 10
158:18    162:10
163:3, 8, 14, 21
164:4, 6, 10
165:6, 11, 19
166:5    167:25
168:4, 18, 20
169:23    170:2
172:24, 25
173:3, 17
174:4, 9, 18, 20
175:6, 10
176:19    177:9
178:12, 23
181:11, 17, 22
182:8, 22
183:21    184:9,
11, 13, 20
187:21    188:3,
9, 16    190:15
195:1, 22
196:16    198:13,
24    199:1, 5, 12,
25    200:6, 17
202:13    203:17
205:1    207:6,
25    208:2, 5, 8
209:7    211:3
217:25    219:24
220:11    222:13
223:20    224:1,
18    225:21
226:17    227:20
228:7, 22
229:14, 17
230:10, 22
231:9    233:22,
23    237:4
238:2, 13
239:9    240:9,
20, 21    241:9,
17, 22    242:6,
24    243:12
244:12, 14
**right-hand**    17:1
110:19    112:18
**rights**    23:10
69:1    86:22
87:3    198:4, 5
220:14
**ring**    102:19, 20

**role**    68:13
72:12, 17
76:23    79:9
97:25    122:22
171:21
**room**    141:4
207:23
**rules**    2:15
10:5    12:3
13:3    143:2
**Ryer**    140:11
**Ryerson**    6:7
60:11    139:21
140:1, 11, 21

< S >
**s/Merit**    245:24
**safe**    79:7
135:14
**Sam**    112:9
**Sam's**    112:4
**sanction**    190:24
**Sanctions**    8:1,
5    99:4, 18, 24
128:19    129:19,
24    130:17
132:22    133:5,
18    135:15
162:12    175:14
214:13    215:16
216:11    232:2
**Sansbury**    3:20
**Sansom**    3:20
**Savannah**    188:2,
11
**save**    17:19, 22,
23    173:24
**saving**    18:9
**saw**    77:20, 23
115:12    124:11
127:16    145:12
154:24    164:13
166:18    185:10
187:8    230:12
**saying**    60:17
71:14    72:22
78:15    111:6
148:21    156:6
182:13    183:18
189:18    193:23
195:20    214:17

223:13, 17
241:11
**says**    25:21
43:6, 16    44:3,
6    50:16    56:5
64:24    67:13
68:5    70:20
71:21    73:10
74:2, 9    77:11
79:14    80:3
85:5    86:6
93:15    100:9
104:7    111:25
112:1, 18
113:15    117:18
120:18    122:2
124:22    126:12
130:22    131:23
133:25    139:2
140:12    164:24
183:9    203:9
205:12    219:6
221:7    225:22,
24    226:5, 6
229:5, 21    230:5
**scan**    146:4, 8
**SCHERER**    3:17
11:11    20:13,
18, 19, 21    21:3
22:6, 13, 24
23:7    24:11, 12,
19, 23    25:1, 7,
20    26:4, 19, 24
29:5, 8, 13, 22
30:25    36:1, 3,
18, 20    37:1, 3,
8, 20    38:1
39:17    46:1, 17
47:11    48:1, 5,
20    58:20
59:15    60:11
67:14    69:13
73:22    77:10
87:5    123:12,
13    127:3
136:20    142:4
159:7, 23, 24
161:1, 2, 7, 17
163:4, 11
164:3, 10, 13,
18    166:1, 23
167:1, 6

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 29

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

169:14, 19
170:24   171:5,
10, 16   172:2
173:2   174:3
176:12   180:9
192:22   195:7
196:10, 15
197:1, 7, 10, 13,
19   198:12
199:5, 9
200:17, 22
202:2   203:8
206:13   210:13,
19, 23   211:12,
18   213:4, 9
214:10   215:18
216:25   217:7,
12, 15, 19, 22
219:21, 23
220:4   224:21,
22   228:2, 24
229:25   230:13,
24   231:10, 16
236:9   238:12
243:17   244:4
Scherer's   24:15
68:1   82:13
153:4   161:13
163:20   172:13
178:24   181:21
188:7   189:14
196:21   216:3
219:16   227:2
237:14
school   12:13,
17, 19
scope   33:2, 16
50:25   135:20
192:23   193:12
211:14, 21
215:7
Scott   12:18
search   47:10,
14   108:4
188:15, 20
189:7, 16
201:19
searched   45:22
47:7, 18   48:2
63:6   137:13
138:24   139:4,
5   186:12

searches   47:4
66:21, 23   67:3
107:21   108:11
130:24   140:8
164:19   229:23
230:16
searching   67:2
107:17   138:8
Second   6:15
8:6   14:19
43:11   52:14
56:5, 11   57:1
58:9   67:8, 12
71:2   78:23
79:11, 14
107:3   111:2
116:1, 2   122:1,
8   124:19
128:23   129:16
130:21   148:3,
7   155:12
156:15   165:20
169:12   176:21
190:13   205:11
219:3   229:3, 4
234:8
section   139:2
secure   15:21
Security   6:1
50:18   51:24
64:23   65:10
112:5   116:4
166:11   176:23
179:13, 23
181:1, 7
205:13, 21
206:2, 15
218:12   237:3
240:17
see   16:25
23:20, 22
24:18, 20, 21
43:14   55:13
56:9, 10, 13
57:6   60:13, 15
67:8   71:8, 15,
16   73:13   74:1,
6   78:11   79:17
83:5, 11, 20
87:24   88:8
89:23   93:13
96:9, 20   97:14,

19   98:16
100:7   103:11
109:6   110:16,
19, 24   111:23
113:21, 22, 24
114:19   121:1
123:15   124:21
126:16   130:10
131:1   133:23
134:6, 18
137:9   139:8,
20   146:7, 10,
19   152:9, 24
157:6   165:2
166:5, 8, 15
168:17   171:1
175:21   176:21
177:12   178:21
180:10   181:5
184:17   189:17
195:20   202:24
203:10, 12
205:16, 17
216:20   219:13
225:4   233:25
236:15
seeing   204:15
205:3, 6   228:8,
16   233:24
seen   49:7
69:21   80:6
89:10   129:22
171:3   177:6
183:7   238:6
239:13
send   18:14
20:11   50:17
56:24   112:1
153:21   161:2,
6   179:23
205:12   228:1
sending   26:19
58:10, 12
88:10, 13
129:23   146:24
148:3   149:21
152:3   157:16
161:8   173:12
175:7   179:5
181:20   188:5
217:1   227:25
229:25

sent   15:18
18:2   62:12
88:17   106:11
108:9   138:8
140:3   150:6
173:3   175:17
182:13, 21
183:8   186:23
189:25   190:15
192:20   205:6
212:4   219:22
228:2, 20
233:3   236:9
sentence   60:14
67:12   71:11
79:15   109:7
116:1, 2   122:1
130:22   176:22
226:6
sentences   97:8
separate   197:6
203:21   217:24
232:12
September   31:18
32:8   60:2
67:10   73:3
74:13   107:19
109:10, 16
110:1, 22
113:7   124:9
191:4   195:8
216:1
sequential
156:25   157:5
serve   60:11
served   87:14
203:9
server   48:6
servers   138:20
Set   93:6
setting   43:11
seven   82:8
83:1
share   129:16
Sharpie   147:9,
22, 24   152:15,
19   154:25
shift   106:9
Short   66:10
128:1   194:23
shortly   190:14
199:15

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 30

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

show   16:19
 21:12   31:10
 66:14   85:12
 115:18   126:20
 128:12, 22
 129:3   141:14
 162:18
showed   120:1
 174:7
showing   96:3
 114:19
shown   202:5
shows   168:13
side   49:13
 158:6
sign   244:16
signature   2:11
 131:4
signed   131:9
 217:10
similar   61:12,
14
simple   65:23
 186:18
single   180:10
 181:5   227:17
sir   220:8
sit   47:12
 49:1   89:11
 108:8   145:15
 151:3
sitting   141:3
 158:10   180:19
 207:23   236:17
situation   192:6
six   177:9, 14
size   156:12
skip   168:2
 187:18
slightly   193:7
SMITH   2:2   5:4
 10:11, 23
 11:12, 21, 23
 12:21   25:17
 43:3   44:13
 49:18   54:24
 57:24   64:11,
22   66:14, 20
 67:11   81:6
 87:23   96:3
 98:23   107:3
 109:15   113:5

115:21   121:12
128:4   129:3
136:16   139:13
148:13   156:1
162:11   168:6
174:23   187:21
195:2   238:17
240:12
Somario   51:17,
19, 23   104:17
 112:9, 23
 114:8   118:14
 143:24   144:21
 156:24   158:13
 166:12   167:15
 179:14   180:1,
5   183:12
 193:21   236:1
 237:17   238:7
 243:2
Somario's
 224:18   236:22
somebody   114:10
 192:12, 13, 21
 193:22
soon   111:7
 171:20   172:4,
6, 8   231:7
 235:11, 15
sorry   21:23
 37:11   43:20
 82:5   88:7
 110:21   115:20
 116:2   117:25
 124:3   129:9
 136:17   142:12
 223:18   225:13
 238:19
sort   173:20
 176:4
sought   122:9
sound   198:24
sounds   28:19
 239:7
sources   47:17
 48:1   67:6
 108:4
SOUTHERN   1:3
 10:18
Spanish   68:10
 73:16

speak   30:11
 38:18   68:10
 92:20, 25
speaking   37:7
 56:23
speaks   75:23
special   16:7
 151:6   181:15
 182:2, 11
 211:21   224:11
specific   46:7
 48:3   52:21
 54:5   62:20
 81:21   84:8
 108:10   155:14
 181:7   222:19
 225:2   232:18
specifically
 27:7   63:25
 68:6   80:6
 142:9   144:15
 145:15   155:17
 176:9   179:18
 205:2   226:16
 237:2   240:2, 5
specifics
 101:15, 16
 197:16   209:19
 223:18
speed   21:3
 32:21
spelled   140:7
spending   192:2
spent   180:12
split   226:7
spoke   28:20
 36:9, 19   39:2,
13   40:10, 13
 68:8   93:8
 172:3
spoken   36:13,
21, 22   37:9, 19,
22, 25   38:3, 9,
12, 15
Spotswood   3:20
spreadsheet
 157:10
stack   227:19
staff   147:18
stamp   216:21
stand   53:11

Starnes   2:5
 3:8   10:8, 25
start   169:25
 202:8   214:6
started   12:20
 67:19   142:2
 195:5   206:24
 209:4
starting   64:19
 200:15
starts   57:3
 83:2   133:16
State   2:4
 10:3   11:2, 21
 143:1   158:15
 245:4
stated   83:18
 222:14
statement   46:12
 65:19   66:1
 153:3   168:14
 176:25   177:17
 204:1
Statements   9:11
 44:12, 15, 17
 51:10   81:22
 175:19   212:13,
15   221:14
 235:13
STATES   1:1
 10:16   12:11
 43:18
status   231:23
stayed   231:6
 236:6
staying   191:24
 229:2
stenotype   245:9
stepped   192:6
Steptoe   32:21
 39:10, 14
 188:11   233:13
sticker   95:23
STIPULATED   1:24
 2:10, 18
stipulation   10:6
stipulations
 11:16
stolen   80:17
stood   104:1
 240:23

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 31

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

strategic   32:23
strategies   72:2
Street   3:22
strike   36:1
 205:25
Stuart   163:15
stuff   80:9
 106:17   171:13
 191:19   214:22
 229:22
subject   23:23
 49:5   71:1
 73:10   74:9
 96:6   152:7
 163:19   166:1
 195:24
submitted   59:13
submitting
 181:15
subpoena   15:18
 60:12   70:19
 87:13   88:20
 140:3
subpoenaed   88:4
Subpoenas   6:7
 60:6   61:4
 67:20   86:11, 15
subsequently
 65:24   168:15
successfully
 81:17
sued   160:1
summary   136:2
summer   201:5
Sunday   109:5
super   239:4
supervision
 245:11
supplemental
 119:13   120:8,
16, 20, 23
 121:4, 14
 124:2, 3   184:17
supports   205:9
supposed   47:18
 149:4   204:4
Sure   20:9
 21:24   30:16
 33:13, 21   52:6
 63:1, 8   126:11
 127:1   132:24
 141:13   179:20

180:22   186:11
189:4   190:1, 2
195:2   197:2
206:4, 14
215:18   219:23
224:23   230:1,
24   233:14, 19
surely   241:18
Susana   22:6, 20
 50:16   57:25
 62:5   108:24
 113:6   117:1
 119:9   138:4
 152:4   156:10
 205:12
Susman   32:20
 39:2, 3, 8
 188:6   230:10
 233:13
sustain   112:21
sworn   11:13
 54:22   61:22
system   18:8

< T >
Tab   5:15, 17,
19, 21, 23, 24
 6:1, 3, 5, 7, 9,
11, 13, 15, 17,
19, 21, 23, 24
 7:1, 3, 5, 7, 9,
12, 14, 16, 18,
20, 22, 24   8:3,
5, 8, 10, 12, 14,
16, 18, 20, 22,
24   9:1, 3, 5, 7,
9, 11, 12, 14, 18,
20   16:20
 21:13   25:11
 26:12   31:12
 49:10   55:5, 16
 57:20   59:21
 61:25   64:4
 66:15   70:4
 72:24   78:1
 80:25   84:11,
17   85:13
 87:18   89:13
 94:5   95:20
 98:19   106:20
 108:15   109:12
 112:25   115:7

116:16   117:20
119:2   121:8
123:7   129:4
130:10   132:14
133:3   136:6,
11, 17   137:17
138:1   139:10,
16   143:11
145:18   148:6
149:7   151:8
155:24   162:20
167:25   168:9
172:18   174:10
175:1   178:13
179:15   181:10
183:22   187:18,
23   202:10, 12
204:12   216:8
218:4   220:9
225:5, 13, 15
227:9   228:12
234:5
tactical   177:23
 178:9
take   12:4
 38:24   52:15
 56:23   66:5
 75:11   79:11
 170:9   194:15
 224:3, 4   231:17
taken   2:3
 16:10   66:10
 128:1   159:25
 162:7   194:23
 245:8
talk   30:5, 8,
19   55:21
 127:2   160:17,
20   200:23
 219:20
talked   18:21
 39:5, 16   66:20
 86:10   118:2
 162:12   163:8
 167:2, 5, 18
 208:23   211:24
 218:10
talking   21:6
 49:4   78:14
 81:16   95:9
 111:15   152:20
 168:5   180:15

194:3   216:2
231:10   239:23
talks   21:9
 176:18
Tamayo   165:14,
17
Tassell   70:9, 13
TC   6:19   78:10

tc@iradvocates.org
 139:6
Tdavis@starneslaw.
com   3:14
team   28:24
 60:12   68:14
 107:20   140:2
 209:8, 14
 213:2   230:6, 8
 233:13
technically
 57:2   59:5
telephone   21:10
 29:11   92:23
 155:22
tell   13:13
 29:7, 13   33:10
 35:3   44:19
 53:18   76:11
 77:4, 9   83:7
 85:5   86:17
 92:11   95:13
 98:3   102:22
 103:1   104:20
 110:5   114:2, 6,
10   140:22, 25
 150:15   153:16
 168:21   173:24
 174:21   178:8
 179:16   182:24
 185:2, 5
 197:12   200:18
 205:3   213:5, 9
 239:8, 9
Tellez   22:6, 21
 58:1   62:5
 67:12   70:10
 84:25   85:18
 108:24   109:19,
24   113:6
 119:9, 12
 120:13   138:5
 152:4   156:10

1-888-326-0594   depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 32

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

**telling**   50:25
53:14   54:10,
11   60:9   72:6
79:8, 25   85:25
93:20   97:3
100:22, 25
104:12   117:16
124:14   133:17
134:11   138:16
143:20   169:18
184:15, 16
193:11   206:9
219:1   237:6
241:2, 20
**tells**   71:10
94:19   97:9
109:3   116:3,
23   120:13
138:23
**ten**   36:23
43:3   76:16
79:21   80:8
166:6, 7
183:10   192:3
235:13   236:21
**tended**   125:15
**tens**   105:6
**terms**   179:10
207:18   244:6
**TERRENCE**   1:9,
18   6:21   7:22
9:9   10:19
139:5   217:7
**Terry**   20:15, 20
21:3, 5, 21
22:3   23:6
28:2   29:1
30:24   33:15,
18   34:6   36:9
37:23   39:5
47:2, 11   48:2,
20   52:24
57:24   61:21
63:4, 9   66:4
69:1   70:24
77:1, 4   81:6
83:18, 23   84:6
86:22   87:4
88:14   91:21,
23   92:10, 12
119:8   122:15
126:2, 15

137:12   145:8
146:25   155:4,
8, 21   161:1, 9
167:2, 5
170:19   171:13
175:4   180:9
184:16   185:2
186:7, 20
192:21, 25
193:15, 16, 20
195:6, 12, 18
196:13, 20
197:3, 9, 12, 18,
23   198:7
199:9   200:20,
23   203:2, 8, 22
205:12   206:1,
9   207:18
208:10   209:8,
14   210:14, 18,
22   211:6
212:3, 12
213:2, 5, 8, 18,
25   214:4
217:11, 16, 19,
22   218:10
219:6   220:13
221:20   222:11
224:15, 21
225:22   231:13,
18   232:22
235:20, 23
236:2   238:12
239:22
**terrypc@gmail.com**
139:6
**Terry's**   22:22
107:20   140:14,
22   143:6
154:14   197:10
202:19   236:20
**testified**   11:14
130:3   163:23
198:10   204:18,
23   214:12
218:20   230:9
231:1   234:22
236:23   237:9
**testify**   42:21
82:18

**testifying**
33:25   132:2
199:7
**testimony**   52:20
67:1   71:23
91:5, 8   114:22
137:15   201:20
206:16
**text**   107:6
131:21
**Thank**   21:14
129:1   148:9
238:17   244:12
**Thanks**   50:20
205:15   244:13
**thereto**   2:25
245:10
**thing**   54:11, 21
92:9   95:18
120:6   173:21
183:18   188:22
189:2   195:3
197:24
**things**   18:10
23:13   55:7
63:14   105:13
134:22   191:10
232:4   242:14
**think**   14:13
15:23   16:18
17:21   20:22
23:13   28:12
31:25   32:14
35:10   36:21
37:14   46:8
48:5   52:22
57:18   61:9
62:17, 20   63:9,
20   65:1, 13, 16,
22   68:25
69:21   74:17,
21   75:21   76:5
77:19   80:22
84:1   87:6, 10
90:16   91:25
94:20   96:22
98:1   101:2
103:24   104:18
106:1   108:1
118:5   120:10
122:21   123:4,
6   125:4, 5

126:17, 23
127:20   132:11
136:4, 7   138:7
142:19, 22
144:25   145:11
147:11, 12
148:2   150:18
151:4, 23
154:16   158:4,
9, 21   159:9
160:1   161:22
163:23   169:7
171:12   172:13,
17   173:21
179:22   182:16,
17   185:7, 21
186:1, 14, 16
187:10, 12
188:10   189:9
190:8   192:12,
15   194:7
198:2, 8, 14, 16,
25   200:16
201:7, 11, 14,
23   202:3
203:17, 19
204:23   206:6
212:17   214:14
215:5   218:23
219:17, 22
221:24, 25
222:25   223:3,
8, 16, 25   226:3,
9   231:1
232:25   233:1,
7, 12   235:17
236:14, 16, 22
237:8, 11, 18,
20, 23   239:12,
23
**thinking**   76:15
**thinks**   90:3
**third**   22:7
24:12   57:3
78:18   86:12
116:20   226:6
233:11
**third-party**
60:6   61:4
**THOMAS**   3:6
**thought**   70:23
76:20   98:1

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 33

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

108:9   125:4,
11   137:16
167:3   185:12
186:18   187:9
198:10   201:9
218:22   233:8
234:13   241:18
**thousands**   54:8
105:6   116:24
180:16
**three**   34:20, 25
35:3, 5, 9
36:4   43:13
51:1, 15   53:5
54:13   93:23
95:5, 16   104:9,
24   118:23
127:18   131:20
133:9   134:12
175:16   176:22
177:6, 7   182:5,
24   183:1
193:17   202:20
213:5   218:11
240:16   241:15
**Tigre**   51:11, 15
104:17   112:9,
23   114:8
118:14   143:24
144:21   156:23
158:13   167:15
180:1, 4
183:12   193:21
237:16   238:7
243:2
**Tigre's**   224:18
**time**   2:23, 24
10:24   18:1
23:2   26:22
35:11, 12, 18,
23   36:8, 19
39:2, 5, 13
40:3, 13, 15
45:11   46:9
47:8   49:3
50:11   51:5
63:10   65:25
66:8, 11   72:12
76:16   77:15,
20   88:16
92:21, 22
93:20   95:8

97:10   98:16
99:8   101:10
106:5   107:2
114:17   116:10
118:10   122:19
127:21, 24
128:2   131:13
134:10   143:2,
3   151:7
158:16   159:2,
17   161:18
162:5, 8
164:13   166:17
172:3, 4
181:24   185:10,
11   187:4
188:6   190:16
194:21, 24
195:4   196:20
198:17   204:19
206:21   210:11
215:5, 8, 12
219:16   224:13
226:12   229:15
230:20   232:1,
19, 20   233:2
237:9   240:19
244:19
**times**   21:7
36:23   97:16
208:10   212:24
218:21
**titled**   78:10
79:2   109:25
**tobacco**   159:25
**today**   10:22
13:23   18:1
20:1   47:12
49:2   89:11
108:8   114:18
129:23   141:3
145:16   151:4
158:10   180:20
199:23   204:16
208:24   212:24
218:10   236:18
238:4   239:14
**Today's**   10:23
**told**   30:1
33:2, 16, 18
34:17, 19   35:3
48:11, 15

51:13, 23
67:24   80:23
84:6, 8   93:23
100:18   101:2
113:12   115:13
118:25   126:5
132:7   134:11
147:13   154:8
168:22   178:2
180:3   183:14
190:7   193:19,
22   195:13
197:4   199:9
206:1   224:16
240:14, 19, 24
242:14, 25
243:4, 9
**tomorrow**   56:8
**Tony**   11:7
172:2
**top**   24:14
44:18, 24
94:18, 19
112:14   116:20
120:13   140:12
143:19   148:20
203:7   205:11
216:21   219:6
226:18
**topic**   106:9
143:21   177:18
**touched**   128:17
192:16
**trace**   150:19
223:11
**track**   58:13
**transactions**
152:23   153:12
**Transcript**   6:11
7:7   64:12, 20
74:24   98:24
100:2   103:20,
24   118:1
132:21   133:5
134:21   245:13
**transfer**   111:6
112:20
**translated**
116:25
**Trey**   11:6
67:13   95:21
106:6   133:3

138:7   144:25
147:13   172:2
178:14   183:23
187:17
**trial**   2:24
209:17
**tried**   14:8
60:10
**trouble**   53:19
**troubling**   100:11
**true**   20:1
27:20   28:5
62:14   195:4
205:24   212:13,
16   243:10
245:12
**truth**   13:14
241:3, 20, 24, 25
**try**   214:25
238:12
**trying**   32:19
81:22   96:24
207:18   208:18,
19, 20   215:6
219:17   228:1,
23   232:24
243:18
**Tuesday**   10:23
**turn**   234:18
**twells@starneslaw.
com**   3:15
**twist**   140:13
**two**   15:1
36:23   73:16
74:3   79:2
97:7   111:7
114:24   115:1
136:24   145:1
152:8, 17
164:25   181:18
182:17, 21
197:20   202:2,
19   210:16
228:2   231:17
235:21
**type**   12:22
23:9   105:16
130:5, 7   142:5
203:1
**typically**   17:18
18:16   27:13

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 34

45:15    58:19
161:7    173:11
**typo**    43:21

< U >
**U.S**    185:21
**Uh-huh**    37:13
117:22    216:22
**ultimate**    86:24
**ultimately**
59:12    74:18
87:16    94:22
122:19    124:11
132:3    233:12
235:5
**unclear**    141:9
148:23
**underlined**    78:20
**underlying**    42:6
45:18    69:14
87:4    198:6
208:23
**underneath**
144:12
**understand**    13:1
33:14    42:22
68:19    80:18
81:25    82:4
106:18    117:2,
7    142:16
145:4    180:25
226:1    229:8
241:6
**understanding**
15:7, 10, 17
16:2    22:12
23:4, 8, 15
24:5, 22    25:6
28:22    34:13
41:23    45:11
47:9    48:8
52:19    53:13
57:14    65:18,
19, 25    66:2
67:23    68:12
69:12, 16, 25
72:11    76:22
80:11, 13
86:18    88:25
90:7    94:1
101:14    103:7
116:10    117:3,

11    119:18
131:12, 15
158:19    159:21
160:5    161:13
163:24    185:14,
18, 22, 24
186:3    189:11
193:12    201:3
221:2    229:15,
24
**understood**    14:6
**unethical**    244:6
**Union**    88:3
90:15
**UNITED**    1:1
10:16
**University**    40:7
**unloads**    124:20
**unusual**    27:21
105:23
**upcoming**    78:14
**ups**    243:15
**Urgent**    7:5
96:6
**use**    127:22
**Usual**    11:16
**usually**    21:9
61:21    142:8, 22

< V >
**vague**    172:11
**vaguely**    35:1
103:7    170:12
199:23    239:24
**value**    241:11
**Van**    38:15
70:9, 13    80:12,
13, 14, 20    85:7,
8    86:4, 5
95:11    100:22
103:3, 8
**Various**    8:24
165:24    177:17
**verbal**    51:5
142:5
**verbally**    93:20
**verify**    237:5
**version**    73:17
130:15
**versus**    10:19
14:23    209:10,
15    220:24

**Videographer**
4:11    10:15
66:8, 11
127:24    128:2
162:5, 8
194:24    244:19
**videotaped**    10:16
**view**    16:10
**viewed**    222:16
223:14
**virtually**    116:4
**visit**    97:10
98:4
**VS**    1:8, 17

< W >
**Waichman**    86:15,
18    87:14, 15
88:20    91:21,
22    93:1, 7
94:15    96:14
99:20    131:24
165:24
**Waichman's**    88:7
**waived**    2:12
**waivers**    41:21
**walk**    12:15
**want**    12:4
44:21    50:3
55:21    64:18
109:1    110:9
116:18    133:17
134:24    148:19
153:25    162:1
169:14    170:2
184:16    195:2
196:4    200:24
206:14    215:13
224:23    225:20
234:18    244:15
**wanted**    94:22
126:24, 25
159:14
**war**    105:13
**warehouse**    145:6
**Washington**
196:21    197:11
**wasting**    191:19
**way**    37:21
47:25    53:22,
24    74:23
80:11    121:2

135:25    145:10
178:3    180:2
195:7    237:19
**ways**    81:16
115:1
**week**    172:7
192:1    231:6
236:7
**weekend**    147:12,
19    151:22
154:7
**weeks**    94:8
99:3    182:21
235:21
**weighing**    213:18,
25
**Well**    18:6
23:12, 16    29:6
31:2, 21, 25
32:2    40:3
43:1    49:25
57:2, 11    59:2
61:20    63:16
75:23    81:15,
18    87:6, 8
88:22    91:19
93:20    100:14
101:24    105:11
107:20    108:23
110:22    115:19
126:22    131:3
137:16    140:12
141:15    142:23
146:10    152:25
153:20    156:21
158:24    160:7,
11    161:5
164:1    167:11
179:7, 12
182:16, 20
185:7    186:4,
14    191:8
192:17    193:4
194:5    195:11,
19    199:13
204:23    205:25
214:20    216:18
217:23    221:7,
19    222:14
226:5    231:1
235:19    237:8,

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 35

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

Bradley J. Smith
11/21/2023

18   238:1, 18
242:6
WELLS   3:6
11:6   21:15
41:7   58:7
84:12, 18
95:22   106:7,
11   117:22
136:10   140:6
143:13   168:1
174:19   197:21
243:20   244:12
went   37:6
51:14   61:13,
22   67:20
86:15   96:18
174:17   183:13
231:4   236:4
we're   18:6
65:7   80:7
107:2   110:10
133:10   147:13
154:1   161:23
192:13   224:23,
24   233:10
234:2
Western   88:2
we've   60:24
86:10   93:16
96:11   104:24
127:18   129:21
132:12   151:14
152:20   177:6
208:11, 23
211:24   218:10
222:1, 2   232:1,
2   238:4
whatnot   12:3
white   153:13, 16
white-collar
185:15
whited   153:13
white-out   154:19
white-out's
152:23
Wic   188:23
Wichmann   9:1, 3,
7, 14, 20
160:17   161:14
163:12, 21, 25
188:25   189:1

230:6, 8
wild   124:15
WILLIAM   3:5, 18
11:10   22:6
24:11, 19, 23
82:15   153:24
194:17   195:23
216:10
William's
101:22   194:8
wire   146:19, 21
wires   146:8, 15,
19
Witcher   188:23
Withdraw   5:23
31:5, 14   192:14
withdrawals
153:8
withdrew   210:12
withholding
143:22
witness   2:12
10:12, 22
18:25   19:5
26:25   27:8
33:3, 17   34:1,
5, 9, 12, 16
37:11   40:11
43:4   44:14, 25
46:20   49:5, 15
50:13, 25   51:6,
11, 17   54:2
55:1, 4, 11
59:16   61:17
62:13, 25   63:3,
18, 23   64:21
74:13   78:25
84:23   90:12
99:19   100:4
103:22   105:17
110:13   111:1,
20   113:1
115:22   116:12
117:24   122:25
135:16, 21
136:5   143:15,
18   146:13
150:3   153:24
158:16   163:2,
25   164:20
165:1, 21
169:3   170:22

176:18   177:21
180:12   191:14
192:23   193:11,
13   202:9
204:14   210:7
211:15, 22, 25
213:6, 19
220:11   225:19
227:8   229:13
234:4, 21
244:14, 17
245:14
witnesses   30:6,
8   35:4, 9
36:4   42:24
43:13   50:7
51:1   52:17
53:6   54:14
72:8   90:9
95:5, 16   97:19
104:3, 9   105:7
126:20   127:12,
15   134:12
160:3, 6
176:22   177:7
181:8   182:5, 7
189:3   202:20
203:3   204:21
205:22   206:3,
16   209:5, 10,
11, 15, 16
214:1   218:11
237:16   240:15
241:5, 15
Wolfe   92:16
125:24
Wolfe's   172:5
231:4
woman   139:21
wondering   235:22
word   29:25
29:11
words   29:19
35:16   53:5
192:5
work   12:23
19:23   23:9, 10
28:6   30:4, 12
33:23   40:9
41:22   64:3
68:18   124:24
139:7   170:14

195:5   230:21,
23
worked   12:16
91:21, 23
182:19   239:21
working   64:1
125:14   197:13
208:17   215:6
234:2
world   158:15
wpaulk@spotswoodll
c.com   3:25
writing   127:1
203:3
written   20:24,
25   39:24
43:11   79:15,
21   80:1   81:6
84:5   103:11
127:6   175:20
176:25
wrong   185:24
wrote   126:13,
23   127:13

< X >
Xie   140:6
X-i-e   140:7

< Y >
y'all   24:2
108:9   150:19
154:8   157:10
174:15   192:2
224:23   237:15
y'all's   32:1
Yeah   16:9
22:16   24:24
31:4, 15, 20
32:13   33:20
37:2, 15   39:9
41:7   42:2, 3,
9   43:8   45:23
49:8   56:13
59:7   61:23
63:3   64:25
65:24   76:1
86:2   89:21
106:1, 16
108:13   110:8
112:10   115:15,
16, 17   119:23

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 36

Drummond Company, Inc. v. Terrence P. Collingsworth, et al.

**Bradley J. Smith**
**11/21/2023**

120:*10*   126:*3*
129:*15*   136:*17*
137:*9*   138:*7*,
*18*   148:*8*
157:*17*   158:*21*
159:*9*   161:*11*
168:*19*   173:*4*,
*8, 16, 19*   175:*9*
179:*12*   183:*20*
186:*8, 20*
190:*18*   191:*5*
192:*3*   195:*19*,
*21*   198:*8*
215:*9*   216:*17*,
*18*   218:*21, 25*
220:*2, 19*
221:*5, 7*   226:*3*
227:*11, 14, 16*,
*17, 20, 21*
237:*24*   239:*23*
**year**   193:*24, 25*
**years**   12:*9*
15:*21*   18:*8, 12*
36:*12, 24*
76:*17*   80:*8*
105:*4*   192:*3*
205:*19*
**Yep**   41:*15*
176:*20*
**yesterday**   26:*1*
91:*20*   92:*4*
134:*17*   145:*12*
222:*2*   239:*14*
**York**   86:*20*

**< Z >**
**zealously**   13:*7*
**Zehil**   123:*13, 22*
**zone**   97:*10*
**Zoom**   14:*17*

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 37