FILED

2024 Jun-17  PM 02:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| DRUMMOND COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:15-cv-0506-RDP |
| TERRENCE P. COLLINGSWORTH, *et al.*, | ) ) | |
| Defendants. | ) ) | |

**<u>DEFENDANTS TERRENCE P. COLLINGSWORTH'S AND
INTERNATIONAL RIGHTS ADVOCATES'
MOTION FOR SUMMARY JUDGMENT
IN RICO CASE</u>**

Terrence P. Collingsworth
(D.C. Bar No. 471830)
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 543-5811
tc@iradvocates.org

1

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF") ...................................... 1

III.  STANDARD OF REVIEW ............................................................................................. 6

IV.  ARGUMENT ............................................................................................................... 6

   A.  There Was No "Enterprise" Between Defendants. ............................................... 7

      1.  Drummond's entire premise for asserting Defendants formed an "enterprise" for the unlawful purpose of extorting Drummond is not supported by evidence........................... 8

      2.  IRAdvocates is a well-respected, successful non-profit human rights advocacy group, not a front for an "enterprise" to file fake cases for the purpose of extorting recoveries from corporations........................................................................................................ 10

      3.  There is no evidence that Defendants had the requisite relationships between themselves to have formed an "enterprise" to perform illegal acts. ......................... 13

   B.  The Undisputed Facts Show That IRAdvocates and I Did Not Commit at Least Two Predicate Acts of Racketeering within the "Enterprise." ...................................... 16

   C.  The Undisputed Facts Show That Neither IRAdvocates Nor I Acted with the Required Intent to Be Held Liable for RICO Violations or Conspiracy to Violate RICO. ................... 23

      1.  Drummond cannot prove that IRAdvocates or I acted with intent to commit a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c)............................................. 23

      2.  Drummond cannot prove that IRAdvocates or I intended to conspire to commit a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). ............................... 25

V.  CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Almanza v. United Airlines, Inc.*,
  851 F.3d 1060 (11th Cir. 2017) ............................................................................................. 11

*Banco Latino Int'l. v. Gomez Lopez*,
  95 F.Supp.2d 1327 (S.D. Fla. 2000) ..................................................................................... 27

*Beck v. Prupis*,
  162 F.3d 1090 (11th Cir. 1998) ............................................................................................. 27

*Boyle v. United States*,
  556 U.S. 938 (2009) ............................................................................................................... 12

*Calderone v. United States*,
  799 F.2d 254 (6th Cir. 1986) .......................................................................................... Passim

*Cisneros v. Petland, Inc.*,
  972 F.3d 1204 (11th Cir. 2020) ....................................................................................... 11, 20

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*,
  528 F.3d 1001 (8th Cir. 2008) ......................................................................................... 10, 11

*Intercorp, Inc. v. Pennzoil Co.*,
  877 F.2d 1524 (11th Cir. 1989) ............................................................................................. 22

*Jones v. Buzzfeed, Inc.*,
  591 F.Supp.3d 1127 (N.D. Ala. 2022) ................................................................................. 10

*Kiobel v. Royal Dutch Petrol. Co.*,
  569 U.S. 108 (2013) ............................................................................................................... 16

*Perez v. Volvo Car Corp.*,
  247 F.3d 303 (1st Cir. 2001) ................................................................................................. 27

*Ray v. Spirit Airlines, Inc.*,
  767 F.3d 1220 (11th Cir. 2014) ............................................................................................. 10

*Richards v. Combined Ins. Co. of Am.*,
  55 F.3d 247 (7th Cir. 1995) ................................................................................................... 27

*Ritchie v. N. Leasing Sys., Inc.*,
  2016 WL 1241531 (S.D.N.Y. Mar. 28, 2016) ..................................................................... 21

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
  , 473 U.S. 479, 496 (1985) ................................................................................................... 11

*Town of Gulf Stream v. O'Boyle*,
  654 F. App'x 439 (11th Cir. 2016) ....................................................................................... 21

*Tucker v. Morris State Bank*,
    154 F.App'x 183 (11th Cir. 2005)................................................................ 20, 27

*United States v. Green*,
    981 F.3d 945 (11th Cir. 2020)............................................................................ 28

*United States v. Starrett*,
    55 F.3d 1525 (11th Cir. 1995)............................................................................ 28

*United States v. Turkette*,
    452 U.S. 576 (1981) .................................................................................... 17, 19

**Statutes**

18 U.S.C. § 201 ............................................................................................................ 25

18 U.S.C. § 1503 .......................................................................................................... 24

18 U.S.C. § 1341 .......................................................................................................... 23

18 U.S.C. § 1343 .......................................................................................................... 23

18 U.S.C. § 1512 .......................................................................................................... 25

18 U.S.C. § 1951 .................................................................................................... 10, 21

18 U.S.C. § 1956(a)(2)(A) .......................................................................................... 24

18 U.S.C. § 1961(1) ..................................................................................................... 20

18 U.S.C. § 1961(4) ..................................................................................................... 11

18 U.S.C. § 1961(5) ..................................................................................................... 20

18 U.S.C. § 1962(c) .............................................................................................. 5, 11, 27

18 U.S.C. § 1962(d) ................................................................................................. 5, 28

**Rules**

Fed. R. Civ. P. 56.................................................................................................. 5, 10, 11

**Other Authorities**

Endang Nurdin, ExxonMobil Settles Decades-old Torture Case with Indonesian Villagers, BBC
    (May 15, 2023) https://www.bbc.com/news/world-asia-65601644 ........................................... 7

*Plan Colombia Litigation Resolved with Settlement*, International Rights Advocates,
    https://www.internationalrightsadvocates.org/case-update/dyncorp/plan-colombia-litigation-
    resolved-settlement.................................................................................................... 7

William W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)...................................................................... 14

## I.    INTRODUCTION

On behalf of Defendants International Rights Advocates ("IRAdvocates") and myself,
Terrence P. Collingsworth, I hereby move under Fed. R. Civ. P. 56(a) for summary judgment on
Drummond's RICO claims against us based on 18 U.S.C. §§ 1962(c)–1962(d). Drummond's
RICO claim should be dismissed in its entirety. In addition, all state law claims should be
dismissed for the reasons stated in the RICO summary judgment motion filed concurrently
herewith by William Scherer and Conrad & Scherer, LLP ("C&S"), which IRAdvocates and I
join to avoid significant duplication of briefing.

Drummond's RICO Complaint ("RICO CT") is based on fantastical allegations of an
intentional, complex, far-flung conspiracy to file fraudulent lawsuits based on fictious evidence
to extort a settlement from Drummond. The alleged bad actors in this extortionate scheme are
William Scherer, C&S, Albert van Bilderbeek, Ivan Otero, Francisco Ramirez, IRAdvocates and
me. Drummond's wild allegations were sufficiently detailed such that the Court denied
Defendants' Motion to Dismiss. *See* March 8, 2016, Order, ECF No. 58. However, following
nearly ***ten years*** of invasive, expensive, and intrusive discovery, Drummond's allegations of
RICO violations have proven to be pure fiction. Drummond has no ***evidence*** to support the key
elements of a RICO violation, and summary judgment is required.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")

The following material facts are undisputed, and Drummond's lack of evidence to dispute
them entitles Defendants to Summary Judgment:

1. There is no evidence that the Defendants intended to form an "enterprise" for the purpose
   of conducting any illegal activity.

2. There is no evidence that the Defendants intended to conspire for the purpose of

conducting any illegal activity.

3. There is no evidence that IRAdvocates was formed for an improper purpose or is anything other than a legitimate, serious, and successful human rights advocacy organization. IRAdvocates' professed and demonstrated mission is to hold corporations accountable for human rights violations in their global operations. Declaration of Terrence P. Collingsworth ("TPC Decl.") ¶ 53.[1]

4. In 2001, Mr. Collingsworth, while General Counsel of the International Labor Rights Forum (ILRF),[2] filed *Quinteros v. DynCorp*, a case which alleged DynCorp unlawfully sprayed Plan Colombia fumigant on thousands of Ecuadoran farmers. After a 2017 bellwether trial, the case was settled. *See Plan Colombia Litigation Resolved with Settlement*, International Rights Advocates, https://www.internationalrightsadvocates.org/case-update/dyncorp/plan-colombia-litigation-resolved-settlement. The amount of the settlement is confidential, but it was substantial and for eight figures. TPC Decl. ¶ 54.

5. In 2001, Mr. Collingsworth, while General Counsel of ILRF, filed *Doe v. Exxon Mobil Corp.*, which alleged that Exxon hired and privatized Indonesian military personnel to provide security for its natural gas facilities in Aceh province, Indonesia. TPC Decl. ¶ 55. The private army killed and tortured villagers living near the Exxon facilities. In May 2023, on the eve of trial and after 22 years of litigation, the parties settled the case. *See* Endang Nurdin, *ExxonMobil Settles Decades-old Torture Case with Indonesian Villagers*,

---

[1] All Exhibits referenced herein with ECF Nos are attached as Exhibits to TPC Decl., which was filed on June 14, 2024 as ECF No. 315.
[2] In 2007, I formed IRAdvocates from the legal department of ILRF, and all of its pending legal cases were assumed by IRAdvocates. TPC Decl. at ¶ 57.

BBC (May 15, 2023) https://www.bbc.com/news/world-asia-65601644. The amount of the settlement is confidential, but it was substantial and for eight figures. TPC Decl. ¶ 55.

6.   In 2001, Mr. Collingsworth, while General Counsel of ILRF, filed *Sinaltrainal v. Coca-Cola Co*., alleging that Coca-Cola paid United Self-Defense Forces of Colombia (AUC) paramilitaries that murdered leaders of the Sinaltrainal trade union at Colombian Coca-Cola bottling plants. *Id.* ¶ 56. The parties settled that case in 2010. The amount of the settlement is confidential, but it was substantial and for eight figures. The settlement was later negated when one officer of Sinaltrainal allegedly violated the confidentiality requirement of the settlement agreement. *Id.*

7.   As is indicated in **Exhibit 58** (ECF No 64),[3] a June 10, 2024 article from LAW 360, a jury ***awarded $38.3 million*** to the 16 family members of the first nine bellwether Plaintiffs in IRAdvocates' Chiquita case, *John Doe 1 v. Chiquita Brands International*. IRAdvocates, with William Scherer and Eric Hager of C&S, were co-counsel for Plaintiffs in this Multidistrict Litigation case. The case was filed in 2007 by IRAdvocates as lead counsel for the Plaintiffs, the first case that IRAdvocates filed after its inception. In 2008, Mr. Collingsworth joined C&S as a partner, and the firm became co-counsel in the case. When he left the firm in 2015, C&S remained co-counsel for Plaintiffs and Mr. Collingsworth and C&S tried the case together. This is a bellwether verdict for the first sixteen Plaintiffs in an MDL process in which IRAdvocates and Conrad & Scherer represent a total of ***2,451*** Plaintiffs. TPC Decl. ¶ 58.

8.   In 2009, Mr. Collingsworth filed the complaint in *Balcero v. Drummond Co., Inc*., No. 2:09-cv-1041-RDP (N.D. Ala.). He personally conducted the factual and legal research

---

[3] All Exhibits have ECF numbers as attachments to the TPC Decl., ECF No. 315.

for the complaint, which was nearly ready to file when he joined Conrad & Scherer in 2008. TPC Decl. ¶ 59.

9.  Mr. Collingsworth did not discuss with Mr. Scherer the details of the case before he filed it. Mr. Scherer allowed Mr. Collingsworth complete discretion in deciding what human rights cases to file and when to file them. *Id.*

10.  Drummond filed its defamation claim against Mr. Collingsworth and Mr. Scherer in 2011, *Drummond v. Collingsworth*, No. 2:11-CV-3695-RDP (N.D. Ala.). With his colleagues in the Washington, D.C. office of C&S and Alabama attorney Brad Smith, Mr. Collingsworth handled the strategy and discovery of defending the defamation case. *Id.* ¶ 60.

11.  Mr. Collingsworth viewed the defamation case as frivolous and did not discuss his strategy or the progress of the case with Mr. Scherer until sometime after the April 21, 2013 hearing to report on what had occurred. Following this Court's October 15, 2013, Order, ECF No. 123, Mr. Scherer and Mr. Collingsworth discussed options for responding and obtaining additional counsel. Mr. Collingsworth is not sure of the exact date, but sometime before the Court's October 15, 2014, Order, ECF No. 151, C&S brought in additional counsel to direct Defendants' response to that Order, which required a full response to outstanding discovery by the December 12, 2014, date set by the Court. TPC Decl. ¶ 61.

12.  Francisco Ramirez stopped working with Plaintiffs' counsel on the Drummond/Balcero team at the end of 2009. Mr. Collingsworth has not seen, spoken to, or communicated by email or text with Mr. Ramirez since the end of 2009. Mr. Ramirez has never met, spoken to, or communicated by email or text with any other Defendant in the RICO case except

Ivan Otero and Mr. Collingsworth. *Id.* ¶ 62.

13. Albert van Bilderbeek is not a lawyer. He has never participated in any legal strategy discussions with Mr. Collingsworth or anyone on the former Drummond litigation team. Mr. Collingsworth did not consult with him in any capacity before he filed the *Balcero* case. Mr. Collingsworth reached out to him with a request to help with funding for the Drummond case when he was seeking assistance for Jaime Blanco's lawyers. *Id.* ¶ 63.

14. Mr. van Bilderbeek has not had any involvement with any witnesses other than Jaime Blanco and Rafael Garcia in any Drummond case. Mr. van Bilderbeek has never met, spoken to, or communicated by email or text with any other Defendant in the RICO case except Mr. Collingsworth. He did, at Mr. Collingsworth's direction, wire funds to Mr. Otero to pay for Mr. Blanco's attorneys. *Id.*

15. Mr. Collingsworth did not meet Mr. Otero until mid-2008. He had already drafted the *Balcero* Complaint and was supplementing the facts. Mr. Otero, a Colombian national who is not a U.S. lawyer, had no idea of how the U.S. legal system worked. Mr. Collingsworth did not discuss Defendants' legal strategy with him and was working with him mainly to gather evidence from El Tigre and Samario. *Id.* ¶ 64.

16. Mr. Otero has never met, spoken to, or communicated by email or text with any other Defendant in the RICO case except Mr. Ramirez and Mr. Collingsworth. *Id.*

17. Mr. Scherer has never met, spoken to, or communicated by email or text with any other Defendant in the RICO case except Mr. Collingsworth (and by extension IRAdvocates, as Mr. Collingsworth is its Executive Director). *Id.* ¶ 65.

18. Paragraph of 142 of the Drummond RICO Complaint states as follows:

> **THE ASK**
> The trial testimony of the incarcerated paramilitaries was concluded in May 2012. With this false testimony in hand, and knowing that not a single witness payment had been disclosed, the Enterprise decided it was time to inquire whether Drummond would be willing to settle the fraudulent lawsuit. In June 2012, Bill Scherer sent word through a friend in Washington, D.C. to Drummond's counsel in Washington, D.C. to ask whether, now, Drummond would be willing to settle. Drummond rejected this extortionate overture. Nevertheless, the Enterprise's conduct constitutes extortion in violation of 18 U.S.C. § 1951 (Hobbs Act – extortion).

19. The first Mr. Collingsworth learned of this allegation was when he read the Drummond RICO Complaint after it was filed in 2015. Mr. Scherer himself never informed Mr. Collingsworth that he planned to ask Drummond to settle or that he had done so. *Id.* ¶ 66.

## III.  STANDARD OF REVIEW

In my Motion for Summary Judgment in the defamation case at pages 8-10, filed concurrently herewith, I provide a detailed statement of the Rule 56 summary judgment standard from this Court's decision in *Jones v. Buzzfeed, Inc.*, 591 F.Supp.3d 1127, 1139–1141 (N.D. Ala. 2022). Defendants here refer to and incorporate that standard herein.

## IV.  ARGUMENT

The fantastical and fictional allegations of Drummond's RICO Complaint utterly collapse in the face of the actual evidence. Drummond has no evidence to meet its burden of proving ***all*** of the elements of a RICO claim. A plaintiff bringing a civil RICO claim must "establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014). "***Failure to present sufficient evidence on <u>any one element</u> of a RICO claim means the entire claim fails***." *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528

F.3d 1001, 1028 (8th Cir. 2008) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)) (emphasis added).

To avoid lengthy and repetitive briefing, IRAdvocates and I join the legal arguments made by Defendants C&S and Mr. Scherer in their RICO summary judgment motion, filed concurrently herewith. Further, as a successful RICO claim requires a finding of a purposeful enterprise or conspiracy between the Defendants, any finding that allows for the dismissal of Defendants C&S and Mr. Scherer would also require the dismissal of IRAdvocates and me.

This motion will focus on the key issues requiring summary judgement on Drummond's claims against IRAdvocates and me: (A) that the Defendants did not form an "enterprise" for purposes of committing acts of racketeering; (B) that IRAdvocates and I did not commit two or more predicate acts within a pattern of racketeering activity in violation of RICO; and (C) that I did not have the requisite intent to violate RICO's prohibitions or to conspire to violate RICO. If IRAdvocates and I prevail on ***any one*** of these issues, this court must grant summary judgment under Rule 56(a). *Craig Outdoor Advert., Inc.,* 528 F.3d at 1028. Again, IRAdvocates and I join all other arguments for summary judgement on RICO issues Defendants C&S and Mr. Scherer have made that are not covered herein.

### A. <u>There Was No "Enterprise" Between Defendants.</u>

Drummond's complaint alleges that "[t]he RICO Defendants and their co-conspirators constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c)." RICO CT ¶ 175. An association-in-fact enterprise must have "three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, ***and*** (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (emphasis added) (quoting *Almanza v. United Airlines, Inc.*,

851 F.3d 1060, 1067 (11th Cir. 2017)) (cleaned up). There is insufficient evidence for Drummond to establish an "enterprise" existed between Defendants.

> **1.** **Drummond's entire premise for asserting Defendants formed an "enterprise" for the unlawful purpose of extorting Drummond is not supported by evidence.**

Drummond cannot show that Defendants were in an "enterprise" that acted to further an unlawful purpose, the fundamental requirement for establishing a RICO enterprise. *See Boyle v. United States*, 556 U.S. 938, 946 (2009). As an initial matter, the very premise of Drummond's RICO case is that IRAdvocates was essentially created to be or became the vehicle for the "enterprise" to manufacture evidence and file fraudulent cases against multinationals for the purpose of extorting settlements from the target companies. RICO CT ¶¶ 2–3, 41–50. Drummond alleges that in the *Balcero* case in particular, Defendants bribed the key witnesses to obtain fabricated testimony. *Id.* ¶¶ 66–132. Drummond then alleges that Defendants "fraudulently concealed" this bribery by not disclosing to Drummond the payments to witnesses (which Defendants maintain were for witness security). *Id.* ¶¶ 133–41.

Drummond's RICO Complaint, filed on March 27, 2015, completely ignores that the Court issued an October 15, 2014, Order, ECF No. 151, that required full disclosure of all "witness payment" documents. Defendants fully complied with the Order's firm deadline of December 12, 2014. *See* ECF No. 789 at 16–24 (Collingsworth Opposition to Motion for Sanctions ("Opp. Sanctions")). Drummond's allegations in this regard are simply not supported by any evidence. Defendants fully disclosed all "witness payment" documents, and there is no evidence that Defendants bribed any witness in exchange for fabricated testimony. Quite the contrary, Defendants have procured substantial evidence

to corroborate the credibility of the witness testimony that Drummond financed the AUC's crimes against humanity. *See* Defendant Collingsworth's Motion for Summary Judgment in Defamation Case ("TPC Defamation SJ"), filed concurrently herewith at 12–29; TPC Decl. ¶¶ 2–66; **Exhibits 1–57** (ECF Nos. 1-63). The evidence is clear that I believed there was substantial evidence to support that Drummond partnered with the AUC, which negates the fundamental premise of Drummond's RICO case: that I knew that the witnesses supporting my assertions were bribed and provided fictitious evidence. Further, any "witness payments" I made to AUC members to testify were for security to protect the families of witnesses in the face of Drummond's "bullets or bribery" scheme. *See* TPC Decl. ¶ 51. Such payments were legal, ethical, and necessary. *Id*.

Moreover, the Colombian government's prosecution of Drummond's executives is strong evidence that my allegations that Drummond financed the AUC's crimes against humanity are true and are not simply fictitious allegations based on invented evidence. *See* TPC Defamation SJ at 36-37; TPC Decl. at ¶¶ 47–50; **Exhibits 49A–52** (ECF Nos 54-58) (describing status of the Colombian Prosecution). The evidence is compelling and overwhelming that Drummond financed the AUC's war crimes, making Drummond's RICO claim baseless. TPC Defamation SJ at 12–29; TPC Decl. ¶¶ 2–52; **Exhibits 1–57** (ECF Nos 1-63). Drummond's assertion in its Reply Brief to its sanctions motion that the looming conviction of Linares and Jimenez by a Colombian criminal court is a mere "distraction" is ludicrous. Drummond 5.22.24 Sanctions Reply at 34–35. A conviction by the Colombian court would be conclusive that there is credible evidence of Drummond's support for the AUC and that Defendants did not merely invent evidence for the purpose of extorting Drummond.

There is **no evidence** to support that Defendants formed any enterprise, let alone one for the purpose of filing fake cases based on evidence acquired through witness bribery to extort settlements. Drummond has the burden of proof on this issue, and Defendants, as the moving parties "need show only that the opponent cannot sustain [its] burden at trial." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting William W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)). Drummond cannot meet its burden on this issue as it has no evidence Defendants joined any "enterprise" for the common purpose of implementing a nefarious extortionate scheme.

> **2. IRAdvocates is a well-respected, successful non-profit human rights advocacy group, not a front for an "enterprise" to file fake cases for the purpose of extorting recoveries from corporations.**

Drummond's RICO Complaint goes to great lengths to disparage and misrepresent the purpose of IRAdvocates, essentially claiming that IRAdvocates existed to fabricate evidence, file fictitious claims against corporations, and then seek to extort settlements from them. *See* RICO CT ¶¶ 2–3, 41–50. There is undisputed evidence that IRAdvocates was established for a legitimate purpose and is not part of an "enterprise" to extort settlements. IRAdvocates is a serious, successful human rights advocacy group. TPC Decl. ¶ 53. In 2001, acting as General Counsel of the ILRF (IRAdvocates' predecessor organization), I filed *Quinteros  v. DynCorp*. *Id.* ¶ 54. This case alleged DynCorp unlawfully sprayed Plan Colombia fumigant on thousands of Ecuadoran farmers. IRAdvocates took over this case in 2007. *Id.* ¶ 57. After a 2017 bellwether trial, the case was settled. The amount of the settlement is confidential, but it was substantial and for eight figures. *Id.* ¶ 54.

In 2001, acting as General Counsel of the ILRF, I filed *Doe v. Exxon Mobil Corp.*, which alleged that Exxon hired and privatized Indonesian military personnel to provide security for its

natural gas facilities in Aceh province, Indonesia. *Id.* ¶ 55. The private army killed and tortured villagers living near the Exxon facilities. IRAdvocates took over this case in 2007. *Id.* ¶ 57. In May 2023, on the eve of trial, the parties settled the case. The amount of the settlement is confidential, but it was substantial and for eight figures. *Id.* ¶ 55.

Also in 2001, acting as General Counsel of the ILRF, I filed *Sinaltrainal v. Coca-Cola*, alleging that Coca-Cola, like Drummond, paid the AUC paramilitaries in Colombia that murdered leaders of the Sinaltrainal trade union at Colombian Coca-Cola bottling plants. *Id.* ¶ 56. IRAdvocates took over this case in 2007 and settled it in 2010. *Id.* ¶ 57. The amount of the settlement is confidential, but it was substantial and for eight figures. The settlement was later negated when one officer of Sinaltrainal allegedly violated the confidentiality provision of the settlement agreement. *Id.* ¶ 56.

In 2007, when I had just started IRAdvocates, I filed *Doe v. Chiquita Brands Int'l, Inc.* The case alleged that Chiquita, like Drummond, provided substantial funding to the AUC. *Id.* ¶ 58. In 2008, I joined C&S as a partner and the firm became co-counsel in the case. When I left the firm in 2015, Mr. Scherer and Mr. Hager of C&S remained co-counsel for Plaintiffs and we tried the case together. *Id.* **Exhibit 58** (ECF No 64) is an article announcing the June 10 , 2024 jury verdict of $38.3 million for the Plaintiffs. This is a bellwether verdict that also establishes liability for our remaining thousands of cases.

IRAdvocates is successfully furthering its mission of holding corporations accountable for human rights violations in their global operations. This is clear from the evidence, rather than Drummond's scurrilous (and defamatory) assertions. The conviction of Drummond's executives in a Colombian Court of financing the AUC's crimes against humanity will further this objective of holding Drummond accountable for its criminal complicity with the AUC.

IRAdvocates lack of success in its civil claims against Drummond is attributable to Drummond's "bullets or bribery" scheme, which prevented it from gathering evidence against Drummond until I implemented plans to provide security for key witnesses. *See, e.g.*, Opp. Sanctions at 8–9, 23–35. Nonetheless, in *Romero v. Drummond Co. Inc*, No. 03-cv-00575KOB, **Exhibit 1** (ECF No 1), we managed to gather sufficient evidence to survive summary judgment and get to a jury. *See* **Exhibit 2** (ECF No 2) (March 5, 2007, Order, ECF No. 329). While the July 2007 trial in *Romero* ended with a defense verdict, jurors interviewed after the trial explained they believed the Plaintiffs' testimony that Drummond collaborated with the AUC; however, they found for Drummond because the claim for relief was that Drummond aided and abetted war crimes, and the war crimes instruction led the jury to find the Drummond union leaders were not murdered "in furtherance of" the conflict. *See, e.g.*, **Exhibit 3A** (ECF No 3) (8.1.07 interview with juror A. Kelly); **Exhibit 3B** (ECF No 4) (8.7.07 interview with juror R. Hudson).

There was substantial evidence gathered in *Balcero* that Drummond financed the AUC's crimes against humanity. *See* TPC Decl. ¶¶ 7–52; **Exhibits** 5–57 (ECF Nos 6-63). The *Balcero* court granted summary judgment for Drummond largely because it applied *Kiobel v. Royal Dutch Petrol. Co.*, 569 U.S. 108 (2013) to find that the plaintiffs' Alien Tort Statute claims did not extend extraterritorially. *See Balcero*, Case No. 2:09-cv-1041-RDP, ECF No. 455. The court did not indicate that the case was frivolous or filed for an illegitimate purpose, let alone based on fictious evidence and fraudulent allegations to extort Drummond. Indeed, **Exhibit 57** (ECF No 63), a document from *Balcero* discovery of which I only recently became aware, consists of notes former Drummond President and CEO Mike Tracy prepared at a November 11, 2000, meeting with James Adkins and other Drummond security personnel. In the notes, Mr. Tracy

admits, among other things, that the AUC patrolled the Drummond rail line and coordinated with the Drummond-backed Colombian military, and he calls for cleansing Drummond employees of "troublemakers" shortly before Drummond union leaders were murdered by the AUC.

Drummond's "bullets or bribery" scheme prevented third parties from testifying against Drummond, and the stonewalling and perjury of Drummond's executives criminally prevented the *Balcero* Plaintiffs from obtaining evidence that clearly demonstrated that Drummond was collaborating with the AUC. TPC Decl. ¶ 31. The allegations of the *Balcero* case were not a "fraudulent scheme," but accurate statements of Drummond's illegal collaboration with the AUC.

In short, Drummond has produced no evidence that IRAdvocates was formed for an improper purpose or is anything other than a legitimate, serious, and successful human rights advocacy organization. The very premise of Drummond's RICO case fails for lack of evidence. Again, since Drummond has the burden of proof on this issue, summary judgment is required because Drummond cannot sustain [its] burden at trial." *Calderone,* 799 F.2d at 259.

### 3. There is no evidence that Defendants had the requisite relationships between themselves to have formed an "enterprise" to perform illegal acts.

Drummond makes generalized allegations about each of the Defendants and their alleged roles in Drummond's invented scheme, *see* RICO CT ¶¶ 11–17, but it fails to make factual assertions backed by evidence establishing that the individual Defendants worked together within an "enterprise," which requires evidence of an "***ongoing organization***, formal or informal, and by evidence that the ***various associates function as a continuing unit***." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). Drummond fails to provide evidence to satisfy this required element. Drummond has no evidence to establish anything other

than that IRAdvocates was pursuing a legitimate case against Drummond, and the other Defendants merely performed legal and discreet tasks to assist IRAdvocates.

As an initial matter, the undisputed evidence is that there was no enterprise between the Defendants because most of them never met, spoke with, or communicated with each other in any way. This precludes as a matter of law that the Defendants in this case worked as an "ongoing organization" or that the Defendants "function as a continuing unit." *Id*.

Francisco Ramirez stopped working with Plaintiffs' counsel on the Balcero/Drummond team at the end of 2009, shortly after the *Balcero* case was filed. I have not seen, spoken to, or communicated by email or text with Mr. Ramirez since then. He has never met, spoken to, or communicated by email or text with any other Defendant in the RICO case except Ivan Otero and me. TPC Decl. ¶ 62. He was obviously not participating in an "ongoing organization" with the Defendants as part of a "continuing unit."

Albert van Bilderbeek is not a lawyer. He has never participated in any legal strategy discussions with me or anyone on the former Drummond litigation team. I did not consult with him in any capacity about the facts of any of the Drummond human rights cases, including before I filed the *Balcero* case. I contacted him with a request to help with funding for the Drummond case when we were seeking assistance for Jaime Blanco's lawyers. Mr. van Bilderbeek has not had any involvement with any witnesses other than Jaime Blanco and Rafael Garcia in any Drummond case. Mr. van Bilderbeek has never met, spoken to, or communicated by email or text with any other Defendant in the RICO case except me. He did, at my request, wire funds to Mr. Otero to pay for Mr. Blanco's attorneys. *Id*. ¶ 63. Mr. van Bilderbeek was not part of the legal team, he was not involved in any case strategy or planning, and he had no idea of the legal theories or evidence in any Drummond case. *Id*. In late 2011 he sent payments for

14

Mr. Blanco's lawyers. RICO CT ¶ 98. That was his only act in the record of this case, and it remains Defendants' position that it was legitimate and ethical to provide funds for attorneys to allow Mr. Blanco to change his plea and cooperate with Colombian prosecutors. His cooperation was so complete and effective that the JEP recognized this and gave him his freedom. *See, e.g.*, TPC Decl. ¶ 50; **Exhibit 52** (ECF No 58). Mr. van Bilderbeek was obviously not participating in an "ongoing organization" with the Defendants as part of a "continuing unit."

 I did not meet Ivan Otero until mid-2008. I had already drafted the *Balcero* Complaint and was supplementing the facts. Mr. Otero is not a U.S. lawyer and had no idea of how the U.S. legal system worked. I did not discuss Defendants' legal strategy with him and was working with him mainly to gather evidence from El Tigre and Samario. Mr. Otero has never met, spoken to, or communicated by email or text with any other Defendant in the RICO case except Mr. Ramirez and me, and shortly after Mr. Otero began acting as local counsel for the Drummond case, Mr. Ramirez left. TPC Decl. ¶ 64. While Mr. Otero performed legitimate legal work at my request in Colombia, he never interacted with any other person on the legal team, including Mr. Scherer. Mr. Otero was obviously not participating in an "ongoing organization" with the Defendants as part of a "continuing unit."

Mr. Scherer and I never discussed the substantive legal strategy of the human rights cases and certainly did not discuss potential witnesses prior to my filing any case while I was with the firm. With respect to the human rights cases, Mr. Scherer deferred to me on matters of legal strategy and developing witnesses in the countries where we had cases. Mr. Scherer has never met, spoken to, or communicated by email or text with any other Defendant in the RICO case except IRAdvocates and me. *Id.* ¶ 65.

15

Based on these facts, there was no enterprise for any purpose, let alone a shared, illegal purpose, because there simply was no "ongoing organization." The named Defendants in this case did not know each other or interact with each other at all, and certainly did not interact as "a continuing unit." *Turkette*, 452 U.S. at 583. Drummond has no evidence to establish anything other than that IRAdvocates was pursuing a legitimate case against Drummond, and the other Defendants merely performed legal and discrete tasks to assist IRAdvocates. That does not establish an illegal RICO "enterprise." Further, Defendants have produced an enormous amount of evidence establishing that Drummond in fact financed the AUC's crimes against humanity and Defendants legal efforts were targeted to holding Drummond accountable, not to extort a settlement. *See* TPC Defamation SJ at 12–29; TPC Decl. ¶¶ 2–66; **Exhibits 1-57** (ECF Nos 1-63). In any event, Drummond has the burden of proof to show Defendants acted within an enterprise on an ongoing and continuous basis and "cannot sustain [its] burden at trial." *Calderone,* 799 F.2d at 259.

### B. <u>The Undisputed Facts Show That IRAdvocates and I Did Not Commit at Least Two Predicate Acts of Racketeering within the "Enterprise."</u>

Drummond must show at least two predicate acts, each of which must constitute a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1). *See* 18 U.S.C. § 1961(5). "A plaintiff must put forward enough facts concerning each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215. To survive a motion for summary judgment, a nonmoving plaintiff must cite "specific evidence" establishing predicate acts under RICO. *Tucker v. Morris State Bank*, 154 F.App'x 183, 186 (11th Cir. 2005). Drummond simply cannot prove with "specific evidence" that any member of the alleged enterprise committed at least two predicate acts of racketeering. Accordingly, the RICO claim fails as to all Defendants.

16

IRAdvocates and I specifically focus on Drummond's baseless allegations of extortion. The overarching legal theory of Drummond's RICO case is that the fundamental goal of Defendants' (unproven) "enterprise" was extortion: "[t]he RICO Defendants and their co-conspirators have perpetrated, and continue to perpetrate, a massive and multifaceted campaign of lies, fraud, corruption and bribery to extort Drummond to settle spurious lawsuits, to damage Drummond's reputation and business interests and *to obtain a fraudulent and extortionate financial windfall, either through settlement or a judgment procured by fraud*." RICO CT ¶ 174 (emphasis added). *See also id*. ¶¶ 105, 115, 142, 183–88 (allegations emphasizing the overall claim Drummond asserts is an "extortionate scheme"). Drummond's allegations of an extortionate scheme to extract a settlement from Drummond build to a crescendo with this allegation in paragraph 142:

> **THE ASK**
> The trial testimony of the incarcerated paramilitaries was concluded in May 2012. With this false testimony in hand, and knowing that not a single witness payment had been disclosed, the Enterprise decided it was time to inquire whether Drummond would be willing to settle the fraudulent lawsuit.  In June 2012, Bill Scherer sent word through a friend in Washington, D.C. to Drummond's counsel in Washington, D.C. to ask whether, now, Drummond would be willing to settle.  Drummond rejected this extortionate overture.  Nevertheless, the Enterprise's conduct constitutes extortion in violation of 18 U.S.C. § 1951 (Hobbs Act – extortion).

First, there is nothing inherently wrong with litigants seeking to settle their case to avoid further litigation and obtain a certain result. Indeed, "[t]he law is clear that litigation—even if frivolous or malicious—cannot constitute extortion." *Ritchie v. N. Leasing Sys., Inc.*, No. 12-CV-4992 (KBF), 2016 WL 1241531, at *13 (S.D.N.Y. Mar. 28, 2016); *see also Town of Gulf Stream v. O'Boyle*, 654 F. App'x 439, 444 (11th Cir. 2016) (holding that even frivolous or malicious litigation cannot constitute extortion for the purposes of a civil RICO claim). But, regardless, as a factual matter, the "enterprise" could not have acted to extort Drummond though Mr. Scherer's

"ask" because I did not learn of Mr. Scherer's offer to discuss settlement until I read that allegation in Drummond's RICO complaint in 2015. Mr. Scherer never informed me that he planned to do this or that he had done it. TPC Decl. ¶ 66. If I did not know about Mr. Scherer's offer to discuss the case with Drummond, certainly none of the other Defendants did since none of them had ever spoken with Mr. Scherer about anything. *Id*. ¶¶ 62–65.

More fundamentally, Drummond's "extortion" case is based on Drummond's incredible allegation that the *Balcero* case was entirely fictional: "***With this false testimony*** [of AUC members] in hand, and knowing that not a single witness payment had been disclosed, the Enterprise decided it was time to inquire whether Drummond would be willing to settle the ***fraudulent lawsuit***" RICO CT ¶ 142. First, as Drummond knew but ignored, when Drummond filed its RICO Complaint, all payments to any witnesses had been fully disclosed in compliance with this Court's October 15, 2014, Order, ECF No. 151. *See* Opp. Sanctions at 16–24; TPC Decl. ¶ 61. Further, the *Balcero* case was filed in good faith based on evidence gathered in a pre-filing investigation I personally conducted. TPC Decl. ¶ 5. As a result of discovery, we compiled additional substantial evidence to indicate that the premise of the *Balcero* case was true — Drummond financed the AUC's crimes against humanity including the brutal murders of the *Balcero* decedents. *Id*. ¶¶ 7–52; **Exhibits 3–57** (ECF Nos 3-63).

Based on all of this evidence, Drummond simply cannot prove at trial that Defendants filed the *Balcero* case knowing it was "fraudulent" and that Defendants knew the key evidence was "fictitious." A plaintiff pursuing theories of fraud that require proof of intent bears a heavier burden than the one who relies solely on misrepresentation. *Intercorp, Inc. v. Pennzoil Co*., 877 F.2d 1524, 1534 (11th Cir. 1989) ("The difference is critical, for the plaintiff pursuing a theory

of promissory fraud, which requires proof of intent, bears a heavier burden than the one who relies solely on misrepresentation.").

Further, if the Court rules in Defendants' favor in their summary judgment motions in the defamation case (which the law certainly requires since Drummond cannot prove that they acted with malice, *see* TPC Defamation SJ at 12–32), Drummond would not be able to establish in the RICO case that I or any other Defendant **knew** the *Balcero* evidence was fictitious or that the allegations made were "fraudulent." Again, more than any other single piece of evidence, the Tracy Memo (**Exhibit 57**) (ECF No 63) shows that Drummond's denial of the allegations of its collaboration with the AUC was perjury.

Drummond has the burden of proof on this issue. Defendants, as the moving parties, do "not have the burden of proof on the issue, [they] need show only that the opponent cannot sustain [its] burden at trial." *Calderone*, 799 F.2d at 259.

Once the premise of Drummond's RICO case is removed and it is clear that Defendants did **not** file *Balcero* as a fraudulent case as part of an "extortionate scheme," then the other "predicate acts" that Drummond alleges are plainly legitimate legal functions or tools Defendants used to prosecute the legitimate claims made in *Balcero* on behalf of families who had a loved one murdered by Drummond-supported AUC terrorists:

- **Drummond's allegations of a "Pattern of Racketeering Activity: Multiple Instances of Mail and Wire Fraud in Violation of 18 U.S.C. §§ 1341 and 1343." RICO CT ¶¶ 178–82**.

Drummond claims that emails and other communications, as well as funds wired, were essential to Defendants' "extortionate scheme": "The RICO Defendants participated in the scheme knowingly, willfully and with the intent to extort and defraud Drummond into paying the RICO Defendants and their co-conspirators, and/or to defraud federal courts in Alabama to

19

award them a substantial monetary judgment that would be paid by Drummond.  The RICO

Defendants knowingly and intentionally paid money to imprisoned Colombian paramilitaries to

obtain false testimony against Drummond, ***and then knowingly, and with the intent to defraud***

***Drummond and otherwise damage Drummond*** by deceiving the U.S. and Colombian

authorities and judicial systems, Drummond's customers, the media, and the general public,

caused that testimony to be filed and disseminated under the pretense that it was true." *Id.* ¶ 181

(emphasis added).

Defendants have established there is no evidence to support they participated in an

"extortionate scheme." The funding and communications were for a legitimate purpose, in this

instance, security for witnesses to overcome Drummond's "bullets or bribery" scheme and case

development to support the credible allegations made in the *Balcero* case. TPC Decl. ¶¶ 31

(witness security), 11–17, 20–22, 25–29, 32–36, 38–42, 44–45 (case development).

- **Drummond's allegations of a "Pattern of Racketeering Activity:
  Money Laundering in Violation of 18 U.S.C. § 1956(a)(2)(A)." RICO CT
  ¶ 189.**

Drummond claims funds wired to Colombia were "payments to Colombian witnesses in

exchange for false testimony against Drummond" as part of Defendants' "extortionate scheme."

*Id*. Again, Drummond cannot prove an "extortionate scheme" existed. The funding and

communications were for a legitimate purpose, in this instance, security for witnesses to

overcome Drummond's "bullets or bribery" scheme and case development to support the

credible allegations made in the *Balcero* case. TPC Decl. ¶¶ 31 (witness security), 11–17, 20–22,

25–29, 32–36, 38–42, 44–45 (case development).

- **Drummond's allegations of a "Pattern of Racketeering Activity: Obstruction of Justice in Violation of 18 U.S.C. § 1503." RICO CT ¶¶ 190–92.**

Drummond claims specifically that Defendants made "***deliberate and false representations*** [regarding false testimony by bribed witnesses] in various federal judicial proceedings, with full awareness of their consequence and with the ***specific intent*** to corruptly endeavor to influence, obstruct, and impede the due administration of justice." *Id*. ¶ 192 (emphasis added). Drummond cannot show I acted with malice in the defamation case in stating Drummond financed the AUC's crimes against humanity. TPC Defamation SJ at 12–29. Drummond certainly cannot establish at trial the higher standard that I acted with "specific intent" to falsify evidence that I credibly relied upon in stating that Drummond financed the AUC's crimes against humanity. TPC Defamation SJ at 12–29; TPC Decl. ¶¶ 2–52; **Exhibits 1–57** (ECF No 1-63).

- **Drummond's allegations of a "Pattern of Racketeering Activity: Witness Bribery in Violation of 18 U.S.C. § 201**." **RICO CT ¶ 193.**

Drummond claims the witnesses in *Balcero* were all bribed for "false testimony against Drummond which the RICO Defendants then utilized in their multifaceted and massive scheme to extort money from Drummond or obtain a fraudulent monetary judgment." *Id*. As established, there was no "extortionate scheme," and I had substantial evidence supporting my belief in the truth of my assertions about Drummond's financing of the AUC's war crimes. TPC Defamation SJ at 12–29; TPC Decl. ¶¶ 2–52; **Exhibits 1–57** (ECF No 1-63). In addition, there is substantial evidence supporting my contention that any payments made were for the ethical, legal, and necessary purpose of providing security for witnesses' families or for lawyers to allow for truthful testimony. *See e.g.*, TPC Decl. ¶ 31. As noted in my Opposition to Sanctions, ECF No. 789, at 19, rather than depose the witnesses in this case that were supposedly "bribed,"

Drummond put up every barrier it could to prevent **Defendants** from deposing them. In addition, the Colombian Prosecutor specifically rejected Drummond's unsupported claims of witness bribery. *See e.g.*, TPC Decl. ¶ 48, **Exhibit 50** (ECF No. 56).

- **Drummond's allegations of a "Pattern of Racketeering Activity: Witness Tampering in Violation of 18 U.S.C. § 1512." RICO CT ¶¶ 194–95.**

Drummond claims Defendants bribed the AUC witnesses to "falsely testify in this Court as part of its [extortionate] scheme." *Id*. ¶ 195. Again, there was no "extortionate scheme," and I had substantial evidence supporting my belief in the truth of my assertions about Drummond's financing of the AUC's war crimes. TPC Defamation SJ at 12–29; TPC Decl. ¶¶ 2–52; **Exhibits 1–57** (ECF Nos 1-63). Again, any payments that were made were for a legitimate, legal, ethical, and necessary purpose. *See e.g.*, TPC Decl. ¶ 31.

- **Drummond attempts to establish a "pattern of racketeering activity" by alleging the "Enterprise has instituted lawsuits against several corporations under the Alien Tort Statute and other causes of action that rely on the same or similar paramilitary witnesses. Thus, the wrongful conduct in this case is capable of repetition and it is very likely that it will be repeated both in the lawsuits against Drummond and against other corporations." RICO CT ¶¶ 196–97.**

This rank speculation is demonstrably false. The only "pattern" based on evidence is that IRAdvocates has a strong record of success against other companies for human rights violations. TPC Decl. ¶¶ 53–58. IRAdvocates prevailed in or settled those cases because, unlike Drummond, the other companies did not obstruct evidence with a "bullets or bribery" program. *Id*. ¶ 31.

The entire premise of Drummond's RICO claim collapses because Drummond cannot show Defendants engaged in any predicate acts. Drummond cannot show there was an "extortionate scheme," so the other supposed predicate acts Drummond alleges were the means

to achieve Defendants' "extortionate scheme" fail as well. Further, Drummond's allegation of a potential "pattern" of racketeering activity is based on blatant, speculative fiction. Drummond has the burden of proof to show Defendants engaged in two or more predicate acts of illegal activity within the RICO statute. Clearly Drummond "cannot sustain [its] burden at trial" of proving the required predicate acts. *Calderone,* 799 F.2d at 259.

**C.**   **The Undisputed Facts Show That Neither IRAdvocates Nor I Acted with the Required Intent to Be Held Liable for RICO Violations or Conspiracy to Violate RICO.**

Beyond hurling unsupported accusations of intent to defraud at the Defendants, Drummond's primary allegation of intent is "[u]pon information and belief, the RICO Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c)." RICO CT ¶ 202. After extremely invasive discovery, Drummond's "information and belief" remains unsupported by evidence. Drummond fails to and cannot provide the specific evidence required to prove the requisite level of intent for the primary RICO violations or to conspire to violate RICO. *See Tucker*, 154 F.App'x at 186. Again, the burden of proof is on Drummond for this issue, so summary judgment must be granted because Drummond "cannot sustain [its] burden at trial" of proving the required specific intent of IRAdvocates, me, or any other Defendant. *Calderone,* 799 F.2d at 259.

**1.**   **Drummond cannot prove that IRAdvocates or I acted with intent to commit a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).**

To be clear, as established in section B above, Drummond lacks sufficient evidence to prove ***any*** racketeering activity occurred. Another reason to grant summary judgment against Drummond's RICO Complaint is there is no evidence to support that I (or IRAdvocates through

me) acted with specific intent to engage in any racketeering activity. Drummond is required to show that I intentionally participated in such illegal activity. *See Beck v. Prupis*, 162 F.3d 1090, 1096–98 (11th Cir. 1998) (affirming summary judgment because plaintiff failed to show evidence that defendant's participation was intentional); *Banco Latino Int'l. v. Gomez Lopez*, 95 F.Supp.2d 1327, 1333–1334 (S.D. Fla. 2000) (granting summary judgment because the plaintiff did not sufficiently allege proof of intent); *see also Perez v. Volvo Car Corp.*, 247 F.3d 303, 320 (1st Cir. 2001) (affirming summary judgment because evidence was not sufficient to show that defendant knowingly or intentionally participated in RICO scheme). Of particular relevance is *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251–53 (7th Cir. 1995), in which the Court affirmed summary judgment where plaintiffs' allegations showed that defendants may have engaged in "sloppy business practices" but failed to establish intent to defraud. Here, Defendants admit there was an initial failure to disclose all witness security payments. While this may not represent ideal business practice, such a failure does not constitute intent to defraud.

Simply put, there is no evidence that I intentionally engaged in an "extortionate scheme" or any of the other related allegations of racketeering activity made by Drummond. Rather, the evidence shows that I acted with a good faith belief that the allegations I made about Drummond's financing of the AUC's crimes against humanity were true and I never fabricated evidence or acted with fraudulent intent in making the allegations of the *Balcero* Complaint. *See* TPC Decl. at ¶¶ 7–52; **Exhibits 6–57** (ECF Nos 8-63). Indeed, if the Court agrees that I did not act with malice in making my allegations against Drummond and therefore did not defame Drummond, *see* TPC Defamation SJ at 12–29, Drummond certainly cannot prove in this case that I acted with specific intent in making the same specific assertions. Drummond's failure to

24

provide evidence of my specific intent to violate RICO requires this court to grant summary

judgment on Count I of the RICO Complaint.

### 2. Drummond cannot prove that IRAdvocates or I intended to conspire to commit a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

"To establish a RICO conspiracy violation under 18 U.S.C. § 1962(d), the [plaintiff] must

prove that the defendants objectively manifested, through words or actions, *an agreement* to

participate in the conduct of the affairs of the enterprise through the commission of two or more

predicate crimes." *United States v. Green*, 981 F.3d 945, 952 (11th Cir. 2020) (quoting *United

States v. Starrett*, 55 F.3d 1525, 1543 (11th Cir. 1995) (per curiam)) (emphasis in original)

(cleaned up). Drummond simply has no evidence to prove my intent to join a conspiracy to

violate RICO. After a decade of burdensome, intrusive, and expensive discovery, including my

work product communications with my co-counsel, Drummond has failed to identify any

evidence that there was agreement between me and any of the Defendants to fabricate evidence

and file a fraudulent complaint in *Balcero* to extort money from Drummond. Again, the evidence

shows there was no enterprise, *see* section A above, and that I acted with a good faith belief that I

had collected overwhelming evidence to support the allegations made in the *Balcero* Complaint.

*See* TPC Decl. ¶¶ 7–52; **Exhibits 5–56** (ECF Nos 6-63). There is no "smoking gun," and

Drummond's failure to prove Defendants acted with intent and conspired to extort Drummond

requires this Court to grant summary judgment on Count II of the RICO Complaint.


## V.       CONCLUSION

Drummond's frivolous RICO SLAPP suit, pending for over ***nine years***, must be

dismissed under Rule 56(a). During this time, Drummond, with its unlimited resources, achieved

its goals in filing the SLAPP suit with smashing success. Drummond forced IRAdvocates and

me, as well as Conrad & Scherer and William Scherer, to spend enormous time and millions of dollars defending ourselves from this frivolous case. I was personally damaged in significant ways, including suffering lost income, employment opportunities, awards, and damage to my hard-earned reputation. I have also suffered serious and ongoing emotional distress from the false attacks Drummond has made accusing me of maliciously lying about Drummond's role in funding the AUC's crimes against humanity and of bribing witnesses.

After all this time, Drummond has utterly failed to identify any evidence that I joined a RICO "enterprise," that I acted with specific intent to commit at least two predicate acts violating the RICO racketeering provisions, or that I made an agreement with the other Defendants to conspire to violate the RICO racketeering provisions. Drummond's failure to prove even *one* of these required elements of a RICO case requires this Court to grant summary judgment.

Regardless of allegations of discovery violations or any other alleged misconduct, which pre-date 2015 Drummond's filing of the RICO Complaint, Drummond's RICO case fails on the merits and must be dismissed.

Respectfully submitted this 17th day of June, 2024,

/s/Terrence P. Collingsworth
Terrence P. Collingsworth
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue NE
Washington, D.C. 20002
Telephone: (202) 543-5811
tc@iradvocates.org

## CERTIFICATE OF SERVICE

I hereby certify that, on June 17, 2024, I electronically filed the foregoing with the United States District Court for the Northern District of Alabama by using the CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.


Date: June 17, 2024

/s/ Terrence P. Collingsworth
Terrence P. Collingsworth
(D.C. Bar No. 471830)
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 543-5811
tc@iradvocates.org