IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> TERRENCE P. COLLINGSWORTH, et al., <br><br> Defendants. | Case No. 2:15-cv-0506-RDP |

# DRUMMOND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Benjamin T. Presley (ASB-0136-I71P)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL  35209
(205) 868-6000
fax: (205) 868-6099

Sara E. Kropf
Kropf Moseley PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900

*Attorneys for Drummond Company, Inc. and Drummond Ltd.*

2915961.1

# TABLE OF CONTENTS

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................................... 1

ARGUMENT .................................................................................................................... 12

    I.   COLLINGSWORTH ACTED IN THE LINE AND SCOPE OF HIS EMPLOYMENT WHEN MAKING WITNESS PAYMENTS. ............................................................................. 12

        A.  Collingsworth was C&S's agent under the law of the case ............................. 12

        B.  The undisputed evidence confirms that Collingsworth was acting in the line and scope of his duties ............................................................................... 13

        C.  C&S ratified the witness payments ................................................................. 13

    II.   DEFENDANTS' WITNESS PAYMENTS ARE "THINGS OF VALUE" .............................. 14

    III.  IN THE ALTERNATIVE, DRUMMOND REQUESTS THAT THE FACT OF WITNESS PAYMENTS BE TREATED AS ESTABLISHED PURSUANT TO RULE 56(g) ...................... 15

CONCLUSION .................................................................................................................. 16

CERTIFCATE OF SERVICE ................................................................................................ 17

2915961.1

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Clews v. Jamieson*,
   182 U.S. 461 (1901) ................................................................................................................14

*Culpepper v. Irwin Mortg. Corp.*,
   491 F.3d 1260 (11th Cir. 2007) ..............................................................................................13

*Drummond Company, Inc. v. Conrad & Scherer, LLP*,
   885 F.3d 1324 (11th Cir. 2018) .......................................................................................12, 13

*First Nat. Bank v. Biddle*,
   22 F.2d 11 (5th Cir. 1927) ......................................................................................................14

*Metropolitan Life Ins. Co. v. Liebowitz*,
   No. 22-11794, 2023 WL 4420366 (11th Cir. July 10, 2023) .................................................15

*SE Property Holdings, LLC v. Center*,
   2017 WL 3403793 (S.D. Ala. Aug. 8, 2017) ..........................................................................15

*United States v. Gorman*,
   807 F.2d 1299 (6th Cir. 1986) ................................................................................................14

**Statutes and Rules**                                                                                             **Page(s)**

18 U.S.C. § 201 .............................................................................................................................. 14-15

Fed. R. Civ. P. 56(g) .................................................................................................................1, 15

COME NOW Drummond Company, Inc. and Drummond Ltd. (collectively "Drummond") and file this Motion for Partial Summary Judgment. Based on the undisputed facts and law, the Court should grant partial summary judgment to find that Collingsworth was acting within the line and scope of his employment when paying witnesses and that the payments to those witnesses qualify as a "thing of value." Alternatively, the Court should enter an order pursuant to Rule 56(g) finding the facts listed below in Paragraphs 1-28 of the Statement of Undisputed Material Facts as not genuinely disputed and therefore established in the case.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

*Undisputed Material Facts Relating to Witness Payments*

Jairo de Jesus Charris Castro ("Charris")

1. On June 23, 2009, Defendants sent Charris a $1,500 payment through an intermediary named Ricardo Garzon. Doc. 317-1 at p. 10 of 233 (Ex. 1 - *Defamation* Doc. 282 (Defs' Corrected Response to Proposed Findings of Fact)) ¶ 26.[1]

2. On July 30, 2009, C&S and Collingsworth sent a 3,000,000 Colombian peso payment to Mery Luz Molina, one of Charris' family members. Doc. 177 (C&S Am. Answer) ¶ 69.

3. From September 2009 through at least November 2015, Charris's wife, Claudia Elena Pinzon, received payments from C&S and Collingsworth in the amount of 1.5 million Colombian pesos, or approximately $860, per month. *Id.* at ¶ 71; Doc. 317-2 (Ex. 2 - *Defamation* Doc. 44-6); Doc. Doc. 317-1 at p. 11 of 233 (Ex. 1 - *Defamation* Doc. 282 (Defs' Corrected Response to Proposed Findings of Fact) ¶ 29; Paragraph 4 *infra*.

---

[1] "*Defamation* Doc." refers to filings in *Drummond Company, Inc. v. Terrence P. Collingsworth, et al.*, 2:11-cv-3695-RDP (N.D. Ala.).

4. Below is a chart reflecting the date and amount of the Charris payments that Defendants admit to making:

| Date | Amount in either Colombian pesos (COP) or US Dollars (USD) | Citation |
|---|---|---|
| July 30, 2009 | 3,000,000 COP | Doc. 317-2 (Ex. 2 - *Defamation* Doc. 44-6) at p. 3 of 18 |
| September 21, 2009 | 1,920,000 COP | *Id.* at p. 3 of 18 |
| October 26, 2009 | 1,420,000 COP | *Id.* at p. 3 of 18 |
| December 12, 2009 | 1,500,000 COP | *Id.* at p. 4 of 18 |
| January 2, 2010 | 1,500,000 COP | *Id.* at p. 5 of 18 |
| January 7, 2010 | 1,500,000 COP | *Id.* at p. 5 of 18 |
| April 3, 2010 | 1,500,000 COP | *Id.* at p. 6 of 18 |
| April 8, 2010 | 1,500,000 COP | *Id.* at p. 6 of 18 |
| April 28, 2010 | 1,500,000 COP | *Id.* at p. 6 of 18 |
| June 3, 2010 | 1,500,000 COP | *Id.* at p. 7 of 18 |
| July 13, 2010 | 1,440,400 COP | *Id.* at p. 7 of 18 |
| August 2, 2010 | 1,559,600 COP | *Id.* at p. 7 of 18 |
| September 7, 2010 | 1,397,500 COP | *Id.* at p. 8 of 18 |
| September 8, 2010 | 102,500 COP | *Id.* at p. 8 of 18 |
| October 6, 2010 | 1,500,000 COP | *Id.* at p. 8 of 18 |
| November 10, 2010 | 1,500,000 COP | *Id.* at p. 9 of 18 |
| December 10, 2010 | 1,469,700 COP | *Id.* at p. 9 of 18 |
| January 12, 2011 | 1,530,300 COP | *Id.* at p. 10 of 18 |
| February 14, 2011 | 1,500,000 COP | *Id.* at p. 10 of 18 |

| Date | Amount in either Colombian pesos (COP) or US Dollars (USD) | Citation |
|---|---|---|
| March 9, 2011 | 1,500,000 COP | *Id.* at p. 10 of 18 |
| April 11, 2011 | 1,422,700 COP | *Id.* at p. 11 of 18 |
| May 9, 2011 | 1,361,250 COP | *Id.* at p. 11 of 18 |
| June 7, 2011 | 1,410,700 COP | *Id.* at p. 11 of 18 |
| July 12, 2011 | 1,453,300 COP | *Id.* at p. 12 of 18 |
| August 9, 2011 | 1,852,050 COP | *Id.* at p. 12 of 18 |
| September 13, 2011 | 1,500,000 COP | *Id.* at p. 12 of 18 |
| October 14, 2011 | 1,500,000 COP | *Id.* at p. 13 of 18 |
| December 7, 2011 | 3,000,000 COP | *Id.* at p. 13 of 18 |
| January 12, 2012 | 1,500,000 COP | *Id.* at p. 14 of 18 |
| February 7, 2012 | 1,450,000 COP | *Id.* at p. 14 of 18 |
| March 6, 2012 | 1,425,750 COP | *Id.* at p. 14 of 18 |
| April 10, 2012 | 1,452,200 COP | *Id.* at p. 15 of 18 |
| May 10, 2012 | 1,413,650 COP | *Id.* at p. 15 of 18 |
| June 8, 2012 | 1,430,000 COP | *Id.* at p. 15 of 18 |
| July 12, 2012 | 1,437,000 COP | *Id.* at p. 16 of 18 |
| August 8, 2012 | 1,472,900 COP | *Id.* at p. 16 of 18 |
| October 11, 2012 | 2,958,250 COP | *Id.* at p. 16 of 18 |
| November 7, 2012 | 1,487,800 COP | *Id.* at p. 17 of 18 |
| December 13, 2012 | 1,483,650 COP | *Id.* at p. 17 of 18 |
| January 4, 2013 | 1,445,650 COP | *Id.* at p. 18 of 18 |

| Date | Amount in either Colombian pesos (COP) or US Dollars (USD) | Citation |
|---|---|---|
| February 1, 2013 | $860 USD | Doc. 317-3 (Ex. 3 – February 2013-May 2014 Chart of Charris, El Tigre, and Samario payments (CS_TC210119)) at p. 2 of 47 |
| March 1, 2013 | $860 USD | *Id.* |
| April 5, 2013 | $860 USD | *Id.* at p. 2-3 of 47 |
| April 23, 2013 | $860 USD | *Id.* at p. 3 of 47 |
| May 30, 2013 | $860 USD | *Id.* |
| June 26, 2013 | $860 USD | *Id.* at p. 4 of 47 |
| July 8, 2013 | 1,500,000 COP | Doc. 317-4 (Ex. 4 - *Defamation* Doc. 88-13) at p. 2 of 4 |
| July 23, 2013 | $860 USD | Doc. 317-5 (Ex. 5 - CS_TC106310-11) |
| August 2, 2013 | $860 USD | Doc. 317-3 (Ex. 3 – February 2013-May 2014 Chart of Charris, El Tigre, and Samario payments (CS_TC210119)) at p. 4 of 47 |
| September 30, 2013 | $860 USD | *Id.* at p. 5 of 47 |
| November 1, 2013 | $860 USD | *Id.* |
| December 2, 2013 | $860 USD | *Id.* |
| December 19, 2013 | $860 USD | *Id.* |
| January 24, 2014 | $860 USD | *Id.* |
| April 11, 2014 | $1,720 USD | *Id.* at p. 6 of 47 |
| May 2, 2014 | $860 USD | *Id.* |
| May 30, 2014 | $860 USD | *Id.* |
| June 17, 2014 | $860 USD | Doc. 317-6 (Ex. 6 – Composite of Charris, El Tigre, and Samario payments spanning June 2014- |

4

| Date | Amount in either Colombian pesos (COP) or US Dollars (USD) | Citation |
|---|---|---|
| | | November 2015) at p. 2-5 of 65 |
| July 15, 2014 | $860 USD | *Id.* at p. 10-13 of 65 |
| August 12, 2014 | $860 USD | *Id.* at p. 22-25 of 65 |
| September 23, 2014 | $860 USD | *Id.* at p. 30 of 65 |
| October 21, 2014 | $860 USD | *Id.* at p. 31-34 of 65 |
| November 18, 2014 | $860 USD | *Id.* at p. 35-38 of 65 |
| December 16, 2014 | $860 USD | *Id.* at p. 43-44 of 65 |
| January 27, 2015 | $860 USD | *Id.* at p. 45-46 of 65 |
| February 17, 2015 | $860 USD | *Id.* at p. 47-48 of 65 |
| March 24, 2015 | $860 USD | *Id.* at p. 49-50 of 65 |
| April 21, 2015 | $860 USD | *Id.* at p. 51-52 of 65 |
| May 19, 2015 | $860 USD | *Id.* at p. 53-54 of 65 |
| June 23, 2015 | $860 USD | *Id.* at p. 55-56 of 65 |
| July 21, 2015 | $860 USD | *Id.* at p. 57-58 of 65 |
| August 25, 2015 | $860 USD | *Id.* at p. 59-60 of 65 |
| September 22, 2015 | $860 USD | *Id.* at p. 61-62 of 65 |
| October 20, 2015 | $860 USD | *Id.* at p. 63-64 of 65 |
| November 24, 2015 | $860 USD | *Id.* at p. 65 of 65 |

Jose Gelvez Albarracin ("Gelvez" or "El Canoso")

5. On November 28, 2011, which was "[w]ithin seven days" of Gelvez signing a declaration in *Balcero*, "a wire transfer in the amount of $2,084 was made from the Conrad &

5

Scherer Operating Account in the United States to the Colombian bank account of El Canoso's wife." *RICO* Doc. 177 (C&S Am. Answer) ¶ 112; Doc. 317-7 (Ex. 7 - *Defamation* Doc. 44-16) at p. 3 of 3.

<u>Jhon Jairo Esquivel Cuadrado ("El Tigre") and Alcides Manuel Mattos Tabares ("Samario")</u>

6.   In February 2011, Collingsworth and C&S sent a $5,000 payment to Ivan Otero, and internal C&S emails reflect that $3,600 of this payment was provided to El Tigre and Samario and/or their families.  Doc. 317-8 (Ex. 8 - *Defamation* Doc. 180-8) at pp. 3-4 of 33.

7.   In May 2011, Collingsworth gave a $5,400 cash payment to Ivan Otero, and Otero subsequently gave some of that money to El Tigre and Samario and/or their families.  Doc. 317-9 (Ex. 9 - *Defamation* Doc. 180-9) at p. 3 of 3.

8.   From June 2011 through at least November 2015, C&S and Collingsworth sent $2,700 monthly payments to Ivan Otero, who then delivered money to El Tigre and Samario and/or their families.  *RICO* Doc. 177 (C&S Am. Answer) ¶ 87; Doc. 317-1 at pp. 22-26 of 233 (Ex. 1 - *Defamation* Doc. 282 (Defs' Corrected Responses to Proposed Findings of Fact) ¶¶ 64, 67, 71).

9.   Below is a chart reflecting the date and amount of the El Tigre and Samario payments that Defendants admit to making:

| Date | Amount (all in US Dollars) | Citation |
| --- | --- | --- |
| February 11, 2011 | $3,600 | Doc. 317-8 (Ex. 8 - *Defamation* Doc. 180-8) at p. 2 of 32 |
| May 19, 2011 | $5,400 | Doc. 317-9 (Ex. 9 - *Defamation* Doc. 180-9) |
| June 6, 2011 | $2,700 | Doc. 317-8 (Ex. 8 - *Defamation* Doc. 180-8) at p. 3 of 33 |
| July 1, 2011 | $2,700 | *Id.* at p. 6 of 33 |
| August 29, 2011 | $2,700 | *Id.* at p. 8 of 33 |

| Date | Amount (all in US Dollars) | Citation |
|---|---|---|
| October 7, 2011 | $2,700 | *Id.* at p. 9 of 33 |
| November 4, 2011 | $2,700 | *Id.* at p. 10 of 33 |
| December 2, 2011 | $2,700 | *Id.* at p. 11 of 33 |
| February 3, 2012 | $2,700 | *Id.* at p. 12 of 33 |
| February 28, 2012 | $2,700 | *Id.* at p. 13 of 33 |
| March 30, 2012 | $2,700 | *Id.* at p. 14 of 33 |
| May 4, 2012 | $2,700 | *Id.* at p. 15 of 33 |
| June 6, 2012 | $2,700 | *Id.* at p. 17 of 33 |
| July 6, 2012 | $2,700 | *Id.* at p. 18 of 33 |
| August 3, 2012 | $2,700 | *Id.* at p. 19 of 33 |
| November 2, 2012 | $2,700 | *Id.* at p. 20 of 33 |
| November 16, 2012 | $2,700 | *Id.* at p. 21 of 33 |
| December 7, 2012 | $2,700 | *Id.* at p. 22 of 33 |
| January 4, 2013 | $2,700 | Doc. 317-3 (Ex. 3 – February 2013-May 2014 Chart of Charris, El Tigre, and Samario payments (CS_TC210119)) at p. 2 of 47 |
| February 1, 2013 | $2,700 | *Id.* |
| March 1, 2013 | $2,700 | *Id.* at pp. 2-3 of 47 |
| April 5, 2013 | $2,700 | *Id.* at p. 3 of 47 |
| April 23, 2013 | $2,700 | *Id.* |
| May 30, 2013 | $2,700 | *Id.* |
| June 26, 2013 | $2,700 | *Id.* at p. 4 of 47 |

7

| Date | Amount (all in US Dollars) | Citation |
| --- | --- | --- |
| August 28, 2013 | $2,700 | *Id.* |
| August 30, 2013 | $2,700 | *Id.* |
| September 27, 2013 | $2,700 | *Id.* at p. 5 of 47 |
| November 1, 2013 | $2,700 | *Id.* |
| December 2, 2013 | $2,700 | *Id.* |
| December 19, 2013 | $2,700 | *Id.* |
| December 20, 2013 | $2,700 | *Id.* |
| April 11, 2014 | $5,400 | *Id.* at p. 6 of 47 |
| May 2, 2014 | $2,700 | *Id.* |
| May 30, 2014 | $2,700 | *Id.* |
| June 17, 2014 | $2,700 | Doc. 317-6 (Ex. 6 – Composite of Charris, El Tigre, and Samario payments spanning June 2014-November 2015) at pp. 6-9 of 65 |
| July 15, 2014 | $2,700 | *Id.* at pp. 10-13 of 65 |
| August 12, 2014 | $2,700 | *Id.* at pp. 26-29 of 65 |
| September 23, 2014 | $2,700 | *Id.* at p. 30 of 65 |
| October 21, 2014 | $2,700 | *Id.* at pp. 31-34 of 65 |
| November 18, 2014 | $2,700 | *Id.* at pp. 35-38 of 65 |
| December 16, 2014 | $2,700 | *Id.* at pp. 43-44 of 65 |
| January 27, 2015 | $2,700 | *Id.* at pp. 45-46 of 65 |
| February 17, 2015 | $2,700 | *Id.* at pp. 47-48 of 65 |
| March 24, 2015 | $2,700 | *Id.* at pp. 49-50 of 65 |

| Date | Amount (all in US Dollars) | Citation |
|---|---|---|
| April 21, 2015 | $2,700 | *Id.* at pp. 51-52 of 65 |
| May 19, 2015 | $2,700 | *Id.* at pp. 53-54 of 65 |
| June 23, 2015 | $2,700 | *Id.* at pp. 55-56 of 65 |
| July 21, 2015 | $2,700 | *Id.* at pp. 57-58 of 65 |
| August 25, 2015 | $2,700 | *Id.* at pp. 59-60 of 65 |
| September 22, 2015 | $2,700 | *Id.* at pp. 61-62 of 65 |
| October 20, 2015 | $2,700 | *Id.* at pp. 63-64 of 65 |
| November 24, 2015 | $2,700 | *Id.* at p. 65 of 65 |

Libardo Duarte ("Duarte')

10. On or about April 18, 2011, C&S and Collingsworth sent a $2,500 payment to Duarte's family member, Leydi Johana Perez Valencia. Doc. 317-1 at p. 21 of 233 (Ex. 1 - *Defamation* Doc. 282 (Defs' Corrected Responses to Proposed Findings of Fact)) ¶ 58; Doc. 317-10 (Ex. 10- *Defamation* Doc. 44-13).

11. On or about April 29, 2011, C&S and Collingsworth sent a $2,500 payment to Duarte's family member, Katerin Durango Avendano. Doc. 317-1 at p. 21 of 233 (Ex. 1 - *Defamation* Doc. 282 (Defs' Corrected Responses to Proposed Findings of Fact)) ¶ 59; Doc. 317-11 (Ex. 11 - *Defamation* Doc. 44-15).

12. On or about May 21, 2011, Collingsworth and C&S provided a $1,102.54 (2,000,000 Colombian pesos) payment to Duarte and/or his family. Doc. 317-1 at p. 21 of 233 (Ex. 1 - *Defamation* Doc. 282 (Defs' Corrected Responses to Proposed Findings of Fact)) ¶ 60.

Jaime Blanco ("Blanco")

9

13.     In September 2011, Collingsworth sent, or caused to be sent, a $60,000 payment to Jaime Blanco using Ivan Otero as an intermediary.  Doc. 317-12 (Ex. 12 - *Defamation* Doc. 775-37); Doc. 317-13 (Ex. 13 - *Defamation* Doc. 417 (Crime-Fraud Op.)) at pp. 24-25 of 51.

14.     In December 2011, Collingsworth sent, or caused to be sent, a $25,000 payment to Jaime Blanco using Ivan Otero as an intermediary.  Doc. 317-14 (Ex. 14 - *Defamation* Doc. 775-41; Doc. 317-13 (Ex. 13 - *Defamation* Doc. 417 (Crime-Fraud Op.)) at 24-25 of 51; Doc. 317-15 (Ex. 15 - CS_TC013510).

15.     In July 2012, Collingsworth sent, or caused to be sent, a $35,000 payment to Jaime Blanco using Ivan Otero as an intermediary.  Doc. 317-16 (Ex. 16 - *Defamation* Doc. 180-17); Doc. 317-13 (Ex. 13 - *Defamation* Doc. 417 (Crime-Fraud Op.) at 24-25 of 51.

16.     In 2010 and 2011, Blanco was "short of money" and "didn't have the means to pay [his] attorneys' expenses."  Doc. 317-17 (Ex. 17 - (June 7, 2024 Blanco Dep.)) at 14:25-15:2.[2]  If Blanco had not received money from Collingsworth, Blanco would have had to sell his assets, sell his car, or borrow money to pay his attorneys.  *Id.* at 81:8-16.

**Undisputed Facts Relating to Conrad & Scherer, LLP's Acknowledgement and Approval of Witness Payments**

17.     Defendants' witness payments "constitute 'business plans and strategy'" of C&S. Doc. 317-18 (Ex. – 18 (*Defamation* Doc. 199)) at p. 5 of 13.

18.     The firm made the $2,700 payments to Ivan Otero (which were for the benefit of El Tigre and Samario) "as part of its business."  Doc. 317-19 (Ex. 19 - *Defamation* Doc. 390 (Crime-Fraud Hrg. Tr.)) at 436:18-19.

---

[2] Only the rough draft of the second session of Blanco's deposition (taken on June 7, 2024) is currently available.  Drummond filed the draft as an exhibit to its evidentiary submission (Doc. 317-17), and will file the final copy with the Court once Drummond receives it from the court reporter.

10

19. Defendants' witness payments "were delivered on a monthly basis by the firm, using the firm's money, and through the firm's normal approval process as documented in the firm's business records." Doc. 317-13 (Ex. 13 - *Defamation* Doc. 417 (Crime-Fraud Op.)) at p. 21 of 51, n.15.

20. As C&S Managing Partner, Bill Scherer approved witness payments. Doc. 317-19 (Ex. 19 - *Defamation* Doc. 390 (Crime-Fraud Hrg. Tr.)) at 436:9-16.

21. After another C&S lawyer, Billy Scherer, protested and discontinued the monthly payments to Ivan Otero (for El Tigre and Samario) and the monthly payments to Charris, C&S Managing Partner Bill Scherer made the decision to reinstate the payments. Doc. 317-20 (Ex. 20 – Deposition of William R. Scherer, III) at 91:2-19.

22. Former C&S Chief Financial Officer Richard Drath had knowledge of Defendants' witness payments, which Defendants viewed as litigation expenses. Doc. 317-19 (Ex. 19 - *Defamation* Doc. 390 (Crime-Fraud Hrg. Tr.)) at 436:20-23.

23. C&S intended to recover its witness payments as litigation expenses in the event there was a settlement or judgment in *Balcero*. *Id.* at 436:24-437:2.

24. Bill Scherer, C&S's Managing Partner, never disciplined Collingsworth for making witness payments (or for any other reason). Doc. 317-21 (Ex. 21 – Deposition of William R. Scherer, Jr.) at 33:3-18.

***Undisputed Facts Relating to Collingsworth's Agency***

25. At the crime-fraud hearing in September 2015, C&S corporate representative Bill Scherer testified that Collingsworth (i) was a senior lawyer in good standing with the firm, and (ii) had management responsibility over the firm's human rights cases. Bill Scherer further testified that (i) the firm delegated to Collingsworth the responsibility for handling the *Balcero* case, (ii)

11

Collingsworth was lead counsel for C&S in the *Balcero* case, and (iii) Collingsworth was responsible for drafting pleadings, discovery responses, briefs, and interviewing witnesses in *Balcero*.  Doc. 317-19 (Ex. 19 - *Defamation* Doc. 390 (Crime-Fraud Hrg. Tr.)) at 414:17-24; 423:8-424:21.

26. Collingsworth "acted at all relevant times on behalf of the law firm." Doc. 317-13 (Ex. 13 - *Defamation* Doc. 417) at p. 33 of 51, n.23.

27. "[E]very action taken by Terrence Collingsworth in this court was in Collingsworth's capacity as an agent of Conrad & Scherer." *Id.* at p. 27 of 51.

28. "Collingsworth was the C&S partner to whom Scherer, the managing partner, had delegated responsibility for the alien tort cases and who also served as the primary point of contact for the firm's outside counsel in the defamation cases." *Drummond Company, Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1337 (11th Cir. 2018).

## ARGUMENT

**I. COLLINGSWORTH ACTED IN THE LINE AND SCOPE OF HIS EMPLOYMENT WHEN MAKING WITNESS PAYMENTS.**

In its Answer to the *RICO* Complaint, C&S included an affirmative defense that "Plaintiffs' injuries or damages, if any, were caused, in whole or in part, by the conduct of persons or entities acting outside the scope of their employment or agency with C&S."  Doc. 82 (C&S and Bill Scherer Answer) at Affirmative Defense No. 19.  Drummond moves for partial summary judgment on the issue of whether Collingsworth was acting within the line and scope of his employment when paying witnesses.

**A. Collingsworth was C&S's agent under the law of the case.**

This Court has already held that Collingsworth "acted at all relevant times on behalf of the law firm," and that "every action taken by Terrence Collingsworth in this court was in

12

Collingsworth's capacity as an agent of Conrad & Scherer." *Defamation* Doc. 417 at 26, 32 n.23. The Eleventh Circuit likewise held that "the evidence in this case [ ] showed, at a minimum, that Collingsworth was the C&S partner to whom Scherer, the managing partner, had delegated responsibility for the alien tort cases and who also served as the primary point of contact for the firm's outside counsel in the defamation cases." *Drummond, LLP*, 885 F.3d at 1337. "The law-of-the-case doctrine holds that subsequent courts will be bound by the findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case." *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1271 (11th Cir. 2007).

Under the law of the case, Collingsworth was acting within the line and scope of his employment in making the witness payments alleged in the *RICO* Complaint.

### B. The undisputed evidence confirms that Collingsworth was acting in the line and scope of his duties.

Defendants' witness payments were part of the firm's "business plan and strategy," were made with the knowledge of the firm's Chief Financial Officer, were approved by the firm's Managing Partner, and were reinstated by the Managing Partner after Billy Scherer objected to them. Statement of Undisputed Material Facts, ¶¶ 17-28. Defendants' witness payments "were delivered on a monthly basis by the firm, using the firm's money, and through the firm's normal approval process as documented in the firm's business records." *Id.* at ¶ 19. If Defendants had secured a judgment or settlement in *Balcero*, they planned to recoup their witness payments as litigation costs. *Id.* at ¶ 23. As these undisputed facts reflect, C&S was fully aware of and endorsed the practice of making witness payments, and Collingsworth was acting in the line and scope of his employment when making witness payments.

### C. C&S ratified the witness payments.

"The rule that a principal, who does not reject his agent's act within a reasonable time, is

13

deemed to have ratified it, is supported by the great weight of authority." *First Nat. Bank v. Biddle*, 22 F.2d 11, 12 (5th Cir. 1927) (citing *Clews v. Jamieson*, 182 U.S. 461, 483 (1901)).  C&S never disciplined Collingsworth for making witness payments.  Nor has it ever disavowed the witness payments or claimed that they were prohibited by the firm.  To the contrary, C&S characterizes witness payments as part of its "business plan and strategy."  The firm continued to employ Collingsworth throughout the time period in which Defendants made their admitted witness payments, and Bill Scherer testified in September 2015—while C&S was still making monthly payments to El Tigre, Samario, and Charris—that Collingsworth remained a "senior partner … in good standing" with the firm.  Statement of Undisputed Material Facts, ¶¶ 24-25.  Accordingly, there is no genuine issue of material fact that C&S ratified witness payments made by Collingsworth.

## II. DEFENDANTS' WITNESS PAYMENTS ARE "THINGS OF VALUE."

Drummond alleges that Defendants bribed witnesses in violation of 18 U.S.C. § 201, which provides that any person who "directly or indirectly, corruptly gives, offers, or promises anything of value to any person, or offers or promises such person to give anything of value to any other person or entity, with intent to influence the testimony under oath or affirmation of such first-mentioned person as a witness upon a trial, hearing, or other proceeding, before any court" shall be guilty of witness bribery.  18 U.S.C. § 201.  *See also RICO* Doc. 1-1 (Compl.) ¶¶ 194-199.

The term "thing of value" is broadly construed and encompasses any monetary or nonmonetary benefit.  *United States v. Gorman*, 807 F.2d 1299, 1305 (6th Cir. 1986).  Defendants' paid witnesses were in prison at the time they or their families received money from the Defendants, and thus were undisputedly "suffering severe financial difficulties."  *Id.*  Paying imprisoned witnesses and/or their families thousands of dollars per month—when the witnesses

14

otherwise have no other means to financially support their families—is unquestionably a "thing of value" within the meaning of 18 U.S.C. § 201.

Assuming arguendo that Blanco used the $120,000 he received to pay his Colombian lawyers' legal fees (of which there is no evidence other than Blanco's say-so), those payments also constitute a "thing of value." Blanco testified in his deposition that he had no money to pay his attorneys, and that without the money he received from Collingsworth he would have been forced to sell his assets or borrow money to pay his Colombian lawyers. Statement of Undisputed Material Facts, ¶ 16. Thus, the money Blanco received from Defendants was also a "thing of value" within the meaning of 18 U.S.C. § 201.

### III. IN THE ALTERNATIVE, DRUMMOND REQUESTS THAT THE FACT OF WITNESS PAYMENTS BE TREATED AS ESTABLISHED PURSUANT TO RULE 56(g).

Alternatively, and to the extent this Court does not enter partial summary judgment and find that the Defendants' witness payments are "things of value" under 18 U.S.C. § 201, Drummond requests that the Court treat the fact of the witness payments as set forth *supra* in Paragraphs 1-28 of the Statement of Undisputed Material Facts as established in the case. Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."). *See also Metropolitan Life Ins. Co. v. Liebowitz*, No. 22-11794, 2023 WL 4420366, at *15-16 (11th Cir. July 10, 2023) (affirming district court's summary judgment ruling, which included treating material, undisputed facts as established pursuant to Fed. R. Civ. P. 56(g)); *SE Property Holdings, LLC v. Center*, 2017 WL 3403793, at *26 (S.D. Ala. Aug. 8, 2017) ("pursuant to Rule 56(g), Fed.R.Civ.P., that there were no genuine issues of material fact as to the first three elements," and therefore "SEPH was entitled to judgment as a matter of law on those elements").

15

This request is made in the interest of streamlining trial. While there will undoubtedly be much evidence and argument about the purpose of the payments, there is no dispute that these witnesses and/or their family members were paid on the dates and in the amounts described above.

## CONCLUSION

Drummond respectfully requests that its partial motion for summary judgment be granted.

Respectfully submitted,

| | |
|---|---|
| */s/ H. Thomas Wells, III* | */s/ Sara E. Kropf* |
| William Anthony Davis, III (ASB-5657-D65W) | Sara E. Kropf |
| H. Thomas Wells, III (ASB-4318-H62W) | Kropf Moseley PLLC |
| Benjamin T. Presley (ASB-0136-I71P) | 1100 H. Street NW, Suite 1220 |
| STARNES DAVIS FLORIE LLP | Washington, DC 20005 |
| 100 Brookwood Place, 7th Floor | (202) 627-6900 |
| Birmingham, AL 35209 | |
| (205) 868-6000 | |
| fax: (205) 868-6099 | |

*Attorneys for Drummond Company, Inc. and Drummond Ltd.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on **June 17, 2024**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                            */s/ H. Thomas Wells, III*
                                            H. Thomas Wells, III (ASB-4318-H62W)

2915961.1