**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DRUMMOND COMPANY, INC. et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:11-cv-3695-RDP** |
| | } | |
| **TERRENCE P. COLLINGSWORTH, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

| | | |
|---|---|---|
| **DRUMMOND COMPANY, INC., et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:15-cv-506-RDP** |
| | } | |
| **TERRENCE P. COLLINGSWORTH, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the court on the Motion for Spoliation Sanctions filed by Plaintiffs Drummond Company, Inc. and Drummond Ltd. ("Drummond"). (Defamation Case No. 2:11-cv-03695-RDP, Doc. # 776; RICO Case No. 2:15-cv-00506-RDP, Doc. # 278). The Motion has been fully briefed (Case No. 2:11-cv-03695-RDP, Docs. # 791, 794, 804, 808; Case No. 2:15-cv-00506-RDP, Docs. # 293, 296, 305, 308),[1] and is ripe for decision. After careful consideration, and for

---

[1] The Motion was originally filed in July 2015 in the Defamation Case and was fully briefed at that time. (Case No. 2:11-cv-03695-RDP, Docs. # 283, 287, 293, 342, 352, 360, 368). On September 21, 2015, the court terminated the motion without prejudice to being refiled after the resolution of the crime/fraud issue. (Doc. # 383).

the following reasons, the Motion is due to be granted.

## I.    Background

The court assumes familiarity with the procedural history and facts of these matters, and only details the facts necessary to the explain the court's ruling as to Plaintiff's Motion (2:11-cv-03695-RDP, Doc. # 776; 2:15-cv-00506-RDP, Doc. # 278).

Defendants Terrence P. Collingsworth ("Collingsworth") and/or Conrad & Scherer, LLP ("C&S") have been suing Drummond on behalf of various clients since at least 2003. (Case No. 2:11-cv-03695-RDP, Doc. # 841 at 3). Both Collingsworth and the C&S firm are experienced lawyers. C&S specializes in complex business litigation. In February 2008, C&S hired Collingsworth to start and lead a human rights litigation practice group. When Collingsworth joined C&S, C&S opened an office in Washington, D.C. and Collingsworth became the managing partner of that office and the team he brought with him from IRAdvocates. (Case No. 2:15-cv-00506-RDP, Doc. # 363 at 3-4).

In March 2009, after he joined C&S, Collingsworth filed *Freddy Locarno Baloco, et al. v. Drummond Co. Inc. et al.*, ("*Baloco*"). (Case No. 7:09-cv-557-RDP, Doc. # 1). *Baloco* was filed on behalf of the children and heirs of three Drummond union officials who in 2001 were murdered by the AUC in Colombia. The plaintiffs alleged that Drummond "aided and abetted or conspired with the AUC by directly funding some of its operations." *Baloco v. Drummond Co.*, 767 F.3d 1229, 1233 (11th Cir. 2014).

In May 2009, Collingsworth and C&S filed *Claudia Balcero Giraldo, et al. v. Drummond Co. et al.* ("*Balcero*"). (Case No.: 2:09-cv-1041-RDP, Doc. # 1). *Balcero* was filed on behalf of the heirs of decedents who alleged that Drummond "engaged the [AUC] . . . to eliminate suspected

guerilla groups from around the company's mining operations in Colombia." *Doe v. Drummond Co.*, 782 F.3d 576, 580 (11th Cir. 2015).

Between 2008 and November 2015, C&S and Collingsworth made payments to numerous witnesses (or their families) in these underlying cases. (Case 2:15-cv-00506-RDP, Doc. # 5-9).

The court's analysis of the Motion requires a discussion of Collingsworth's use of both laptop and desktop computers and Defendants preservations systems. This is because Collingsworth cycled through a number of computers during the timeframes at issue in these matters.

There has been substantial document and fact discovery in these cases (and in the case filed by Defendants against Drummond). C&S asserts that it is a robust document preservation system. (Case No. 2:11-cv-03695-RDP, Doc. # 794 at 1). For example, the C&S server had no limitations on user mailbox size, no system-wide automatic deletion policies for active, non-deleted emails, and C&S preserved a backup snapshot of its old email server when it replaced that server in early 2011. (Case No. 2:11-cv-03695-RDP, Doc. # 791-1 at ¶¶ 12, 17). C&S's file and print server would write-protect documents on the document management system – where the firm's day-to-day documents reside – on a nightly basis, and would back up all other components on a nightly basis and retain those backups for 90 days, later extended to one full year. (*Id.* at ¶ 13). C&S claims to keep the hard drives of individual computers that are replaced. (Case No. 2:11-cv-03695-RDP, Doc. 359-8 at 231).

While working at C&S and actively litigating against Drummond, from May 2008 through March 2010, Collingsworth used a Dell Latitude laptop. (Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 10). Thereafter, Collingsworth switched to using an HP Compaq desktop that he used

from March 2010 through May 2010. (*Id*.). Data from the Dell Latitude laptop was transferred to the HP Compaq desktop. The Dell Latitude laptop was cleared, sent to Collingsworth's residence, and later disposed of at an e-cycle recycling center. (*Id*.).

From May 2010 through January 2011, Collingsworth started using a Dell Optiplex desktop. When he made this switch, information from his HP Compaq desktop was transferred to the Dell Optiplex desktop. The HP Compaq desktop was sent Collingsworth's residence, and was later disposed at an e-cycle recycling center. (*Id*.).

Collingsworth used an Acer Netbook for short period of time in 2011. The Acer Netbook was sent to Ecuador. (*Id*.).

In January 2011, Collingsworth began using a MacBook laptop. (*Id*.). Data from the old Dell Optiplex desktop was transferred to MacBook. (*Id*.).

C&S did not take responsibility for computers that were the personal property of employees. (Case No. 2:11-cv-03695-RDP, Doc. # 791-1 at 3). Collingsworth used the MacBook as his primary work computer from February 2011 until June 2013. (*Id*.; Case No. 2:11-cv-03695-RDP, Doc. # 791-8 at 3; Case No. 2:11-cv-03695-RDP, Doc. # 287-2 at 155-56; Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 10). Collingsworth was aware that C&S's Information Technology department did not support the MacBook. (*Id*.).

Also in January 2011, data from the Dell Optiplex desktop was saved to a Seagate external hard drive. (Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 26; Case No. 2:11-cv-03695-RDP, Doc. # 791-3 at 17; Case No. 2:11-cv-03695-RDP, Doc. # 791-7 at 10). On December 8, 2014, this same Seagate external hard drive was accessed by Collingsworth's Dell Vostro desktop. (Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 26; Case No. 2:11-cv-03695-RDP, Doc. # 791-3 at 17).

The Seagate external hard drive is now unavailable and there is no explanation as to why it is missing. (Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 26; Case No. 2:11-cv-03695-RDP, Doc. # 791-3 at 17; Case No. 2:11-cv-03695-RDP, Doc. # 791-7 at 10).

Collingsworth also used an Apple iPad from 2010 through August 2013. (Case 2:11-cv-03695-RDP, Doc. # 287-5 at ¶ 37; Case 2:11-cv-03695-RDP, Doc. # 287-6 at 4).

As early as July 2011, Collingsworth attempted to hide the fact that he and C&S had paid witnesses in the underlying cases against Drummond, or at least minimize the number of witnesses who had been paid. (Case No. 2:11-cv-03695-RDP, Doc. # 417 at 8-17).

In October 2011, after years of defending the cases filed by Collingsworth, Drummond filed the Defamation case against Collingsworth and C&S. (Case No. 2:11-cv-03695-RDP, Doc. # 1).

In May 2012, William Scherer asked C&S attorney Jim Carroll to evaluate the strengths and weaknesses of the *Balcero* case against Drummond. (Case 2:15-cv-00506-RDP, Doc. # 318-50 at 19; Doc. # 363 at 9). On May 23, 2012, Carroll drafted a memorandum in which he stated "[t]he witnesses appear untrustworthy, and have changed their stories," "it appears [Collingsworth] made payments directly or indirectly to one of more witnesses, e.g. Jaime Blanco," and "the witnesses are criminals, convicts and poor people vulnerable to bribery and threats." (Doc. # 318-52). As the court concluded in its Memorandum Opinion on the parties' Motions for Summary Judgment,

> The evidence in the Rule 56 record [] shows that a years-long association of actors, some formally associated and others informally, acted together to pay money to multiple witnesses and obtain their testimony (which implicated Drummond in the murders of certain individuals in Colombia) for use in litigation against Drummond. Some of these witnesses had previously given exculpatory statements about Drummond to authorities before they were paid. That is, they testified that

Drummond was not involved in the crimes. But, the Rule 56 evidence could permit a jury to find that, after receiving payments from Defendants, these witnesses changed their positions and implicated Drummond and its employees in the killings.

(Case 2:15-cv-00506-RDP, Doc. # 363 at 19).

In 2013, Drummond initiated discovery in the 2011 Defamation case focused on payments made by Collingsworth and C&S to witnesses in the underlying cases against Drummond. On February 28, 2013, while Collingsworth still had the MacBook and iPad, Drummond served its First Request for Production of Documents on Defendants. One of those requests sought all of Collingsworth's communications with Llanos Oil or its principals, Hendrik and Albert van Bilderbeek. (Case No. 2:11-cv-03695-RDP, Doc. # 43-6 at 18-19). On April 3, 2013, again while Collingsworth was still in possession of the MacBook and iPad, Drummond served its second set of requests for production, one of which requested all of Collingsworth's emails with Ivan Otero. (Case No. 2:11-cv-03695-RDP, Doc. # 43-12 at 5).

Around this time, Collingsworth decided to give the MacBook to his niece. (Case No. 2:11-cv-03695-RDP, Doc. # 300-4 at 4; Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 10). In exchange, his brother-in-law (that is, his niece's father) bought Collingsworth a HP laptop. (*Id*.). Collingsworth claims that, after he gave the MacBook to his niece, it was stolen. (*Id*.).

During the period of time Collingsworth was using the iPad and the MacBook as his primary work computer (that is, from January 2011 – June 2013), and before that (when he was using computers from which the data was transferred to the MacBook), he was coordinating payments to witnesses in Columbia from whom he was seeking testimony implicating Drummond in the Colombian murders, the underlying basis for the cases he filed against Drummond. (Case No. 2:15-cv-00506-RDP, Doc. # 363 at 5 - 9).

6

In April 2013, before he gave the MacBook away, Collingsworth wanted to have his new HP laptop computer set up. (Case No. 2:11-cv-03695-RDP, Doc. # 287-3 at 2). He instructed Maggie Crosby at C&S not to worry about transferring any old emails from the MacBook to the new computer. (*Id*.). So, only limited data from the MacBook was transferred to HP laptop. (Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 10).

On July 1, 2013, Drummond filed a motion to compel responses in its First and Second written discovery requests, setting forth documentary evidence of Defendants' payments to witnesses, including three they were then aware of – amounts given to Halcon, Charris, and Duarte. (Case No. 2:11-cv-03695-RDP, Doc. # 280, ¶ 115). On July 18, 2013, Defendants filed a response representing that they "produced every responsive document they had." (*Id*. at ¶ 117). However, this representation to the court was false. At the time Defendants represented to the court that they had already produced every responsive document they had regarding witness payments, they had not disclosed payments to at least three other witnesses: Blanco, El Tigre, and Samario. (*Id*. at ¶¶ 118-124).

On July 22, 2013, Drummond served IRAdvocates with a subpoena seeking any and all documents "related or referring to payments to individuals incarcerated in Colombia, including but not limited to" Blanco, El Tigre, and Samario. (*Id*. at ¶¶ 135, 136). On August 16, 2013 Collingsworth signed a declaration in which he stated that he had provided all responsive documents within the context of the *Balcero* action. (*Id*. at ¶141). However, again, at that time, Defendants had not disclosed the payments to Blanco, El Tigre, or Samario. (*Id*. at ¶142). Similar false representations about what witnesses had been paid in *Balcero* continued to be made through October 2013. (Case No. 2:11-cv-03695-RDP, Doc. # 417 at 8-14).

In August 2013, Collingsworth disposed of the iPad he has used since 2010 at a computer recycling center. (Case 2:11-cv-03695-RDP, Doc. # 287-5 at ¶ 37; Case 2:11-cv-03695-RDP, Doc. # 287-6 at 4).

In November 2013, Drummond issued a subpoena to Microsoft seeking the identity and email usage information of Baeza Acosta, a Colombian law student who was employed by C&S, and Toro Lopez, a Colombian attorney with whom Defendants' legal team consulted on matters of Colombian law. (Case No. 2:11-cv-03695-RDP, Doc. # 74 at 7). On November 25, 2013, Collingsworth and C&S moved to quash that subpoena or for a protective order. (*Id.*).

On April 21, 2014, this court held a hearing regarding discovery. (Case No. 2:11-cv-03695-RDP, Doc. # 417 at 15 (citing Doc. # 123)). The court asked counsel for Defendants "[i]s there a witness that I have received testimony [] that didn't receive a security payment?" (*Id.* (quoting Doc. #123 at 30-31)). The court made clear that it was not attempting to directly question Collingsworth. Nevertheless, he volunteered to answer the court's question:

> Your Honor, [] There were exactly in this case three witnesses whose family members were moved because they received death threats, and those were Charris, Gelvez, and Duarte. Those are the witnesses whose family members were moved. There was an additional person named Halcon []. So the three witnesses that I've mentioned, Charris, Gelvez, and Duarte, are the family members of those people who were relocated.

(*Id.* (quoting Doc. #123 at 30-31). The court followed up on this statement, asking "Are those the only three besides Halcon who received security payments?" Collingsworth responded: "That's correct." (*Id.* at 16 (quoting Doc. #123 at 30-31)).

In fact, when he made these representations at the April 21, 2014 hearing, they were blatantly false. Samario, El Tigre, and Charris were still receiving monthly payments in connection with their testimony against Drummond. (*Id.* (citing Doc. #280, ¶ 345)). As the hearing continued,

counsel for Defendants was directly asked about any payments made to Jaime Blanco. (*Id*. (citing Doc. #123 at 21)). With Collingsworth seated at counsel table, counsel represented that "there was no payment made." (*Id*. (quoting Doc. #123 at 21)). Although this statement was utterly false, it was not corrected by Collingsworth. (*Id*. (citing Doc. # 389 at 112)).

The court entered an Order quashing the Microsoft subpoena, but essentially ordered Defendants Collingsworth and C&S to institute a litigation hold. Specifically, the court ordered them to:

> continue to maintain and preserve in their present form all computer servers, hard drives, email accounts, and all other electronic files or data storage systems which have been utilized by Defendants' litigation team during their entire pursuit of litigation against Drummond.

(Case No. 2:11-cv-03695-RDP, Doc. # 119 at 1).

By at least July 10, 2014, Collingsworth and C&S were aware that there were periods of time for which Collingsworth's emails were "missing." (Case No. 2:15-cv-00506-RDP, Doc. # 278-4 at 2). In a July 10, 2014 email, C&S employee Charity Ryerson emailed Collinsworth about the period for which they did not have emails for him. (*Id*.). She referred to this as his "email failure." (*Id*.).

On July 11, 2014, Ryerson emailed other C&S personnel that "another exciting twist in this is that there is about an 18 month period in which Terry's emails are lost. Sometime in 2010 and 2011 as I recall … He will probably need to explain this in an affidavit at some point." (Case No. 2:11-cv-03695-RDP, Doc. # 776-3 at 2). When asked about missing emails in July 2014, Collingsworth stated "it may be that [the emails] were lost on [his] mac when [he] gave it to [his] niece[.]" (Case No. 2:15-cv-00506-RDP, Doc. # 278-4 at 2).

9

Despite the fact that (1) the defamation case was filed in 2011, and (2) the court ordered something akin to a litigation hold in April 2014, C&S did not institute a litigation hold on the C&S Exchange server and the IRAdvocates Exchange server until July 7, 2014, and July 10, 2014, respectively. (Case No. 2:11-cv-03695-RDP, Doc. # 791-1 at 4).

The now-missing Seagate external hard drive that contained some of the information from Collingsworth's computers was in Defendants' possession after the court's April 2014 order to maintain devices, including hard drives, and after the litigation hold was instituted. (Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 26; Case No. 2:11-cv-03695-RDP, Doc. # 791-3 at 17; Case No. 2:11-cv-03695-RDP, Doc. # 791-7 at 10).

In a January 2016 report, Defendants' forensics expert concluded that certain of Collingsworth's emails are unavailable:

1. For email address tc@iradvocates.org, incoming emails from October 28, 2011 to February 21, 2012 and from April 7, 2012 to February 13, 2013;

2. For email address tc@conradscherer.com, incoming emails from October 27, 2011 to March 12, 2012; and

3. For email address Terry.collingsworth@ilrf.org, incoming: emails from September 6, 2006 to September 29, 2007, and outgoing emails from September 4, 2002 to February 3, 2004.

(Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 17). The missing emails are ones where there are no copies to anyone else at C&S or IRA, and no replies or forwarding. (Case No. 2:11-cv-03695-RDP, Doc. # 791-7 at ¶¶ 15-16, 34).

10

As this court has previously noted,

> There is a spoliation claim made in this case. According to Defendants, years of Collingsworth's emails prior to March 2013 were lost when he gave his MacBook laptop to his niece in Brazil. (Doc. #293 at 15). In July 2013 Drummond served a subpoena on IRAdvocates seeking documents relating to payments to witnesses. (Doc. #118-3; Doc. #243-10). Defendants moved to quash that subpoena, but represented in August 2013 that "defendants Collingsworth and his staff have already searched for and produced all responsive non-privileged documents in both this litigation and the *Balcero* case." (Doc. #46 at 12-13). Drummond asked Collingsworth what was done to ensure that this representation was accurate and he was instructed not to answer on privilege grounds. (Doc. #329, Exh. 1 at 133).

> The timeframe here is what is interesting. If Defendants performed a cursory search for documents in August 2013, they would have noticed that emails prior to March 2013 were missing. With the looming evidence of a crime or fraud, an explanation about what search for documents occurred is relevant to the question of whether evidence was being secreted about payments to witnesses.

(Case No. 2:11-cv-03695-RDP, Doc. # 417 at 38).

Notwithstanding the challenges presented by missing emails, a missing MacBook, a missing iPad, and a missing external hard drive, and despite the misrepresentations made by Collingsworth in discovery and to the court, Drummond has nonetheless been able to amass substantial evidence showing that, between 2008 and December 2015, Defendants were regularly making payments to seven witnesses[2] (either directly or to their families) in their cases filed against Drummond. (Case No. 2:15-cv-00506-RDP, Doc. # 363 at 5-8).[3] Drummond was also able to amass evidence from which a jury could find that, after receiving these payments from

---

[2] Halcon, Charris, El Canoso, Duarte, El Tigre, Samario, and Blanco. (Case No. 2:15-cv-00506-RDP, Doc. # 363 at 5-8).

[3] "Halcon received monthly payments for three to four years. Charris received seventy-five payments over approximately a six year period. Gelvez received one payment within seven days of signing a declaration. Duarte received three payments in the spring of 2011. El Tigre and Samario received initial payments after providing their declarations, and then received monthly payments for over four years until Defendants were able to "get the[ir] depo[sition]s in the can" or "until the depos [were] done." (Docs. # 337-16 at 2; 335-7 at 2). Blanco received three large payments, in the amounts of $60,000, $25,000, and $30,000 []." (Case No. 2:15-cv-00506-RDP, Doc. # 363 at 5).

Defendants, these witnesses changed their prior testimony and implicated Drummond and its employees in the killings in Columbia. (*Id*. at 9, 19).

## II.    Applicable Law

Before analyzing the Motion presented here, it is necessary for the court to review the law on spoliation and agency.

### A.    Spoliation

"'Spoliation is defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument.'" *Alabama Aircraft Indus., Inc. v. Boeing Co*., 2022 WL 433457, at \*13 (11th Cir. Feb. 14, 2022) (quoting *Tesoriero v. Carnival Corp*., 965 F.3d 1170, 1184 (11th Cir. 2020)). "Spoliation of evidence, in appropriate circumstances, 'may warrant the imposition of sanctions.'" *Alabama Aircraft*, 2022 WL 433457 at \*13 (quoting *Tesoriero*, 965 F.3d at 1184).

"Spoliation sanctions [may be] imposed under the broad discretion of the district court, which has inherent power to 'manage its own affairs and to achieve the orderly and expeditious disposition of cases,'" or under other sources of federal law, such as Federal Rule of Civil Procedure Rule 37(e). *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc*., 75 F.4th 1290, 1311 (11th Cir. 2023) (quoting *Flury v. Daimler Chrysler Corp*., 427 F.3d 939, 944 (11th Cir. 2005)).

"Federal Rule of Civil Procedure 37(e) governs the procedures and sanctions available when a party spoliates ESI." *Alabama Aircraft*, 2022 WL 433457 at \*13. Notably, and contrary to Defendants' argument, the current version of Rule 37(e) applies even in cases filed before the 2015 amendments. *Id*. (affirming spoliation sanctions for the deletion of ESI relating to a case filed in 2011 where the spoliation occurred years before the case was filed).

12

Rule 37(e) provides:

**Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

The Eleventh Circuit explained the operation of Rule 37(e) this way:

By its text, Rule 37(e) creates a two-tiered sanctions regime—with lesser sanctions under Rule 37(e)(1) and more severe sanctions under Rule 37(e)(2). Both parts of the rule share two preconditions: (1) "electronically stored information that should have been preserved in the anticipation or conduct of litigation" was "lost because a party failed to take reasonable steps to preserve it" and (2) that information "cannot be restored or replaced through additional discovery." The requirements diverge after that. Rule 37(e)(1) sanctions are centered on the effect of a violation; they apply only where lost electronic evidence causes "prejudice to another party," which then justifies sanctions "no greater than necessary to cure the prejudice." Rule 37(e)(2) sanctions, on the other hand, look more to the cause of the violation. They require a finding that "the party acted with the intent to deprive another party of the information's use in the litigation." If so, the court is justified in imposing more severe sanctions: adverse jury instructions, and even dismissal or default judgment. Fed. R. Civ. P. 37(e)(2). What's more, Rule 37(e)(2) sanctions do not require "any further finding of prejudice." 2015 Committee Notes on Rule 37(e)(2). "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." *Id*.

*Skanska USA*, 75 F.4th at 1311.

Intentional destruction of evidence is the equivalent of bad faith in other spoliation contexts and is a higher standard than both negligence and gross negligence—bad faith "generally means destruction [of evidence] for the purpose of hiding adverse evidence." *Tesoriero*, 965 F.3d at 1184 (citation omitted).

District courts are afforded broad discretion in determining whether to award spoliation sanctions. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Because it is inherently difficult to prove the probative value of lost or destroyed evidence, assigning "the burden of proving prejudice is ... left for the court's considered discretion." *Burns v. Medtronic, Inc.*, 2017 WL 11633269, at *5 (M.D. Fla. Aug. 9, 2017). Appropriate sanctions may include an adverse judgment, the denial of a defendant's motion for summary judgment, issuing jury instructions that raise a presumption against the spoliator, or the exclusion of evidence. *Maziar v. City of Atlanta*, 2024 WL 2928534, at *3 (N.D. Ga. June 10, 2024); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011); *Connor v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1375 (N.D. Ga. 2008).

"[A] party deemed to have knowledge as to the importance of evidence for litigation will be held to a higher standard with regards to spoliation." *Cooper v. Toshiba Home Tech. Corp.*, 76 F. Supp. 2d 1269, 1275 (M.D. Ala. 1999) (citing *Cincinnati Ins. Co. v. Synergy Gas, Inc.*, 585 So.2d 822, 824, 827 (Ala. 1991)). The reasonableness of evidence preservation efforts depends in part on "the party's sophistication with regard to litigation in evaluating preservation efforts." 2015 Committee Notes on Rule 37(e).

## B.    Agency

"Standard principles of agency law govern the attribution of employees' spoliation to the

company." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc*., 803 F. Supp. 2d 469, 506–07 (E.D. Va. 2011) (citing *Victor Stanley, Inc. v. Creative Pipe, Inc*., 269 F.R.D. 497, 516 n. 23 (D. Md. 2010) ("[A]gency law is directly applicable to a spoliation motion, and the level of culpability of the agent can be imputed to the master.") and *Goodman v. Praxair Servs., Inc*., 632 F.Supp.2d 494, 523 n. 16 (D. Md. 2009) ("A party may be held responsible for the spoliation of relevant evidence done by its agents.")); *see also Microvention, Inc. v. Balt USA, LLC*, 2023 WL 7476998, at *25 (C.D. Cal. Oct. 5, 2023), *report and recommendation adopted*, 2023 WL 7634109 (C.D. Cal. Nov. 13, 2023) ("The current trend among district courts appears to be to impute liability for an agent's spoliation to the principal 'based on traditional notions of agency law, in which a defendant principal exercises control and authority over its third-party agent who possess the spoliated evidence.'" (quoting *Edifecs, Inc. v. Welltok, Inc*., 2019 WL 5862771 at *4, 2019 U.S. Dist. LEXIS 194858 (W.D. Wash. Nov. 8, 2019) (citation omitted)); *Rodda v. Joy Mining Mach*., 15 F. Supp. 3d 1156, 1160 (N.D. Ala. 2014) ("'Sanctions may be imposed against a litigant based on a third party's spoliation of evidence if the third party acted as the litigant's agent in destroying or failing to preserve the evidence.'" (quoting *Bouve & Mohr, LLC v. Banks*, 274 Ga.App. 758, 618 S.E.2d 650, 654 (2005))); *Nucor Corp. v. Bell*, 251 F.R.D. 191, 196 (D. S.C. 2008), *clarified on denial of reconsideration*, 2008 WL 11464820 (D. S.C. Apr. 24, 2008) ("Ordinary agency principles govern a party's responsibility for spoliation committed by its employees." (citing *Valentine v. Mercedes–Benz Credit Corp*., 1999 WL 787657, at *4 (S.D. N.Y. 1999)).

## III.   Analysis

Defendants are not just sophisticated parties, they are experienced lawyers. Without question, they were aware of the need to preserve evidence *at least* by the date the Defamation

case was filed (October 21, 2011). Even before that, during the litigation of the cases against Drummond, they should have appreciated their responsibility to preserve evidence that may be needed to conduct reasonably foreseeable future litigation. *See Skanska*, 75 F.4th at 1313-14. Therefore, Defendants may be held to a higher standard than the average litigant when considering what evidence they should have maintained in anticipation of litigation. But, to be clear, this dispute does not turn on the sophistication of the lawyers. Any party before this court would have – and should have – appreciated the need to preserve the evidence at issue here.

Drummond contends large amount of Collingsworth's emails are "gone." (Doc. # 776 at 4). And, Drummond argues, there is compelling evidence the emails that disappeared directly relate to the time period when payments were being made to potential witnesses in return for favorable but false testimony. (*Id.*).

On this spoliation issue, the parties have presented reports from dueling forensic experts. Perhaps it should not be a surprise that the reports are two ships passing in the night. Each side relies on its expert's conclusions and discounts the other expert's opinions. One question the dueling experts have not fully answered is why Collingsworth's emails went missing. Did Collingsworth intentionally delete emails? Drummond's expert says yes. Defendants' expert says it was likely incompetence of a third party vendor. However, it is not for the court to resolve these disputes of fact. These are questions for a jury to resolve.

Nevertheless, from the evidence presented on spoliation, the court has been able to reach some conclusions related to the Motion before it. What is clear is that whatever C&S's document preservation practices may have been, they were not followed for certain computers or devices used by Collingsworth. (*See, e.g.*, Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 10). With regard

16

to the computers used by Collingsworth between May 2008 and around June 2013 (nearly two years after the Defamation case was filed), the information from his old computer was transferred to a new computer, then to other computers, and eventually transferred again to a MacBook. (*Id.*). Thus, the MacBook would (or at least should) have contained the accumulated information from the computers Collingsworth used beforehand.

But then, after the Defamation case had been pending for nearly two years, and after he had been served with two sets of written discovery requests seeking documents regarding payments to witnesses in Colombia, Collingsworth decided to give the MacBook away.

When Collingsworth got the new HP laptop to replace the MacBook, he transferred *some* data from the MacBook, but he instructed his assistant not to worry about transferring any old emails to the new computer. Only limited data from the MacBook was transferred. (*Id.*). These appear to be deliberate and intentional decisions made at a time when (1) Collingsworth and C&S unquestionably had a duty to preserve evidence for *already pending* litigation and (2) they understood questions were being raised about their conduct in the litigation. As a consequence, at least some information from the following computers is unavailable:

(1) the Dell Latitude laptop Collingsworth used from May 2008 – March 2010,
(2) the HP Compaq desktop Collingsworth used from March 2010 – May 2010;
(3) the Dell Optiplex desktop Collingsworth used from May 2010 – January 2011;
(4) the Acer Netbook Collingsworth used in 2011; and
(5) the MacBook laptop Collingsworth used from January 2011 – June 2013.

(*Id.*).

Also missing is whatever information that was on the iPad he used from 2011 through August 2013, because that device was disposed of at a recycling center in August 2013, after the two sets of Drummond's document requests had been served. (Case 2:11-cv-03695-RDP, Doc. #

287-5 at ¶ 37; Case 2:11-cv-03695-RDP, Doc. # 287-6 at 4).

Moreover, in January 2011, data from the Dell Optiplex desktop Collingsworth used before the MacBook was saved to a Seagate external hard drive. We know that that hard drive was in existence in December 2014 because it was accessed by Collingsworth's Dell Vostro desktop December 8, 2014. Thus, the hard drive was in Defendants' possession more than three years *after* the Defamation case was filed, after two sets of Drummond's document requests had been served, *after* the court issued its April 2014 order to maintain and preserve electronic devices, including hard drives, and after C&S instituted its belated litigation hold. (Case No. 2:11-cv-03695-RDP, Doc. # 794-1 at 26; Case No. 2:11-cv-03695-RDP, Doc. # 791-3 at 17; Case No. 2:11-cv-03695-RDP, Doc. # 791-7 at 10). Now, however, that hard drive is gone - without any explanation. (*Id.*).

Although the information stored on that drive is missing, there remains some question as to whether that was deliberate. But, considering the concurrent efforts to hide (or at least resist responding to discovery about) evidence of payments to Colombian witnesses (*see, e.g.*, Case No. 2:11-cv-03695-RDP, Doc. # 417 at 8-17), an inference that this was a deliberate attempt to hide evidence could certainly be fairly drawn.

Nonetheless, despite the missing evidence, Drummond has been able to gather substantial evidence showing regarding that, between 2008 and December 2015, Defendants were regularly making payments to seven witnesses in the underlying cases or their families. (Case No. 2:15-cv-00506-RDP, Doc. # 363 at 5-8).

Turning to Rule 37(e), the court concludes that Drummond has satisfied the two prerequisites that apply to both subsection (e)(1) and (e)(2): electronically stored information that should have been preserved during *pending* litigation was lost because Collingsworth and C&S

either failed to take reasonable steps to preserve it (they did not place a timely litigation hold on the evidence as required) or they deliberately got rid of it. Both forensic experts agree that periods of Collingsworth's emails cannot be restored or replaced through additional discovery.

Under Rule 37(e)(1), sanctions must be focused on the effect of a violation; in other words, they apply only where lost electronic evidence causes "prejudice to another party," which then justifies sanctions "no greater than necessary to cure the prejudice." Again, although certain evidence that should have been preserved was deliberately discarded, the court has questions about whether Drummond has established the requisite prejudice. As the court has already noted, through a painstaking and expensive process, Drummond has been able to compile considerable evidence (1) that Defendants paid witnesses, (2) that those witnesses changed their testimony after being paid, and (3) even worse, that Defendants lied about how many witnesses were paid and the extent of those witness payments. One question is this: there is plenty of evidence of wrongdoing that Drummond can point to at trial, so has Drummond truly been prejudiced? Certainly, at a minimum, it has been forced to expend significant amounts of time and money gathering the evidence it has been able to find. But, on top of that, there are still substantial questions about that happened that may never be fully answered.

Rule 37(e)(2) sanctions, on the other hand, look to the cause of the violation. Rule 37(e)(2) sanctions require a finding that "the party acted with the intent to deprive another party of the information's use in the litigation." The court has no hesitation in drawing the conclusion that Collingsworth acted deliberately with the intent to deprive Drummond of not only the information on the MacBook (by only preserving some of it and then giving the computer to his niece in Brazil), but also did the same thing with respect to whatever information may have been on the iPad.

In light of this conclusion, sanctions here are justified in the form of an adverse jury instruction.[4] Fed. R. Civ. P. 37(e)(2). No further finding of prejudice is required to impose sanctions under Rule 37(e)(2). 2015 Committee Notes on Rule 37(e)(2). A curative instruction permitting (but not requiring) the jury to infer that the Collingsworth's missing emails, missing MacBook, and missing iPad would have been unfavorable to Defendants strikes the right balance.

The court notes that C&S argues that it cannot be sanctioned for any spoliation by Collingsworth. C&S argues that (1) "[a]ll of the missing evidence relates to one person: Collingsworth," (2) "Drummond has waived any assertion that C&S is responsible for Collingsworth's alleged misconduct under agency principles," and (3) "Collingsworth was not acting as C&S's agent when he allegedly spoliated evidence." (Case No. 2:11-cv-03695-RDP, Doc. # 794 at 29).

First, it is not the case that all the missing evidence lies solely at Collingsworth's feet. The disappearance of the Seagate external hard drive is entirely unexplained. And, it occurred after Drummond had served requests for production on both Collingsworth and C&S, and after both Collingsworth and C&S had been ordered to "maintain and preserve in their present form all [] hard drives, [etc.] utilized by Defendants' litigation team during their entire pursuit of litigation against Drummond." (Case No. 2:11-cv-03695-RDP, Doc. # 119 at 1). Thus, it is simply not true that all of the alleged spoliation points only to Collingsworth.

---

[4] As this court noted previously, it

would prefer to allow a jury to consider the merits of the defamation case before addressing potential sanctions for Defendants' litigation conduct. The court has already ruled that a jury must find the facts in this case. Moreover, sanctions (1) may appropriately be decided at a later date, and (2) may implicate more than just the outcome of the defamation case.

(Case No.: 2:11-cv-3695-RDP,Doc. # 847 at 3).

Second, Drummond filed its Motion for Spoliation Sanctions against "Defendants," so it did not waive the right to seek spoliation sanctions against C&S. (Case No. 2:11-cv-03695-RDP, Doc. # 287 at 5, 33 ("Defendants' complete failure to take any steps to comply with this Court's Orders and preserve Collingsworth's and other litigation team members' emails, hard drives and data should not be excused.)).

Finally, there is a dispute of fact about whether Collingsworth was acting within the scope of his agency with C&S when he allegedly disposed of his emails, his MacBook, his iPad, and possibly the Seagate external hard drive. "[A]gency is a question of fact to be determined by the trier of fact." *Kennedy v. W. Sizzlin Corp.*, 857 So. 2d 71, 77 (Ala. 2003). Therefore, it is for a jury to resolve this issue.

Collingsworth was the managing partner of C&S's Washington, D.C. office. As the court explained in its decision on a similar argument made in C&S's Motion for Summary Judgment,

> "Partnership law imposes vicarious liability on a partner for the wrongful acts or omissions of other partners in the ordinary course of business. Ala. Code 1975, § 10-8-53. This is because partners are agents of one another and are, by the very definition of the term 'agent,' acting on behalf of one another and subject to each other's control." *Carlton v. Alabama Dairy Queen, Inc.*, 529 So. 2d 921, 922-23 (Ala. 1988) (citing *Orr, Jackson & Co. v. Perry*, 81 So. 150 (1919)); *see also Tucker v. Graves*, 88 So. 40, 42 (Ala. Ct. App. 1920) (partners are liable "as joint tortfeasors for the [] act of a partner [who was] acting within the line and scope of the firm's business").

(Case No. 2:11-cv-03695-RDP, Doc. # 841 at 17). There, the court concluded that there was a dispute of fact regarding whether Collingsworth was acting within the line and scope of C&S's business when he wrote the letters that are at the heart of the Defamation case and was interviewed. (*Id.*). Similarly, the court is of the opinion that the agency question should be put to the trier of fact in connection with a jury instruction on the issue of spoliation.

**IV.    Conclusion**

For all of the foregoing reasons, the court concludes firm measures, such as those discussed in Rule 37(e)(2), are appropriate to remedy the spoliation that has occurred in these cases. Specifically, giving the jury an adverse inference instruction, such as the one outlined in Rule 37(e)(2)(B), is a proper sanction. At trial, the court will instruct the jury that it *may* presume that the lost information contained on:

> (1) the Dell Latitude laptop Collingsworth used from May 2008 – March 2010,
> (2) the HP Compaq desktop Collingsworth used from March 2010 – May 2010;
> (3) the Dell Optiplex desktop Collingsworth used from May 2010 – January 2011;
> (4) the Acer Netbook Collingsworth used in 2011;
> (5) the MacBook laptop Collingsworth used from January 2011 – June 2013;
> (6) the iPad used from 2010 – August 2013; and
> (7) the Seagate external hard drive,

as well as in Collingsworth's missing emails, was unfavorable to Defendants. In formulating the particular jury instruction, the court will also put before the jury the question of agency in relation to the spoliation. The parties will have the opportunity to propose an instruction at the appropriate time.

The court reserves the issue of attorney's fees and costs in prosecuting this motion until after trial.

For all these reasons, Drummond's Motion for Spoliation Sanctions (Defamation Case No. 2:11-cv-03695-RDP, Doc. # 776; RICO Case No. 2:15-cv-00506-RDP, Doc. # 278) is **GRANTED**.

The court will set a status conference to discuss the setting of a pretrial conference and potential trial dates by separate order.

**DONE** and **ORDERED** this May 20, 2025.

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE