FILED
2025 Sep-11  PM 08:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 1



E-SERVICE
58392590
Jan 07 2016
10:30AM
File & ServeXpress

GIBSON, DUNN & CRUTCHER LLP
ANDREA E. NEUMAN (SBN 149733)
aneuman@gibsondunn.com
ANNE CHAMPION (N.Y. BAR NO. 4425237)
*Admitted pro hac vice*
achampion@gibsondunn.com
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

GIBSON, DUNN & CRUTCHER LLP
WILLIAM E. THOMSON (SBN 187912)
wthomson@gibsondunn.com
333 South Grand Avenue, 47th Floor
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendant,
DOLE FOOD COMPANY, INC.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| **JUANA PEREZ 1A, et al.,** | CASE NO. BC412620 |
| Plaintiff, | Assigned for all purposes to Honorable Jane L. Johnson, Dept. 308 |
| v. | |
| **DOLE FOOD COMPANY, INC., et al.,** | **FORENSIC REPORT OF SPENCER LYNCH** |
| Defendants. | Dept.: 308 Third Amended Complaint Filed: March 21, 2014 Trial Date: August 29, 2016 |

## CONDITIONALLY FILED UNDER SEAL



# STROZ FRIEDBERG

Prepared for
## Dole Food Company and Drummond Company

Prepared by
## Spencer Lynch

## January 6, 2016

## REPORT ON COURT ORDERED FORENSIC INSPECTION

## TABLE OF CONTENTS

I.    Introduction ........................................................................................................... 3

II.   Executive Summary ............................................................................................. 4

III.  Materials Preserved ............................................................................................ 6

IV.   Materials Produced For Analysis ....................................................................... 6

V.    Other Materials Reviewed .................................................................................. 7

VI.   Analysis ............................................................................................................... 9

   A.    Collingsworth and Conrad & Scherer Failed to Disclose and/or Produce All Relevant Devices .... 10

      1.   The Two Collingsworth Computers Used From 2007 to 2010 Were Not Produced ................... 11

      2.   The Collingsworth MacBook Laptop Used From 2011 to 2013 Was Not Produced ................. 11

      3.   Collingsworth and Conrad & Scherer Were Aware That Disposal of the MacBook Would Result in Missing Emails ................................................................... 12

      4.   The Acer Netbook, Also Used by Collingsworth in 2012, Was Produced for Analysis but Any Relevant Data Was Destroyed in 2014 .......................................... 14

      5.   Mr. Collingsworth Used Devices to Access and Store Email That Were Not Disclosed ........... 16

         i.   There Is No Supported Explanation for the Loss of the Seagate Hard Drive .......................... 17

         ii.  Three Lexar USB Devices that Contained Email Have Apparently Also Been Lost Since December 2014 ................................................................... 19

   B.    Stroz Friedberg's Recovery of Deleted Email from Missing Periods ................................................. 19

   C.    The Intentionality of the Deletions of Missing Emails and the Recovered Emails ......................... 20

      1.   Messages Found in the "Deleted Items" Folder of a PST ............................................................ 20

      2.   Messages Found in the "Sent Items" Folder of an OST ............................................................. 22

   D.    Additional Evidence of Intentional and Selective Deletion of Email .................................................. 24

   E.    The Relationship Between the Missing Periods and the Gmail Account ........................................ 26

REPORT ON COURT ORDERED FORENSIC INSPECTION

## I.     INTRODUCTION

1.   Stroz Friedberg, LLC ("Stroz Friedberg") was retained by Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel for Dole Food Company ("Dole") in connection with a litigation captioned Perez 1A v. Dole Food Company, Inc., Case No. BC412620, pending in the Superior Court for the County of Los Angeles, California (hereinafter the "Dole Case"). Additionally, Stroz Friedberg was retained by Starnes Davis Florie LLP ("Starnes"), counsel for Drummond Company, Inc. ("Drummond") in connection with a litigation captioned Drummond Company v. Terrence P. Collingsworth, et al., Case No 2:11-CV-03695-RDP-TMP, pending in the United States District Court for the Northern District of Alabama (hereinafter, the "Drummond Case"). Herein, I jointly refer to Gibson Dunn and Starnes as "Counsel."

2.   Stroz Friedberg was retained in both cases to assist in the analysis and attempted recovery of potentially relevant data (including emails) associated with Terrence Collingsworth and Conrad & Scherer, which data has been disclosed as missing or otherwise lost.   Stroz Friedberg understands that the recovery of this data and how it came to be missing is at issue in both cases. I, Spencer Lynch, have previously filed a declaration in the Dole Case dated July 30, 2015 and a declaration in the Drummond Case dated August 18, 2015.  My credentials are set forth in those declarations. My CV is attached as Exhibit 1.

3.   I have received the September 2, 2015 Order issued by the Court in the Dole Case granting Dole's request for the digital forensic inspection of devices and accounts used by Mr. Collingsworth (the "Forensic Inspection Order"). I further understand that subsequently, on September 2, 2015, the court in the Drummond case adopted the terms of that order as at least one step of forensic analysis that would be undertaken in the Drummond Case. The Forensic Inspection Order provides that, following the analysis of produced devices, the forensic experts appointed by each side are to produce a report setting forth, among other things:

REPORT ON COURT ORDERED FORENSIC INSPECTION

    a.  "What devices were produced" for the inspection;

    b.  "The scope of missing and recovered data – without disclosing the content of recovered documents;"

    c.  "Any information showing when a recovered file was deleted and by whom;" and

    d.  "To the extent that documents cannot be retrieved from the Devices or the documents retrieved are less than the whole of data contained on the Devices, … the limits of the retrieval achieved."

## II.   EXECUTIVE SUMMARY

4.  Stroz Friedberg was able to recover many emails from the periods of time disclosed as having missing emails (defined more fully below in paragraph 11 as the "Missing Periods" and set forth in a chart in paragraph 13), but it was not able to recover all of them. In a majority of the "Missing Periods," evidence identified by Stroz Friedberg reveals that the loss of emails was most likely an intentional deletion or disposal of email. In other instances, Stroz Friedberg has not been able to determine whether the deletion or disposal was intentional, in large part because not all of the devices used during the "Missing Periods" were produced for analysis. Based on Stroz Friedberg's analysis, I conclude to a reasonable degree of scientific certainty that:

    a.  Three computers disclosed as having been used to access Mr. Collingsworth's Conrad & Scherer email account (the "Conrad & Scherer Account") and his IRAdvocates email account (the "IRAdvocates Account") were not produced for analysis and were apparently disposed of by Mr. Collingsworth, resulting in a loss of data and limiting Stroz Friedberg's ability to perform the recovery and analysis of missing emails;

    b.  None of the Produced Devices have any data from use prior to 2010;

REPORT ON COURT ORDERED FORENSIC INSPECTION

c. The disposal of one of these Collingsworth computers, a MacBook Laptop, was a reckless or intentional disposal of data;

d. Another Collingsworth computer that was produced for analysis, an Acer Netbook, had Windows re-installed in January 2014, destroying the vast majority of evidence previously contained on that device from when Mr. Collingsworth used the computer;

e. Evidence on the devices that were produced for analysis shows that dozens of external USB devices previously connected to Mr. Collingsworth's computers were neither disclosed nor produced for analysis;

f. Some of the unproduced USB devices, including a Seagate hard drive, had been used to store email and were accessed from Mr. Collingsworth's computer as recently as December 8, 2014;

g. From the devices that were produced for analysis, Stroz Friedberg recovered approximately 50,000 messages that correspond to periods identified as "missing" by Mr. Collingsworth and Conrad & Scherer;

h. The majority of those 50,000 messages were recovered from a "Deleted Items" folder and, assuming normal computer usage, the location of these messages in the Deleted Items folder is evidence that the user of the computer intended to delete the messages;

i. For another set of the recovered emails, the evidence reviewed by Stroz Friedberg shows that they were deleted or they were archived but the archive containing them was subsequently deleted or disposed of and not produced for inspection;

j. Certain emails were not found on Mr. Collingsworth's devices or in his email accounts and have thus have been deleted by a specific and intentional action; and,

5

k.  The missing periods from Collingsworth's Conrad & Scherer account and Collingsworth's IRAdvocates account correspond to periods with high volumes of email in Collingsworth's personal Gmail account (the "Gmail Account") and Stroz Friedberg cannot confirm whether the decrease in apparent usage of the Gmail Account is because the frequency of use declined or if it is the result of the deletion of emails.

## III.    MATERIALS PRESERVED

5.  On September 21, 2015, pursuant to the Forensic Inspection Order, Stroz Friedberg and Mr. Collingsworth's appointed expert, Pathway Forensics, began the forensic imaging of data made available by Mr. Collingsworth and Conrad & Scherer. For the forensic imaging, Stroz Friedberg observed the forensic imaging performed by Pathway Forensics at the offices of Conrad & Scherer. The forensic imaging performed under Stroz Friedberg's observation included devices disclosed as having been used by Mr. Collingsworth as well as other devices. As set forth below, not all of the data preserved under Stroz Friedberg's supervision at the offices of Conrad & Scherer was produced for analysis.

6.  In addition to the data imaged under Stroz Friedberg's supervision at the offices of Conrad & Scherer, Mr. Collingsworth and/or Conrad & Scherer have subsequently made available additional data for preservation. Stroz Friedberg and Pathway Forensics used software for remote screen sharing such as "Go To Meeting," to facilitate Stroz Friedberg's supervision of the imaging process of these later produced devices.  Exhibit 2 sets forth all of the materials preserved under Stroz Friedberg's supervision.

## IV.    MATERIALS PRODUCED FOR ANALYSIS

7.  Some, but not all, of the materials preserved under Stroz Friedberg's supervision were made available to Stroz Friedberg for analysis. Following the forensic imaging supervised by Stroz Friedberg in person, a collection of forensic Images were made available on September 23, 2015

for Stroz Friedberg's analysis. Attached as Exhibit 3 is a listing of the images made available on September 23, 2015.

8.  In addition to the data made available shortly after the forensic imaging, data was made available to Stroz Friedberg on a rolling basis over the course of the following months. In most of those instances, the data provided was a subset of the data that had been preserved. Stroz Friedberg understands that Pathway Forensics reviewed the devices that were not produced in full to identify whether or not they contained email from Mr. Collingsworth's account, but Stroz Friedberg does not have the details of how that review took place or how email may have been identified as Mr. Collingsworth's. Exhibit 4 sets forth the additional data that was produced for Stroz Friedberg's analysis (together with the data produced on September 23, 2015, the "Produced Devices").

9.  While the Protocol provides that data must be made available to the experts within two weeks of its identification, Mr. Collingsworth and/or Conrad & Scherer have continued to produce data into December 2015.  As a result, for certain devices, Stroz Friedberg has not had the thirty days permitted by the Forensic Inspection Order to perform the forensic investigation. Stroz Friedberg thus reserves the right to supplement this report.

## V.    OTHER MATERIALS REVIEWED

10.  In preparing this report, in addition to the analysis of the Produced Devices, I reviewed and relied upon the following materials:

    a.  A letter from Steptoe & Johnson dated March 12, 2015 (the "March 12 Letter");

    b.  Exhibit A to the March 12 Letter, a declaration by Dennis Williams dated March 11, 2015 (the "Williams March Declaration");

    c.  A letter from Steptoe & Johnson dated April 14, 2015 (the "April 14 Letter");

d.  A declaration by Dennis Williams dated April 14, 2015 (the "Williams April Declaration") with 28 exhibits labeled A to BB;

e.  Defendants' response to Drummond's Motion for Spoliation Sanctions, and corresponding exhibits (the "Response to Motion for Sanctions"), including a declaration of Dennis Williams dated August 13, 2015 (the "Williams August Declaration");

f.  The transcript from a June 30, 2015 deposition of Mr. Williams, and corresponding exhibits (the "Williams Deposition");

g.  A declaration of Christopher Niewoehner dated July 15, 2015;

h.  A bundle of documents produced by Mr. Williams bearing Bates numbers CS TC009354 to CS TC012296 (the "Williams Document Production");

i.  A bundle of documents produced by Mr. Collingsworth and/or Conrad & Scherer bearing Bates numbers CS_TC014940 to CS_TC014943;

j.  Disclosure Pursuant to Cal. Civ. Proc. Code § 2031.230 from Plaintiffs' Second Amended Objections and Responses to Defendant Dole Food Company Inc's First Set of Requests For Production Of Documents dated October 12, 2015;

k.  Two emails and an attached letter from Robert Spotswood addressed to H. Thomas Wells, III at Starnes dated August 27, 2015 (the "August 27 Gmail Correspondence");

l.  Mr. Collingsworth's Disclosure pursuant to the Protocol dated September 9, 2015 (the "September 9 Disclosure"); and

m.  An amended version of Mr. Collingsworth's Disclosure pursuant to the Protocol dated October 7, 2015 (the "October 7 Disclosure").

REPORT ON COURT ORDERED FORENSIC INSPECTION

## VI.    ANALYSIS

11. The Forensic Inspection Order instructs the forensic experts to conduct an analysis to "recover any and all missing emails." (Forensic Inspection Order at 9).  Mr. Collingsworth and/or Conrad & Scherer described the missing emails in the reports of Mr. Williams, correspondence from counsel, and in discovery responses as falling into specified time periods (the "Missing Periods"). However, as set forth herein, Stroz Friedberg's analysis and other correspondence from counsel reveal that there are other missing emails outside of the Missing Periods.

12. Stroz Friedberg was able to recover many emails from Missing Periods, but it was not able to recover all of them.  In a majority of the Missing Periods, evidence identified by Stroz Friedberg reveals that the loss of emails was most likely an intentional deletion or disposal of email. In other instances, Stroz Friedberg has not been able to determine whether the deletion or disposal was intentional, in large part because not all of the devices used during the Missing Periods were produced for analysis.

13. A chart attached as Exhibit 5 sets forth the Missing Periods, Stroz Friedberg's understanding of which computers Mr. Collingsworth was using during those periods, whether or not those computers were produced, and the timing of certain emails that were provided to Stroz Friedberg as emails relevant to either or both of the Dole and Drummond cases but not found in the data produced to Stroz Friedberg for review. When a device was produced for analysis, Stroz Friedberg's understanding of its use comes from the forensic analysis. When it was not, that use is based on the September 7 Disclosure and the reports of Mr. Williams. A summary of the Missing Periods appears below:

| Missing Periods identified by Collingsworth and Conrad & Scherer | | |
|---|---|---|
| Email Account | Incoming or Outgoing | Date Range |
| IRAdvocates | Incoming | June 21, 2007 - May 19, 2008 |
| IRAdvocates | Outgoing | June 21, 2007 - January 6, 2008 |
| IRAdvocates | Incoming | June 3, 2008 - February 25, 2010 |

REPORT ON COURT ORDERED FORENSIC INSPECTION

| Conrad & Scherer | Incoming | March 17, 2011 - March 22, 2013 |
| IRAdvocates | Incoming | October 27, 2011 - March 22, 2013 |
| IRAdvocates | Outgoing | May 17, 2011 - February 3, 2012 |
| IRAdvocates | Outgoing | February 22, 2012 - March 22, 2013 |

### A. COLLINGSWORTH AND CONRAD & SCHERER FAILED TO DISCLOSE AND/OR PRODUCE ALL RELEVANT DEVICES

14. On September 9, 2015, Conrad & Scherer produced a chart that states it sets forth "all devices [Mr. Collingsworth] has used to access all relevant email addresses since June 21, 2007 to the present." (September 9 Device Disclosure).  Included on that chart are computers that are listed as no longer in the control of Mr. Collingsworth and/or Conrad & Scherer and those computers were not produced for analysis. Specifically, two computers that were used in or before 2010, corresponding to three of the Missing Periods, were not produced. Additionally, a third computer was a MacBook that was used from 2011 to 2013, corresponding to four of the Missing Periods. Mr. Collingsworth disposed of that computer and it was not produced. Contemporaneous emails show that Mr. Collingsworth should have been aware that disposing of his MacBook would result in the loss of emails. Therefore, the loss of that MacBook appears to have been a reckless or intentional disposal of data. Finally, a Netbook that was disclosed and produced for analysis was reinstalled with Windows in 2014, destroying the vast majority of the data from when Mr. Collingsworth used it.

15. In addition to identifying disclosed devices that were not produced, in performing the analysis set forth under the Forensic Inspection Order, Stroz Friedberg determined that a substantial number of relevant devices were neither disclosed nor produced for analysis. The failure to produce devices has limited Stroz Friedberg's ability to perform the ordered analysis.

10

REPORT ON COURT ORDERED FORENSIC INSPECTION

### 1. THE TWO COLLINGSWORTH COMPUTERS USED FROM 2007 TO 2010 WERE NOT PRODUCED

16. The Missing Periods begin in June 2007 and include time periods in 2007, 2008, and 2009. However, none of the Produced Devices have any data from use prior to 2010. The only Produced Device with any data from use in 2010 was a Dell OptiPlex (E039), which was first used in July of 2010. As a result of these missing devices, Stroz Friedberg was able to perform only limited analysis with regards to the email activity leading up to the first use of the Dell OptiPlex in 2010. Despite that limitation, as set forth herein, Stroz Friedberg has recovered emails from the Dell OptiPlex from prior to 2010.

17. In the Williams April Declaration, Mr. Williams sets forth that a Missing Period resulted from a "failure [by a third party provider] to properly save or transfer the electronic files" from the computers used prior to 2010 to one of Mr. Collingsworth's more recently used computers. (Williams April Declaration at 69). The evidence identified by Stroz Friedberg is contrary to Mr. William's assertion. Specifically, as set forth herein, Stroz Friedberg was able to recover emails from prior to 2010 that were present on the Dell OptiPlex, evidencing that emails were transferred onto that computer.

### 2. THE COLLINGSWORTH MACBOOK LAPTOP USED FROM 2011 TO 2013 WAS NOT PRODUCED

18. In addition to the computers from 2010 and before, which were not produced for analysis, the September 9 Device Disclosure identifies an Apple MacBook Pro that was not produced for analysis. The MacBook laptop was Mr. Collingsworth's primary computer from 2011 to mid-2013. Because this computer was not produced for analysis, Stroz Friedberg was able to perform only limited analysis with regards to the email activity in the period from 2011 to mid-2013. Again, despite that limitation Stroz Friedberg was able to recover some emails from that time period.

3. COLLINGSWORTH AND CONRAD & SCHERER WERE AWARE THAT DISPOSAL OF THE MACBOOK WOULD RESULT IN MISSING EMAILS

19. In the Williams April Declaration, Mr. Williams states that Missing Periods in Mr. Collingsworth's email accounts between March 2011 and March 2013 resulted from emails being archived exclusively to the MacBook which was then disposed of. (Williams April Declaration at 114 – 123). I understand that Mr. Collingsworth has explained that he disposed of the MacBook in or around June 2013 without backing up the email because he thought the emails were stored on the Conrad & Scherer server. Contrary to this explanation, the evidence shows that Mr. Collingsworth and other individuals at Conrad & Scherer were, in fact, aware that some email was stored only on the MacBook, and that these emails were not being backed up or archived in a separate location. Documents provided as part of the Williams Document Production set out several email communications that evidence this.

20. Emails sent between two Conrad & Scherer employees in June 2012 demonstrate a shared understanding that emails stored on Mr. Collingsworth's MacBook were only stored on and accessible from the MacBook itself. On June 15, 2012, in the course of searching for emails between Mr. Collingsworth and two specific individuals, Mr. Collingsworth's assistant, Maggie Crosby, requested the assistance of the Director of IT at Conrad & Scherer, Juan Carlos Rodriguez. (CS TC011131 – CS TC011132). Once Mr. Rodriguez had assisted by providing the results of his searches, Ms. Crosby then asked whether he could tell her "how to look on [Mr. Collingsworth's] mac also," implying that she believed that email that was not on the server would exist on the laptop. (CS TC011131 – CS TC011132). Mr. Rodriguez subsequently told Ms. Crosby that he "cannot get anything from [Mr. Collingsworth's MacBook]" because he did not have the device. (CS TC011131 – CS TC011132). This exchange shows that Mr. Collingsworth and other individuals at Conrad & Scherer knew and understood that for at least some of Mr. Collingsworth's email it was not stored on and could not be accessed from the Conrad & Scherer server.

21. Moreover, a similar email exchange on the same subject, one day earlier on June 14, 2012, establishes that Mr. Collingsworth himself knew that some email was stored exclusively on his MacBook. Following Ms. Crosby's request about "the best way" to search through "ALL [Mr. Collingsworth's] old emails," Mr. Rodriguez copied Mr. Collingsworth to his response. Mr. Rodriguez explained in his response to both Mr. Collingsworth and Ms. Crosby that the "old emails are in the mac." (CS TC011130). These contemporaneous email exchanges make clear that Mr. Collingsworth and other individuals at Conrad & Scherer were aware that emails on his MacBook laptop were not stored anywhere else.  In fact, the evidence shows that Mr. Collingsworth himself likely acted on this information from Conrad & Scherer's IT Director. At 1:26PM on June 14, 2012, less than three hours after Conrad & Scherer's IT Director told him that his "old emails [were] in the mac," Mr. Collingsworth forwarded to Ms. Crosby one of the emails she was apparently looking for, an older email from September 2011 that was between Mr. Collingsworth and oteromivan@hotmail.com. (CS002673).

22. Finally, another group of emails confirm that Mr. Collingsworth was aware that emails were stored only on his MacBook. On July 17, 2013, Grace Kaisal sent an email to Conrad & Scherer's IT director asking whether there was "a way to gain access to Terry's emails from 2011 and 2012?" (CS TC014940). She follows up on July 24, 2013 stating that she needs assistance "as soon as possible." (CS TC014940).     Approximately 30 minutes later she sent an email to Mr. Collingsworth and stated that she "just got off the phone" with the IT Director and that "he seems pretty confident those emails will be on the Mac laptop." (CS TC014942). Mr. Collingsworth himself sent an email two months later on September 27, 2013 to Susanna Tellez with the subject line "photos you requested" stating "Here is one. Still looking for others. I think they are on my apple Mac I gave to my niece." (CS TC014943). This email appears to confirm that Mr. Collingsworth was aware that there was data on his MacBook that was no longer accessible in other locations.

23. While the MacBook has not been produced for my analysis because it was purportedly disposed of in June 2013, it is clear from the emails that still exist that Mr. Collingsworth and others at Conrad & Scherer were aware both before and after its disposal that the MacBook emails from Missing Periods were not stored on the Conrad & Scherer server. As a result of the disposal of the MacBook and all the evidence contained on it, evidence and email on it have been permanently lost. In addition, Stroz Friedberg has not been able to perform an analysis to determine what actions took place on the MacBook prior to its disposal, or to determine whether the email stored on that device or other devices was deleted prior to the MacBook's disposal.

## 4. THE ACER NETBOOK, ALSO USED BY COLLINGSWORTH IN 2012, WAS PRODUCED FOR ANALYSIS BUT ANY RELEVANT DATA WAS DESTROYED IN 2014

24. Finally, an Acer Netbook that was disclosed as having been used by Collingsworth to access and store his email was produced for analysis. Stroz Friedberg's analysis confirms that the Netbook appears to have been used by Mr. Collingsworth. However, that analysis also identified that Microsoft Windows was re-installed on the Acer Netbook in 2014. The re-installation of Windows destroyed any of Mr. Collingsworth's email that had been stored on the computer. As a result, any evidence of emails on that computer has been permanently lost and Stroz Friedberg's analysis of Mr. Collingsworth's use of email in this time period was impacted.

25. Stroz Friedberg noted that, at the time it was produced for analysis, the Netbook did not contain any active data from an account related to or belonging to Mr. Collingsworth. As a result, on its face, it did not appear that the computer had been used by Mr. Collingsworth. In conducting the analysis required by the Forensic Inspection Order, Stroz Friedberg performed an analysis to determine whether the Netbook had, in fact, been used by Mr. Collingsworth. That analysis identified "Link Files" that reference a "Terry" user account that had been in use as early as 2009.

26. As background regarding link files, when a file is opened or viewed using a Windows operating system, records generally are created on the computer that show, among other things, the name

14

REPORT ON COURT ORDERED FORENSIC INSPECTION

of the file opened and when it was opened. One type of those records are "link files." The records do not necessarily show whether a document was edited or saved after it was opened. Many of those records, including link files, record the file system metadata for files when they are accessed. However, these records do not necessarily maintain a list of every file that has been accessed; often the records only record the most recent access to a file and can be automatically deleted by the computer over time. As a result, even when it is possible to recover these records, they do not necessarily show every single file that has been accessed or every time a file has been accessed.

27.  Stroz Friedberg identified over 50 different records on the Acer Netbook that referenced access to files or folders within a user account named "Terry."[1] The majority of those link files referenced files or folders from 2012. However, a small group of those link files referenced folders that were created in 2009. This evidence shows that the "Terry" user account likely was created in 2009 on the Netbook, and that, at the very least, the computer was still in use through at least part of 2012.

28.  However, while Stroz Friedberg was able to identify that the Netbook had been used in 2012 and before, Stroz Friedberg was not able to recover any data related to email, and all of the files related to the Terry account were deleted. In fact, Stroz Friedberg's analysis showed that on January 13, 2014, Windows was re-installed on the Netbook. The re-installation of the Windows operating system, which requires specific and intentional user action, included "re-formatting" the hard drive which serves to delete all data stored on the drive. If data is not separately backed up prior to re-formatting and re-installing Windows, a substantial amount of data will be permanently destroyed by the process, and any continued use of the Netbook continues to potentially overwrite data. I am not aware of any evidence that the contents of this Netbook had been backed up. The Netbook was used at least a year after it was reformatted. Given the evidence now available to Stroz Friedberg, I conclude to a reasonable degree of scientific certainty that the data related the

---

[1] Stroz Friedberg understands that Mr. Collingsworth and/or Conrad & Scherer have claimed privilege over some of these records. Because of those claims, Stroz Friedberg has not included a listing of the records.

Mr. Collingsworth's usage of the Netbook was almost entirely destroyed. However, it is not possible to quantify how much data in total was destroyed by the re-installation of Windows and subsequent usage of the Netbook.

## 5. MR. COLLINGSWORTH USED DEVICES TO ACCESS AND STORE EMAIL THAT WERE NOT DISCLOSED

29. Stroz Friedberg's analysis has also revealed that Mr. Collingsworth used multiple devices that were not disclosed as part of the September 9 Disclosure or the October 7 Disclosure. Specifically, Stroz Friedberg found evidence of 4 USB devices that had been used with the Produced Devices and on which email was stored. None of those devices were produced. Stroz Friedberg also found evidence of nearly 100 other USB devices that had been used with the Produced Devices that were not produced.

30. As background information about how the use of USB devices is recorded on a computer, when a USB storage device is plugged into a computer running Windows, the operating system typically records the first time the device is connected in both the Windows registry and in a log file maintained by the operating system. In some situations, those logs are updated when the device is subsequently connected. As a result, it is often possible to determine the first time a device was connected to a computer and some, but not all, of the subsequent connections. USB storage devices can be connected and disconnected from a computer multiple times, shared between computers, and exchanged between people.

31. Stroz Friedberg reviewed the operating system records related to USB devices to determine the extent to which USB devices were used with the Produced Devices. By reviewing link files and identifying link files that referenced email containers such as PST files, Stroz Friedberg identified instances where the evidence showed that the USB devices were used to access and store email. Because, as described above, file access records do not necessarily record every access and can

be deleted automatically, it is possible that this analysis did not identify all devices that had been used to store email.

32. Stroz Friedberg's analysis identified that over 100 different USB devices were used with the Produced Devices. Attached as Exhibit 6 is a chart of the USB devices identified as used with the Produced Devices that includes, to the extent Stroz Friedberg could determine it, the first time each device was recorded as connected to a computer and the most recent time each devices was recorded as connected.

33. I conclude to a reasonable degree of scientific certainty that at least four of the USB devices that were not produced contained email. All four of those devices that contained email were connected to one of the Produced Devices in December 2014, and one was connected as recently as January 30, 2015. None of those devices were disclosed pursuant to the Forensic Inspection Order or produced for Stroz Friedberg's analysis.

     i.     THERE IS NO SUPPORTED EXPLANATION FOR THE LOSS OF THE SEAGATE HARD DRIVE

34. One of the USB devices identified by Stroz Friedberg as having contained email was a Seagate GoFlex hard drive with serial number NA02NQ70. The evidence related to this device shows that it contained at least four PST files.[2] Three of those PST files were named "Q1-2010," "Q4-2010," and "Contacts 1-21-2011" and were copied to this USB device on January 21, 2011. This demonstrates that this particular hard drive was the hard drive purchased for Mr. Collingsworth on January 21, 2011 and possibly the hard drive that stored "sensitive" emails later that year.

35. On January 21, 2011, Victoria Ryan sent an email stating that she was "popping out to staples to pick up a portable external hard drive for Terry's files" and that someone else was "looking into his

---

[2] A PST file, or Personal Storage Table file, is a filetype used by Microsoft Outlook to store, among other things, email, contacts, and calendar entries. Within a PST file, content is organized into folders. PST files are "portable" and can be moved from one computer to another and between users. PST files are the filetype used by Microsoft Outlook for "archives" of email and to store messages downloaded directly from certain email servers.

computer info-transfer." (CS TC009597). A receipt from Staples dated the same day shows that a 500 gigabyte GoFlex hard drive was purchased (CS TC010084).[3] A billing report from CTSS references that shortly thereafter, CTSS configured an external hard drive "for use with both Mac and PC." (Williams April Declaration Exhibit M). On November 22, 2011, Mr. Collingsworth rejected a proposal to back up his email to a "cloud" based backup service, insisting instead that email be placed on an external hard drive. His stated justification for this was because his email was "too sensitive." (Williams April Declaration Exhibit W).

36. Stroz Friedberg compared the names of PST files on the Seagate hard drive to the names of PST files stored across the Produced Devices. In addition to "Q1-2010," "Q4-2010," and "Contacts 1-21-2011," that Seagate hard drive contained a PST named "PWA." The only PST file stored on the Seagate hard drive that Stroz Friedberg identified a copy of on a Produced Device was Q1-2010. The copy of Q1-2010 was modified in December 2014, and Stroz Friedberg does not know if that copy contained the same data that was stored on the Seagate hard drive. Stroz Friedberg was not able to recover a copy of any of the other PST files that were once present on the Seagate hard drive.  I conclude to a reasonable degree of scientific certainty that any unique data contained on that Seagate hard drive is currently missing and appears to have been permanently lost.

37. Because the Seagate hard drive was not produced and I do not know its whereabouts, I cannot conclude whether the drive or data on the drive was disposed of intentionally. However, this Seagate hard drive was last connected to one of Mr. Collingsworth's computers on December 8, 2014. As set forth later, an additional two of the other USB devices that contained email and were not produced also were connected to one of the Produced Devices on December 8, 2014. Stroz Friedberg understands that Mr. Williams believes that this Seagate hard drive was lost in an office move. Stroz Friedberg is not aware of any evidence to support that belief.

---

[3] A 500 gigabyte hard drive is large enough to store hundreds of thousands of emails and other files, such as Microsoft Word documents or PDF documents.  It is likely that every single email that is now purportedly missing could be stored on a 500 gigabyte hard drive.

REPORT ON COURT ORDERED FORENSIC INSPECTION

ii.    THREE LEXAR USB DEVICES THAT CONTAINED EMAIL HAVE APPARENTLY ALSO BEEN LOST SINCE DECEMBER 2014

38. The three other devices that contained email were Lexar USB devices with serial numbers AA61ATF59LZ7Z8U8, AARDZ68GJCQ3GW74, and AAIONSXO4O361JOP. These devices were all first connected to one of the Produced Devices in December 2014. Link files related to these devices show that email was copied to them on December 1, 2014 for the device with serial number AA61ATF59LZ7Z8U8, and on December 8, 2014 for the other two devices. Among the files contained on the Lexar devices were PST files named "Q1-2010," "Q2-2010," and "Q3-2010."[4] These three devices were also not produced. Stroz Friedberg is not aware of any explanation as to the whereabouts of these USB devices.

**B. STROZ FRIEDBERG'S RECOVERY OF DELETED EMAIL FROM MISSING PERIODS**

39. In its efforts to recover email, Stroz Friedberg compiled all active and recoverable email from the Produced Devices, and then compared the totality of that email to the Missing Periods. Stroz Friedberg recovered approximately 50,000 messages from the Missing Periods. The chart below sets forth the number of emails recovered for each of the Missing Periods (the "Recovered Emails"):

| Missing Period | | | |
|---|---|---|---|
| Email Account | Incoming or Outgoing | Date Range | Recovered Emails |
| IRAdvocates | Incoming | June 21, 2007 - May 19, 2008 | 328 |
| IRAdvocates | Outgoing | June 21, 2007 - January 6, 2008 | 6 |
| IRAdvocates | Incoming | June 3, 2008 - February 25, 2010 | 37,654 |
| Conrad & Scherer | Incoming | March 17, 2011 - March 22, 2013 | 709 |
| IRAdvocates | Incoming | October 27, 2011 - March 22, 2013 | 506 |
| IRAdvocates | Outgoing | May 17, 2011 - February 3, 2012 | 2,166 |
| IRAdvocates | Outgoing | February 22, 2012 - March 22, 2013 | 6,276 |

---

[4] Stroz Friedberg understands that Mr. Collingsworth and/or Conrad & Scherer have claimed privilege on some of the data related to files on the USB devices. As a result of that claim, Stroz Friedberg has not produced a listing of all information on or related to these USB devices.

40. In identifying the Recovered Email, Stroz Friedberg did not draw a distinction between (1) emails in a Missing Period sent by or received by Mr. Collingsworth where he is the only individual at IRAdvocates or Conrad & Scherer addressed in the email and (2) emails where other IRAdvocates or Conrad & Scherer employees are also addressed. The fact that another employee was a sender or recipient of the email is unrelated to whether the email is missing from Mr. Collingsworth's Account.

41. As directed by the Forensic Inspection Order, Stroz Friedberg produced these Recovered Emails and their associated attachments to Mr. Collingsworth. In total, Stroz Friedberg produced 60,729 documents to Mr. Collingsworth.

## C. THE INTENTIONALITY OF THE DELETIONS OF MISSING EMAILS AND THE RECOVERED EMAILS

42. As required by the Forensic Inspection Order, Stroz Friedberg reviewed the Recovered Emails to determine whether there was evidence that the emails were deleted intentionally.  As described herein, the vast majority of the recovered emails, over 35,000, were located in a folder named "Deleted Items" on Mr. Collingsworth's Dell OptiPlex computer. As set forth herein whoever placed them in that folder presumably intended to delete them. In other situations, Stroz Friedberg was not able to determine from the evidence available whether particular deletions were intentional. Set forth in paragraphs 48-52 of this report is an example of such a situation. Situations where Stroz Friedberg has not been able to determine whether the deletion of emails was intentional are, in large part, because not all of the devices used by Mr. Collingsworth to access and store email were produced for analysis.

### 1. MESSAGES FOUND IN THE "DELETED ITEMS" FOLDER OF A PST

43. As shown in the chart above, the majority of the Recovered Emails are from Mr. Collingsworth's IRAdvocates account.  Of the Recovered Emails from the IRAdvocates account, the largest set of recovered emails are incoming emails in the June 2008 to February 2010 time period.  The

majority of those emails were located on the machine imaged as E039 – a Dell OptiPlex Desktop. Of the Recovered Emails from this time period, 35,361 emails were located within the "Deleted Items" folder of a PST file used by Microsoft Outlook to store email.

44. As background on the Deleted items folder, the Deleted Items folder in Microsoft Outlook is a special folder created by Outlook to track items that have been deleted but not removed from the PST file. Similar to the "Recycle Bin" in Microsoft Windows, when a user deletes an email message in Outlook, it is generally not immediately permanently deleted, but is instead moved to the "Deleted Items" folder. It then remains in the Deleted Items folder until it is deleted from there. Items in the Deleted Items folder can be permanently deleted in three ways: 1) a user can select individual messages within the folder and delete them; 2) a user can empty the Deleted Items folder, deleting all messages; 3) the email server and/or Microsoft Outlook can be configured to automatically delete emails in the "Deleted Items" folder.  Although the Deleted Items folder here was not emptied, the emails recovered from this folder are from a time period identified by Mr. Collingsworth and Conrad & Scherer as missing. Mr. Collingsworth and Conrad & Scherer therefore were presumably not aware that the emails still existed in the Deleted Items folder and had not been removed.

45. It is also possible to delete messages from Outlook without having them first moved to the Deleted Items folder. By holding "shift" when deleting a message, a user can bypass the Deleted Items folder and cause a message to be permanently deleted. Because messages can be deleted from the Deleted Items folder and because messages can be deleted without going to the Deleted Items folder, it is possible not all of the emails from these Missing Periods were recovered.

46. With regards to the timing of the deletion of these emails, the PST containing the Deleted Items folder was copied to the Dell OptiPlex computer on May 7, 2010, modified shortly after copying, and then not modified again. From the available evidence, Stroz Friedberg cannot determine whether the messages were deleted on May 7, 2010 after they were copied to this computer or

prior to them being copied. I conclude to a reasonable degree of scientific certainty from the available evidence that they must have been deleted on or before May 7, 2010.

47. Additionally, the recovery of these messages contradicts Mr. Williams' previous conclusion that these emails are missing because a third party failed to transfer them from earlier computers to the Dell OptiPlex. Instead, the identification of these messages on the Dell OptiPlex proves that they were transferred to the Dell OptiPlex.

48. The fact that these 35,361 emails were located in the Deleted Items folder suggests that whoever placed them in that folder intended to delete them. Email messages do not end up in the Deleted Items folder through normal use of a computer unless a user selects those messages for deletion. Moreover, automatic archiving, which I understand is purported to have been used by Mr. Collingsworth, does not generally place messages in the Deleted Items folder. When messages are automatically archived, they are copied from a PST or OST file to another PST file and immediately removed from the source. Therefore, assuming normal computer usage, the location of these messages in the Deleted Items folder is evidence that the user of the computer intended to delete these 35,361 messages.

2. MESSAGES FOUND IN THE "SENT ITEMS" FOLDER OF AN OST

49. Another substantial volume of emails recovered from Mr. Collingsworth's IRAdvocates account are outgoing messages from February 2012 to May 2013. Stroz Friedberg identified 6,276 of those messages in a "Sent Items" folder in an OST file. However, while these messages were located in the OST file, they were no longer present in Collingsworth's email account. Therefore, these messages must have been deleted or archived from the account after the dates they were sent.

50. An OST file differs from a PST file in two substantial ways. First, an OST file is not portable and cannot be moved from one computer to another. It can only be accessed using Microsoft Outlook on the computer on which it was created. Second, an OST file can only be created through

synchronizing against a server and it is not possible to create an OST file as an email archive. As a result, the contents of an OST file should match the contents of the associated email server. Generally, the only situation where an OST file will not match the associated server is when changes have been made to either the server or the OST and those changes have not yet been synchronized.

51. In this particular case, however, the recovered emails from February 2012 to March 2013 found in the Sent Items folder are present in the OST file on the Dell Vostro 360 computer (E040a) but were not found on the Conrad & Scherer email server. It thus appears that these emails were deleted from the server, but the synchronization of that deletion to this computer failed. As a result, these messages remained in the OST on this Collingsworth computer after having been removed from the server. From the available evidence, I have not been able to establish when these emails were deleted from the server – only that they were deleted between the dates they were sent in 2012 and 2013 and when the email server was reviewed in 2015.

52. As with the items in the Deleted Items folder, the recovery of messages from this time period does not mean that all messages have been recovered. It is possible that additional messages once existed but were deleted from both the OST file and from the server.

53. Based on the evidence available to me, I conclude to a reasonable degree of scientific certainty that these 6,276 emails were either intentionally deleted without ever having been archived or were archived and then the archive was deleted or disposed of.  Because they still exist in the OST file, this group of recovered emails must have been deleted or archived using a different computer than the one made available to me. In large part because multiple devices used in this time period were not produced for analysis, I cannot confirm whether the emails were deleted or archived. However, as I have not identified any email archive that contains these emails, I conclude to a reasonable degree of scientific certainty that these emails were deleted without

having been archived or they were archived but the archive containing them was subsequently

deleted or disposed of and not produced for inspection.

## D.  ADDITIONAL EVIDENCE OF INTENTIONAL AND SELECTIVE DELETION OF EMAIL

54. In responding to the Forensic Inspection Order's direction to assess the intentionality of deletions, Stroz Friedberg compared the email from the Produced Devices to certain emails provided to Stroz Friedberg by Counsel. While Stroz Friedberg was able to identify some of those messages in the data on the Produced Devices, some of those messages were not found. As a result, those messages are missing from Mr. Collingsworth's email accounts and must have been deleted. At least some of those messages do not fall in a Missing Period, meaning that there are emails beyond the disclosed Missing Periods that have also been deleted from Mr. Collingsworth accounts.

55. To perform these comparisons, Stroz Friedberg requested and was provided certain emails by Counsel. Stroz Friedberg understands that these emails were produced in either or both of the Dole and Drummond Cases, and are relevant to either or both of the cases (the "Produced Relevant Emails").

56. Stroz Friedberg searched the email from the Produced Devices for the Produced Relevant Emails. Stroz Friedberg's searches for certain of these Produced Relevant Emails that were addressed to Mr. Collingsworth did not locate a copy of the email within the Produced Devices[5].  The chart below sets forth the Produced Relevant Emails that were not located on the Produced Devices and whether the Produced Relevant Email fell within a Missing Period, and copies of the emails are attached as Exhibit 7:

---

[5] In some instances, Stroz Friedberg's search did not identify an original copy of the email but did identify some of the text of the email. In those cases, the text of the email was found in a later email, and for the majority of those cases the later email was circulating the Produced Relevant Emails as part of discovery. As the Forensic Inspection Order sets forth that the Experts Reports can not reveal the content of email, Stroz Friedberg has not provided listings or details of these emails.

REPORT ON COURT ORDERED FORENSIC INSPECTION

| Bates Number of Produced Relevant Email | Date of Email | Email Account | Identified in Produced Devices | In Missing Time Period |
|---|---|---|---|---|
| CS_TC 12850-51 | September 23, 2011 | IRAdvocates | No | Yes |
| CS_TC 1457 | December 23, 2011 | IRAdvocates | No | Yes |
| CS_TC 1458 | September 16, 2011 | IRAdvocates | No | Yes |
| CS_TC 1459 | September 12, 2011 | IRAdvocates | No | Yes |
| CS_TC 14662-65 | December 28, 2011 | Gmail | No | No |
| CS_TC 2827-28 | July 19, 2012 | Gmail | No | No |

57. While some of the Produced Relevant Emails that were not found on the Produced Devices were found within the Missing Periods, some of them are not within those time periods. Where the emails are not in a Missing Period, Stroz Friedberg is not aware of any explanation by Mr. Collingsworth as to why they are missing. If those Produced Relevant Emails were received by Mr. Collingsworth, the most plausible explanation is that they have been deleted by a specific and intentional action.

58. In one instance, Stroz Friedberg did not locate the Produced Relevant Email with Bates Number CS_TC 14662 on the Produced Devices. That email is an email from December 28, 2011 sent to Mr. Collingsworth's Gmail Account. Stroz Friedberg did, however, locate another email from December 28, 2011 from approximately two hours earlier in the day that had been sent to the Gmail Account on the Produced Devices. As described, the existence of that email shows the entirety of emails from that day were not lost, and the most plausible explanation as to why CS_TC 14662 is missing is that it was specifically deleted from the account.

59. In another instance, the Produced Relevant Email with Bates number CS_TC 2827, also from Mr. Collingsworth's Gmail Account, does not exist on the Produced Devices. Counsel for Mr. Collingsworth confirmed in the August 27 Gmail Correspondence that the message was not found in his account and instead only exists in other accounts. Again, Stroz Friedberg did find other emails in the Gmail Account from the same day as the Produced Relevant Email. This is similarly evidence consistent with intentional deletion. As before, that other emails from the same day still exist shows that the entirety of emails from that day or time period were not lost, and instead, that

this email must have been specifically deleted when other emails from the same day were not deleted.

60. In my opinion those situations are, to a reasonable degree of scientific certainty, evidence that emails were deleted from Mr. Collingsworth's account by a specific and intentional action.

### E.  THE RELATIONSHIP BETWEEN THE MISSING PERIODS AND THE GMAIL ACCOUNT

61. As part of the analysis, Stroz Friedberg reviewed the Gmail Account to determine whether there was any evidence of missing periods of email in that account, whether any evidence in the Gmail Account related to the Missing Periods in the other accounts, and whether any of that evidence related to the intentionality of the deletions. As set forth herein, some of the missing Produced Relevant Emails originated from Mr. Collingsworth's Gmail account. While Stroz Friedberg is not aware of Mr. Collingsworth having disclosed any mass deletions or periods of missing email from his Gmail Account, Stroz Friedberg undertook an analysis to determine whether or not there appeared to be any periods of missing email within the Gmail account.

62. To conduct that analysis, Stroz Friedberg compiled the entirety of messages from the Gmail account across the Produced Devices and tallied the number of emails per month. A period in which there were potentially large numbers of missing emails, such as periods similar to the Missing Periods, may show as a month or group of months with substantially fewer messages than in other months.  This analysis found that shortly after the use of the Gmail account began, it was used extensively until May 2013 after which the number of messages found by Stroz Friedberg decreased.  Notably, the period of time with more emails in the Gmail account than other times substantially overlaps with Missing Periods from the IRAdvocates Account and Conrad & Scherer Account. The graph below sets forth the number of emails per month existing or recovered from in the Gmail account. Stroz Friedberg cannot confirm whether the decrease in apparent usage of the Gmail account is because the frequency of use declined or if it is the result of the deletion of emails.

REPORT ON COURT ORDERED FORENSIC INSPECTION



I hereby declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Spencer Lynch

**Exhibit 1**



STROZ FRIEDBERG
CV

# Spencer C. Lynch
VICE PRESIDENT

<u>PROFESSIONAL EXPERIENCE</u>

STROZ FRIEDBERG LTD
**Vice President,** November 2015 to Present
**Director, Digital Forensics,** January 2012 to October 2015
**Assistant Director, Digital Forensics,** July 2011 to December 2011
**Digital Forensic Examiner,** August 2007 to June 2011, **New York, USA**
**London, UK**

Responsible for co-managing the firm's digital forensics practice. Conduct digital forensic acquisitions and analyses of laptop computers, desktop computers, mobile devices, and servers in civil litigations, criminal and regulatory matters, and internal investigations. Supervise and take part in the development of customised utilities for use in the analysis and processing of electronic data. Carry out complex, large-scale digital forensic and eDisclosure projects involving the preservation, processing, and production of electronic data from a variety of digital sources. Advise clients on issues of incident response, data breaches, and computer and network security. Supervise Digital Forensic Examiners and manage the operations of the firm's digital forensic practice outside of the United States of America.

Significant casework includes:

- Performed and directed the analysis of data collected as part of an inspection ordered by the United States International Trade Commission in an investigation into claims of misappropriation of trade secrets and patent infringement brought by the Dow Chemical Company against Organik Kimya San. ve Ticaret AS. Identified multiple attempts of data destruction and authored multiple reports and affidavits setting forth the analysis.

- Performed and directed an investigation into alleged hacking by the claimant in a litigation of the defendant's email accounts. Authored expert reports relating to the fabrication and destruction of evidence and testified as an expert witness in a contempt application made by one of the defendants.

- Performed and directed the analysis of data collected in the United States and Ecuador in an investigation into a conspiracy to defraud the Chevron Corporation of billions of US dollars. Found key digital forensic evidence supporting Chevron's arguments that the judgment was a product of fraudulent conduct, including bribery of Ecuadorian Judges and the ghost writing of supposedly independent expert reports and orders and judgments issued by the Ecuadorian court system. Testified as an expert witness at trial in the United States District Court for the Southern District of New York, and in an arbitration under the UNCITRAL rules.

- Performed a digital forensic analysis and source code review of data collected during a criminal prosecution for the theft of trade secrets. Testified as an expert witness at trial for the United States Attorney's Office for the Southern District of New York.

- Led the analysis of databases and web servers seized during a criminal investigation of online pharmacies. Testified as an expert witness at trial for the United States Attorney's Office for the Eastern District of New York.



STROZ FRIEDBERG
CV

# Spencer C. Lynch

VICE PRESIDENT

- Performed a digital forensic investigation to determine if former employees of a company stole proprietary information. Filed two affidavits and testified as an expert witness in a preliminary injunction hearing in the United States District Court for the Northern District of New York.

- Coordinated the execution of a Civil Search Order across multiple office and warehouse locations in an investigation into the manufacture and distribution of counterfeit goods. Supervised the recovery and analysis of a sales database seized during the Search Order to identify customers and manufacturers of counterfeit products and the volume of goods traded illegally.

- Supervised the collection and analysis of data from a leading UK law firm in a response to the identification of previously unknown malware on the law firm's file server. Analysed data collected from the network and infected computers to determine the likelihood that client information had been exposed through the security incident.

- Decoded the enciphered storage format of an obsolete email client to recover deleted messages from a computer in a civil litigation case. Recovered hundreds of deleted and previously unproduced messages.

- Participated in and led efforts to collect and process terabytes of data from multiple global locations in response to both regulatory and US Congressional inquiries into issues related to the global credit crisis.

- Participated in an anti-money laundering effort for a global bank. Performed data analysis and recommended thresholds and triggers to be implemented in an automated transaction monitoring system.

**ERNST & YOUNG**
**Legal Technology Services – Fraud Investigative and Dispute Services Staff,** August 2005 to August 2007
**New York, US**

Supervised teams to acquire electronic evidence. Searched and reviewed electronic evidence, recovered deleted information from storage media, and produced native files from electronic evidence. Built custom digital forensic tools for recovering files. Worked with a variety of digital forensic tools, including EnCase, FTK, dcfldd and ImageMASSter Solo devices. Managed outside vendors in performing bulk tape restores. Worked on investigations involving the destruction of data, the viewing of inappropriate material, compromised machines, and the backdating of documents. Interviewed IT professionals to collect information regarding databases, data sources, and backup strategies. Used information obtained from the interviews to develop a collection strategy and to request extracts from relevant data sources. Normalised data and imported it into a SQL environment. Supervised the implementation of backup strategies to comply with data retention policies. Developed custom SQL queries to analyse and report on client data.



STROZ FRIEDBERG
CV

# Spencer C. Lynch
VICE PRESIDENT

<u>TESTIMONY</u>

April 2015: Testified as a digital forensics expert in *Chevron Corporation and Texaco Petroleum Corporation v. The Republic of Ecuador*, UNCITRAL, PCA Case No 2009-23 (Permanent Court of Arbitration)

September 2014: Testified as a digital forensic expert in a contempt application as part of *Daar Al Arkan Real Estate Development Corporation , et al, v. Majid Al-Refai, Kroll Associates UK Limited,  Alexander Richardson, FTI Consulting Group Limited*, 2012 Folio 834 (Royal Courts of Justice, UK)

October 2013: Testified as a digital forensic expert in *Chevron Corporation* v. *Steven Donziger et al.*, 11-CV-0691 (S.D.N.Y. USA)

October 2011: Testified as a digital forensic expert in *Bassam Alghanim v. Steven McIntyre, Verify Limited, Cerule Limited, Timothy Zimmer*, HC09 CO 3426 (Royal Courts of Justice, UK)

December 2010: Testified as a digital forensic expert in *United States v. Aleynikov*, 10-CR-96 (S.D.N.Y. USA)

June 2009: Testified in an arbitration regarding a digital forensic investigation in *Quixtar v. Woodward, et al.*, JAMS File No. 1100052219 (Linda Singer) (USA).

October 2008: Testified as a digital forensic expert in *United States v. Quinones, et al.*, 06-CR-845 (E.D.N.Y. USA).

January 2008: Testified as a digital forensic expert in *Von Roll v. Craig, et al.*, 07-CV-1336 (N.D.N.Y. USA).

<u>EDUCATION</u>

**DUKE UNIVERSITY, North Carolina, USA**
B.A. in Computer Science and Public Policy, minor in Psychology, 2005

<u>PUBLICATIONS</u>

May 2014: "No one-size-fits-all approach to APTs" <u>Information Age</u>
November 2013: "Chevron alleges still another fraud by Ecuadorians" <u>CNN Money</u>
May 2013: "Security at the data level" <u>Network Security</u>
January 2013: "Spear-phishing: how to spot and mitigate the menace" <u>Computer Fraud & Security</u>
October 2012: "Seek and destroy" <u>Network Security</u>
September 2012: "BYOD requires clear strategy and enforcement" <u>SC Magazine</u>



STROZ FRIEDBERG
CV

# Spencer C. Lynch
## VICE PRESIDENT

### CERTIFICATIONS

EnCase Certified Examiner (EnCE), 2006 to Present

### TRAINING

**STROZ FRIEDBERG, LLC**
**Internal Training Program**
Develop and Attend weekly in-house training presentations on digital forensics, cyber-crime response, computer security, desktop, mobile device, and network digital forensic tools, and relevant legal topics.

**GUIDANCE SOFTWARE, INC.**
**EnCase Intermediate Computer Forensics, 2005**
Attended training course in digital forensic practices and the use of EnCase forensic software.

**SANS INSTITUTE**
**Hacker Techniques, Exploits and Incident Handling, 2008**
Attended training course on common hacking and exploitation techniques and computer incident response strategies.

CV Version 11/2015

Capital House, 85 King William Street, London, EC4N 7BL

slynch@strozfriedberg.com          T: +44 20.7061.2304          strozfriedberg.com

**Exhibit 2**

## Exhibit 2 - Materials Preserved Under Stroz Friedberg's Supervision

| Pathway Forensics Exhibit Reference | Description | Serial Number | Method of Supervision |
|---|---|---|---|
| E038 | Dell Inspiron 15R-5521 Laptop | 354W1X1 | In-Person |
| E039A | Loose Seagate ST3250318AS Hard Drive | 9VY6L05V | In-Person |
| E040 | Dell Vostro 360 Desktop | 76LGBQ1 | In-Person |
| E041 | Apple iPhone | F2MNQU4YG5QJ | In-Person |
| E042 | Acer Aspire one ZG8 | LUS650B41293203B512525 | In-Person |
| E043 | Loose Seagate ST95005620AS Laptop Hard Drive -- Preservation Failed and a previous Pathway preservation of the same hard drive (E003) was made available to Stroz Friedberg | 5YX1N5AQ | In-Person |
| E044 | Loose Western Digital WD5000AAKX-753CA1 Desktop Hard Drive | WMAYUA9799085 | In-Person |
| E045 | Loose Seagate ST750LX003 Desktop Hard Drive | W200M6G4 | In-Person |
| E046 | HP Proliant ML330 G6 Server - Local Disk 'C:' | MX294200JS (Server Serial Number) | In-Person |
| E047 | HP Proliant ML330 G6 Server - Hyper -v 'D:' | MX294200JS (Server Serial Number) | In-Person |
| E048 | Western Digital External My Passport USB Drive | WXP1EA2JVME18 | In-Person |
| E049 | Western Digital External WD5000H1U-00 USB Drive | WCASU3078842 | In-Person |
| E050 | Toshiba v73600-A External Hard Drive | 646ET0P8T1FB | In-Person |
| E051 | Seagate Free Agent Go External Hard Drive | 5MACJPYZ | In-Person |
| E052 | Toshiba V63600-C External Hard Drive | 23C2T0JDTT1 | In-Person |
| E053 | Lexar Thumb Drive | FEAEAEEBE5A95A0AEC09 (Internal Serial Number) | In-Person |
| E054 | Asus UX32A Notebook PC | C6N0AS65374526A | In-Person |
| E055 | HP Compaq Desktop | MXL92203GP | In-Person |
| E056 | HP Compaq dc5800 Desktop | MXL952047D | In-Person |
| E057 | Lexar LJDTT8GB-000-117 BP Thumb Drive | AA469IDVZR2X3BUV (Internal Serial Number) | In-Person |
| E058 | Toshiba v63600-A External Hard Drive | 42SBFN1TSN69 | In-Person |
| E059 | Toshiba v73600-A External Hard Drive | 84MET21ST1FB | In-Person |
| E060 | Lexar LJDTT8GB-000-117 BE USB Thumb Drive | N/A | In-Person |
| E061 | Dell Latitude E6430s Laptop | 3N649W1 | In-Person |
| E062 | HP Compaq dx2400 Desktop | MXL8380XR4 | In-Person |
| E063 | Seagate Backup Plus (SRD0SP0) Portable External Hard Drive | NA5AFVFQ | In-Person |
| E064 | Seagate Free Agent GoFlex External Hard Drive | NA02JAHE | In-Person |
| E065 | Gmail collection | N/A | Remote |
| E071 | Dropbox Collection | N/A | Remote |
| E072 | Microsoft Office 365 PST | N/A | Remote |
| E073 | PST export from Conrad Scherer exchange server | N/A | Remote |
| E074 | SiteGround Hosted Email Collection | N/A | Remote |
| E075 | Conrad & Scherer Mailbox Export | N/A | Remote |
| E076 | Conrad & Scherer Mailbox Export | N/A | Remote |
| E079 | Email files from Old DC File Server (OS Hard Drive) | N/A | Remote |
| E080 | Email files from Old DC File Server (Data Hard Drive) | N/A | Remote |

**Exhibit 3**

## Exhibit 3 - Materials Produced to Stroz Friedberg on September 23, 2015

| Pathway Forensics Exhibit Reference | Description | Serial Number | Date Received |
|---|---|---|---|
| E038 | Dell Inspiron 15R-5521 Laptop | 354W1X1 | September 23, 2015 |
| E039A | Loose Seagate ST3250318AS Hard Drive | 9VY6L05V | September 23, 2015 |
| E040 | Dell Vostro 360 Desktop | 76LGBQ1 | September 23, 2015 |
| E041 | Apple iPhone | F2MNQU4YG5QJ | September 23, 2015 |
| E042 | Acer Aspire one ZG8 | LUS650B41293203B512525 | September 23, 2015 |
| E043 | Loose Seagate ST95005620AS Laptop Hard Drive -- Preservation Failed and a previous Pathway preservation of the same hard drive (E003) was made available to Stroz Friedberg | 5YX1N5AQ | September 23, 2015 |
| E044 | Loose Western Digital WD5000AAKX-753CA1 Desktop Hard Drive | WMAYUA979085 | September 23, 2015 |
| E045 | Loose Seagate ST750LX003 Desktop Hard Drive | W200M6G4 | September 23, 2015 |
| E061 | Dell Latitude E6430s Laptop | 3N649W1 | September 23, 2015 |

**Exhibit 4**

## Exhibit 4 - Additional Materials Produced to Stroz Friedberg

| Pathway Forensics Exhibit Reference | Description | Serial Number | Date Received In London | Notes |
|---|---|---|---|---|
| E047 | HP Proliant ML330 G6 Server - Hyper -v 'D:' | MX294200JS (Server Serial Number) | October 19, 2015 | Received email files only. |
| E047b | | MX294200JS (Server Serial Number) | October 19, 2015 | Received MFT report and .txt file named 'No Emails Found' |
| E047c | | MX294200JS (Server Serial Number) | October 19, 2015 | Received MFT report and .txt file named 'No Emails Found' |
| E047d | | MX294200JS (Server Serial Number) | October 19, 2015 | Received MFT report and .txt file named 'No Emails Found' |
| E047e | VHDX file from HP Proliant ML330 G6 Server | MX294200JS (Server Serial Number) | October 19, 2015 | Received email files only and MFT report |
| E047f | | MX294200JS (Server Serial Number) | October 19, 2015 | Received .txt file named 'Corrupt vhdx, Court Notified could not mount' |
| E047g | CSDCFS2_disk2 - copy.vhdx (copy of D:\ Data for E-discovery) from E047 export | | December 29, 2015 | Received email files only. |
| E048 | Western Digital External My Passport USB Drive | WXP1EA2JVME18 | October 19, 2015 | Received 2 MFT reports |
| E048c | Email from the D: drive of a VHDX file within another VHDX file E048b | N/A | October 30, 2015 | Received email files only and MFT report |
| E049 | Western Digital External WD5000H1U-00 USB Drive | WCASU3078842 | October 19, 2015 | Received email files only and forensic metadata reports |
| E050 | Toshiba v73600-A External Hard Drive | 646ET0P8T1FB | December 1, 2015 | Received email files only and forensic metadata reports |
| E051 | Seagate Free Agent Go External Hard Drive | 5MACJPYZ | October 19, 2015 | Received email files only and forensic metadata reports |
| E052 | Toshiba V63600-C External Hard Drive | 23C2T0JDTT1 | October 19, 2015 | Received email files only and forensic metadata reports |
| E053 | Lexar Thumb Drive | FEAEAEEBE5A95A0AEC09 (Internal Serial Number) | December 1, 2015 | Received email files only and forensic metadata reports |
| E059 | Toshiba v73600-A External Hard Drive | 84MET21ST1FB | October 19, 2015 | Received file listing and MFT report only. |
| E065 | Gmail collection | N/A | October 19, 2015 | |
| E071 | Dropbox Collection | N/A | October 19, 2015 | |
| E072 | Microsoft Office 365 PST | N/A | October 21, 2015 | |
| E073 | PST export from Conrad Scherer exchange server | N/A | October 29, 2015 | |
| E074 | SiteGround Hosted Email Collection | N/A | October 21, 2015 | |
| E075 | Conrad & Scherer Mailbox Export | N/A | November 23, 2015 | |
| E076 | Conrad & Scherer Mailbox Export | N/A | November 23, 2015 | |
| E079 | Email files from Old DC File Server (OS Hard Drive) | N/A | December 4, 2015 | Received email files only. |
| E080 | Email files from Old DC File Server (Data Hard Drive) | N/A | December 4, 2015 | Received email files only. |

**Exhibit 5**



Exhibit 5 - Summary of Missing Periods, Computers Used, and Certain Produced Emails

**Exhibit 6**

## Exhibit 6 - USB Devices Connected To Produced Devices

| Serial# | Earliest Connection | Most Recent Conncetion |
|---|---|---|
| AA469IDVZR2X3BUV | July 23, 2015 11:46 | July 23, 2015 15:46 |
| AAO68UFSTZRMUMJL | September 11, 2014 14:08 | July 14, 2015 14:29 |
| 001CC0EC345AEB8165EE001E | January 14, 2014 12:56 | April 8, 2015 12:40 |
| 2005425600111E218FCE | April 2, 2015 15:01 | April 6, 2015 20:23 |
| 355934049674980 | January 15, 2014 13:25 | March 23, 2015 19:12 |
|  | June 12, 2013 11:10 | March 23, 2015 18:54 |
| 10062518bbd707 | July 28, 2013 11:28 | March 16, 2015 19:01 |
| _____5MACJPYZ | March 16, 2015 14:06 | March 16, 2015 18:06 |
| 0df7bc90acc799 | May 12, 2014 13:50 | March 16, 2015 15:29 |
| 001E4FECA21AFEB157274720 | March 12, 2015 08:36 | March 12, 2015 18:42 |
| 0416KK00000000004156 | March 12, 2015 10:56 | March 12, 2015 15:57 |
| 0416190000066850822 | March 9, 2015 15:15 | March 12, 2015 15:52 |
| 20140822010566F | March 11, 2015 16:07 | March 11, 2015 20:08 |
| 1397CDF9CE4EE344B38E | March 10, 2015 12:07 | March 10, 2015 16:07 |
| 20054963900A5AE25A01 | February 5, 2015 14:56 | March 9, 2015 15:52 |
| 0000183B67713ADF | January 16, 2014 14:45 | January 30, 2015 19:44 |
| AARDZ68GJCQ3GW74 | December 8, 2014 12:55 | January 30, 2015 19:42 |
| 1431714452120175 | November 27, 2014 13:52 | January 29, 2015 13:59 |
| 001A4D66E7C8AC8172CFA452 | December 10, 2012 10:47 | December 17, 2014 15:40 |
| 108296003672210 | December 15, 2014 14:10 | December 15, 2014 19:10 |
| AAIONSXO4O361JOP | December 8, 2014 13:20 | December 8, 2014 18:20 |
| NA02NQ70 | September 18, 2012 15:38 | December 8, 2014 14:38 |
| 001372982D2AC0A1557506EC | May 12, 2014 13:44 | December 8, 2014 14:35 |
| VLAFTSHLNOAZBPXM | May 12, 2014 13:49 | December 3, 2014 14:15 |
| C860008863F7EDA02A0A012A | May 6, 2014 14:40 | December 3, 2014 00:51 |
| C8600088615DEDA03A230062 | May 6, 2014 14:11 | December 3, 2014 00:10 |
| AA61ATF59LZ7Z8U8 | December 1, 2014 10:39 | December 2, 2014 16:34 |
| 0013729940C4C0A14516064C | November 15, 2014 16:10 | November 16, 2014 17:16 |
| 001CC0C60DDAEAC1342D025B | November 14, 2014 15:42 | November 14, 2014 20:42 |
| C86000BDB9F2CE71EA3175AE | November 10, 2014 13:36 | November 10, 2014 18:36 |
| 0019E06B58C1FD41675240D0 | January 21, 2014 17:15 | October 30, 2014 14:56 |
| AARL43KY6LX17BCU | October 28, 2014 16:43 | October 28, 2014 20:43 |
| 0019E06B588FFC60C72F2399 | May 14, 2014 17:30 | October 25, 2014 13:41 |
| AA7XQO9LK8HBWY4Y | October 21, 2014 09:49 | October 21, 2014 13:49 |
| AAZZTCU5FLCP1ZAL | August 18, 2014 12:19 | August 18, 2014 16:19 |
| 01C06C60B17248AB | May 12, 2014 13:51 | August 11, 2014 14:09 |
| 20140512009314F | August 5, 2014 14:58 | August 5, 2014 18:58 |
| 20130212003544F | March 5, 2013 12:02 | June 17, 2014 14:31 |
| 001CC0EC33FAC0A145DD06E1 | June 13, 2014 15:12 | June 13, 2014 19:12 |
| 575834314541314350583333 | June 5, 2014 16:03 | June 5, 2014 20:04 |
| AA38021F00000012 | January 14, 2014 13:17 | May 30, 2014 04:20 |
| AA00000000006016 | May 28, 2014 16:24 | May 28, 2014 21:24 |
| AA00000000009805 | May 27, 2014 16:34 | May 27, 2014 21:37 |
| 6C626D7C27E6AD30C9243144 | May 27, 2014 14:59 | May 27, 2014 20:12 |
| NA02W5CY | May 18, 2014 19:35 | May 18, 2014 23:35 |
| PL0APWK154JD1N9K013C | March 14, 2013 14:13 | May 13, 2014 17:43 |
| 001CC0C61190EB105419004E | May 12, 2014 13:51 | May 12, 2014 18:17 |

| Serial# | Earliest Connection | Most Recent Conncetion |
|---|---|---|
| LLT7XCQJFXVLD6T5UMFD | November 27, 2012 14:52 | May 12, 2014 17:46 |
| 001CC0EC329EEA90E5E8002D | May 7, 2014 09:52 | May 7, 2014 15:20 |
| 02AB0000000000000305 | April 4, 2014 13:07 | April 4, 2014 17:17 |
| C860008862F1EDA03A0F0158 | March 24, 2014 11:06 | March 24, 2014 15:06 |
| ADA981F12000000622 | March 14, 2014 10:44 | March 14, 2014 14:44 |
| 20071114173400000 | January 23, 2014 14:45 | January 23, 2014 19:45 |
| 000D8824B4F8FD4167513E47 | January 16, 2014 14:39 | January 16, 2014 19:39 |
| 50E54951327EFD709E4358CA | January 14, 2014 11:33 | January 14, 2014 16:33 |
| C8600088614DFD718A15244C | January 14, 2014 11:31 | January 14, 2014 16:31 |
| C86000BDBE37ED61CA2100E7 | January 13, 2014 17:32 | January 14, 2014 13:29 |
| 03B2620100030000008F | January 13, 2014 18:40 | January 13, 2014 23:40 |
| R8X76GAD301B1X_ | January 13, 2014 17:21 | January 13, 2014 22:30 |
| AA3UE9U7RRC4GKTK | October 10, 2012 14:55 | July 1, 2013 15:35 |
| 2010050514B3 | June 14, 2013 09:46 | June 14, 2013 13:48 |
| 20130124001947F | May 21, 2013 15:22 | May 21, 2013 19:22 |
| 0019E02B7586EBC0656500C2 | May 15, 2013 11:00 | May 15, 2013 15:00 |
| AASWFAD8GNUW1T6T | April 30, 2013 11:54 | April 30, 2013 15:55 |
| FDC0FD500000000FD0FF41A1148528 | March 29, 2013 19:32 | March 29, 2013 19:32 |
| 10V2500000003108 | March 8, 2013 16:55 | March 8, 2013 16:55 |
| 001A4D66E7C8AC8172CF8A5F | February 4, 2013 10:41 | February 4, 2013 15:41 |
| 2011090700719 | November 15, 2012 11:35 | November 15, 2012 16:35 |
| NA01RQZC | November 14, 2012 11:24 | November 14, 2012 16:24 |
| 2012051252227 | November 13, 2012 09:46 | November 13, 2012 14:46 |
| A3C47DFA | November 9, 2012 08:03 | November 9, 2012 13:03 |
| AA1A064700000362 | September 28, 2012 16:05 | September 28, 2012 20:05 |
| 202008003E978F01 | September 28, 2012 16:04 | September 28, 2012 20:04 |
| 2012051201583 | July 31, 2012 12:40 | August 3, 2012 15:00 |
| 001372982D82EAA0F5670072 | July 31, 2012 14:55 | July 31, 2012 15:26 |
| 3S9A1E340243 | June 14, 2012 15:30 | June 14, 2012 15:30 |
| 10V25000000030DC | May 29, 2012 21:30 | May 29, 2012 21:30 |
| 10V10000000035FE | May 21, 2012 15:35 | May 21, 2012 15:35 |
| 0A4EEC12055603061207 | March 5, 2012 21:09 | March 5, 2012 21:09 |
| 0776013C0093 | March 1, 2012 19:33 | March 1, 2012 19:33 |
| D086680FFFFF | October 28, 2011 20:32 | October 28, 2011 20:32 |
| 07F0A18131E1DD84 | September 5, 2011 19:50 | September 5, 2011 19:50 |
| GSAUTC03211113001055 | August 4, 2011 18:28 | August 4, 2011 18:28 |
| NA02JAHE | June 7, 2011 21:54 | June 7, 2011 21:54 |
| 55LITJ9REPMNDEE13M3F | May 23, 2011 16:46 | May 23, 2011 16:46 |
| 001CC0EC30C4C0A115F6064B | April 22, 2011 18:28 | April 22, 2011 18:28 |
| 001372997D4BC0A0E56ED56A | April 20, 2011 17:02 | April 20, 2011 17:02 |
| NA02V50M | April 13, 2011 21:22 | April 13, 2011 21:22 |
| 200533494218C8611C6C | February 23, 2011 14:34 | February 23, 2011 14:34 |
| 200535499218C8611E80 | February 23, 2011 14:34 | February 23, 2011 14:34 |
| 200443185118C22250A0 | February 23, 2011 14:33 | February 23, 2011 14:33 |
| 200517392318C2220AAF | February 23, 2011 14:32 | February 23, 2011 14:32 |
| 0010101140B8A86A | February 7, 2011 22:08 | February 7, 2011 22:08 |
| Z7WA4JGDFJLF8Y2G5ZVW | February 4, 2011 16:45 | February 4, 2011 16:45 |
| 3C4F7790 | September 30, 2010 22:06 | September 30, 2010 22:06 |
| 507000002079 | August 31, 2010 21:25 | August 31, 2010 21:25 |

| Serial# | Earliest Connection | Most Recent Conncetion |
|---|---|---|
| AA04012700041299 | August 27, 2010 15:02 | August 27, 2010 15:02 |
| 2GE6JR9S | August 26, 2010 21:18 | August 26, 2010 21:18 |
| 001CC0C61232C9A1C4250673 | May 19, 2010 22:46 | May 19, 2010 22:46 |
| 9276217B2222 | May 12, 2010 18:07 | May 12, 2010 18:07 |
| 2GE40GFG | May 7, 2010 17:21 | May 7, 2010 17:21 |

**Exhibit 7**

| From: | Terrence Collingsworth |
|---|---|
| To: | Lorraine Leete; Lorraine Leete |
| CC: | Susana Tellez |
| Sent: | 12/23/2011 2:21:50 PM |
| Subject: | Ivan |

Happy holidays Lorraine. Hope all is well. Albert says the wire was confirmed so Ivan should have it. Can you please let him know and ask him to confirm ?

Terry Collingsworth
Office Direct 202-543-5811
Cell 202-255-2198

CONFIDENTIAL
PURSUANT TO PROTECTIVE ORDER

CS_TC001457

| | |
|---|---|
| **From:** | Terrence Collingsworth |
| **To:** | Susana Tellez |
| **Sent:** | 9/16/2011 4:01:28 PM |
| **Subject:** | ivan |

Dear Ivan,

By now you should have received 2 packages. Just to be clear, the one from the brothers you know what that is. T  **Privileged**

# Privileged

| | |
|---|---|
| **From:** | Terrence Collingsworth |
| **To:** | Susana Tellez; Lorraine Leete |
| **CC:** | Christian Levesque |
| **Sent:** | 9/12/2011 3:29:58 PM |
| **Subject:** | Ivan funds |

Albert confirmed that he received his funds and would wire today to Ivan — might take day or so to clear but this is definite now.

# Privileged

CONFIDENTIAL
PURSUANT TO PROTECTIVE ORDER

CS_TC001459

# Privileged

Begin forwarded message:

**From:** Terry C <terrypc56@gmail.com>
**Date:** July 19, 2012 12:24:48 PM EDT
**To:** Lorraine Leete <lorrainemleete@gmail.com>
**Subject: Here is confirmation**

Please let Ivan know and have him
confirm when he gets it Privileged

## Privileged

Terry Collingsworth
202-543-5811
202-255-2198 (cell)


Begin forwarded message:

**From:** "Albert van Bilderbeek" <albert@vanbilderbeek.com>
**Date:** July 19, 2012 11:59:54 AM EDT
**To:** "'Terry C'" <terrypc56@gmail.com>
**Subject: swift**

CREDIT SUISSE AG

CONFIDENTIAL
PURSUANT TO PROTECTIVE ORDER

☒

| Account | 742. | **Confidential** | Balance | |
|---------|------|------------------|---------|--|

IBAN ⓘ          CH65 **Confidential**          BIC / SWIFT ⓘ CRESCHZZ80A

Booking Details 3F00-120719-80-00221

| Booking Date | Text | Debit | Credit | Value Date | Balance |
|--------------|------|-------|--------|------------|---------|
| **17.07.2012** | Payment order | 35,000.00 | | | - |
| | ABOGADO IVAN OTERO MENDOZA . | | | | |
| | 93 Confidential | | | | |
| | ABOGADO IVAN OTERO MENDOZA | | | | |
| | | | | | |
| | Banco Bilbao Vizcaya Argentaria | | | | |
| | Colombia S.A. | | | | |
| | Carrera 9 72-21 P.O. Box 53859 | | | | |
| | Colombia | | | | |

# Privileged

CONFIDENTIAL
PURSUANT TO PROTECTIVE ORDER

Message

| | |
|---|---|
| **From**: | Terrence Collingsworth [tc@iradvocates.org] |
| **Sent**: | 9/23/2011 10:48:04 AM |
| **To**: | Lorraine Leete [lorraine@riseup.net]; Lorraine Leete [lorrainemleete@gmail.com] |
| **Subject**: | Ivan needs to show this at bank. Funds are there |
| **Attachments**: | SWIFT_USD60000_LAWYER MENDOZA.pdf; Untitled attachment 79780.htm |

Sent from my iPad
Terry Collingsworth

Begin forwarded message:
**From:** "Albert van Bilderbeek" <albert@vanbilderbeek.com>
**Date:** September 23, 2011 11:00:59 AM EDT
**To:** "'Terrence Collingsworth'" <tc@iradvocates.org>
**Subject: RE: still no books in Colombia as of this morning**

See value date for crediting was yesterday 22/09. It has to be there.

**Van:** Terrence Collingsworth [mailto:tc@iradvocates.org]
**Verzonden:** vrijdag 23 september 2011 16:20
**Aan:** Albert
**Onderwerp:** still no books in Colombia as of this morning

CS_TC012850

AC/Auftrags-Nr. 80 / 3F00-110922-80-00132/00001
Referenz-Nr. . F3F000Z5003O0001          MUR-Nr. . . . 0000000364538702
Währung/Betrag  USD  / 60,000.00          Suchbegriff .
MT/Erstellung . MT103    / 10:07 22.09.2011 Valuta  . . . 22.09.2011
Status/Pr/Zeit  ACK 12/N / 10:11 22.09.2011
BUID/IBBB . . . 0011 / 0065          Instradierung  SUPP13
Empfänger . . . PNBPUS3NNYC          Erfasser . . . CAKI
 Wells Fargo Bank, N.A.
 New York
 110922CRESCHZZA80A4664181960
--------------------------------------------------------------------------------
 F01CRESCHZZ080A
 I103PNBPUS3NXNYCN
 108:364538702

 :20: F3F000Z5003O0001
 :23B:CRED
 :32A:110922USD60000,00
 :33B:USD60000,00
 :50F:/CH6205065074217152000
     1/Asian Pacific Energy Corporation
     1/Ltd.
     6/CH/CLLECHZZ/006507421715
 :52A:CLLECHZZXXX
 :53A:CRESCHZZ80A
 :57A:GEROCOBBXXX
 :59: /938003787
     LAWYER IVAN OTERO MENDOZA
     .
 :71A:SHA
     -

CS_TC012851

From: **Albert** <albert@vanbilderbeek.com>
Date: Wed, Dec 28, 2011 at 4:08 PM
Subject: RE: Confirmation?
To: Terry C <terrypc56@gmail.com>

Terry, this wire was held up by the correspondent bank for lack of documentation last Thursday. It took the whole day today getting this cleared. We need to liaise later as we have provided the support documentation, lets discuss over the closed line once you're back in the office. He should have it today (see value date on the receipt for release).

> **Privileged**

Regards, Albert

---

**From:** Terry C [mailto:terrypc56@gmail.com]
**Sent:** woensdag 28 december 2011 16:38
**To:** Terry C
**Cc:** Albert
**Subject:** Confirmation?

Terry Collingsworth

Office Direct 202-543-5811

Cell 202-255-2198

On Dec 27, 2011, at 3:56 PM, Terry C <terrypc56@gmail.com> wrote:

Thanks.

Terry Collingsworth

202-543-5811

202-255-2198 (cell)

On Dec 27, 2011, at 2:42 PM, "Albert" <albert@vanbilderbeek.com> wrote:

Funds were issued last week and confirmed!

CS_TC014662

I will ask for a copy of the wire tomorrow.

Thank u.

Albert

---

**From:** Terry C [mailto:terrypc56@gmail.com]
**Sent:** dinsdag 27 december 2011 22:36
**To:** Albert
**Subject:** Re: urgent re Ivan

> **Privileged**

I need to be clear. Funds were sent but need to confirm?     **Privileged**

Terry Collingsworth

202-543-5811

202-255-2198 (cell)

On Dec 27, 2011, at 10:16 AM, "Albert" <albert@vanbilderbeek.com> wrote:

Terry, no worries, I will have the bank issue a copy of the wire tomorrow morning.   **Privileged**

**Privileged**

---

**From:** Terry Collingsworth [mailto:terrypc56@gmail.com]
**Sent:** dinsdag 27 december 2011 19:11
**To:** albert
**Subject:** urgent re Ivan

CS_TC014663

Albert, [Privileged] Ivan says nothing has arrived and that we are on thin ice. Can you somehow check on this and send a confirmation? This is truly urgent. Thanks

**SWIFT_USD 25000_Lawyer I.Mendoza.pdf**
42K   View   Download

CS_TC014664

```
AC/Auftrags-Nr. 80 / ▮▮▮▮▮▮▮▮▮▮▮
Referenz-Nr. . ▮▮▮▮▮▮▮▮▮▮        MUR-Nr. . . . ▮▮▮▮▮▮▮▮▮▮
Währung/Betrag  USD  / 25,000.00        Suchbegriff .
MT/Erstellung . MT103   / 12:21 28.12.2011 Valuta  . . . 28.12.2011
Status/Pr/Zeit  ACK 12/N / 12:25 28.12.2011
BUID/IBBB . . . 0011 / 0065        Instradierung  SUPP13
Empfänger . . . PNBPUS3NNYC        Erfasser . . . NZV
 Wells Fargo Bank, N.A.
 New York
 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
--------------------------------------------------------------------------------
F01CRESCHZZ080A
I103PNBPUS3NXNYCN
▮▮▮▮▮▮▮▮▮▮▮

:20: ▮▮▮▮▮▮▮▮▮▮
:23B:CRED
:32A:111228USD25000,00
:33B:USD25000,00
:50F:/▮▮▮▮▮▮▮▮▮▮▮
   1/Asian Pacific Energy Corporation
   1/Ltd.
   6/CH/CLLECHZZ/006507421715
:52A:CLLECHZZXXX
:53A:CRESCHZZ80A
:57A:GEROCOBBXXX
:59: /▮▮▮▮▮▮▮
     LAWYER IVAN OTERO MENDOZA
   .
:70: DIS02
:71A:SHA
   -
```

CS_TC014665