# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **DRUMMOND COMPANY, INC. et al.,** | } | |
| | } | |
| Plaintiffs, | } | |
| | } | |
| v. | } | |
| | } | **Case No.: 2:11-cv-3695-RDP** |
| **TERRENCE P. COLLINGSWORTH,** et al., | } | |
| | } | |
| | } | |
| Defendants. | } | |
| | } | |

| | | |
|---|---|---|
| **DRUMMOND COMPANY, INC., et al.,** | } | |
| | } | |
| Plaintiffs, | } | |
| | } | |
| v. | } | |
| | } | **Case No.: 2:15-cv-506-RDP** |
| **TERRENCE P. COLLINGSWORTH, et al.,** | } | |
| | } | |
| | } | |
| Defendants. | } | |
| | } | |

## ORDER

These matters are before the court on Terrence P. Collingsworth and IRAdvocates' Rule 50 Motion for Judgment Dismissing Drummond's Claims as a Matter of Law. (Case No. 2:11-cv-03695-RDP, Doc. # 1169; Case No. 2:15-cv-00506-RDP, Doc. # 682). Drummond opposes the Motion (Case No. 2:11-cv-03695-RDP, Doc. # 1178). The Motion argues that Drummond failed in its case-in-chief to present sufficient evidence to establish either its Defamation Claim or its

RICO claims. The court disagrees.[1]

## I.  Drummond's Defamation Claim Against Collingsworth

Collingsworth asserts that Drummond has not presented sufficient evidence to show that his statements about Drummond were false and that he acted with actual malice when he made his statements. He contends he "spent many hours testifying about the many events that contributed to form his subjective belief that Drummond financed the AUC's crimes against humanity, and Drummond did virtually nothing to contest that evidence." (*Id*. at 8). The court will not list all the evidence that was presented in Plaintiff's case-in-chief, but Drummond's response catalogs the substantial evidence it presented in support of its defamation claim. (Case No. 2:11-cv-03695-RDP, Doc. # 1178). It also notes that this court's previous rulings provide more analysis as to why the Rule 56 evidence, that now has been introduced at trial, is sufficient to put these issues to the jury.

Collingsworth's arguments ignore the fact that Drummond presented significant evidence from which a jury could conclude that he acted with actual malice. There is evidence that certain witnesses on which Collingsworth relies to establish his good faith belief initially gave statements that did not implicate Drummond, and that they did not do so until after they met with Collingsworth and he began paying them (or their families), or otherwise provided them with support of significant value. A jury could find the amounts paid to witnesses were significant, particularly when considered in light of the standards of living in various areas of Colombia. And, there is evidence from which the jury could find that these payments induced the witnesses to change their testimony, that Collingsworth did not have reason to believe what these witnesses were saying, and that Collingsworth was financially motivated to cause the witnesses to falsely

---

[1] The court previously made an oral ruling on this Motion, but writes to explain some of the bases for its ruling.

implicate Drummond. Finally, there is evidence that Collingsworth's actions were motivated by his animus against the Drummond family.

Collingsworth also claims that Drummond failed to introduce sufficient evidence to allow the jury to find that his statements were false. This argument is a non-starter. Again, Drummond presented significant evidence from which a jury could conclude that Collingsworth manufactured the evidence he has used to support his truth defense. There is evidence that some witnesses refused to provide testimony or affidavits until certain payments were received. There is evidence that Collingsworth threatened to cut off payments or benefits unless he was satisfied with the evidence the witnesses produced. There is also evidence that Collingsworth indiscriminately inserted verbatim passages into some of these witnesses' declarations. And, there is evidence that Collingsworth provided "inaccurate" information, both in discovery and directly to this court, about the payments he made and this course of conduct. A jury could conclude that, if there had been a legitimate reason for the payments made to or on behalf of the witnesses, there would have been no need to hide them. Thus, there is *at least* a question for a jury to resolve about whether the allegedly defamatory statements were true or false.

Defendants argue "Drummond's entire case was about disputing the purpose of Collingsworth's security assistance for the families of witnesses and legal assistance for Jaime Blanco." (*Id*. at 11). But, the evidence of Collingsworth's pattern of inaccuracies and deception about those payments, the many emails about those payments, and the evidence that in certain instances payments were dependent on giving testimony (or giving satisfactory testimony) are sufficient to create a question for a jury to resolve about the purpose of the payments. A jury could find from all of this evidence that Collingsworth knew the statements he made were false and that he was attempting to manufacture evidence about Drummond's alleged involvement with the bad actors in Columbia to justify his position and create evidence for future cases.

3

## II.     Drummond's RICO Claims Against Collingsworth and IRAdvocates

With regard to Drummond's RICO claims, Defendants challenge whether there is sufficient proof of a RICO enterprise. "[T]he definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." *United States v. Goldin Indus.*, 219 F.3d 1271, 1275 (11th Cir. 2000). Defendants argue that Drummond's settlement with C&S somehow removed C&S from the enterprise. This assertion is without merit. As Defendants' Motion recognizes, the enterprise "exist[s] if Defendants associated with the 'common purpose' of facilitating *illicit* payments on behalf of C&S." (Doc. 1169 at 12). There is evidence that C&S made numerous payments, at Collingsworth's request, to witnesses. Moreover, there is evidence indicating that Defendants and C&S knew these payments were "illicit." For example, the "deps in the can" email (PX 1926) made plain that the payments were to obtain favorable deposition testimony by the paramilitaries rather than for "security."

Regardless, even if there was no evidence that C&S was involved in the enterprise, there is still evidence that Collingsworth, IRAdvocates, Ivan Otero, and Albert Van Bilderbeek associated with the common purpose of making illicit witness payments. For example, the coded communications using "books" for "payments" between Collingsworth and Van Bilderbeek regarding payments requested by Otero for the paramilitary witnesses clearly could establish such an enterprise. Collingsworth also admitted (1) that Otero was his intermediary for several of the paramilitary witnesses and helped facilitate both the payments and their testimony; and (2) the Nicox documents structuring the loan from Van Bilderbeek for case expenses are "bizarre" because he could not identify the parties involved in the transaction, and he admitted had no documentation as to what case expenses the funds were used for.

4

Next, Defendants claim that the evidence presented at trial is "insufficient to support [a] finding that the defendant committed at least two RICO predicate acts [within a ten-year time span] that proximately caused injury to the plaintiff." (*Id*. at 12). Unlawful predicate acts that can form the basis of a RICO claim include witness bribery, witness tampering, mail fraud, wire fraud, obstruction of justice, and money laundering among other federal crimes. Drummond presented evidence in its case-in-chief from which a jury could conclude Defendants engaged in multiple instances of witness bribery, witness tampering, wire fraud, and obstruction of justice, and that those predicate acts caused it injury. There is evidence that indicates in a previous trial Defendants failed to tie Drummond to any murders. After a jury found against Defendants' clients in the *Romero* case, there is evidence that Defendants sought to pay witnesses or provide "support" to their families to influence their testimony. There is also evidence that Defendants hid this information in discovery and misrepresented it to the court. These efforts to conceal the payments and other evidence can be viewed by a jury as indicating Defendants' intent to defraud.

Drummond presented significant evidence from which a jury could conclude that Collingsworth, IRAdvocates and others, including Otero, Van Bilderbeek, and former Defendants William Scherer and C&S, engaged in a series of predicate acts lasting, in some instances, for years. Even Collingsworth's own affidavits and representations to the court (*e.g.*, only three witnesses were provided security) indicate that the instances of providing payments to or on behalf of the witnesses were not simply all part of a single "witness protection program." A jury could find that payments directly to witnesses or to their criminal defense lawyers were not for the security of witnesses. Drummond presented evidence of multiple instances of money laundering, multiple instances of witness tampering, multiple instances of witness bribery, and multiple instances of obstruction. From this evidence a jury could conclude that a RICO enterprise existed because at least two predicate events occurred.

5

There is also sufficient evidence that these acts were continuing in nature. Drummond presented evidence that over a period of more than five years Defendants made multiple and separate series of payments to or in connection with different witnesses that lasted varying lengths of time, sometimes years. Despite this evidence of multiple payments and multiple series of payments, Defendants assert that Drummond cannot show that they engaged in repeated conduct over a period of time. Apparently, Defendants contend these multiple series of witness payments were part of a "single transaction." (*Id.* at 19-20 (the payments [] do not constitute a 'pattern,' despite Drummond's efforts to contrive them into multiple, different predicate acts.")). However, Drummond presented sufficient evidence from which the jury could conclude that multiple Defendants engaged in separate instances of various and different predicate acts (including multiple instances of fraud), that those different acts were continuing in nature, and that they were not simply part of a single "witness protection program."

Finally, Drummond presented sufficient evidence of a conspiracy to commit a plethora of RICO violations. There is evidence that Defendants agreed with Otero, Van Bilderbeek, Conrad & Scherer, Bill Scherer, and others that co-conspirator(s) would engage in multiple predicate acts which constitute RICO violations.

For all of these reasons, and those previously explained on the record, the court concludes that Drummond presented sufficient evidence to support all elements of its defamation and RICO claims against Defendants. Therefore, actions that would be Collingsworth and IRAdvocates' Rule 50 Motion for Judgment Dismissing Drummond's Claims as a Matter of Law (Case No. 2:11-cv-03695-RDP, Doc. # 1169; Case No. 2:15-cv-00506-RDP, Doc. # 682) is **DENIED**.

**DONE** and **ORDERED** this January 8, 2026.

                                                      **R. DAVID PROCTOR**
                                                      SENIOR U.S. DISTRICT JUDGE