FILED

2026 Apr-27  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cv-3695-RDP |
| | ) | ("*Defamation*") |
| TERRENCE P. COLLINGSWORTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| DRUMMOND COMPANY, INC., and | ) | |
| DRUMMOND LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-00506-RDP |
| | ) | ("*RICO*") |
| TERRENCE P. COLLINGSWORTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**TERRENCE P. COLLINGSWORTH'S RULE 50 MOTION
FOR JUDGMENT OR NEW TRIAL**

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................................. 1

II.    ARGUMENT.......................................................................................................................... 3

    A.    Drummond Failed to Prove Mr. Collingsworth Acted with Actual Malice. ..................................... 3

    B.    Drummond Failed to Establish the Required Elements of its RICO Claim Against Defendant Collingsworth.................................................................................................................. 11

III.    CONCLUSION................................................................................................................... 11

**TABLE OF AUTHORITIES**

**Cases**

*Berisha v. Lawson*, 973 F.3d 1304 (11th Cir. 2020)........................................................ 9

*Chmielewski v. City of St. Pete Beach*, 890 F.3d 942 (11th Cir. 2018) ........................................ 2

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247 (11th Cir. 2021)............ 10

*Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011).................................. 3, 8, 10

*Howard v. Walgreen Co.*, 605 F.3d 1239 (11th Cir. 2010). ........................................................ 2, 3

*Klayman v. City Pages*, 650 F. App'x 744 (11th Cir. 2016) ............................................................ 9

*Lovingood v. Discovery Communs., Inc.*, 800 Fed. Appx. 840 (11th Cir. 2020) .......................... 10

*Moeinpour v. Bd. of Trs. of the Univ. of Ala.*, 762 F. Supp. 3d 1129 (N.D. Ala. 2025)................... 2

*Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133 (2000) .................................................. 8

*Rosanova v. Playboy Enters.*, 580 F.2d 859 (5th Cir. 1978) ...................................................... 9, 10

*Silvester v. Am. Broad. Cos.*, 839 F.2d 1491 (11th Cir. 1988) .............................................. 3, 9, 10

**Rules**

Fed. R. Civ. P. 50 (a) (2) ................................................................................................................. 2

Fed. R. Civ. P. 50 (a)(1) .................................................................................................................. 2

Fed. R. Civ. P. 50 (b)....................................................................................................................... 2

Fed. R. Civ. P. 50 (b)(2) .............................................................................................................1, 11

Fed. R. Civ. P. 50 (b)(3) ...................................................................................................1, 2, 10, 11

Fed. R. Civ. P. 59 (a)(1)(A).............................................................................................................. 1

## I.  INTRODUCTION

Defendant Terrence P. Collingsworth hereby moves the Court under Fed. R. Civ. P. 50 (b)(3) for entry of judgment for him or a new trial under Fed. R. Civ. P. 50 (b)(2) on Drummond's defamation and RICO claims.[1] In the alternative, he joins with International Rights Advocates ("IRAdvocates") and files concurrently herewith a motion under Fed. R. Civ. P. 59 (a)(1)(A) for a new trial due to legal errors "for which a new trial has heretofore been granted in an action at law in federal court." The Motion alternatively seeks Remittitur under Fed. R. Civ. P. 59 (e) due to the excessive jury verdict reflecting jury prejudice and unfairness.

As an initial matter, prior to trial, Defendant Collingsworth made a motion for summary judgement to dismiss Drummond's defamation claim. *See* Doc. No. 818. Defendants Collingsworth and IRAdvocates made a motion for summary judgement to dismiss Drummond's RICO claim. *See* Doc No. 321. Regarding Defamation, the Court denied the motion. Doc. No. 842. As is detailed below and in Defendant Collingsworth's Motion, Doc. 818 at 12-33, there is overwhelming and unrebutted evidence that Mr. Collingsworth had a subjective belief that Drummond financed the AUC's crimes against humanity and therefore Drummond could not establish with "clear and convincing evidence" that Mr. Collingsworth acted with malice, a prerequisite for the defamation claim. This claim should have been dismissed as a matter of law, and the Court should now enter judgement for Defendants under Fed. R. Civ. P. 50 (b)(3).

---

[1] Defendant IRAdvocates separately files concurrently herewith its Motion under Fed. R. Civ. P. 50 (b)(3) for entry of judgment on Drummond's RICO claim against it or a new trial under Fed. R. Civ. P. 50 (b)(2).

As for the RICO claim, the Court likewise denied the Motion for Summary Judgement. *See* Doc. No. 364. Defendants established as a matter of law that Drummond could not satisfy all of the required elements of RICO. *See* Doc. No. 321 at 7-25. The Court's failure to dismiss the RICO case on summary judgement was legal error. The Court should now enter judgement for Defendant Collingsworth under Fed. R. Civ. P. 50 (b)(3).

At the conclusion of Drummond's case, on December 18, 2025, Defendants Collingsworth and IRAdvocates made a timely motion under Fed. R. Civ. P. 50 (a)(1) and (2) to dismiss Drummond's claims for Defamation and RICO as a matter of law. *See* Doc. Nos. 682 (RICO) and 1169 (Defamation).[2] The Court denied that Motion. Trial Transcript ("TTR") (Vol. XIII/12.18.25) at 2377:3-15. On January 12, 2026, when the evidence was closed, Defendants renewed the Motion and the Court denied it. TTR (Vol. XX/1.12.26) at 3398:13-3399:7.

Based on Fed. R. Civ. P. 50 (b), Defendant Collingsworth hereby moves for judgment as a matter of law. The Eleventh Circuit has made clear that the grounds for a Rule 50 (b) Motion must be the same as were asserted in a prior Rule 50 (a) Motion.  *Howard v. Walgreen Co*., 605 F.3d 1239, 1243 (11th Cir. 2010). Accordingly, Defendant Collingsworth renews his prior Motion in all respects and incorporates it by reference as if fully set forth herein. In reviewing a motion for judgment as a matter of law under Rule 50, "the court draws all reasonable inferences in favor of the non-moving party, does not weigh the evidence or make any credibility determinations, and disregards any 'evidence that the jury need not have believed.'" *Moeinpour v. Bd. of Trs. of the Univ. of Ala.*, 762 F. Supp. 3d 1129. 1138 (N.D. Ala. 2025) (quoting *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 948 (11th Cir. 2018).

---

[2] Unless otherwise specified, record citations will be to the Defamation case going forward.

## II.  ARGUMENT

**A.  <u>Drummond Failed to Prove Mr. Collingsworth Acted with Actual Malice.</u>**

For the reasons stated in Defendants' Rule 50 (a) Motion, Doc. No. 1169 at 1-8, Defendant Collingsworth is entitled to judgment as a matter of law on Drummond's defamation claim. Drummond presented no evidence to challenge Defendant Collingsworth's subjective state of mind that he believed Drummond had financed the AUC's crimes against humanity. Drummond presented evidence to question the ultimate truth of the statement, but even if the statement was false, Drummond's defamation claim fails for failure to produce sufficient evidence to support a finding of actual malice.

As the Eleventh Circuit emphasized, "[actual malice] is a subjective test, which asks whether the publisher '***in fact*** entertained serious doubts as to the truth of his publication.'" *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1498 (11th Cir. 1988) (emphasis added) (citation omitted). A Rule 50 judgment as a matter of law is proper where a plaintiff claiming defamation under the actual malice standard does not provide sufficient evidence showing the defendant subjectively believed they engaged in false speech. *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1156 (11th Cir. 2011). The Eleventh Circuit concluded that the plaintiff had made an insufficient showing of knowledge of falsehood under the actual malice standard and found no jury could reasonably find in plaintiff's favor: "Accordingly, [plaintiff] failed to present a 'sufficient evidentiary basis for a reasonable jury to find in its favor on the defamation claim, and the district court erred in denying [defendant']s motions for judgment as a matter of law." *Id*. (quoting *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010)).

3

Here, likewise, this Court must grant Mr. Collingsworth's Rule 50 (b) Motion because there is not a sufficient evidentiary basis for a reasonable jury to find that Mr. Collingsworth acted with malice because there was overwhelming evidence that he held a subjective belief that Drummond financed the AUC's crimes against humanity.

At trial, Mr. Collingsworth presented pre-January 2011 statement evidence of the many sources that combined to form his subjective belief that Drummond financed the AUC's crimes against humanity. Most of the evidence establishing Mr. Collingsworth's subjective belief was uncontroversial and unrebutted by Drummond:

a. **Mike Tracy**'s November 2000 notes (**Defs Exhibit 63**) show that former CIA agent Jim Adkins advocated the "need to kill guerillas." To "kill guerillas," Drummond needed an alliance with armed men willing to go the mountains, find guerillas, and kill them – the AUC. Mr. Collingsworth was entitled to believe this meant what it says – Drummond was willing to have the AUC "kill guerillas" to protect Drummond's valuable coal shipments.

b. Also from **Mike Tracy**'s notes (**Defs Exhibit 63**) General Peña identified the "need to clean the company of a few bad personnel. Edgar has the names [of] those [who] are causing problems to the company." There was undisputed testimony at trial from Juan Aguas Romero, George Pierce, and Victor M. Boekhoudt that Drummond's top management referred to the Drummond union leaders as "guerillas" and regularly made threatening remarks about the union leaders. Mr. Tracy acknowledged in his trial testimony that a few months after Adkins called for killing guerillas, and Peña called for "clean[ing] the company of a few bad personnel," on March 11, 2001, the union leaders were murdered by the AUC. TTR (Vol. VI/12.9.25) at 1220:5-25; 1247:9-18.

c. Mr. Tracy (and Jim Adkins) acknowledged that Drummond coordinated with the military and that the military coordinated with the AUC. Mr. Tracy testified he received a **September 13, 1995** memo from Adkins (**Defs Exhibit 88**) relating that the commander of the Colombian military base at the Drummond mine approached Adkins to ask Drummond to provide direct support to the AUC under a program called "Operation Convivir." Adkins officially claimed Drummond could not contribute to the AUC because it would be illegal. However, knowing that the military was collaborating with the AUC, Drummond provided direct, unrestricted, and substantial funding to the military after the request for assistance to the AUC was made. Tracy, Adkins, and Garry Drummond all confirmed Drummond's unrestricted financial contributions to Colombian military, which Tracy and Adkins

4

acknowledged, directly collaborated with the AUC. Adkins testified that Drummond provided equipment, a base, supplies, and cash payments to the military. He also said that the military, the same military that asked Drummond to fund the AUC, charged Drummond a "war tax." He also testified there were no restrictions on the funds Drummond gave to the military. TTR (Vol. XVIII/1.8.26) at 3002:17-3003:12. Mr. Collingsworth was entitled to believe that this was one of the major ways Drummond financed the AUC.

d. Juan Carlos Quintero testified on January 7, 2026 that he also testified at the *Romero* trial in 2007, so Mr. Collingsworth was aware of his statements. See TTR (Vol. XVII/1.7.26) at 2843:11-21. He testified that he frequently saw paramilitaries around the Drummond mine, at the Jaime Blanco cafeteria in La Loma, and that he was directed by Drummond security officials to provide fuel to paramilitaries when they needed it. He testified of his fear of the paramilitaries and stated that they were present everywhere. Juan Carlos also described the day his two friends, his partners in the Drummond union, Valmore Locarno and Victor Orcasita, were pulled off Drummond buses and murdered. He then stepped up to become a leader of the union. He led work slowdowns he called "turtle works" and he complained to Drummond executives about the major presence of the AUC at the Drummond facilities. Juan Carols did not receive protection from Drummond after he made this complaint. Instead, Juan Carlos received death threats serious enough to cause him to flee Colombia with his family and live in a refugee camp for three years in El Salvador with his young family. Juan Carlos's testimony supported Mr. Collingsworth's belief that Drummond collaborated with the AUC. See TTR (Vol. XVII/1.7.26) at 2827:24-2841:11.

e. Juan Aquas Romero – another leader of the Drummond union at the time **Valmore Locarno, Victor Oracasita, and Gustavo Soler** were murdered – testified in *Romero* and at this trial by deposition. He heard Drummond Ltd. President Augusto Jimenez say "the fish dies by opening his mouth" on three occasions to him and the other union leaders. He also testified that he saw paramilitaries patrolling the Drummond mine area, he saw them getting fuel for their trucks from Drummond's facilities, and he saw them hanging out in Jaime Blanco's Drummond cafeteria. Juan Aquas heard Drummond manager Hernando Fuentes tell him and other union leaders "union members carry a bird of prey or a vulture, as someone suggested, on the shoulder." He also testified that that "**Edgar Ruiz Garzon**, a security officer for the Drummond Defendants, compiled a list of trade union leaders who were viewed as problems by the company, and gave the list to the paramilitaries working for Drummond." See TTR (Vol. XIX/1.9.26) at 3169:7-3189:20.

f. Victor Marenco Boekhoudt, a former Drummond supervisor, also testified in *Romero* and by deposition at this trial. He corroborated Juan Carlos's testimony and said he regularly saw AUC members and vehicles at the Drummond facilities and getting fuel. He heard his fellow supervisors speak of the union as enemies and guerillas. He saw his fellow supervisors with anti-union pamphlets that called the union leaders guerrillas. See TTR (Vol. XVII/1.7.26) at 2857:8-2904:11.

g.  The Declaration of Juan Carlos Rojas, **Defs Exhibit 11**, which he signed on August 11, 2008, established Mr. Rojas worked at the Drummond mine. On March 11, 2001, he finished his shift and was on a Drummond bus to go home. He was on the same bus as Mr. Locarno and Mr. Orcasita. Eight heavily armed men in the back of a pickup truck pulled over the bus. Several of the armed men boarded the bus and asked for the "man with the gun." They were referring to Mr. Locarno; as the president of the Drummond union, he was known to be armed for self-protection. The armed men pulled Mr. Locarno off the bus and shot him. They then identified Mr. Orcasita and took him away. He was found dead the next day after he had been tortured. Others were very clear in saying that the armed men were with the AUC and they clearly knew which bus the union leaders were on."  Mr. Rojas ended his Declaration with, "I am terrified of violent retaliation by the people who killed Valmore and Victor."

h.  Mr. Collingsworth also was aware of the deposition testimony of George Pierce, another Drummond supervisor, who testified that his supervisors directed him to conduct surveillance of union activity and report it. He refused because it was against his ethical beliefs. George's supervisors regularly said they equated the union members with guerillas. Supervisor John Ruddick didn't like Valmore because he would raise union complaints at the meetings. Ruddick said many times "somebody should take him out and shoot him or whatever." Another fellow supervisor Scotty Elmore said often the union guys were guerillas. Elmore also said that the union blew up the rail line. Another supervisor Dave Smith said to George the "paramilitaries would take care of this problem. [blowing up the rail line]" and said Drummond had paid them to do it. See TTR (Vol. XVIII/1.8.26) at 3057-3071.

i.  Mr. Collingsworth interviewed on two occasions Jimmy Rubio. At the second interview, Mr. Rubio provided his May 13, 2004 Declaration, **Defs Exhibit 31**. He stated he was an employee of the Drummond mine in Colombia and was active in the union there, SINTRAMIENERGETICA. *Id*. ¶ 2. He rose to the position of Secretary of Education. *Id*. ¶ 3. His sister was killed by the AUC in 2002. *Id*. Then, AUC Commander Tolemaida was about to kill him because he was on a hit list, but a Colombian military officer intervened. *Id*. ¶ 4. Mr. Rubio then sought out the regional head of the AUC, Alexander Pianeta Vargas, to find out why he and other members of his family were on the list, at which point Vargas agreed to take them off the list. *Id*. ¶ 5. Mr. Rubio knew where to find Commander Vargas, and he often saw him on Drummond property collecting fuel and supplies. Vargas told him Vargas had permission "from above" to use the Drummond facilities. *Id*. ¶ 6. Rubio also stated that a few weeks before the union leaders Locarno and Orcasita were murdered, he saw Vargas coming out of the offices of Drummond's Director of Community Relations, Alfredo Araujo, in Valledupar. Commander Vargas told him that he was picking up his monthly quota from Araujo, and he showed Mr. Rubio two checks made out to Vargas and signed by Araujo. *Id*. ¶ 6. Vargas also told Mr. Rubio that

6

Araujo and his family had set up the AUC in the region. *Id*. After the Drummond union leaders were murdered, Capitolino boasted to Mr. Rubio that he had participated in the murders, and that someone from inside Drummond had assisted in identifying the bus that Locarno and Orcasita were on to aid the assassination. Capitolino showed Mr. Rubio Locarno's gun, which he took from him after he was murdered. *Id*. ¶ 8.

j.  Mr. Rubio had agreed to testify in the *Romero/Drummond* case, and before doing so, he fled for his life because, as he told Mr. Collingsworth, he "knew too much about Drummond and the AUC." He was living in Venezuela with his wife in a small town near the Colombian border. On March 18, 2005, a few days before Mr. Rubio was to be deposed in the *Romero* case, his father-in-law, who still lived in Colombia, was murdered. Rubio disappeared after this serious tragedy and was not deposed. He contacted Mr. Collingsworth again and provided an April 1, 2005 Declaration, **Defs Exhibit 32,** stating, "My father-in-law's tongue was cut out when he was murdered – a sign that he was killed because he, or others close to him, such as myself, was speaking out against the paramilitaries. *I have no doubt that this gruesome murder occurred so that I did not testify in this case*." *Id*. (emphasis added). Mr. Rubio disappeared again after this and did not testify in the *Romero* case.

k.  In roughly June, 2009, before Mr. Collingsworth had ever met him, Charris drafted a handwritten declaration (**Defs Exhibit 40**) and gave it to Terry and his team. Charris stated that as a member of the AUC and Jaime Blanco Maya's employee, on March 6, 2001, he met with Jim Adkins and Blanco, and Adkins gave him a list of eight union leaders that needed to be executed, including the three who were murdered, Valmore Locarno, Victor Oracasita, and Gustavo Soler. Adkins told Charris and Blanco that Augusto Jimenez, Alfredo Araujo, Mike Tracy, and General Peña were among the Drummond officials who approved of this plan to murder the union leaders.

l.  Mr. Collingsworth also was aware of **Rafael Garcia's** sworn May 13, 2006 Declaration (**Defs Exhibit 25**) that he witnessed a Drummond manager provide a "suitcase filled with money" to a representative of the AUC leader Rodrigo Tovar Pupo (Jorge 40) to assassinate the leaders of the Drummond union, Valmore Locarno Rodriguez and Victor Hugo Orcasita Amaya. Garcia identified the Drummond official as Drummond Ltd. President Augusto Jimenez. He later corrected this in a new declaration (**Defs Exhibit 26**) in which he identified the official as Drummond's Director of Community Relations, Alfredo Araujo.

m.  Carmen Josefa Amaya Daza is the mother of Victor Orcasita, one of the Drummond union leaders who was murdered. She was deposed by Drummond in the *Romero* case on April 7, 2005. A few weeks later, on May 8 and 9, she received threatening phone calls. She confirmed this in her Declaration, **Defs Exhibit 33**, ¶ 2. Shortly thereafter, on May 17, 2005, she received a threat from the AUC written inside a sympathy card. It stated, "because you are a snitch, talking and complaining to the gringos, what's going to happen to you is the same thing that happened to your son,

7

> you are going to have to leave town, this is serious, because we don't mess around." *Id.* ¶ 2 & attachment thereto. This reinforced Mr. Collingsworth's belief that the AUC was collaborating with Drummond.

The evidence above was all admitted to establish Mr. Collingsworth's subjective state of mind[3] and was not challenged by Drummond on grounds of reliability or credibility. In *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000), the Supreme Court instructed that in ruling on a Rule 50 motion for judgement, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." (citation and quotation marks omitted). The evidence of Mr. Collingsworth's state of mind should be given "credence" as it certainly supports his belief that Drummond financed the AUC and was "uncontradicted and unimpeached." Further, Drummond did not produce evidence to overcome the overwhelming evidence supporting Mr. Collingsworth's subjective belief that Drummond was collaborating with the AUC, requiring judgement as a matter of law that Mr. Collingsworth did not act with malice. See *Douglas Asphalt Co.,* 657 F.3d at 1156.

There was additional pre-statement evidence to further support Mr. Collingsworth's subjective belief, including Mr. Collingsworth's interviews with and the Declarations from Jhon Jairo Esquivel Cuadrado (alias "El Tigre") (**Defs Exhibit 21**), Alcides Mattos Tabares (alias "Samario") (**Defs Exhibit 22**), Jose Gelvez Albarracin (**Defs Exhibit 47**), and Jaime Blanco Maya ") (**Defs Exhibit 14**). Drummond challenged the credibility and reliability of this evidence at trial, but even if it is not considered, all of the other unchallenged evidence listed above

---

[3] Tracy's notes (**Defs Exhibit 63**) and the Adkins memo (**Defs Exhibit 88**) were also admitted on the issue of truth and, as documents originating from Drummond, were not challenged at trial.

requires a finding that Mr. Collingsworth did not act with malice and no reasonable jury could have found otherwise.

In *Berisha v. Lawson*, 973 F.3d 1304 (11th Cir. 2020), the Eleventh Circuit held that even if some sources for a belief in the truth of an alleged defamatory statement lack credibility and plaintiff could "nitpick each source for one reason or another," the "wealth of evidence considered altogether does not permit a reasonable juror to find clear and convincing proof that [defendant] Lawson held serious doubts about the depiction of [plaintiff] in his book." *Id*. at 1312-14. The defendants in *Berisha*, like Mr. Collingsworth, had multiple sources of information and it was the collective impact of the evidence supporting defendants' statement that compelled a grant of summary judgment. ***The defendants' "reliance on these many independent sources, alone, . . . defeat[s] any claim of actual malice." Id.* at 1313 (emphasis added) (citing *Rosanova v. Playboy Enters*., 580 F.2d 859, 862 (5th Cir. 1978)) *("[S]ubjective awareness of probable falsity . . . cannot be found where, as here, the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied."* (emphasis added)). Drummond provided no "clear and convincing evidence" that would allow a reasonable jury to find that Mr. Collingsworth ever even doubted his subjective belief that Drummond had financed the AUC.

In addition, testimony at trial established that Mr. Collingsworth conducted investigations prior to filing each of the cases he filed against Drummond. Numerous courts have held that a thorough investigation prior to making the alleged defamatory statement precludes a finding of malice. For example, in *Klayman v. City Pages*, 650 F. App'x 744 (11th Cir. 2016), the Court held that to show malice, "a plaintiff must produce evidence 'showing that the defendant purposely avoided further investigation with the intent to avoid the truth.'" *Id*. at 750-51 (citation

9

omitted).  *See also*, *Silvester v. Am. Broad. Companies, Inc*., 839 F.2d 1491, 1498-99 (11th Cir. 1988) (affirmed a dismissal on summary judgement based on lack of malice because "Defendants have proffered evidence that the jai alai segment was thoroughly researched through interviews with experts, including various law enforcement authorities who were investigating jai alai.").

Both because there was substantial, unrebutted evidence that supported Mr. Collingsworth's subjective belief that Drummond financed the AUC, and unchallenged evidence that Mr. Collingsworth conducted thorough investigations of Drummond's involvement with the AUC, Drummond failed as a matter of law to establish Mr. Collingsworth acted with malice. As no reasonable jury could find otherwise, the Court must enter judgement as a matter of law dismissing the defamation claim.

Whether Mr. Collingsworth acted with malice "is a ***subjective*** test, which asks whether the publisher '***in fact*** entertained serious doubts as to the truth of his publication.'" *Silvester,* 839 F.2d at 1498 (11th Cir. 1988) (emphasis added) (citation omitted). *See also Rosanova*, 580 F.2d at 862 (holding that a showing of malice requires "subjective awareness of probable falsity."); *Lovingood v. Discovery Communs., Inc*., 800 Fed. Appx. 840, 850 (11th Cir. 2020) ("[Plaintiff] has identified no such evidence showing that anyone at Discovery had actual doubts about the scene or real awareness that the scene might be problematic."); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc*., 6 F.4th 1247, 1252-53 (11th Cir. 2021) (holding that the Plaintiff "does not plead any facts that would allow us to infer that [Defendant] doubted the veracity of its [assertion]" in affirming a Rule 12(b) dismissal of a defamation complaint).

Drummond made an insufficient showing of Mr. Collingsworth's knowledge of falsehood under the actual malice standard and no jury could reasonably find in Drummond's favor on this

10

issue. *See Douglas Asphalt Co.*, 657 F.3d at 1156. It would be reversible legal error for this Court to decline to enter judgment for Defendants under Fed. R. Civ. P 50 (b)(3) on the defamation claim because there was not a sufficient showing of actual malice. *Id*. Drummond failed to establish with "clear and convincing evidence" that Mr. Collingsworth did not have a clear and abiding subjective belief in the truth of his assertions.

## B. **Drummond Failed to Establish the Required Elements of its RICO Claim Against Defendant Collingsworth.**

In their Rule 50 (a) Motion, Doc. No. 1169 at 8-18, Defendants established they are entitled to judgment as a matter of law on Drummond's RICO claim. Mr. Collingsworth incorporates by reference the prior arguments as if fully set forth herein. Drummond's *evidence* failed to establish the required elements of a RICO claim against Mr. Collingsworth. Fundamentally, Drummond's RICO claim represents the epitome of the misuse of the RICO statute in SLAPP suits.

As noted, Defendant IRAdvocates filed concurrently herewith a separate Motion under Fed. R. Civ. P. 50 (b)(3) for entry of judgment on RICO claims against it or a new trial under Fed. R. Civ. P. 50 (b)(2).

## III.  CONCLUSION

For the reasons stated, Defendant Collingsworth is entitled to judgment as a matter of law. Drummond's evidence at trial does not overcome Defendant Collingsworth's showing that he did not act with malice. Further, Drummond failed to establish that Defendant Collingsworth committed with intent the required predicate acts to satisfy the RICO statute. Based on Fed. R.

11

Civ. P. 50 (b)(3), judgment should be entered for Defendant Collingsworth on both the

defamation and RICO claims.


Respectfully submitted this 27th day of April, 2026.

*/s/J  Chase Bryan*
Kenneth 0.  Simon
J. Chase Bryan *(Pro Hae Vice)*
Shauncey Hunter Ridgeway
Priscilla K. Williams
*On behalf of Defendant Terrence P. Collingsworth*

**OF COUNSEL:**
**CHRISTIAN & SMALL, LLP**
505 20th Street North, Suite 1800
Birmingham, AL 35203
Telephone: (205) 795-6588

**CHRISTIAN & SMALL, LLP**
603 Duling Avenue, Suite 204
Jackson,MS   39216

The undersigned certifies that he has participated in the drafting and filing of this post-trial
Motion with the attorneys at Christian & Small LLP, and that Christian & Small LLP has filed all
Motions and advanced all arguments he wishes to raise, along with the factual and legal support
for each such argument, as to any request for judgment as a matter of law or a new trial, or any
other post-verdict relief sought.

*/s/ Terrence Collingsworth*
Terrence Collingsworth (*(Pro Hae Vice)*
**INTERNATIONAL RIGHTS ADVOCATES**
621 Maryland Ave NE
Washington, D.C. 20002
Tel: 202-543-5811
tc@iradvocates.org

## **CERTIFICATE OF SERVICE**

The undersigned Counsel hereby certifies that on April 27, 2026, notice of the foregoing document was provided via the CM/ECF system to the counsel of record.


*/s/ Terrence Collingsworth*
Terrence Collingsworth